E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
ALI MOGHADDAS (Cal. Bar No. 305654)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6527/1786
     Facsimile: (213) 894-6269
     E-mail:    scott.paetty/ali.moghaddas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 23-47-JLS |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT THOMAS GIRARDI'S *EX PARTE* APPLICATION FOR ORDER FOR MENTAL COMPETENCY EVALUATION |
| v. | |
| THOMAS VINCENT GIRARDI and CHRISTOPHER KAZUO KAMON, | |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Scott Paetty and Ali Moghaddas, hereby files its response to defendant THOMAS VINCENT GIRARDI's Ex Parte Application for Mental Competency Evaluation (Dkt. 43). The government agrees that a competency evaluation of defendant GIRARDI is warranted in this case and has met and conferred with counsel for defendant GIRARDI regarding the evaluation and the related briefing schedule. The parties have agreed on a proposed

briefing schedule; however, the parties have been unable to agree on the terms of the evaluation.  Defendant filed an ex parte application seeking to impose various restrictions and conditions on the competency evaluation.  The government objects to two of these restrictions, as discussed further in this response to the application.

    This response is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 17, 2023         Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

        /s/
SCOTT PAETTY
ALI MOGHADDAS
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Defendant Thomas Vincent Girardi has been charged with five counts of wire fraud stemming from his decades-long misappropriation of client funds through his now defunct law firm, Girardi Keese. The indictment alleges that, for years, until his firm was forced into involuntary bankruptcy in early 2021, defendant and others at Girardi Keese were operating a Ponzi scheme -- paying old clients with new clients' money -- and were lying to clients in order to cover up the misappropriation of tens of millions of dollars in client settlement funds.

Mere weeks after allegations of defendant's fraud were made public, defendant's brother filed a petition in Los Angeles Superior Court alleging, with scant detail, that defendant was incapable of caring for himself and that his brother should be appointed as his conservator. The Superior Court judge approved the petition based, in part, on an unchallenged declaration from a psychiatrist, opining that defendant has dementia that impairs his ability to understand.

Apparently relying on the findings made in the conservatorship proceeding, which was non-adversarial, defendant's counsel in this criminal proceeding asserts that defendant is incompetent to stand trial. Although defense counsel recognizes that the government should be allowed to conduct its own independent evaluation of defendant's competency, defendant seeks to limit the government's ability to conduct a comprehensive evaluation by proposing limits on both the time and scope of any examination by the government's expert. This Court should reject such attempts and allow the government's expert, Dr. Diana Goldstein, a licensed health care

professional, to conduct her evaluation in the manner she deems appropriate without any artificial limitations on the nature of the relevant data she may gather.

For the reasons that follow, the government respectfully requests that the Court enter the proposed order for mental competency evaluation attached hereto as Exhibit 1.

## II.  RELEVANT FACTS

The parties agree that defendant's competency is an issue in this case and have engaged in multiple meet and confers over the past month regarding the parameters of an expert evaluation of defendant and the schedule for subsequent briefs regarding the competency issue.  (Dkt. 43 at 3.)  In an attempt to reach agreement, both sides have made concessions.  However, defendant's final position included two provisions to which the government does not agree: first, that the government's expert "will not conduct any personality testing of Mr. Girardi, including but not limited to the MMPI-2"; and, second, that no part of the examination can "exceed[] (4) hours total per day."  (Dkt. 43-1 ¶¶ 4(b)(iii)-(iv).)  Defendant also requested the inclusion of a paragraph related to defendant's preservation of his Fifth Amendment rights and placing certain limits on the subsequent use of defendant's statements during the competency evaluation in any further proceedings.  (Id. ¶ 5.)  The government has no objection to the inclusion of this paragraph.

## III. ARGUMENT

The conditions defendant seeks to impose restricting the time and scope of the competency evaluation are unsupported by statutory authority or precedent, unnecessary, and unduly restrictive.  These conditions will inhibit the government expert's ability to conduct

comprehensive testing and analysis and impede the Court's efforts to determine whether defendant is competent to stand trial.

