E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
ALI MOGHADDAS (Cal. Bar No. 305654)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6527/1786
     Facsimile: (213) 894-6269
     E-mail:   scott.paetty/ali.moghaddas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 23-47-JLS-1 |
|---|---|
| Plaintiff, | GOVERNMENT'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF KATE CORRIGAN |
| v. | |
| THOMAS VINCENT GIRARDI, | Hearing Date: July 21, 2023 |
| Defendant. | Hearing Time: 11:30 a.m.<br>Location: Courtroom of the Honorable Josephine L. Staton |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Scott Paetty and Ali Moghaddas, hereby files its reply in support of its motion to exclude the expert testimony of Kate Corrigan (Dkt. 71).

//

//

//

This reply is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 6, 2023                Respectfully submitted,

                                   E. MARTIN ESTRADA
                                   United States Attorney

                                   MACK E. JENKINS
                                   Assistant United States Attorney
                                   Chief, Criminal Division


                                     /s/
                                   SCOTT PAETTY
                                   ALI MOGHADDAS
                                   Assistant United States Attorneys

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Recognizing that Ms. Corrigan's observations are duplicative of observations and opinions catalogued at length by medical experts, defendant mischaracterizes the government's motion to exclude Ms. Corrigan as an attempt to exclude the observations of defendant's current counsel of record.  Not so.  The government does not dispute that defendant's counsel of record should be afforded the opportunity to share their observations and opinions with the Court and medical experts.  Indeed, current defense counsel have already provided their medical expert, Dr. Wood, with a collateral interview.  Moreover, in filings associated with these competency proceedings months ago, defense counsel provided the Court with detailed observations of their interactions with defendant.  (See Dkt. 19 at 1, 3-5.)  And counsel will further argue their impressions during the upcoming competency hearing.  Thus, even without testimony from Ms. Corrigan, the Court will already be fully advised by defense counsel and their experts on defendant's purported inability to aid in his defense.

The fact remains that Ms. Corrigan's proffered testimony is irrelevant, unreliable, and cumulative.  As someone untrained in recognizing the presence and symptoms of neurocognitive disorders, she offers nothing more than a report of conversations with defendant, which are already detailed by several medical experts (and others) throughout hundreds of pages of expert reports.  But unlike those experts, Ms. Corrigan cannot provide the Court with any meaningful guidance on whether defendant's symptoms are consistent with his purported "moderate dementia" diagnosis, "major

neurocognitive disorder," or simply an exaggeration of his true abilities.  Those opinions, which are at the heart of this Court's inquiry into defendant's competency, can only be opined upon by medical professionals, retained by both sides in this case, who are each trained in this subject.  Ms. Corrigan's opinions on defendant's purported inability to communicate with defense counsel offer nothing more than advocacy masquerading as expert testimony.  Nor does defendant's string cite of cases alter that conclusion.  Nearly all the cases cited in defendant's opposition stand for what the government does not dispute:  observations from <u>defendant's counsel</u> are relevant.  And despite defendant's claim of "decades of Supreme Court and Circuit Court case law," he only cites two district court cases where a court permitted testimony from a lawyer-expert, each of which is readily distinguishable.

Accordingly, for the reasons argued in the government's motion and herein, the Court should exclude Ms. Corrigan's testimony.

**II.  ARGUMENT**

    **A.  Ms. Corrigan's Testimony is Cumulative under Rule 403 and Unreliable under Rule 702**

The government does not dispute that the observations of defense counsel are relevant to a court's ultimate determination of a defendant's competency to stand trial.  However, it does not follow that <u>any</u> defense attorney's observations of a defendant are similarly relevant.  In addressing the government's motion, defendant incorrectly reframes the government's request to exclude Ms. Corrigan's testimony as an attempt to exclude all defense counsel

observations of defendant.[1] However, that is not what the motion seeks. The Court has heard and will continue to hear argument from defense counsel regarding their interactions with and observations of defendant. Indeed, counsel previously briefed these issues in seeking a competency evaluation (see Dkt. 19), and this week filed an under seal brief discussing these issues at length, and will have the opportunity to argue their interpretation of the various collateral interviews and medical expert opinions again during the upcoming competency hearing. Thus, Ms. Corrigan's perceived observations of defendant during a few interactions with defense counsel add nothing new to the issue, and are thus cumulative and a waste of time. Defendant concedes as much in his opposition. (See Dkt. 74 at 2 n.2 ("Ms. Corrigan's observations are consistent with those of other witnesses who have observed Mr. Girardi.".)

