CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CHARLES J. SNYDER (Bar No. 287246)
Email: Charles_Snyder@fd.org
SAMUEL CROSS (Bar No. 304718)
Email: Sam_Cross@fd.org
J. ALEJANDRO BARRIENTOS (Bar. No. 346676)
Email: Alejandro_Barrientos@fd.org
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
THOMAS VINCENT GIRARDI

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:23-cr-00047-JLS-1 |
| Plaintiff, | |
| v. | **RESPONSE TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S NOTICE OF MANUAL FILING** |
| THOMAS VINCENT GIRARDI, | |
| Defendant. | |

Thomas Girardi, through counsel, hereby submits the following Response to the government's opposition, ECF No. 173, to his notice of manual filing of sealed <u>in camera</u> documents.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: February 27, 2024     By  /s/ Samuel O. Cross

SAMUEL O. CROSS
Attorney for Thomas Girardi

1

## I.     INTRODUCTION

On February 22, 2024, Mr. Girardi filed a notice of manual filing or lodging relating to documents filed or lodged under seal and in camera.  ECF No. 172.  Believing that the documents so filed or lodged were an "in-camera and under seal application for Rule 17 subpoena duces tecum," the government generically opposed any such filing by written Opposition the next day.  Opposition ("Opp.") 1, ECF No. 173.  The government complains in its Opposition that any such subpoena application is an attempt to "circumvent [Federal] Rule [of Criminal Procedure] 16 by seeking broader discovery through the use of Rule 17(c) subpoenas to government agencies."  Id. at 3.  The government complains more generally about the use of any ex parte applications for subpoenas, although the government allows that "[t]o the extent defendant contends that disclosing his application for a subpoena would unfairly reveal his trial strategy, the government requests that only the subpoena itself be disclosed to allow argument and proper resolution of this matter."  Id. at 7.  Finally, the government demands that any materials returned responsive to subpoenas duces tecum requested by Mr. Girardi be "shared" with the government.  Id. at 8–9.

The government's arguments are pretextual and without merit.  The only reason that the government wants access to Mr. Girardi's subpoenas and returns is because Mr. Girardi wants access those materials.  The government wants this information for two reasons.  First, and principally, the government wants to know what Mr. Girardi wants because of what it reflects about his anticipated trial defense, which would allow the government to reverse-engineer and respond to the defense before trial.  Second, to the extent that the government deems something sought by subpoena harmful to its case, it wants to intervene and prevent Mr. Girardi from compelling that favorable evidence to trial.  The generalized concerns about Rule 16 and process are a meant to conceal the government's attempt to gain a tactical advantage.

But Mr. Girardi has a right to prepare his defense and to avoid revealing that

2

defense to the prosecutors seeking his conviction—prosecutors who have had their own access to secret and compulsory process for many years more than Mr. Girardi. Mr. Girardi has a right to prepare for trial by seeking and obtaining materials by subpoena without review or supervision by the government of either the applications for such subpoenas or responsive material returned. This right is recognized by precedent, the Rules of Criminal Procedure, and local rule in this District. This right is integral to Mr. Girardi's ability to prepare effectively for trial and to receive a fair trial.

## II. ARGUMENT

### A. To the extent the government's opposition is a motion to quash, the government lacks standing under Rule 17.

The government's opposition is not styled as a motion to quash any subpoena. See Opp. 1. However, the government supposes at various points in its Opposition that Mr. Girardi's filing may be "nothing more than a 'fishing expedition' and [that] the documents [sought] are available from another source, such as discovery from the government." Id. at 3. Were this the case, the government imagines, the hypothetical subpoena would be "unreasonable and oppressive and should not be issued." Id.

However, Rule 17(c), upon which the government relies, does not provide a vehicle for non-subpoenaed parties to seek relief. "On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). Intuitively, "the party to whom the subpoena is directed is the only party with 'standing' to oppose it. This is because no matter what interest a party to whom the subpoena is not directed may have, it does not arise out of the difficulty of compliance." United States v. Tomison, 969 F. Supp. 587, 591–92 (E.D. Cal. 1997).

Of course, the government does not seek to assert the notional rights of third parties altruistically. Rather, the government seeks to prevent Mr. Girardi from obtaining any materials via pretrial subpoena, unless the government is granted a right

3

of superintendence. The government's offered reason—that any subpoena seeking documents that are "available from another source" would be ipso facto "unreasonable and oppressive"—shows by its overbreadth how important Rule 17(c)'s standing requirement is in limiting motions to quash to those parties best equipped to make them. Opp. 3. The Rule requires that "difficulty of compliance" be the basis of any motion to quash, but the government's objection is merely that subpoenas sought by the defense may not meet all the requirements of the Rule. See, e.g., id. at 6 ("Here, defendant's in camera request potentially implicates pretrial discovery materials, including Brady/Giglio requests."). This cannot be the legitimate basis of a motion to quash. In reality, of course, it is part of the government's broad effort to control and restrain Mr. Girardi's trial preparation.

### B. The government's demand to review subpoenas and materials returned pursuant to subpoenas amounts to an improper attempt to surveil defense investigation and anticipate defense strategy.

The government has had years to investigate this case. It has had at its disposal the most powerful discovery device in American law: a federal grand jury subpoena. The government issued dozens of grand jury subpoenas in secret for years before an Indictment was returned, and received returns on those subpoenas in secret. See Fed. R. Crim. P. 6(e)(2)(B) (providing that grand jurors, interpreters, court reports, recording device operators, transcribers of testimony, government attorneys, and associated government personnel "must not disclose a matter occurring before the grand jury"); see also In re Grand Jury Subpoena Duces Tecum, 797 F.2d 676, 680 (8th Cir. 1986) ("[T]he district court may direct a grand jury witness to keep secret from targets of the investigation the existence of a subpoena, the nature of the documents subpoenaed, or testimony before the grand jury"). As reflected in discovery materials, the government also spent substantial time meeting with witnesses and investigating the case before the case was charged. All of this occurred (properly) without the knowledge or

participation of counsel for Mr. Girardi.  Even today, the government can conduct further investigation via grand jury subpoena, and can compel materials to trial through its own use of the Rule 17 process.

The government suggests it needs access to any materials that might be returned by subpoena "so that it can meaningfully participate in any further proceedings relating to the request [for a subpoena]."  Opp. 8.  That vague justification fails to conceal the government's actual purpose:  to surveil Mr. Girardi's investigation and trial preparation, to reverse-engineer his trial defense, and to superintend the efforts of its litigation adversary to obtain evidence in his defense.  However, as the government itself is at pains to observe several times, Rule 16 delimits the outer boundaries of the parties' reciprocal discovery obligations, and thereby also defines what the government is entitled to receive from the defense by way of "basic fairness."  Id.; see id. at 3 ("It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms.  Rule 17(c) was not intended to provide an additional means of discovery." (quoting Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951) (cleaned up))).  Rule 16 defines the limits of Mr. Girardi's discovery obligations to the government.  Once Mr. Girardi obtains evidence by way of Rule 17 subpoena, Rule 16 does not require him to produce everything he may receive to the government; it only requires the production of those items that he intends to offer in his case in chief at trial.  See Fed. R. Crim. P. 16(b)(1)(A)(ii).  By seeking to involve itself in the Rule 17 process, the government is attempting to obtain more discovery than it is entitled to receive under Rule 16.[1]  There is no requirement that Mr. Girardi disclose the nature or fruits of his ongoing investigation and trial preparation—whether in Rule 16, Rule 17, or anywhere else in the Rules of Criminal Procedure—and nothing about the fact that some of that trial preparation may require a court order entitles the

---

[1] The government's accusation that Mr. Girardi may be seeking to do this is speculative and pretextual.  By contrast, the government's own attempt to do so is clearly spelled out in its Opposition.

1 government to more discovery than mandated by the Rule that governs discovery.

2 Rather, the Local Rules expressly provide the opposite: that "[if] a subpoena is
3 issued pursuant to an application under seal, the issuance or service of the subpoena
4 shall not be disclosed to anyone," absent contravening order of the Court. Local Crim.
5 R. 17-4. The Local Rule clearly countenances that both applications for subpoenas and
6 the proposed subpoenas themselves can be sought, issued, and served without notice to
7 the government. It follows that returned materials can and should be kept secret for the
8 same reasons. It would make little sese to provide that issuance and service of
9 subpoenas obtained under seal should remain secret, but the fruits of the subpoenas
10 should not. Protecting the return of subpoenas from government surveillance serves the
11 same purpose as protecting the applications for such subpoenas: protecting the defense
12 investigation of a case, the defense theory of the case, and the defense trial strategy.

**C. Any <u>in camera</u> request for issuance of a subpoena is properly assessed by the Court alone, to avoid impermissible disclosure of defense strategy, as are the returns of such a subpoena.**

The right to apply <u>ex parte</u> for a Rule 17 subpoena was added to the Rule in a 1966 amendment for the purpose of assuring that indigent defendants would not have to disclose their defense in exercising their right to compulsory process. <u>See</u> Fed. R. Crim. P. 17 advisory committee note (1966 amendment).

The Ninth Circuit has approved of filing items <u>ex parte</u> <u>in camera</u> where a party has "no obligation to disclose them." <u>United States v. Gurolla</u>, 333 F.3d 944, 951 (9th Cir. 2003) (quoting <u>United States v. Klimavicius-Viloria</u>, 144 F.3d 1249, 1261 (9th Cir. 1998)); <u>see also</u> <u>United States v. Peltier</u>, 693 F.2d 96, 97–98 (9th Cir. 1982) (per curiam) (reviewing offer of proof made <u>in camera</u> by defendant's counsel below); <u>United States v. Eshkol</u>, 108 F.3d 1025, 1028 (9th Cir. 1997) (approving of <u>in camera</u> proffers to prevent disclosure of defense theory, and suggesting that defense counsel should have sought to make such a proffer in order to protect his client), cert. denied,

1  522 U.S. 841 (1997).  Indeed, the Ninth Circuit not long ago acknowledged that using
2  ex parte procedures for Rule 17 subpoenas is common.  See United States v. Sleugh,
3  896 F.3d 1007, 1010 (9th Cir. 2018) (noting that Rule 17(c) applications "are often
4  filed ex parte and under seal.").  This is so because the need for in camera review of a
5  criminal defendant's memorandum of privileged information is critical to protecting a
6  defendant's Sixth Amendment right to due process.  Tomison, 969 F. Supp. at 592–93.
7  The fact that a defendant has "a right to protect his trial strategy contraindicates a
8  noticed motion practice requiring disclosure to the government of the defendant's
9  theory of the case as a precondition to obtaining" access to the courts.  Id. at 593.
10 Requiring a defendant to divulge his theory of defense in order to avail himself of
11 constitutional protections would only serve to undermine that defendant's right to a fair
12 trial.  Id.
13     Furthermore, a defendant has a right to protect his trial strategy by receiving and
14 reviewing materials responsive to a subpoena without disclosing the materials to the
15 government.  The structure of Rule 17(c) demonstrates that it "empowers the court to
16 deny an adverse party the opportunity to inspect the documents."  Tomison, 969 F.
17 Supp. at 591 (noting that the rule is permissive, providing that the court "may" order
18 production of documents and "may" permit inspection by the adverse party).  This
19 makes sense:  just as a party's application for a subpoena may necessarily disclose trial
20 strategy, the nature of the materials sought by a subpoena duces tecum may equally
21 reveal defense strategy.  See id. at 591 n.8.  The government has no right to know Mr.
22 Girardi's trial strategy, which is based on attorney work product and communications
23 between defense counsel and Mr. Girardi.
24     Permitting disclosure of defense subpoenas, or even merely returned materials,
25 could put Mr. Girardi in the untenable position of having to decide whether to withdraw
26 a subpoena request to avoid disclosure of protected information at the expense of
27 vindicating his Sixth Amendment right to compulsory process.  See Tomison, 969
28

F.Supp. at 594 ("forcing any defendant to confront the choice between issuing a pre-trial subpoena duces tecum and disclosing his defense to the government places an unconstitutional limitation on the defendant's right to compulsory process") (citation omitted). A criminal defendant should not be forced to choose between these two important rights. See generally Simmons v. United States, 390 U.S. 377, 395 (1968) ("[W]e find it intolerable that one constitutional right should have to be surrendered in order to assert another").

Contrary to the government's suggestion, courts in this District routinely grant such subpoena applications, even when the government objects. See, e.g., United States v. Almanza, 2:21-cr-212-FLA (C.D. Cal. 2021), ECF Nos. 22, 27, 28, 29 (granting over objection); United States v. Hicks, 8:20-cr-140-VAP (C.D. Cal. 2021), ECF Nos. 73, 74, 75 (same); United States v. Darrington, 5:18-cr-168-JGB (C.D. Cal. 2018), ECF Nos. 16, 21 (same); United States v. Sadleir, 2:20-cr-299-DMG (C.D. Cal. 2022), ECF No. 77 (granting unopposed application); United States v. Eggleston, 2:20-cr-434-DSF (C.D. Cal. 2021), ECF Nos. 64, 73 (same); United States v. Shi, 2:20-cr-350-RGK (C.D. Cal. 2021), ECF Nos. 70, 75, 80, 85, 91, 92 (same); United States v. Torres, 2:19-cr-490-CAS (C.D. Cal. 2020), ECF No. 23 (same); United States v. Ohanian, 2:19-cr-305-JAK (C.D. Cal. 2019), ECF No. 31 (same); United States v. Ramos, 2:17-cr-701-GW (C.D. Cal. 2019), ECF No. 62 (same); United States v. Hosseinzadeh, 8:18-cr-138-CJC (C.D. Cal. 2018), ECF Nos. 25, 28, 29 (same); United States v. Brank, 2:15-cr-131-JFW (C.D. Cal. 2015), ECF No. 110 (same). Because nothing about the relevant law has changed since any of these decisions, this Court should follow suit.

**D. The government's concern that Mr. Girardi will use in camera or under seal subpoenas as a "discovery tool" is unfounded.**

The government repeatedly expresses a fear that Mr. Girardi will, if permitted by the Court to seek subpoenas and subpoena returns ex parte and under seal, use such

subpoenas as a means to flout or exceed the discovery permitted him from the government by Rule 16.  Opp. 3–7.  But this professed fear is conjectural given that the government is not objecting to any subpoena it has received or may receive. Furthermore, neither the cases the government cites nor the records of this case suggest the government should be given the powers of review it seeks.

Many of the cases the government cites regarding its supposed concern about using subpoenas as a "discovery tool" relate not to subpoenas that improperly exceeded the scope of discoverable material under Rule 16, but instead to cases where subpoenas to third parties failed to comply with Rule 17(c)'s requirements, and were quashed via third-party motion.  See United Staes v. Richardson, 607 F.3d 357, 366–67 (4th Cir. 2010) (district court did not abuse discretion in granting America Online's motion to quash overbroad subpoena); United States v. Fields, 663 F.2d 880 (9th Cir. 1981) (reversing district court's denial of motion to quash Wells Fargo's motion to quash overbroad and vague subpoena); United States v. Cuthbertson, 651 F.2d 189, 194–95 (3d Cir. 1981) (reversing district court's release of subpoenaed materials to defendants where district court failed to make determination about admissibility of the subpoenaed materials that had been returned).  These cases dealt not with the specter raised by the prosecution of discovery by other means, but simply with cases where a non-government party was entitled to quash an unreasonable or oppressive subpoena directed to the party.  As explained in Section II(A), the government lacks standing to challenge such subpoenas in any event.

Further, the record in this case reveals that the government's professed concern about Mr. Girardi abusing Rule 16 is not only conjectural, but unfounded.  The only possible member of the prosecution team to which Mr. Girardi has directed or might direct a subpoena is the Girardi Keese bankruptcy trustee.  In that instance, Mr. Girardi first asked the government to produce items nominally in the trustee's possession— exactly what the government claims it wants him to do in the Opposition.  In response,

9

the government took the dubious position that items in the trustee's possession were not covered by Rule 16—even though the trustee has worked hand-in-hand with the government in building this case and repeatedly produced items to the government without a subpoena.  <u>See</u> Ex. A (recently produced discovery showing that, in response to FBI request for access to the GK emails, trustee indicated that she would "informally cooperate with [the] investigation without the need for a formal subpoena" before providing access to emails).  It was only in response to that contention, at the express request of the trustee, and in the interest of speed and pragmatism in light of a fast-approaching trial date that Mr. Girardi sought a subpoena to the trustee.  In so doing, Mr. Girardi was transparent with the government, the Court, and the trustee, and explicitly requested that the subpoena and return not be in camera.

        This example not only reveals the government's professed concern to be speculative—and pretextual—but also factually unfounded in the context of this case. Mr. Girardi has demonstrated an understanding of and good-faith intent to comply with Rules 16 and 17.

### III.   CONCLUSION

For these reasons, the Court should disregard and, to the extent applicable, deny the government's Opposition.

        Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: February 27, 2024    By  */s/ Samuel O. Cross*

SAMUEL O. CROSS
Attorney for Thomas Girardi

10

# DECLARATION OF SAMUEL CROSS

I, Samuel O. Cross, declare as follows:

1. I am a California-licensed DFPD appointed to represent Tom Girardi in this matter. Unless otherwise stated, I make this declaration based on personal knowledge and, if called as a witness, would attest to its contents under oath.

2. The government has provided in discovery email communications between Philip Strok, an attorney for the bankruptcy trustee appointed to represent Girardi Keese, and Elias Guerrero, and FBI Special Agent investigating the instant criminal matter. The government also provided in discovery emails between Special Agent Guerrero and Sammy Hsu, a member of the IT staff working for the bankruptcy trustee. I have attached excerpts of these communications hereto as Exhibit A.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed February 27, 2024 at Santa Ana, California.

　　　　　　　　　　　　　　　　　　　　　　*/s/ Samuel O. Cross*
　　　　　　　　　　　　　　　　　　　　　　Samuel O. Cross