E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
ALI MOGHADDAS (Cal. Bar No. 305654)
Assistant United States Attorney
Corporate and Securities Fraud Strikeforce
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6527/1786
    Facsimile: (213) 894-6269
    E-mail:  scott.paetty/ali.moghaddas@usdoj.gov@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 23-47-JLS |
|        Plaintiff, | GOVERNMENT'S OPPOSITION TO MOTION FOR PRETRIAL RULING REGARDING JUROR QUESTIONNAIRE |
|          v. | |
| THOMAS VINCENT GIRARDI, and CHRISTOPHER KAZUO KAMON, | Hearing Date: June 20, 2024<br>Hearing Time: 1:30 p.m.<br>Location:    Courtroom of the Hon. Josephine L. Staton |
|        Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Scott Paetty and Ali Moghaddas, hereby files its Opposition to defendant Thomas V. Girardi's Motion for Pretrial Ruling Regarding Juror Questionnaire (Dkt. 186).

//

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 31, 2024                    Respectfully submitted,

                                       E. MARTIN ESTRADA
                                       United States Attorney

                                       MACK E. JENKINS
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                       _____/s/_____
                                       SCOTT PAETTY
                                       ALI MOGHADDAS
                                       Assistant United States Attorneys

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES....................................1

I.      INTRODUCTION...................................................1

II.   LEGAL STANDARD...................................................2

III. ARGUMENT...........................................................3

    A.   Defendant Does Not Have a Right to a Juror
        Questionnaire...........................................3

    B.   Defendant's Reliance on Prior Cases with Juror
        Questionnaires is Not Persuasive........................6

    C.   The Court's Standard Voir Dire Procedures Are
        Sufficient to Ensure a Fair, Impartial, and Unbiased
        Jury....................................................8

IV.   CONCLUSION.......................................................11

# TABLE OF AUTHORITIES

DESCRIPTION                                                              PAGE

**Federal Cases**                                                     **Page(s)**

Darbin v. Nourse,
  664 F.2d 1109,1113 (9th Cir. 1981)  ........................ 2, 10

Mu'Min v. Virginia,
  500 U.S. 415,427 (1991)  .................................. 2, 3

Rosales-Lopez v. United States,
  451 U.S. 182, 189 (1981) (plurality opinion)  ................. 2

Salazar v. Continental Construction of Montana,
  No. CV 11-16-BLG-CSO, 2012 WL 3100544  ...................... 9

United States v. Aslanian,
  No. 22-CR-445-JGB  .......................................... 8

United States v. Avenatti,
  19-CR-61-JVS (C.D. Cal.2021)  .............................. 6

United States v. Bakker,
  925 F.2d 728 (4th Cir. 1991)  ............................. 4

United States v. Beal,
  No. 8:19-cr-47-JLS-1 (June 2022 trial) ...................... 6

United States v. Chaudhry, No. C 03-40210 SBA,
  2008 WL 2128197 (N.D. Cal. May 20, 2008)  .................. 5

United States v. Harding,
  273 F. Supp. 2d 411, 429 (S.D.N.Y. 2003)  ................. 5

United States v. Huizar et al,
No. 20-cr-326-JFW ............................................ 7

United States v. Layfield,
  18-CR-124(A) -MWF (Trial August 2021 C.D. Cal.)  ............. 8

United States v. Jackson,
  863 F. Supp. 1449 (D. Kan. 1994)  .......................... 10

United States v. Mark Ridley-Thomas,
  No. 21-CR-485-DSF  ......................................... 8

United States v. Montes, No. 5:12CR29-01-02,
  2013 WL 1347284 (N.D. W.Va. Apr. 3, 2013)  ................. 5

United States v. Padilla-Valenzuela,
  896 F. Supp. 968, 972 (D. Az. 1995)  ....................... 5

ii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

United States v. Phibbs,
    999 F.2d 1053 (6th Cir. 1993) .................................. 4

United States v. Powell,
    932 F.2d 1337 (9th Cir. 1991) .................................. 3

United States v. Richard Ayvazyan et al,
    No. 20-CR-579-SVW .............................................. 8

United States v. Salameh, No. S5 93 Cr. 0180
    (KTD), 1993 WL 364486 (S.D.N.Y. Sept. 15, 1993) ............... 5

United States v. Singh, No. 3:13-cr-0117-LRH-VPC,
    2016 WL 6542829 (D. Nev. Nov. 2, 2016) ....................... 5

United States v. Soderman,
    429 F. App'x 663 (9th Cir. 2011) ............................. 5

United States v. Taylor, No. CR-99-3023-MWB,
    1999 WL 33656900 (N.D. Iowa Nov. 16, 1999) ................... 6

**Other**

Federal Rule of Criminal Procedure 24 ............................ 2

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3      Defendant Thomas V. Girardi ("defendant") has filed a motion
4 seeking leave of the Court to issue a written jury questionnaire to
5 be filled out by prospective jurors, then reviewed by the Court and
6 counsel before conducting in-person voir dire in this case (Dkt. 186
7 ("Motion" or "Mot.")), which is set for trial on August 6, 2024.  But
8 far from streamlining voir dire, use of a jury questionnaire would
9 risk unnecessarily complicating and burdening an otherwise tried-and-
10 true jury selection process in this District and in this Court.

11      Defendant's Motion claims that publicity in this case "demands
12 intensive voir dire" and "a questionnaire will achieve this goal
13 efficiently, saving the Court and the parties time by significantly
14 shortening in-courtroom voir dire."  (Mot. at 2.)[1]  The government
15 agrees with the former assertion and disagrees with the latter.  A
16 fulsome voir dire process is certainly necessary in this trial;
17 however, the Court already has in place sufficient protocols to
18 ensure a fair and impartial jury without expending the additional
19 resources involved in production, dissemination, and evaluation of a
20 written juror questionnaire.

21      Defendant's advocacy for use of a jury questionnaire ignores the
22 voir dire procedures stated in the Court's standing criminal order
23 and glosses over the significant delays a questionnaire will cause in
24 the overall process.  Rather than issue a written jury questionnaire,
25 this Court is well-equipped through its customary voir dire to
26 identify any actual prejudice in the jury pool warranting for-cause

27

28      [1] Citations to pages in the Motion reflect page numbering in the
brief, not the CM/ECF pagination.

1    excusal.  As in most cases, standard voir dire questions posed to

2    prospective jurors will adequately expose any prejudices a

3    prospective juror may have with issues implicated in this case and

4    additional targeted voir dire questions (including by pretrial

5    submission to the Court and attorney follow up questioning pursuant

6    to the Court's standing criminal trial order) are sufficient to

7    address any prejudices a prospective juror may have.

8    **II.  LEGAL STANDARD**

9         The purpose of voir dire is to allow the court and the parties

10   "to probe each prospective juror's state of mind to enable the trial

11   judge to determine actual bias and to allow counsel to assess

12   suspected bias or prejudice."  Darbin v. Nourse, 664 F.2d 1109, 1113

13   (9th Cir. 1981).  Federal Rule of Criminal Procedure 24, which

14   governs the examination and selection of trial jurors, affords trial

15   courts broad discretion in the conduct of voir dire.  As the Supreme

16   Court has long recognized, "[b]ecause the obligation to impanel an

17   impartial jury lies in the first instance with the trial judge, and

18   because he must rely largely on his immediate perceptions, federal

19   judges have been accorded ample discretion in determining how best to

20   conduct the voir dire."  Rosales-Lopez v. United States, 451 U.S.

21   182, 189 (1981) (plurality opinion); see also Mu'Min v. Virginia, 500

22   U.S. 415, 427 (1991) ("[O]ur own cases have stressed the wide

23   discretion granted to the trial court in conducting voir dire in the

24   area of pretrial publicity and in other areas of inquiry that might

25   tend to show juror bias.").  In fulfilling this broad mandate, "[i]t

26   is wholly within the judge's discretion to reject supplemental

27   questions proposed by counsel if the voir dire is otherwise

28

                                   2

1  reasonably sufficient to test the jury for bias or partiality."

2  United States v. Powell, 932 F.2d 1337, 1340 (9th Cir. 1991).

3  **III.  ARGUMENT**

4      **A.   Defendant Does Not Have a Right to a Juror Questionnaire**

5      The Motion cites various news articles and media reports

6  regarding defendant Girardi, the demise of Girardi Keese, defendant

7  Girardi's prior marriage to a reality television personality, and

8  this Court's finding that defendant was at least partially

9  malingering during his competency proceedings as the basis for

10  submitting a jury questionnaire.  (See generally Mot. at 4-8.)

11  Defendant's concerns, in essence, boil down to a fear that consumers

12  of these various articles, reports, and media profiles would be left

13  with a negative impression of defendant and thus be prejudiced

14  against and less likely to credit evidence presented in his defense.

15  (Mot. at 8.)  But a criminal defendant has no right to a written

16  juror questionnaire, and courts consistently have affirmed the broad

17  discretion afforded trial judges in denying requests for written

18  questionnaires where, as here, procedures are already in place to

19  allow the Court and the parties to probe specific areas of potential

20  bias and/or prejudice.

21      For example, in Mu'Min, the Supreme Court recognized the

22  potential limitations of juror questionnaires in rejecting a

23  challenge to a trial court's use of traditional voir dire in a murder

24  trial involving "substantial publicity."  500 U.S. at 417.  The media

25  coverage included news reports about the defendant's prior criminal

26  record, his multiple parole denials, details about a prior murder

27  that he had committed, and indications that he had confessed to the

28  crime for which he was then being tried.  Id. at 418.  In affirming

the traditional voir dire procedures employed by the trial court to ensure a fair and impartial jury was chosen, the Court observed that "written answers [to a juror questionnaire] would not give counsel or the court any exposure to the demeanor of the juror in the course of answering the content questions." Id. at 425.

Similarly, in United States v. Bakker, 925 F.2d 728 (4th Cir. 1991), the Fourth Circuit affirmed the district court's refusal to employ a juror questionnaire prepared and requested by the defense in a fraud prosecution against well-known "televangelist" Jim Bakker with substantial pretrial publicity. Id. at 733-34. Recognizing the "trial court has broad discretion to control the scope of questions during voir dire," the court found "the questionnaire was concerned less with ensuring an impartial jury and more with ensuring a jury inclined to acquit." Id. The court also observed that "quite a few of the court's questions during voir dire did come from the written questionnaire submitted by" the defendant such that he "had an opportunity to acquire much of the information he sought." Id. at 734.

In United States v. Phibbs, 999 F.2d 1053 (6th Cir. 1993), the Sixth Circuit rejected the defendant's claim that a "written questionnaire created by defendants was necessary to ferret out those prospective jurors whose biases would not be revealed through a collective examination." Id. at 1071. Affirming the lower court's denial of the requested questionnaire, the court found that while information sought by the defendants in the questionnaire "might have aided defendants in identifying sympathetic jurors, it was not needed to compose a fair-minded jury." Id. at 1071-72.

1    And in an unpublished opinion, the Ninth Circuit has held the

2  district court did not abuse its discretion in "rejecting a proposed

3  jury questionnaire that inquired about prospective jurors' views on

4  one subject." United States v. Soderman, 429 F. App'x 663, 667 (9th

5  Cir. 2011).

6    Likewise, district courts within the Ninth Circuit have

7  exercised their "ample discretion" in denying criminal defendants'

8  requests for written questionnaires. See, e.g., United States v.

9  Singh, No. 3:13-cr-0117-LRH-VPC, 2016 WL 6542829, at *2 (D. Nev. Nov.

10  2, 2016) (denying questionnaire where the court's "standard voir dire

11  practice will provide sufficient constitutional safeguards to ensure

12  that a fair and impartial jury is selected"); United States v.

13  Chaudhry, No. C 03-40210 SBA, 2008 WL 2128197, at *25 (N.D. Cal. May

14  20, 2008) (denying questionnaire "as an inefficient method of voir

15  dire"); United States v. Padilla-Valenzuela, 896 F. Supp. 968, 972

16  (D. Az. 1995) (denying questionnaire that was both "unduly invasive

17  [of] the right to privacy of prospective jurors" and "already covered

18  by the standard voir dire procedure").[2]

19

20    [2] District courts across the country similarly have rejected

21  defense requested jury questionnaires as unnecessary and
    insufficient. See, e.g., United States v. Harding, 273 F. Supp. 2d
    411, 429 (S.D.N.Y. 2003) (denying questionnaire where defendant

22  "failed to demonstrate that use of a written questionnaire is
    necessary or preferable to a proper voir dire conducted by the

23  Court") (emphasis in original); United States v. Salameh, No. S5 93
    Cr. 0180 (KTD), 1993 WL 364486, at *2 (S.D.N.Y. Sept. 15, 1993)

24  ("There has been, however, absolutely no showing that jury
    questionnaires are of any particular help in the selection of a jury

25  in highly publicized cases where a searching voir dire is
    conducted."); United States v. Montes, No. 5:12CR29-01-02, 2013 WL

26  1347284, at *3 (N.D. W.Va. Apr. 3, 2013) ("[N]ot only can any concern
    regarding candor of potential jurors be adequately addressed in a

27  traditional voir dire process, but also . . . the use of a written
    questionnaire may actually impair this Court and the parties' ability

28  to assess potential jurors' fitness to serve on the jury in this
                         *(footnote cont'd on next page)*

5

1
2

      **B.    Defendant's Reliance on Prior Cases with Juror Questionnaires is Not Persuasive**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

     Defendant identifies a handful of instances (including one in this Court) where courts have employed jury questionnaires in cases "involving celebrities, individuals who were well known before their cases arose and individuals whose cases have created or extended some degree of notoriety." (Mot. at 11.)  The cases upon which the defense relies are inapposite and turn on their own distinct facts. Most notably, United States v. Beal, No. 8:19-cr-47-JLS-1 (June 2022 trial), was a lengthy trial in this Court involving the murder of defendant's ex-girlfriend and injuries to two others through a package bomb explosion.  The questionnaire in Beal contained numerous questions pertaining to issues implicated in that trial which were outside of the typical juror's normal experience (e.g., extreme violence, bomb-making, and rocket science). (See Beal Dkt. 952 ¶¶ 15, 17-18, 20-22.)  No similar concerns are involved here.  As the Court has previously acknowledged this "does not appear to be an unusually complex trial in any way.  It's a lot more straightforward than a lot of the cases that the Court has." (See Dkt. 161 at 11:21-23.)

21
22
23
24
25

     Defendant also cites United States v. Avenatti, 19-CR-61-JVS (C.D. Cal. 2021), as support for a juror questionnaire.  Although the underlying facts of that case bear some similarity to the crimes alleged here (stealing client settlement funds), the circumstances surrounding Avenatti's pretrial publicity are distinguishable.

26
27
28

case."); United States v. Taylor, No. CR-99-3023-MWB, 1999 WL 33656900, at *2 (N.D. Iowa Nov. 16, 1999) (denying questionnaire, "find[ing] little, if any, specific potential benefit to asking the proposed questions in written form prior to voir dire").

1   Before Avenatti proceeded to trial in this district, he had already

2   been convicted of extortion in a well-publicized trial in New York

3   and had been a regular fixture on cable news for his attacks on

4   former President Trump.  Indeed, unlike the news coverage on

5   defendant Girardi, which is predominantly covered by local media,

6   Avenatti was frequently featured in news publications and broadcasts

7   across the country.  Further, there is no associated political

8   component to these proceedings and, unlike Avenatti where the

9   pretrial publicity focused mainly on Avenatti's prior conviction and

10  ubiquitous media presence as a Trump foil, much of the Motion is

11  devoted to expressing concerns over publicity generated by and

12  focused on defendant's former wife, not defendant.  However,

13  defendant's former wife is not charged in this case and has not been

14  identified as a witness by any party in this case.  Moreover,

15  defendant's claim that his status as a former "legal titan" (Motion

16  at 8) confers wide public awareness of him is undercut by the fact

17  that of the approximately 150 prospective Avenatti jurors who

18  responded to questionnaires, 109 of them (i.e., 73%) had never heard

19  of Michael Avenatti.  (See Case No. 19-CR-61-JVS, Dkt. 568 at 4:15-19

20  and 569 at 8:17-22.)[3]

21      Further militating against defendant's request for a

22  questionnaire, other recent high-profile trials in this District have

23  proceeded without a juror questionnaire.  See United States v. Huizar

24  et al., No. 20-cr-326-JFW, Dkt. No. 898 (rejecting a juror

25  questionnaire in the RICO corruption case against former Los Angeles

26

27      [3] The other high-profile cases defendant cites as having
    employed juror questionnaires (Motion at 11) similarly involved
28  unique circumstances, including allegations made against political
    figures or sports celebrities.

City Councilmember Jose Huizar); <u>United States v. Mark Ridley-Thomas</u>, No. 21-CR-485-DSF (March 2023 public corruption trial against former Los Angeles County Supervisor and Los Angeles City Councilmember with no juror questionnaire); <u>United States v. Aslanian</u>, No. 22-CR-445-JGB (June 2023 murder-for-hire trial against La Canada Flintridge real estate developer); <u>United States v. Richard Ayvazyan et al.</u>, No. 20-CR-579-SVW (widely publicized June 2021 COVID-19 relief fraud four-defendant trial at the height of the global pandemic).

In sum, the issue is not whether juror questionnaires have been used in other cases. They have. Instead, the issue is whether the Court's standard voir dire procedures here are sufficient to ensure a fair, impartial, and unbiased jury in this case despite any pretrial publicity. As discussed below, they are.

### C. The Court's Standard Voir Dire Procedures Are Sufficient to Ensure a Fair, Impartial, and Unbiased Jury

The government agrees that specific questioning is warranted during voir dire to probe the venire for any potential bias or prejudice. However, there is no need for a juror questionnaire to do so. The Court's standard procedures provide an opportunity for the parties to identify any biases or other factors tethered to the facts of this case that might preclude the prospective juror from making an impartial decision.

First, the Court allows the parties to propose questions to be asked of the venire panel. These questions can focus on any exposure to pretrial publicity about the case (including identifying news sources or cable shows that prospective jurors may have encountered) and are to be submitted to the Court well in advance of trial. (Standing Order Re Criminal Proceedings, ¶ 12.) These questions can

also be tailored to discern potential jurors' awareness of and opinions (if any) about defendants, Girardi Keese, defendant's former wife, lawyers and law firms generally, and, at the Court's discretion, whomever or whatever else the parties believe may be the source of bias or preconceptions about the subject matter of the trial.  Second, the Court allows each party up to 15 minutes to further probe these issues in supplemental attorney voir dire.  (Id.) Thus, defendants Girardi and Kamon together will have additional time to inquire regarding whether any member of the venire harbors any entrenched biases or prejudices that would impair their ability to be fair and impartial.

There is no reason to believe that specific questions focused on these areas, which can be proposed by the parties to be given by the Court during voir dire with attorney follow up where necessary, will not easily and adequately vet prospective jurors who may be familiar with the parties or the facts of the case.  Addressing these questions during an open colloquy in Court, while employing side bar conferences if necessary, is an appropriate and adequate forum to determine whether any prospective jurors harbor bias or prejudice with respect to defendants.  Allowing such questioning to occur in person also allows counsel to observe the demeanor of the prospective jurors while answering questions from the Court and counsel.  Such observation is a key component in evaluating a person's ability to be fair and impartial.  On this point, Salazar v. Continental Construction of Montana, is instructive.  No. CV 11-16-BLG-CSO, 2012 WL 3100544, at *2 (D. Montana July 30, 2012).  There the court noted that "the opportunity for the Court and counsel to observe prospective jurors' demeanor and reactions is critical."  Id. citing

<u>United States v. Jackson</u>, 863 F. Supp. 1449, 1459 (D. Kan. 1994) (any purported "savings in time [related to a questionnaire] is not without a cost.  The court, the parties and their attorneys lose the opportunity to observe demeanor.").  Indeed, "[h]ow a person says something can be as telling as what a person says . . . . Most of the general voir dire examination, however, is not difficult and does not require detailed answers.  Nor does additional time to reflect over questions necessarily mean more accurate and truthful answers." <u>Jackson</u>, 863 F. Supp. at 1459.

Finally, the fact that this case involves matters about which the population at large may "harbor strong feelings" (Motion at 12) is neither unique nor noteworthy in federal criminal trials.  Many federal crimes (<u>e.g.</u>, drug and gun offenses, human trafficking, child exploitation crimes, etc.) also fit that description and trials based on those crimes regularly take place without requiring the need for a jury questionnaire.  The fact that this straightforward criminal scheme was orchestrated and executed by a lawyer does not change that calculus.  <u>See, e.g.</u>, <u>United States v. Layfield</u>, 18-CR-124(A)-MWF (Trial August 2021 C.D. Cal.) (no questionnaire in a wire fraud/mail fraud/tax fraud case involving an attorney charged with embezzling funds from client trust accounts).  During voir dire, the Court should allow adequate, fulsome inquiry into "important aspect[s] of the litigation about which members of the public may be expected to have strong feelings or prejudices".  <u>See</u> <u>Darbin</u>, 664 F.2d at 1113.  That inquiry can include questions designed to identify jurors who may harbor bias or prejudice against lawyers or the legal profession.  There is no reason to believe that the Court's

10

1   typical manner of voir dire, without need for a jury questionnaire,

2   is either inappropriate or insufficient to insure a fair trial.

3        Finally, defendant does not argue that the Court's standard voir

4   dire would be inadequate, only that a jury questionnaire would be

5   "the most efficient" and "streamlined" method of addressing any

6   relevant, sensitive topics.  (Mot. at 13.)  But the use of a

7   questionnaire requires prospective jurors to fill out the

8   questionnaire; counsel to review each questionnaire, confer with the

9   Court, and undoubtedly engage in individualized follow-up questions

10  with dozens of prospective jurors anyway before raising for cause or

11  peremptory challenges.  And only after this drawn-out process will

12  the Court finally start voir dire with the remaining jury pool.  This

13  approach is far from efficient or streamlined.  To the extent that

14  any sensitive or private topics arise during voir dire, those

15  subjects can be addressed, as they normally are, at side bar.

16  **IV.  CONCLUSION**

17       For the foregoing reasons, the government respectfully requests

18  that this Court deny defendant's motion for a written jury

19  questionnaire.

20   Dated: May 31, 2024            Respectfully submitted,

21                                  E. MARTIN ESTRADA
                                    United States Attorney
22
                                    MACK E. JENKINS
23                                  Assistant United States Attorney
                                    Chief, Criminal Division
24

25                                       /s/
                                    _____
26                                  SCOTT PAETTY
                                    ALI MOGHADDAS
27                                  Assistant United States Attorney

28                                  Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

                                    11

        The undersigned, counsel of record for the United States of America, certifies that this brief contains 2,998 words, which complies with the word limit of L.R. 11-6.1."


Dated: May 31, 2024                  Respectfully submitted,

                                     E. MARTIN ESTRADA
                                     United States Attorney

                                     MACK E. JENKINS
                                     Assistant United States Attorney
                                     Chief, Criminal Division


                                           /s/
                                     _____
                                     SCOTT PAETTY
                                     ALI MOGHADDAS
                                     Assistant United States Attorneys

                                     Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA