CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CHARLES J. SNYDER (Bar No. 287246)
(Email: Charles_Snyder@fd.org)
SAMUEL O. CROSS (Bar No. 304718)
(Email: Sam_Cross@fd.org)
J. ALEJANDRO BARRIENTOS (Bar No. 346676)
(Email: Alejandro_Barrientos@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
THOMAS VINCENT GIRARDI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS VINCENT GIRARDI,<br><br>Defendant. | Case No. 2:23-cr-00047-JLS-1<br><br>**REPLY TO GOVERNMENT'S OPPOSITION TO MOTION FOR PRETRIAL RULING REGARDING JUROR QUESTIONNAIRES**<br><br>Hearing Date: June 20, 2024<br>Time: 1:30 p.m.<br>Courtroom: 8A<br>Time Estimate: 30 minutes |

Defendant Thomas Vincent Girardi, by and through his attorneys of record, Deputy Federal Public Defenders Charles Snyder, Samuel Cross, and Alejandro Barrientos, hereby submits his Reply to the Government's Opposition to his Motion for a Pretrial Ruling Regarding Juror Questionnaires.

//

//

//

//

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT .............................................................................................................. 1

    A.    The cases cited by both Girardi and the government show that a juror questionnaire is appropriate in this case. ........................................................ 1

        1.    <u>Beal</u> and <u>Avenatti</u> were very similar. ................................................. 2

        2.    The other cases upon which the government relies are minimally persuasive. ............................................................................................ 4

    B.    In combination with the Court's live voir dire process, a questionnaire will help efficiently pick a jury. ................................................................... 6

III. CONCLUSION .......................................................................................................... 8

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

In re: Girardi Keese,
    2:20-bk-21022-BR (Bankr. C.D. Cal.) ..................................................................3

Mu'Min v. Virginia,
    500 U.S. 415 (1991)..............................................................................................5

Silverthorne v. United States,
    400 F.2d 627 (9th Cir. 1968)............................................................................6, 7

Skilling v. United States,
    561 U.S. 358 (2010)..............................................................................................2

United States v. Aslanian,
    22-CR-445-JGB (C.D. Cal. 2023)........................................................................4

United States v. Avenatti,
    8:19-cr-00061-JVS (C.D. Cal. 2021) ...............................................................2, 3

United States v. Bakker,
    925 F.2d 728 (4th Cir. 1991)................................................................................5

United States v. Beal,
    8:19-cr-47-JLS (C.D. Cal. 2022)..........................................................................2

United States v. Girardi,
    1:23-cr-00054 (N.D. Ill.) ......................................................................................3

United States v. Huizar,
    20-cr-326-JFW (C.D. Cal. 2023)..........................................................................4

United States v. Mark Ridley-Thomas,
    21-CR-485-DSF (C.D. Cal. 2023)........................................................................4

United States v. Montes,
    5:12CR29-01-02, 2013 WL 1347284 (N.D.W. Va. Apr. 3, 2013) .......................5

United States v. Richard Ayvazyan et al.,
    20-CR-579-SVW (C.D. Cal. 2021). No ...............................................................4

United States v. Salameh,
    S5 93 CR. 0180 (KTD), 1993 WL 364486 (S.D.N.Y. Sept. 15, 1993).................5

## I. INTRODUCTION

The government does not contest the plain facts: that Thomas Girardi has been a well-known fixture of the legal landscape in Southern California for decades, that his indictment has been covered extensively by an array of old and new media, or that he is a highly polarizing figure. Nor could it.[1] Instead, while acknowledging that "adequate, fulsome inquiry"[2] into potential juror bias is appropriate under the circumstances, the government is content to observe, with passing relevance, that juror questionnaires are not administered as of right, and that the Court already has voir dire procedures appropriate to many cases.[3]

That misses the point. This case is exceptional, both in terms of pretrial notoriety and in terms of the scope and nature of potential juror bias. A questionnaire, carefully formulated in advance and submitted with input from both parties and the Court, will not be unduly burdensome or waste time. Rather, it will <u>save</u> the Court's and the parties' time by clearly identifying in advance jurors who may be inappropriate for this highly publicized and unusual trial. Searching questionnaires will allow the parties to ask targeted, efficient questions that go to the heart of potential bias and allow quick selection of a fair and impartial jury.

## II. ARGUMENT

**A.     The cases cited by both Girardi and the government show that a juror questionnaire is appropriate in this case.**

The government disparagingly suggests that Girardi cites a "handful" of cases in which juror questionnaires have been used—while in response offering to the Court its own handful of cases in which juror questionnaires were not used. Resp. 5, 3–8. It is, of course, trivially true district courts variously administer or refuse to administer

---

[1] See Mot. Juror Questionnaire 1, ECF No. 186 (detailing various public statements by the United States Attorney's Office for the Central District of California emphasizing the prominence of the criminal case).

[2] Gov't Resp. ("Resp.") 10, ECF No. 199.

[3] <u>Id.</u> at 3–5, 8–11.

1

questionnaires based on the "distinct facts" of each case. Id. at 6. What matters is whether a court's reasoning in administering or declining to administer a questionnaire is persuasive to this Court.

        **1.**      **Beal and Avenatti were very similar.**

In the two most directly comparable cases Girardi cited in his Motion for Juror Questionnaire ("Motion"), the government agreed a questionnaire was appropriate. See United States v. Beal, 8:19-cr-47-JLS (C.D. Cal. 2022); United States v. Avenatti, 8:19-cr-00061-JVS (C.D. Cal. 2021).

The government now unconvincingly claims it agreed to questionnaires in Beal because a) the trial was expected to be lengthy, b) the trial was expected to be complicated, and c) the Beal questionnaire "contained numerous questions pertaining to issues implicated in [the] trial which were outside of the typical juror's normal experience (e.g., extreme violence, bomb-making, and rocket science)." Resp. 6. Length and complexity may be relevant to whether a jury must be "time qualified," but they are not among the factors courts have cited in approving the use of juror questionnaires, the purpose of which is to pre-identify the scope and nature of prejudice where the source of prejudice itself may be complex or difficult for various reasons to draw out concisely in voir dire. See Skilling v. United States, 561 U.S. 358, 384 (2010) ("Although the widespread community impact necessitated careful identification and inspection of prospective jurors' connections to Enron, the extensive screening questionnaire and followup [sic] voir dire were well suited to that task. And hindsight shows the efficacy of these devices[.]"). Nor is the technical or abstruse nature of evidence to be presented a basis for administering a jury questionnaire. See id. And "extreme violence" is not a topic about which jurors' general opinions will need to be carefully pre-screened; rather, jury questionnaires are appropriate in cases where jurors' opinions about a highly publicized and divisive or inflammatory topic may not be easily presumed. See id.

      The government's claims about <u>Avenatti</u> are even less convincing. The government allows that "the underlying facts of that case bear some similarity to the crimes alleged here," but claims that its agreement to a questionnaire there was appropriate because of these differences: a) Avenatti had often appeared on television; b) he had recently been convicted of another crime in a "well-publicized" trial in New York; c) Girardi has purportedly been "predominantly covered by local media;" and d) there is no "associated political component to . . . [the instant] proceedings." Resp. 6, 7. Wrong on every point. The underlying facts—a prominent plaintiff's attorney allegedly diverting client funds for personal use after successfully settling the client matters and then "lulling" the client with purported misrepresentations or partial payments—bear more than "some" similarity to the instant case. <u>Compare</u> Indictment, ECF No. 16, <u>Avenatti</u>, 8:19-cr-00061-JVS (C.D. Cal.); <u>with</u> Indictment, ECF No. 1, <u>Girardi</u>, 2:23-cr-00047-JLS-1 (C.D. Cal.). Girardi is the subject of prominent criminal prosecution in another jurisdiction, and a well-covered bankruptcy proceeding in this one.[4] <u>See</u> <u>United States v. Girardi</u>, 1:23-cr-00054 (N.D. Ill.); <u>In re: Girardi Keese</u>, 2:20-bk-21022-BR (Bankr. C.D. Cal.). Girardi appeared repeatedly and was discussed on multiple recent seasons of a widely viewed television show. <u>See</u> Motion 5–8 (detailing Girardi's appearance on <u>Real Housewives</u>, <u>The Housewife and the Hustler</u> 1 & 2, et al). This aired on Bravo, a <u>national</u> cable network that reaches 77% of American households. <u>Id.</u> at 5. And Girardi has been associated with a highly political California scandal having to do with its bar association. <u>Id.</u> at 11–13.

      The government does not attempt to argue that questionnaires in these two recent, similar cases were properly administered just because the government then agreed. Nevertheless, because the only material difference between those cases and this one is that very agreement, the government now takes the strained position that it is <u>Beal</u> and <u>Avenatti</u> that are different, rather than just the government's position. Even

---

[4] Relatedly, there had been multiple judicial and regulatory findings associated with these cases and Girardi.

3

the government must agree that its strategic caprice should not factor into the question, let alone decide it.

2. **The other cases upon which the government relies are minimally persuasive.**

The remainder of the government's citations to case law are to dissimilar cases or to cases that are analogized to this case on faulty grounds. Illustratively:

- United States v. Huizar et al., In Chambers Minutes, ECF No. 898, No. 20-cr-326-JFW (C.D. Cal. 2023). The government characterizes this case as "rejecting a juror questionnaire." Resp. 7–8. The sum-total of the court's ruling and analysis on a disputed jury questionnaire appeared in a footnote to an in-chambers minute order, noting that the court had "not requested" a questionnaire.[5]

- United States v. Mark Ridley-Thomas, No. 21-CR-485-DSF (C.D. Cal. 2023); United States v. Aslanian, No. 22-CR-445-JGB (C.D. Cal. 2023); United States v. Richard Ayvazyan et al., No. 20-CR-579-SVW (C.D. Cal. 2021). No questionnaire was requested by either side. No further analysis of the cited cases is provided by the government. See Resp. 8. On a favorable reading, the government has cited these cases animated by the idea that: 1) these were complex or inflammatory cases, 2) no one in the case asked for a juror questionnaire, and 3) therefore, juror questionnaires ought not to be issued in

---

[5] The footnote:

On December 23, 2022, the parties filed a Joint Statement Re: Disputed Juror Questionnaires (Docket No. 893), which included Defendants' proposed case-specific jury questionnaire. A proposed case-specific jury questionnaire was not requested by the Court and Defendants' proposed case-specific questionnaire has not been reviewed by the Court. Defendants may propose any proposed voir dire questions in accordance with the existing Court-ordered deadline of February 9, 2023.

In Chambers Minutes 2 n.1, ECF No. 898, Huizar, 20-cr-326-JFW.

4

1    another inflammatory or complex case. To the extent that is the idea, it need not
2    be addressed further.

- Mu'Min v. Virginia, 500 U.S. 415, 425 (1991). The case dealt with whether, in a state-court case where the court had denied a defendant's request for individualized voir dire, "the Fourteenth Amendment require[d] more in the way of voir dire with respect to pretrial publicity than our cases have held that it does with respect to racial or ethnic prejudice." Mu'Min, 500 U.S. at 424. The Court in a single line of dictum noted that a juror questionnaire proposed by Mu'Min would not necessarily be an adequate substitute for individualized voir dire.
- United States v. Bakker, 925 F.2d 728, 733 (4th Cir. 1991). In the trial of a televangelist, the Fourth Circuit found no error in the district court's refusal to administer a defense-submitted questionnaire containing a series of absurd questions.[6]
- United States v. Salameh, No. S5 93 CR. 0180 (KTD), 1993 WL 364486 (S.D.N.Y. Sept. 15, 1993), aff'd, 152 F.3d 88 (2d Cir. 1998); United States v. Montes, No. 5:12CR29-01-02, 2013 WL 1347284 (N.D.W. Va. Apr. 3, 2013). The government cites in a footnote these and a few other out-of-circuit district court cases which evince the district judge's belief that juror questionnaires are <u>categorically</u> unhelpful or counterproductive. Resp. 5 n.2. Notably, this is not the government's position here, despite its citation of these cases.

---

[6] The entire relevant passage, of which the government cites only the first sentence, is as follows:

> As the government notes, the questionnaire was concerned less with ensuring an impartial jury and more with ensuring a jury inclined to acquit. The trial court was not obliged to ask questions such as "Do you believe in miracles?" and "Would you be offended by someone blaming the devil?" Nor did the court abuse its discretion by declining to ask potential jurors about their familiarity with the term "overbooking" and whether they had ever been unable to get an airline ticket because of it.

Bakker, 925 F.3d at 733–34.

5

Furthermore, the district court cases cited by the government where questionnaires were not administered only show what courts in those cases chose to do. They do not show whether the district courts cited were ultimately correct or wise in their refusal to administer questionnaires, a decision that rests in the district court's discretion. If a court chooses not to administer a questionnaire, it remains unknown what bias or other important information a questionnaire might have revealed. The choice about administering a questionnaire in this case is a choice between a safe, efficient method of obtaining information for picking a jury and simply forgoing such knowledge entirely.

As the government says, "[i]n sum, the issue is not whether juror questionnaires have been used in other cases," much though the point of most of the government's citations is to show that sometimes, questionnaires are not used. Resp. 8. Nor is Girardi arguing that this Court would commit error by refusing to administer a questionnaire. Rather, the point is that advanced detailed knowledge of jurors' specific knowledge of and feelings about Girardi and the many issues surrounding the case will aid the parties in sharpening their questions and picking a fair jury.

**B.    In combination with the Court's live voir dire process, a questionnaire will help efficiently pick a jury.**

The government's stronger argument is that the Court already conducts voir dire that is generally fit for purpose. Resp. 8–11. However, as Girardi's Motion amply shows, those procedures are not adequate in every case, and are inadequate in this one specifically because of the great variety of ways in which Girardi and his case are publicly known.

In <u>Silverthorne v. United States</u>, 400 F.2d 627, 639 (9th Cir. 1968), the Ninth Circuit analyzed a case where the president and principal of failed bank, federally indicted, had been covered by more than 300 individual newspaper articles. In finding the district court's relatively cursory voir dire inadequate, the appellate court explained:

6

> In an effort to ascertain some basis upon which an objective evaluation of each juror's impartiality could be assessed, appellant's counsel requested the court to inquire of the jury what information they had obtained <u>relative to the case and their source of knowledge</u>. The court refused this request. We believe under the circumstances of this case the request should have been granted.

Id. at 639 (emphasis added). The defendant's constitutional right to probe jurors for bias, like Girardi's, encompassed a right to know, as to each juror, exactly which of 300 different windows the jurors might have previously viewed the defendant though, and exactly how the jurors had reacted. Id. at 640 ("The defendant in a criminal case has the right to 'probe for the hidden prejudices of the jurors.'") (quoting <u>Lurding v. United States</u>, 179 F.2d 419, 421 (6th Cir. 1950)).

As amply demonstrated by Girardi's Motion, the media environment of 2024 is orders of magnitude more complex than that of 1968, and Girardi will potentially already have been viewed by jurors through many, many more windows than the defendant in <u>Silverthorne</u>. It is not, technically, <u>necessary</u> to administer a questionnaire. Attorneys could ask each individual potential juror, in private as needed, exactly what media they have viewed relating to Girardi. The point is that a questionnaire is many times more <u>efficient</u> a way of satisfying Girardi's constitutional right to adequate voir dire than doing that would be. The government's various proposals and reflections on the nature of baseline voir dire are by turns unresponsive or inadequate to the challenge posed by the present case. <u>See</u> Resp. 8–9 (proposing the general voir dire procedure rejected as inadequate in <u>Silverthorne</u>); <u>id.</u> at 9–10 (noting that live voir dire is more revealing as to specific questions asked than the equivalent written question); <u>id.</u> at. 10–11 (noting that in its view, the charged criminal scheme is not complex). As a whole, these observations amount to an unserious response to the specific challenges of this voir dire.

//

//

7

# III. CONCLUSION

Juror questionnaires will help the parties and the Court pick a fair jury and will save time. For these reasons, and the reasons articulated in his Motion for Pretrial Ruling Regarding Juror Questionnaires, Defendant Girardi requests that the Court grant the relief requested in that Motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: June 7, 2024            By  /s/ *Samuel Cross*
                                    SAMUEL O. CROSS
                                    Deputy Federal Public Defender
                                    Attorney for THOMAS VINCENT GIRARDI

## **CERTIFICATE OF COMPLIANCE**

I, the undersigned, counsel of record for Defendant Thomas Girardi, certify that this brief contains approximately 2,332 words, which complies with the word limit of Civil L.R. 11-6.1, incorporated by reference into the local rules for criminal cases by L.Cr.R. 57-1, as well as this Court's standing order regarding reply briefs in criminal cases. Counsel relies on the word count of the computer program used to prepare this brief (Microsoft Word).

DATED: June 7, 2024                    By  */s/ Samuel Cross*
                                             SAMUEL O. CROSS
                                             Deputy Federal Public Defender