CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CHARLES J. SNYDER (Bar No. 287246)
(Email: Charles_Snyder@fd.org)
SAMUEL O. CROSS (Bar No. 304718)
(Email: sam_cross@fd.org)
J. ALEJANDRO BARRIENTOS (Bar. No. 346676)
Email: Alejandro_Barrientos@fd.org
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
THOMAS VINCENT GIRARDI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>      v.<br><br>THOMAS VINCENT GIRARDI,<br><br>        Defendant. | Case No. Case No. 2:23-cr-47-JLS-1<br><br>**DEFENDANT THOMAS GIRARDI'S MOTION IN LIMINE TO EXCLUDE IRRELEVANT AND PREJUDICIAL INJURY EVIDENCE**<br><br>**Hearing date:** July 26, 2024<br>**Hearing time:**<br>**Hearing location:** Courtroom 8A<br>**Estimated time:** 15 minutes |

Defendant Thomas Girardi hereby moves through the undersigned counsel for a pretrial ruling excluding evidence about personal injuries suffered by certain witnesses. Such testimony would be irrelevant and substantially likely to unduly prejudice the jury and/or to confuse and mislead the jury.

//

//

Girardi's counsel conferred with counsel for the government regarding this Motion on June 17, 2024, in conformity with Local Civil Rule 7-3, incorporated for criminal matters by Local Criminal Rule 57-1.  As described more fully herein, although the parties were able to narrow the scope of their disagreement, the government indicated that it would oppose this Motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: June 21, 2024           By  /s/ Samuel Cross
                                          SAMUEL O. CROSS
                                          Deputy Federal Public Defender
                                          Attorney for THOMAS VINCENT GIRARDI

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................1

II. BACKGROUND ........................................................................................................1

    A.    The client matters ..............................................................................................1

    B.    The parties' discussion regarding evidence about the claimants' injuries ................................................................................................................3

III. ANALYSIS ................................................................................................................4

    A.    Legal standard ...................................................................................................4

    B.    The underlying injuries suffered by the claimants are irrelevant. ...............5

    C.    The underlying injuries suffered by the claimants will unduly prejudice the jury, and will confuse and mislead the jury. ..........................................7

IV. CONCLUSION .........................................................................................................9

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

Pfingston v. Ronan Eng'g Co.,
   284 F.3d 999 (9th Cir. 2002) ............................................................................. 5

United States v. Alvarez,
   358 F.3d 1194 (9th Cir. 2004) ........................................................................... 5

United States v. Avenatti,
   8:19-cr-61-JVS (C.D. Cal. 2022) ............................................................... 5, 6, 7

United States v. Bailleaux,
   685 F.2d 1105 (9th Cir. 1982) ........................................................................... 8

Whitehead v. Bond,
   680 F.3d 919 (7th Cir. 2012) ............................................................................. 9

**Federal Rules of Evidence**

Fed. R. Evid. 401 ................................................................................................ 4, 5, 8

Fed. R. Evid. 402 ................................................................................................... 5, 8

Fed. R. Evid. 403 ................................................................................................ 5, 8, 9

**Other Authorities**

Grand Jury Charges Disbarred Plaintiffs' Lawyer Tom Girardi with Wire
   Fraud for Allegedly Embezzling Over $15 Million in Client Money,
   Press Release, United States Attorney's Office for the Central District
   of California (Feb. 1, 2023), https://www.justice.gov/usao-
   cdca/pr/grand-jury-chargesdisbarred-plaintiffs-lawyer-tom-girardi-
   wire-fraud-allegedly ......................................................................................... 8

Search, Google.com,
   https://www.google.com/search?as_q=%22lavish+lifestyle%22+indict
   ment&as_epq=&as_oq=&as_eq=&as_nlo=&as_nhi=&lr=&cr=&as_qd
   r=all&as_sitesearch=https%3A%2F%2Fwww.justice.gov%2F&as_occt
   =any&safe=images&as_filetype=&tbs=#ip=1 (search conducted June
   20, 2024) ........................................................................................................... 8

Transvaginal mesh, Wikipedia: The Free Encyclopedia,
   https://en.wikipedia.org/wiki/Transvaginal_mesh ........................................... 3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Indictment alleges wire fraud relating to four distinct client matters handled by Girardi's former law firm, Girardi Keese ("GK").[1] GK was a plaintiff's firm that litigated, inter alia, personal injury claims. Each client matter at issue began as a personal injury claim where GK represented a client or clients to help them resolve their claim. Each matter was eventually settled for money, the alleged diversion or retention of which underlies the wire fraud charges.[2] The government's tentative witness list states the prosecution will call two claimants whose personal injury settlements are at issue, and will call the immediate family members whose claims on behalf of their relatives make up the other two settlements (collectively, "the claimants").

Girardi seeks a pretrial ruling excluding evidence regarding the nature of the injuries suffered by the claimants or their relatives that gave rise to the suits and settlements in which GK represented them. The government's wire fraud case rests on what GK did or did not do with the money it obtained for the claimants. The injuries themselves, all of which are gut-wrenching, are irrelevant to that case. Their (lack of) relevance is greatly outweighed by their tendency to prejudice the jury against Girardi and to confuse and mislead the jury regarding what the jury must to decide. Evidence about them should be excluded.

## II. BACKGROUND

### A. The client matters

<u>Client 1.</u> Count II of the Indictment alleges wire transmission of $2,500,000 to Client 1, J.R., in partial payment of money owed to J.R. Indictment 15, ¶ 21. J.R. "was an individual who resided in San Bruno, California," whom GK represented "in

---

[1] Indictment, ECF No. 1.
[2] See id.

1

connection with a lawsuit against a public utility related to significant injuries Client 1 sustained as a result of an explosion that caused severe burns all over his body." Id. at 3, ¶ 1(g). J.R. suffered burns to 50 or 60 percent of his body. Cross Decl. ¶ 3. He was in a coma for months. Id. ¶ 3. His then-girlfriend was killed in the explosion. Id. ¶ 4. His mother, K.R., was also injured in the explosion. Id. ¶ 3. GK ultimately settled the claim on J.R.'s behalf, which also involved payments to J.R.'s family members. Indictment 6–8; ¶¶ 4–7. The government alleges Girardi misrepresented the terms of the settlement, failed to pay settlement money timely, and paid settlement money to J.R. that was derived from settlements in other indicted client matters. Id. Both J.R. and K.R. are listed as government witnesses. Cross Decl. ¶ 5.

Client 2. Count IV of the Indictment alleges an inbound wire to a GK account "representing Client 2's settlement proceeds, spent, in part, for costs and expenses unrelated to Client 2." Indictment 15, ¶ 21. Count V alleges use of Client 2's settlement funds to pay charges on an American Express card in the name of codefendant Kamon. Id. at 16, ¶ 21. Client 2, J.S., "an individual who resided in Lake Havasu City, Arizona," was represented by GK "in connection with potential litigation related to a boating accident where the boat unexpectedly sped up to 120 miles per hour, flipped, and ejected all three occupants, . . . as a result of which Client 2's husband died." Id. at 3, ¶ 1(h). The government alleges Girardi and Kamon transferred money to the firm's operating account before receipt of J.S.'s settlement funds, did not pay J.S. timely, sent her "lulling payments," and made misrepresentations about the nature of the settlement. Id. at 8–11, ¶¶ 8–12. J.S. is listed as a government witness. Cross Decl. ¶ 5.

Client 3. Count III of the Indictment alleges that an inbound wire to a GK account representing a settlement relating to Client 3, J.H., was spent by Girardi and Kamon "for costs and expenses unrelated to Client 3." Indictment 15, ¶ 21. J.H. is "an individual who resided in Castaic, California," represented by GK "in connection with a lawsuit against a medical device provider related to severe injuries, including organ

2

1  damage, Client 3 sustained as a result of a defective medical device." Id. at 3–4, ¶ 1(i).
2  The "medical device" was a transvaginal mesh, "a net-like surgical tool that is used to
3  treat pelvic organ prolapse."  Cross Decl. ¶ 6; Transvaginal mesh, Wikipedia: The Free
4  Encyclopedia, https://en.wikipedia.org/wiki/Transvaginal_mesh (visited June 19,
5  2024).  Complications surrounding the implantation and subsequent erosion or
6  extrusion of the devices, and pain caused by them, has been a major source of litigation
7  in the past 15 years, with most such devices banned in the United States since 2019. Id.
8  The government alleges Girardi and Kamon misappropriated J.H.'s settlement funds
9  and misrepresented the terms under which the funds could be disbursed.  Indictment
10 11–12, ¶¶ 11, 12.  J.H. is listed as a government witness.  Cross Decl. ¶ 5.

11       <u>Clients 4 and 5.</u>  Count I of the Indictment alleges that Kamon and Girardi
12 misappropriated $4,000,000 derived from an inbound wire that represented the payment
13 of settlement money for Client 4, E.S., and Client 5, A.M.  Indictment 15, ¶ 21.  Count
14 II alleges that the wire transmission of $2,500,000 to J.R. ("Client 1") was "in part, the
15 settlement proceeds belonging to Client 4 and Client 5."  Id.  E.S. and A.M. are
16 "individuals who resided in Los Angeles, California," whom GK represented "in
17 connection with a lawsuit related to injuries Client 4, Client 5, and their minor son, who
18 was paralyzed from the neck down, sustained in an automobile collision.  Id. at 4,
19 ¶ 1(j).  A drunk driver collided with the car in which E.S., A.M., and their son were
20 traveling.  Cross Decl. ¶ 7.  A substantial portion of the settlement money received by
21 the couple went to medical equipment for their paralyzed son.  Id.  The government
22 alleges Girardi and Kamon transferred money to the firm's operating account before
23 receipt of E.S. and A.M.'s settlement funds, sent "lulling" payments, misrepresented
24 the nature of the settlement, and misappropriated settlement funds.  Indictment 12–15,
25 ¶¶ 14–19.  E.S. is listed as a government witness.  Cross Decl. ¶ 5.

26 **B.    The parties' discussion regarding evidence about the claimants' injuries**
27       The undersigned sent an email to counsel for the United States on June 14, 2024,
28 to determine whether the parties could agree not to present evidence regarding the

injuries suffered by the claimants that brought them to GK ("the underlying injuries"). Ex. A. Specifically, the email explained that "evidence of the events & injuries suffered by the [GK] clients that brought them to [GK] are irrelevant and prejudicial. Because of this, the government's presentation should be limited to a showing that the individual clients sought services from [GK], any procedural aspects of the litigation, and settlement and payment-related issues." Id.

Counsel for the United States and Girardi conferred by telephone on June 17, 2024. Cross Decl. ¶ 9. During this call, the government represented, in substance, that while it did not intend to elicit substantial testimony regarding the underlying injuries, it nonetheless felt certain scene-setting questions must be asked at the beginning of the direct examination of each claimant. Id. The government worries that if it does not establish the nature of the injuries the claimants suffered, jurors will be confused and wonder what injuries the claimants suffered.[3] Id.

### III.  ANALYSIS

#### A.  Legal standard

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and that fact is "of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Id. R. 402. Furthermore, the Court can exclude relevant evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Id. R 403.

---

[3] The parties reached agreement as to the other issue raised in the June 14 email. Specifically, the parties discussed limiting the government's presentation of evidence surrounding negative financial consequences that might have been suffered by the claimants as a result of late- or non-payment of settlement money. Cross Decl. ¶ 10. The parties agreed that communications from claimants to Girardi that were independently relevant to the government's charged scheme to defraud need not be redacted, and could be acknowledged in the testimony of the claimants. However, the government represented that it would not elicit independent testimony from the claimants about how not being paid harmed them. Id.

4

The party seeking admission of evidence "bears the burden of proof of admissibility." Pfingston v. Ronan Eng'g Co., 284 F.3d 999, 1004 (9th Cir. 2002). "Trial judges have 'wide discretion' in determining whether evidence is relevant." United States v. Alvarez, 358 F.3d 1194, 1205 (9th Cir. 2004) (quoting United States v. Long, 706 F.2d 1044, 1054 (9th Cir.1983)).

**B.  The underlying injuries suffered by the claimants are irrelevant.**

The nature and severity of the underlying injuries has no tendency to make it more or less likely that Girardi committed wire fraud. The government's case as to all five counts of wire fraud, summarized above, is that Girardi mishandled, delayed, lied about, and otherwise obfuscated the dollar value and details of settlements GK negotiated. The "scheme to defraud" allegedly consists entirely of misrepresentations and misuses of money owed the clients. The particular injury that brought the claimants to GK thus has no tendency to make it more or less probable that Girardi and Kamon executed a scheme to defraud the claimants.[4]

The government knew this when it filed its motions in limine in United States v. Avenatti, 8:19-cr-61-JVS (C.D. Cal. 2022), but has since forgotten. Avenatti was a case that similarly alleged a plaintiff's attorney had diverted and misappropriated client trust money and lied about the settlements and the theft to the clients. See generally Indictment, ECF No. 16, Avenatti, 8:19-cr-61-JVS. The government moved in limine to "exclude underlying facts from the civil litigation that resulted in settlements pursuant to FRE 401, 402, and 403." Mot. Limine 1, ECF No. 476, Avenatti, 8:19-cr-61-JVS. Compellingly, the government explained:

> The principal issues at trial will likely center on whether defendant unlawfully misappropriated the settlement funds, whether defendant made materially false representations or omitted material facts from his clients, and whether defendant

---

[4] Indeed, if the injuries described in Section II(A) were altered, slightly or substantially, it would make no difference to the strength of the government's case. For instance, if "Client 1," J.R., had suffered his injuries in a car wreck or a building collapse, the government's case would not change.

1     acted with intent to defraud. The underlying facts and claims that resulted in the
2     other parties agreeing to the settlements has no bearing on the issues the jury is to
3     decide. This case is about whether defendant stole his clients' money, not why he
4     was representing them in the first place.

5 Id. at 3. The government thus moved to exclude "underlying facts and claims that
6 resulted in the civil settlement agreements as they are not relevant and their admission
7 will confuse the issues, mislead the jury, waste time, and be unfairly prejudicial." Id. at
8 4–5. So here.

9     In the parties' meet-and-confer discussion Avenatti was raised, and counsel for
10 the government suggested that matter was different from this one because there, the
11 defendant wanted to introduce the contested evidence to embarrass certain witnesses.
12 Cross Decl. ¶ 9. The parties' papers do reflect a professed government concern in that
13 direction; however, the logical and legal force of the government's above-cited
14 argument for irrelevance is undimmed by the various reasons that motivated the
15 government to make it. See ECF Nos. 476, 501, 507.

16     In reply in Avenatti the government also conceded a point it will likely
17 make its primary argument in opposition here: that "limited facts relating to
18 defendant's representations of the victim-clients would be relevant for context," and
19 that failing to provide such "context" would itself raise a risk of misleading or
20 confusing the jury. Govt's Reply Supp. Mot. Limine 5, ECF No. 507, Avenatti, 8:19-
21 cr-61-JVS. If presented here, the argument will fail. Facts are relevant or they are not,
22 and simply redescribing an irrelevant fact as "contextual" does not make it admissible.
23 Furthermore, the facts about the underlying injuries are plainly not integral to the
24 government's case, as explained above, and omitting them does not in any way prevent
25 the government from providing "context" to the charged client matters, all of which
26 center on GK's actions with respect to settlements it obtained.

27     The concern about confusing the jury would also be misplaced. The
28 government's present case, as it has often insisted to this Court, is simple: the

government says clients were not appropriately paid and were lied to. The reasons clients were owed money to begin with are, as explained above, irrelevant. Those reasons' omission confuses nothing about the presentation because it is unnecessary to the presentation (and indeed, their <u>inclusion</u> may confuse it, as argued below).

Finally, Girardi notes that he continues to agree "procedural aspects of the litigation, and settlement and payment-related issues" may be admitted as relevant to the government's case-in-chief.[5] Ex. A. He is not seeking to prevent the government from showing what it must, only what it must not.

### C. The underlying injuries suffered by the claimants will unduly prejudice the jury, and will confuse and mislead the jury.

One claimant was burned over most of his body, lay for months in a coma, and lost his girlfriend in a fiery explosion. Indictment 15, ¶ 21; Cross Decl. ¶¶ 3, 4. One claimant's husband was instantly killed in a 120-mph boating disaster. Indictment 3, ¶ 1(h). One claimant is said to have suffered "severe injuries, including organ damage," from a defective transvaginal mesh. Indictment 3–4, ¶ 1(i). And two claimants were involved in a head-on collision with a drunk driver that paralyzed their infant son. Indictment 4, ¶ 1(j); Cross Decl. ¶ 7.

These are terrible injuries. Any person, and any juror, would feel deep sympathy for the pain and loss the claimants suffered. The government will spend its case-in-chief arguing that Girardi and Kamon cheated the claimants out of their money and spent it on things like "exclusive country clubs," Indictment 9, ¶ 9, and what the government will likely want to describe as a "lavish lifestyle."[6] If the jury is told the

---

[5] Compare this concession with the government's agreement in Avenatti that it expected "limited facts related to the underlying representations to be relevant. such as the retention and fee agreements, the basic scope of the representations, and the settlement agreements." Gov't Reply Supp. Mot. Limine 5, ECF No. 507, <u>Avenatti</u>, 8:19-cr-61-JVS.

[6] Girardi does not concede that any attempt at such description, or evidence seeking to support it, would be, respectively, either appropriate or admissible. The phrase is a particular favorite at the Department of Justice. A Google search of its

7

irrelevant, sympathetic facts about the claimants, it is a virtual certainty that the jury will hold those facts against Girardi.  Any feeling person would recognize a strong moral pressure, whatever the legal instructions she received, to treat Girardi more strictly by finding him guilty of having abused the trust of such injured people, or to compensate the victims for what Girardi is alleged to have taken by convicting him.  This is a paradigmatic example of unfairly prejudicial "evidence which makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged."  United States v. Bailleaux, 685 F.2d 1105, 1111 (9th Cir. 1982).  The risk of unfair prejudice substantially outweighs the (nonexistent) probative value.  See Fed. R. Evid. 403.

      Additionally, evidence of the underlying injuries also risks confusing and misleading the jury.  Jurors intuitively understand Federal Rules of Evidence 401 and 402 as applied to the evidence they see and hear:  that is, they correctly believe that evidence presented to them is meant to be relevant to their deliberations.  If jurors are presented with emotionally charged evidence about injuries suffered by the claimants, they will naturally be inclined to assume that the underlying injuries are relevant to their deliberations.  And, if it is assumed the injuries are relevant, then evidence about the injuries will urge in favor of conviction.

---

website returns approximately 1,130 results, derived almost entirely from indictments and press releases.  See Google.com, https://www.google.com/search?as_q=%22lavish+lifestyle%22+indictment&as_epq=&as_oq=&as_eq=&as_nlo=&as_nhi=&lr=&cr=&as_qdr=all&as_sitesearch=https%3A%2F%2Fwww.justice.gov%2F&as_occt=any&safe=images&as_filetype=&tbs=#ip=1 (search conducted June 20, 2024).  The celebratory press release in this case was no exception.  See Grand Jury Charges Disbarred Plaintiffs' Lawyer Tom Girardi with Wire Fraud for Allegedly Embezzling Over $15 Million in Client Money, Press Release, United States Attorney's Office for the Central District of California (hereinafter "Press Release") (Feb. 1, 2023), https://www.justice.gov/usao-cdca/pr/grand-jury-chargesdisbarred-plaintiffs-lawyer-tom-girardi-wire-fraud-allegedly ("The defendants exploited the hardships endured by their clients and took advantage of their unfamiliarity with the legal process while they denied victims what was rightfully due to them in order to fund their lavish lifestyles.").

This is doubly so because jurors will, under these circumstances, see the legal process they are now involved in—Girardi's criminal prosecution—as the logical response to and completion of the unfinished business of the civil matters in which GK represented the claimants regarding the underlying injuries. The jurors will, if informed of the underlying injuries, be invited to see their role not as impartial triers of fact, but instead as aligned with prosecutors—as champions of vengeance seeking to restore the claimants and punish Girardi. The prosecutors should not be allowed to extend that invitation, expressly or by implication. Cf. Press Release ("Actions like the ones alleged in the indictment bring disrepute upon the legal profession and will not be tolerated by my office.").

Because evidence of the underlying injuries has no relevance to the government's case and is exceedingly prejudicial, and will confuse and mislead the jury about its role, the evidence should be excluded. See Whitehead v. Bond, 680 F.3d 919, 930 (7th Cir. 2012) ("We employ a sliding scale approach [to Rule 403]: as the probative value increases, so does our tolerance of the risk of prejudice").

## IV.  CONCLUSION

The claimants, all of whom but one are noticed as trial witnesses, suffered terrible loss for which they sought compensation in civil proceedings. The government brings this criminal case to address a different alleged loss. No evidence of the claimants' underlying injuries is admissible.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: June 21, 2024          By  /s/ Samuel Cross
                              SAMUEL O. CROSS
                              Deputy Federal Public Defender
                              Attorney for THOMAS VINCENT GIRARDI

9

## **CERTIFICATE OF COMPLIANCE**

I, the undersigned, counsel of record for Defendant Thomas Girardi, certify that this brief contains approximately 3,070 words, which complies with the word limit of Civil L.R. 11-6.1, incorporated by reference into the local rules for criminal cases by L.Cr.R. 57-1, as well as this Court's Standing Order regarding criminal cases.  In making this certification, I have relied on the computer program used to prepare this brief (Microsoft Word).

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: June 21, 2024          By */s/ Samuel Cross*

SAMUEL O. CROSS
Attorney for Thomas Girardi