E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
ALI MOGHADDAS (Cal. Bar No. 305654)
Assistant United States Attorney
Corporate and Securities Fraud Strikeforce
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6527/1786
     Facsimile: (213) 894-6269
     E-mail:    scott.paetty/ali.moghaddas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 23-47-JLS |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION *IN LIMINE* TO INTRODUCE AT TRIAL DEFENDANT CHRISTOPHER KAMON'S PROFFER STATEMENTS IF DEFENDANT MAKES CONTRARY ARGUMENTS, STATEMENTS, OR REPRESENTATIONS; DECLARATION OF SCOTT PAETTY; EXHIBITS |
| v. | |
| THOMAS VINCENT GIRARDI and CHRISTOPHER KAZUO KAMON, | |
| Defendants. | Hearing Date: July 26, 2024<br>Location:     Courtroom of the Hon. Josephine L. Staton |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Scott Paetty and Ali Moghaddas, hereby gives notice through this motion in limine that if defendant Christopher Kazuo Kamon presents any evidence, argument, statement, or representation in his defense contrary to or inconsistent with his proffer statements, the government will seek to

introduce at trial his proffer statements in the government's case-in-chief, as impeachment, or in rebuttal.

This motion is based upon the attached memorandum of points and authorities, the declaration of Assistant United States Attorney Scott Paetty and exhibits 1-3 attached thereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Counsel for defendant Girardi has taken no position on the motion but has advised the government that they may file a response. Counsel for defendant Kamon has advised the government that he opposes the motion.

Dated: June 21, 2024            Respectfully submitted,

                                E. MARTIN ESTRADA
                                United States Attorney

                                MACK E. JENKINS
                                Assistant United States Attorney
                                Chief, Criminal Division


                                      /s/
                                _____
                                SCOTT PAETTY
                                ALI MOGHADDAS
                                Assistant United States Attorney

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                  PAGE

**Contents**

TABLE OF AUTHORITIES..................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES...................................1

I.   INTRODUCTION......................................................1

II.  STATEMENT OF FACTS................................................3

III. ARGUMENT..........................................................7

IV.  CONCLUSION.......................................................11

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                 PAGE

**CASES**

Bruton v. United States,
    391 U.S. 123 (1968)..........................................3

Richardson v. Marsh,
    481 U.S. 200 (1987)..........................................3

United States v. Barrow,
    400 F.3d 109 (2d Cir. 2005)..................................9

United States v. Burch,
    156 F.3d 1315 (D.C. Cir. 1998)..............................10

United States v. Hardwick,
    544 F.3d 565 (3d Cir. 2008)..................................9

United States v. Hoac,
    990 F.2d 1099 (9th Cir. 1993)...............................11

United States v. Krilich,
    159 F.3d 1020 (7th Cir. 1998)................................8

United States v. Mezzanatto,
    513 U.S. 196 (1995)..........................................7

United States v. Mitchell,
    633 F.3d 997 (10th Cir. 2011)...............................10

United States v. Rebbe,
    314 F.3d 402 (9th Cir. 2002).................................7

United States v. Sylvester,
    583 F.3d 285 (5th Cir. 2009)................................10

United States v. Young,
    223 F.3d 905 (8th Cir. 2000)................................10

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

This case involves a years long scheme to misappropriate and embezzle millions of dollars from client trust accounts at the former law firm Girardi Keese.  Defendant Thomas Girardi perpetrated the scheme together with Girardi's Keese's former Chief Financial Officer and Head of Accounting, Christopher Kamon ("defendant Kamon" or "Kamon").  At base, the scheme involved defendants Girardi and Kamon stealing millions of dollars in client settlement funds and failing to pay Girardi Keese clients money due them that was held in the Girardi Keese client trust accounts.  Defendant Girardi provided a litany of false excuses for failure to pay clients and defendant Kamon aided and abetted the scheme by transferring client funds at defendant Girardi's direction to pay previously defrauded clients or other unrelated expenditures.

At the same time that defendants Girardi and Kamon were executing the above scheme, Kamon was separately, unbeknownst to defendant Girardi and other principals at Girardi Keese, funneling millions of dollars from the Girardi Keese operating accounts to bank accounts that he and other co-schemers acting at his direction controlled.  Kamon is separately charged in a criminal information with one count of wire fraud related to this scheme.  (See CR 23-24-JLS, hereinafter the "Side Fraud Scheme".)  Prior to the information being filed, Kamon was charged by a single-count complaint related to the Side Fraud Scheme.  (See 22-MJ-04385.)[1]

---

[1] Defendant Kamon has filed a motion to exclude evidence related to the Side Fraud Scheme that is currently pending before the Court. (Dkt. 189.)  The government and defendant Girardi have filed oppositions to that motion.  (Dkt. 200, 201.)

On June 21, 2023, defendant Kamon participated in a proffer with the government, during which he admitted his involvement in the Side Fraud Scheme.  Defendant Kamon was represented by counsel before and during the proffer, which was documented in a report of interview (attached hereto as Exhibit 3 to the Declaration of Scott Paetty ("Paetty Decl.")) and governed by a written agreement that Kamon and his counsel had previously signed (the "Proffer Agreement," Exhibit 1 to the Paetty Decl.)[2].  The Proffer Agreement made clear that if, at trial or in any pre-trial proceeding, defendant Kamon testified or sought to refute or counter any evidence, argument, statement, or representation made by him or on his behalf during the proffer, the government could use his proffer statements against him at any stage of the proceedings, including in its case-in-chief at trial. (Ex. 1 at 2.)

At trial, if the Court allows introduction of evidence related to the Side Fraud Scheme, defendant Kamon may assert a defense contrary to the facts he admitted during his proffer.  If he does, under the express terms of the Proffer Agreement, the government is entitled to use any statements Kamon made in its case-in-chief, as impeachment, or in rebuttal.  While the government recognizes that the triggering event has not yet occurred, it requests the Court find that, if at trial or during pre-trial proceedings, defendant Kamon testifies or offers any evidence, argument, statement, or representation at trial inconsistent with his proffer statements, the government may then introduce his proffer statements in its case in

---

[2] Defendant KAMON also participated in four additional proffers with the government pursuant to this proffer agreement.  KAMON's statements made during these other meetings are not the subject of this motion.

chief, the defense case, if any, or in the government's rebuttal case. If the government believes that Kamon's conduct has triggered the admission of his proffer statements, it will promptly address the issue with the Court outside the presence of the jury. Additionally, in the event that the government seeks to introduce the statements in its case-in-chief, the government is prepared to elicit testimony in a manner that does not violate the Confrontation Clause as to defendant Girardi and is consistent with Bruton v. United States, 391 U.S. 123 (1968), and Richardson v. Marsh, 481 U.S. 200 (1987), and would request a limiting instruction that the jury should consider them as evidence only against defendant Kamon.

## II.   STATEMENT OF FACTS

Defendant Kamon was interviewed by the government on five separate occasions, with the last occurring on June 21, 2023. (Paetty Decl. ¶ 2.) These meetings were conducted pursuant to a Proffer Agreement, also known as a "queen-for-a-day" letter, which was provided to his counsel in advance of his initial proffer. (Id.) All parties signed the agreement and Kamon represented that he understood its terms. (Paetty Decl. ¶ 3, Exhibit 1.) The Proffer Agreement stated that, in return for Kamon's agreement to meet with the government, the government required Kamon to "respond truthfully and completely to any and all questions put to [him]" at the proffer. (Ex. 1 at 2.) In exchange, in relevant part, the government promised it would not offer any of the statements made by Kamon at the proffer in its case-in-chief, except that it could use statements made by him,

> for the purpose of cross-examination should [Kamon] testify, or to refute or counter at any stage of the

3

>proceedings (including this Office's case-in-chief at trial) any evidence, argument, statement or representation offered by or on behalf of [Kamon] in connection with any proceeding.
>
>(Id.)

During the proffer, the government reviewed with Kamon the affidavit that was filed in support of the criminal complaint against him related to the Side Fraud Scheme. (See Paetty Decl. ¶¶ 4-5, Ex. 2 (affidavit) and Ex. 3 (report of proffer discussing affidavit).) Kamon then "acknowledged that the [affidavit] was an accurate account of what had transpired while he worked as the chief accountant for the [Girardi Keese] law firm." (Ex. 3 at 1.) Specifically, defendant Kamon acknowledged, among other things, that:

- Kamon had specific knowledge of Girardi Keese's financial affairs and supervised the accounting department. Kamon also prepared checks on behalf of Girardi Keese, including client trust account checks and those that were used to pay the firm's expenses, such as payroll, rents, and other day-to-day expenditures (Ex. 2 ¶ 9);
- Kamon had signatory authority over several Girardi Keese operating accounts including a Torrey Pines Bank account ending in 9821 ("Account 9821") and a Nano Banc account ending in 0096 ("Account 0096") (Ex. 2 ¶ 10);
- Kamon used the Girardi Keese operating accounts, Accounts 9821 and 0096 (as well as other GK accounts), to misappropriate funds and to enrich himself and his co-schemers. Kamon's primary method of embezzling Girardi Keese funds included writing checks from GK's operating

4

accounts, including Accounts 9821 and 0096, to purported "vendors" or individuals that he disguised as "legal marketers" for Girardi Keese. One such co-schemer was I.B. (Ex. 2 ¶ 12);

- From at least 2015 until 2020, Kamon caused over $5.6 million to be sent from Accounts 9821 and 0096 to accounts controlled by I.B., including a Nikkei Credit Union account ending in 3989 ("Account 3989") in the name of "Bravo's Construction" (Ex. 2 ¶ 13);

- Kamon recruited I.B. to help him defraud Girardi Keese by instructing I.B. to cash checks drawn on Girardi Keese accounts controlled by Kamon and written to I.B., through Bravo's Construction. I.B. would then deposit the checks and return a portion of the cash to Kamon. Kamon instructed I.B. to complete construction projects at Kamon's personal residences for which Kamon paid I.B. with Girardi Keese checks (Ex. 2 ¶ 14);

- In order to execute and conceal the fraudulent transfers, payments to I.B. were disguised as payments to "Bravo's Construction" to suggest that the large sums of monies being transferred were related to construction work when, in reality, Kamon was using I.B. to embezzle funds from Girardi Keese's accounts, including funds used to pay for I.B.'s work on Kamon's own, personal properties (Ex. 2 ¶ 17);

- During the same time period, 2015 to 2020, at least four other construction-related individuals received

    approximately $4 million from Girardi Keese in the same manner as Bravo's Construction (Ex. 2 ¶ 19);

- Kamon also paid a $20,000 monthly allowance, totaling $360,000 from the Girardi Keese Account 9821 into a bank account controlled by a female companion (Ex. 2 ¶¶ 26-27);

- To conceal the payments, Kamon told the woman that he had listed her as a "legal marketer" that referred cases to Girardi Keese.  Kamon also arranged for the woman to obtain health insurance coverage through Girardi Keese despite the fact that she lacked any bona fide employment status with Girardi Keese (Ex. 2 ¶ 28);

- In or around 2020, after news about Girardi Keese's embezzlement of client funds broke, Kamon told the woman that she would need to find alternative insurance since he thought Girardi Keese was going to shut down.  Sometime after that, Kamon told her that he thought he may be implicated in the Girardi Keese scheme and that he was going to leave the country.  Kamon further told the woman that he was going to change his name and hide from authorities in connection with whatever federal case might be brought.  Kamon also said that he had investigated the residency process for other countries, and that he was interested in The Bahamas because they would grant permanent residency with the purchase of an expensive property (Ex. 2 ¶ 29);

- On or about October 13, 2022, Kamon purchased a $2.4 million home in New Providence, Bahamas (Ex. 2 ¶ 32).

6

## III. ARGUMENT

Per defendant Kamon's agreement with the government, Kamon's proffer session statements are admissible to rebut "any evidence, argument, statement, or representation" offered by Kamon or on his behalf."[3] The Ninth Circuit has upheld proffer agreements nearly identical to the one signed by Kamon and permitted the government's introduction of a defendant's proffer statements to rebut evidence and arguments made by the defendant, even where the defendant does not himself testify. See United States v. Rebbe, 314 F.3d 402 (9th Cir. 2002).

In Rebbe, the defendant signed a "proffer" letter substantially similar to the one at issue here, with a "waiver" provision that stated:

> The government may use . . . statements made by you or your client at the [proffer session] and all evidence obtained directly or indirectly from those statements for the purposes of cross-examination should your client testify, or to rebut any evidence, argument or representations offered by or on behalf of your client in connection with the trial . . . .

Id. at 404. During his proffer, Rebbe admitted that he advised a business owner to create two business accounts, directed where certain checks should be deposited, knew the corporate tax returns he

---

[3] According to the terms of the Proffer Agreement, the proffer was not part of plea discussions (Ex. 1 at 2-3), and so not subject to Federal Rule of Evidence 410(a) and Federal Rule of Criminal Procedure 11(f). Even if they were, however, a defendant may waive the prohibition against their admissibility and the government would be permitted to use them. See United States v. Mezzanatto, 513 U.S. 196, 210 (1995); United States v. Rebbe, 314 F.3d 402 (9th Cir. 2002).

7

prepared did not accurately reflect the company's payroll, and created fake deposit slips for one of the business accounts. Id. He was subsequently indicted for conspiracy to commit crimes against the United States and preparation of false tax returns. Id. At trial, Rebbe did not testify, but cross-examined government witnesses, called his own witnesses, and made representations implying that the business owner had the financial expertise and sophistication to have committed the crimes independently, that defendant did not know about the second business account, and that he had not created the fake deposit slips. Id. at 406. At the conclusion of his defense, the district court granted the government's request to introduce a part of Rebbe's proffer session statement to rebut evidence and representations inconsistent with those proffer statements. Id. at 405. The Ninth Circuit upheld the district court's order, finding that Rebbe's presentation of evidence and representations were inconsistent with his proffer statements and holding that his execution of the proffer letter was a waiver of his right to object to the evidence. Id. at 407-08; see also United States v. Krilich, 159 F.3d 1020, 1025 (7th Cir. 1998) (finding use of the defendant's proffer statements appropriate where a defendant presents a position through argument or cross-examination). The Ninth Circuit noted that its holding "encourages criminal defendants to present defenses at trial that are not fraudulent," and that it did not deprive the defendant of a right to present a defense at trial given that the only limitation was that "if he presented evidence or arguments that were inconsistent with his proffer statements, the Government could introduce his proffer statements in rebuttal." Id. at 408.

Similarly, in this case, the government requests that the Court allow the use of defendant Kamon's proffer statements at any point during trial if he or his counsel allude or refer to any inconsistent position. As noted in Rebbe, the waiver in Kamon's Proffer Agreement is "broadly worded" and triggered if Kamon or his attorney present any evidence, arguments, or representations (including implications from cross-examination) inconsistent with his proffer statements. See also United States v. Hardwick, 544 F.3d 565, 570 (3d Cir. 2008) (finding the waiver triggered by defendant's attempt to shift blame for the crimes to others); United States v. Barrow, 400 F.3d 109, 117-20 (2d Cir. 2005) (rejecting defendant's argument that a specific or direct contradiction was required to trigger the waiver). Thus, if defendant Kamon makes any number of contrary suggestions -- directly or implicitly -- his statements during the proffer session would be admissible.

Moreover, the government should be permitted to introduce these proffer statements at any point at trial, including during its case-in-chief. That follows the specific language of the Proffer Agreement Kamon entered with the government. The Rebbe court left open the question of whether the statements would have been admissible in the government's case-in-chief because that factual situation was not before the Court. 314 F.3d at 406-07. Unlike in Rebbe, however, the government here expressly reserved the ability to introduce Kamon's proffer statements during its case-in-chief pursuant to the plain terms of the Proffer Agreement, if Kamon testifies or, through opening statement or cross-examination of government witnesses, offers evidence or makes any argument, statement, or representation inconsistent with those made during his

9

proffer session.  Other courts have upheld waivers permitting introduction of similar statements in the government's case-in-chief.  See, e.g., United States v. Mitchell, 633 F.3d 997, 1004 (10th Cir. 2011); United States v. Sylvester, 583 F.3d 285, 290-94 (5th Cir. 2009); Hardwick, 544 F.3d at 569-71; United States v. Young, 223 F.3d 905, 910-11 (8th Cir. 2000); United States v. Burch, 156 F.3d 1315 (D.C. Cir. 1998).  The government is also aware that a defendant's proffer statements were admitted in the government's case-in-chief in this district after the defendant triggered the waiver in United States v. Deleon, ED CR 12-00092(B)-VAP (see 8/22/14 RT 5-14, Dkt. 608) (waiver triggered by opening statement)), and United States v. Chen, CR 05-806(B)-DSF (see Dkt. 259 (waiver triggered by pre-trial statements regarding the anticipated defense case)); United States v. Nguyen, CR 19-195-ODW, Dkt. 267 (C.D. Cal. 2019) (granting government's motion in limine to admit defendant's proffer statements in its case-in-chief).

    The government does not suggest that defendant Kamon or his counsel may not present any arguments on his behalf.  Arguments holding the government to its burden of proof beyond a reasonable doubt or pointing to gaps in the government's evidence on a material point will not necessarily open the door to admitting his proffer statements.  However, if defendant Kamon offers, at any stage of the trial, including through opening statements, cross-examination of a government witness, or otherwise, any evidence, argument, statement, or representation inconsistent with his proffer statements, his proffer statements would thus be expressly admissible pursuant to paragraph four of the Proffer Agreement and "will assist in promoting the truth-seeking function" of the trial.  Rebbe, 314 F.3d at 407.

Finally, to the extent Kamon's proffer statements reference co-defendant Girardi, they are admissible so long as they are not incriminating against him on their face. Richardson, 481 U.S. at 208 (exempting from Bruton's protection a statement, not incriminating on its face, that implicates the defendant only in connection to other admitted evidence); United States v. Hoac, 990 F.2d 1099, 1105 (9th Cir. 1993) (admission of confession that did not mention defendant's name, but only an address elsewhere linked to defendant, particularly when defendant never contested received the shipment, only his awareness of its contents, did not violate defendant's Sixth Amendment rights). Any proffer statements that the government would seek to admit pursuant to this motion that reference Girardi are not incriminating, unlikely to be challenged by Girardi, or redactable.

The government recognizes that the Court is not in a position to rule on the admissibility of defendant Kamon's proffer statements at this time because triggering events by the defense have yet to occur. Nonetheless, the Court may and should issue an order allowing the statements to be offered at trial once the defense triggers the terms of the Proffer Agreement. Prior to introducing Kamon's proffer statements, the government will ask for a hearing outside the presence of the jury.

## IV. CONCLUSION

For the foregoing reasons, the Court should find that, if the Court admits evidence related to defendant Kamon's Side Fraud Scheme, and at trial or during pre-trial proceedings, Kamon testifies or offers any evidence, argument, statement, or representation at trial

//

inconsistent with his proffer statements, the government may introduce his proffer statements at any point during trial.

Dated: June 21, 2024                Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


            /s/
SCOTT PAETTY
ALI MOGHADDAS
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

12

The undersigned, counsel of record for the goverment, certifies that this brief contains 2,895 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 21, 2024                      Respectfully submitted,

                                          E. MARTIN ESTRADA
                                          United States Attorney

                                          MACK E. JENKINS
                                          Assistant United States Attorney
                                          Chief, Criminal Division


                                                /s/
                                          ─────────────────────────────
                                          SCOTT PAETTY
                                          ALI MOGHADDAS
                                          Assistant United States Attorney

                                          Attorneys for Plaintiff
                                          UNITED STATES OF AMERICA