### A. Dr. Goldstein Should be Free to Administer Personality Testing, Including the MMPI-2

Defendant's application seeks a blanket prohibition on "personality testing" of defendant, including the MMPI-2. Defendant alleges that such testing does not assess the limited issue of determining whether an individual is competent to proceed to trial. (Dkt. 43 at 3.) Not so. The government's expert, Dr. Diana Goldstein, has routinely included personality testing in all of her competency evaluations for nearly 25 years.

Defendant offers no support for his request to exclude such testing, nor does he allege any prejudice. Indeed, there can be no prejudice given that all information gleaned from the competency evaluation is ultimately provided to the Court for its consideration. Should the Court find such information irrelevant as defendant claims, it is free to disregard the findings. However, arbitrarily excluding this area of testing now -- especially given Dr. Goldstein's reliance on such data -- would seriously jeopardize the government's independent evaluation.

As an initial matter, courts are generally averse to interfering in a mental health professional's testing protocol. Because there is no particularized set of tests for determining competency of a criminal defendant, professionals are given discretion to administer the tests they see fit. See Pizzuto v. Hardison, No. 05-CV-00516-S-BLW, 2010 WL 672754, *2 (D. Idaho 2010) ("[R]easonable mental health professionals may hold different opinions about which tests are necessary"). Indeed, in Pizzuto, the court explicitly rejected what

1 defendant has requested of this Court, holding that it would "not
2 preemptively pick sides and exclude certain tests before they occur."
3 Id.  This Court should likewise reject defendant's attempt to limit
4 the testing given during the government's evaluation.  As is typical
5 in competency proceedings, this Court will eventually hear from both
6 sides' experts regarding defendant's present competency and
7 ultimately decide this critical issue.  Limiting the information
8 available to the Court undermines the accuracy of any conclusion
9 regarding defendant's competency and this Court's ultimate decision.
10     Moreover, administration of comprehensive, reliable,
11 standardized personality tests are a regular part of clinical and
12 forensic competency evaluations.  Failure to assess personality
13 traits falls short of normal and ethical practice because, among
14 other reasons, changes in personality can be the very first sign of
15 certain neurodegenerative disorders, such as those alleged here.
16 Such changes also frequently co-occur with cognitive decline and
17 behavioral changes.  Thus, it follows that a medical professional
18 would want to include this critical testing in their overall
19 competency evaluation.  An assessment of emotional and behavioral
20 functioning and factors impacting that functioning are an integral
21 part of any neuropsychological examination, including competency
22 evaluations, and are useful, reliable, and regularly administered
23 forensic and clinical instruments in that regard.  See Gianni Pirelli
24 et. al., A Meta-Analytic Review of Competency to Stand Trial
25 Research, 17 Psychol. Pub. Pol'y & L. 1, 33 (2011) ("Personality
26 measures can be useful in establishing the existence of a mental
27 illness (a threshold issue) or evaluating malingering.").
28

4

Although omitted from defendant's application, the true reason for defendant's objection to the use of personality testing, including the MMPI-2, may be the test's internal validity measures, i.e., the test's ability to identify malingering. However, these validity measures are precisely why this Court should allow Dr. Goldstein to administer personality testing. As noted above, defendant's seemingly rapid neurocognitive decline, as well as the timing of it, are unusual and require closer scrutiny. Indeed, as alleged in the indictment, defendant was continuing to lull several clients well into 2020 by falsely claiming, among other things, that he was working to mitigate the clients' tax liability, waiting on a signature from the court, or some other false excuse, when, as defendant then knew, Girardi Keese had long ago received these clients' settlements and spent the money. (See Dkt. 1 at 11-12.) Furthermore, as alleged in a State Bar filing, attached hereto as Exhibit 2, shortly before defendant's conservator petition was filed, defendant continued to make prominent public appearances at which he spoke at length on complex legal matters. For example, "on October 6, 2020, Girardi gave a one-hour interview regarding trial strategy"[1] and "[o]n November 21, 2020, Girardi moderated a 1.5-hour long MCLE panel discussion . . . during which Girardi delivered advice regarding how to conduct a jury trial[.]" (Ex. 2 at 3.) These surrounding facts and circumstances alone warrant closer scrutiny into the possibility that defendant may be malingering and this Court would certainly benefit from any information on that topic. See, e.g., United States v. Lucas, No. 1:17-CR-00129 EAW, 2019 WL

---

[1] The video of this interview is available publicly at https://www.youtube.com/watch?v=nluZO-BCiFQ.

5

1986617, at *4 (W.D.N.Y. May 6, 2019) ("The results of [the MMPI-2] indicated that defendant had "exaggerated the severity of his mental health symptoms" and was "malingering"); United States v. Benson, No. 12-CR-00480-YGR-1, 2016 WL 215233, at *1 (N.D. Cal. Jan. 19, 2016) (defendant "was likely malingering for purposes of 'secondary gain'—specifically, to avoid trial"); United States v. Bumagin, 114 F. Supp. 3d 52, 56 (E.D.N.Y. 2015) (finding defendant competent where, although he had "some degree of dementia," the evidence demonstrated that "malingering [was] the chief reason for the symptoms" and the defendant was "attempting to avoid trial").

At bottom, the goal of an evaluation under § 4241 is to determine with as much precision as possible whether defendant is competent to stand trial. The government's expert should be allowed to administer reliable, traditional assessment instruments, including standardized tests like the MMPI-2, or its equivalent, to aid her assessment. Excluding such critical data would unnecessarily deprive any expert, government or defense, of a complete set of facts upon which to base their clinical and forensic diagnosis, thus potentially resulting in an unreliable conclusion regarding competency.

Accordingly, the Court should allow Dr. Goldstein to conduct personality testing of defendant, including the MMPI-2.

**B. Dr. Goldstein Should Not Be Restricted to Four Hours Per Day During the Competency Evaluation**

Defendant further seeks to limit the government's expert to four hours per day of testing. The Court should reject this proposed condition for many of the same reasons discussed above. Such a condition, imposed at the outset, is unduly restrictive, fails to account for the exercise of professional discretion on the part of

the evaluator and, moreover, acts as an unnecessary obstacle to conducting a comprehensive examination.

Defendant alleges that the time restriction is necessary "to ensure the examination is conducted in a humane and reliable manner." (Dkt. 43 at 3.) There is no basis for substituting defense counsel's opinion for what constitutes "humane" and "reliable" testing for the reasoned and considered judgment of an experienced medical professional. Defendant does not allege that the government's expert, Dr. Goldstein, is unqualified, inexperienced, or unprofessional. Nor can he. Dr. Goldstein is a licensed, board certified neuropsychologist who has been retained by both the government and the defense to conduct competency examinations in criminal proceedings on numerous occasions. Dr. Goldstein is experienced enough to spot fatigue or any other ailment that would require testing to cease for the day. Should such a situation arise, there is no reason not to trust that Dr. Goldstein, or any similarly qualified expert, would consider that fact in determining whether to take a break or suspend the examination to be continued at another time. Moreover, the government consented to defendant's request that the examination be conducted at the elder care facility where defendant currently resides, which further mitigates any potential stress on defendant associated with the examination. It is unreasonable to further place a time limit on the examination at the outset.

Accordingly, Dr. Goldstein should be allowed to conduct whatever testing is appropriate under the circumstances, free from <u>a priori</u> constraints on time or scope that non-medical professionals, including defense counsel, might seek to impose.

7

## IV.  CONCLUSION

Defendant seeks to impose conditions that unnecessarily restrict how defendant's competency evaluation will be conducted and impermissibly impact both parties' ability to conduct an independent examination of defendant with full knowledge of, and reliance upon, all relevant facts.  For the foregoing reasons, the government respectfully requests that the Court reject defendant's proposed Order for Mental Competency Evaluation and instead enter the Proposed Order attached hereto, which provides both parties a fair and equal opportunity to assess defendant's competency.