Moreover, Ms. Corrigan's testimony will not assist the Court in its inquiry for the truth, but instead only serve to distort the trained observations and opinions of both parties' medical experts. As defendant admits, Ms. Corrigan has no background, training, or experience in clinical interviews of patients, assessing symptoms of neurocognitive disorders, or diagnosing mental impairments. The lack of experience in the foregoing is especially germane here where potential malingering and exaggeration of symptoms is an issue. (See

---

[1] Defendant similarly mischaracterizes an article written by Dr. Goldstein in 2004. (See Dkt. 74 at 1 n.1.) That article proposes that medical experts consult with independent attorneys on legal issues rather than relying on the attorney who retained them, who often have a stake in the outcome of the experts' findings. Here, Ms. Corrigan is neither "independent," as contemplated by the article, nor a legal advisor to any of defendant's retained medical experts.

3

Dkt. 64 at 44[2] (summarizing performance validity test results) and id. at 70 (describing conclusions based on these test results).) Unlike the medical experts in this case, Ms. Corrigan's inability to observe, identify, and compare such exaggeration and inconsistent symptoms with diagnoses from medical professionals makes her untrained observations and ultimate opinion unreliable.

Defendant concedes that Ms. Corrigan is not qualified to opine about matters such as neuropsychology or malingering, (Dkt. 74 at 5), but attempts to salvage her testimony by arguing that she will only opine that defendant is unable to properly assist in his defense. But this ignores the fatal deficiencies in Ms. Corrigan's proffered opinion. She cannot testify about defendant's purported inability to assist in his defense without consideration of the claimed neurocognitive issues he is supposedly suffering from, and importantly, any inconsistent symptoms, such as malingering behavior, that are unassociated with such neurocognitive disorders. Without training in clinical evaluations of patients like defendant who allegedly suffer from dementia or other related diseases, Ms. Corrigan's proffered testimony is no different than argument by defense counsel regarding their own observations. While the Court can and should consider defense counsel's interactions with and observations of defendant, it does not need additional testimony from Ms. Corrigan where no less than four other medical experts will opine on defendant's mental capacity to consult with his lawyers with a reasonable degree of rational understanding and to otherwise assist in his defense.

---

[2] Page numbers for this docket entry refer to the page listed on the ECF header, not the report.

**B.   Defendant's Cited Cases Do Not Support Ms. Corrigan's Testimony**

Defendant's citation to cases which hold, among other things, that courts should consider defense counsel's observations of their client, does not change this outcome.  (Opp. at 5-6.)  As many of the cases note, a defendant's counsel of record has unique access to his/her client and such added experience puts him/her in a unique position compared to the government or courts.  (Id.)  However, none of these cases hold that because courts should consider the opinions of a defendant's own attorney, they likewise must permit unretained lawyers presented as "experts" to opine as to their separate observations and opinions.  Such an extension of longstanding procedures governing competency proceedings is completely unnecessary and not at all the norm.  Indeed, despite claiming that "decades of Supreme Court and Circuit Court case law" hold otherwise, defendant only cites two out-of-district cases where the court permitted such lawyer-experts.  Both are readily distinguishable.

For example, in United States v. Duhon, the Court initially appointed two medical experts who each opined at two separate mental competency hearings that Duhon's "intellectual functioning [wa]s in the mild range of mental retardation and that academically, he [wa]s functioning at the age of a seven-year old."  104 F. Supp. 2d 663, 667 (W.D. La. 2000).  Following the hearings, the court committed Duhon to the custody of the Attorney General pursuant to § 4241(d)(1) even though it noted that "hospitalization" presumably could not reverse the mental disorder afflicting Duhon.  Id. at 668.

Eight weeks later Duhon's competency had allegedly been restored.  Id.  In preparation for a third mental competency hearing,

5

1 the court appointed two additional experts, one in forensic
2 psychology and one in criminal law, and noted that the previous
3 report "does not identify or provide a background of the person or
4 persons teaching Duhon about 'his current charges, the potential
5 seriousness of these charges, as well as a general understanding of
6 the adversarial nature of criminal law and an understanding of the
7 criminal process, procedural protections of his rights, and the roles
8 of courtroom personnel." Id. at 669. Moreover, at the third mental
9 competency hearing, the expert who authored the previous report
10 conceded that he did not address Duhon's ability to assist counsel in
11 preparing his defense, which the court stressed was an essential
12 component in assessing competence. Id. at 674.
13     The facts of Duhon are readily distinguishable from the facts of
14 this case. First, the Duhon court only appointed a criminal law
15 expert because the government's expert report that found competency
16 had been restored was completely silent as to Duhon's ability to
17 assist counsel. Indeed, he was the only expert who apparently opined
18 as to Duhon's mental capacity to consult with his lawyer with a
19 reasonable degree of rational understanding and to otherwise assist
20 in his defense. Additionally, unlike Ms. Corrigan's silent
21 observations of defendant, the criminal law expert in Duhon actually
22 interviewed Duhon and opined to the court about his ability to
23 interact with Duhon – not his observations of Duhon's interactions
24 with his own counsel. Thus, the legal expert's opinions in Duhon
25 were neither irrelevant nor cumulative as it provided the court with
26 relevant facts that were otherwise missing from the record. Here, as
27 noted above, the record is replete with evidence and argument from
28

counsel of record regarding third party observations of defendant and counsel's inability to communicate with defendant.

Defendant's citation to United States v. Merriweather is similarly inapposite. 921 F. Supp. 2d 1265 (N.D. Ala. 2013). Merriweather involved a violent offender who was charged with armed bank robbery and murder. Id. at 1267. During his incarceration, Merriweather feigned psychosis and refused to speak with his attorneys and medical experts, dismissing them "with hand signals." Id. at 1298. Here, defendant has exhibited no such issues. In fact, defendant has been cooperative and communicative throughout the competency proceedings, and has engaged with counsel and all medical experts who have evaluated him. In short, the facts of this case are readily distinguishable from both Merriweather and Duhon.

Defendant also claims that Ms. Corrigan's proffered testimony as an "independent criminal defense practitioner" will somehow protect counsel from "potential ethical pitfalls," including possible violation of ethical rules governing attorneys. (Dkt. 74 at 8.) No such "pitfalls" exist. First, counsel need not become a witness at any competency hearing because their representations to the Court that they believe defendant cannot aid in his defense have already been made in multiple filings. In any event, Rule 3.7 of the California Rules of Professional Conduct applies to trial, not competency hearings. Comment 1 states "[t]his rule applies to a trial before a jury, judge, administrative law judge or arbitrator. This rule does not apply to other adversarial proceedings." (Id. (emphasis added).) Defense counsel claims that defendant may question counsel's loyalty and impair the attorney-client relationship moving forward if they opine on defendant's competency

in front of him, which may differ from defendant's perceived abilities.  (Dkt. 74 at 8.)  This is nonsensical as defense counsel will clearly argue during the upcoming competency hearing, in defendant's presence, that they believe defendant is incompetent to proceed to trial.  Whether such information is presented through testimony or argument makes no difference.

**III. CONCLUSION**

For the reasons set forth above and in the government's motion, the government respectfully requests that this Court exclude the proffered opinions and expert testimony of Kate Corrigan.

Dated: July 6, 2023              Respectfully submitted,

                                 E. MARTIN ESTRADA
                                 United States Attorney

                                 MACK E. JENKINS
                                 Assistant United States Attorney
                                 Chief, Criminal Division


                                      /s/
                                 _____
                                 SCOTT PAETTY
                                 ALI MOGHADDAS
                                 Assistant United States Attorneys

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA