E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
ALI MOGHADDAS (Cal. Bar No. 305654)
Assistant United States Attorney
Corporate and Securities Fraud Strikeforce
        1100 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-6527/1786
        Facsimile: (213) 894-6269
        E-mail:    scott.paetty/ali.moghaddas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>THOMAS VINCENT GIRARDI and<br>CHRISTOPHER KAZUO KAMON,<br><br>          Defendants. | No. CR 23-47-JLS<br><br>GOVERNMENT'S OPPOSITION TO<br>DEFENDANT THOMAS VINCENT GIRARDI'S<br>MOTION TO SUPPRESS EVIDENCE;<br>DECLARATION OF SCOTT PAETTY; UNDER<br>SEAL EXHIBITS 1-3<br><br>Hearing Date: July 26, 2024<br>Location:     Courtroom of the<br>              Hon. Josephine L.<br>              Staton |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Scott Paetty and Ali Moghaddas, hereby files its opposition to defendant Thomas Vincent Girardi's motion to suppress evidence (Dkt. 222).

//

This opposition is based upon the attached memorandum of points and authorities, declaration of Scott Paetty and exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 5, 2024                    Respectfully submitted,

                                       E. MARTIN ESTRADA
                                       United States Attorney

                                       MACK E. JENKINS
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                              /s/
                                       SCOTT PAETTY
                                       ALI MOGHADDAS
                                       Assistant United States Attorneys

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

## **TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

**Contents**

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.   INTRODUCTION...................................................1

II.  RELEVANT FACTS AND LEGAL STANDARDS............................2

     A.   The Girardi Keese Bankruptcy Trustee Is Not a Member
          of the Prosecution Team..................................3

     B.   Girardi Keese Was Not a Sole Proprietorship..............6

III. ARGUMENT......................................................9

     A.   Defendant Has No Standing to Assert a Fourth Amendment
          Challenge to the Trustee's Production of Girardi Keese
          Materials to the Government..............................9

     B.   The Government Did Not Violate Any Privilege Held by
          Defendant...............................................13

     C.   There Was No Rule 6(e) Violation........................15

IV.  CONCLUSION...................................................18

1

**TABLE OF AUTHORITIES**

2

<u>DESCRIPTION</u>                                                                 <u>PAGE</u>

3

**<u>CASES</u>**

4

<u>Barry v. United States</u>,
        865 F.2d 1317 (D.C. Cir. 1989)...............................18

5

<u>Bisno v. United States</u>,
6       299 F.2d 711 (9th Cir. 1961)..............................1, 10

7

<u>Commodities Future Trading Comm'n v. Weintraub</u>,
        471 U.S. 343 (1985).......................................14

8

<u>Corngold v. United States</u>,
9       367 F.2d 1 (9th Cir. 1966)................................12

10

<u>DiLeo v. Comm'r</u>,
        959 F.2d 16 (2d Cir. 1992)................................17

11

<u>Eddy v. Fields</u>,
12      121 Cal. App. 4th 1543 (2004).............................14

13

<u>In re FitzSimmons</u>,
        725 F.2d 1208 (9th Cir. 1984).............................12

14

<u>In re Rigden</u>,
15      795 F.2d 727 (9th Cir. 1986)...............................4

16

<u>In re Sheehan</u>,
        187 B.R. 669,(Bankr. D. Ariz. 1995).......................6

17

<u>In re Skinner</u>,
18      336 B.R. 316 (Bankr. N.D. Ohio 2005)......................12

19

<u>In re Special Grand Jury</u>,
        674 F.2d 778 (9th Cir. 1982)..............................17

20

<u>In re Stockbridge Funding Corp.</u>,
21      153 B.R. 654 (Bankr. S.D.N.Y. 1993).......................6

22

<u>In re Truck-A-Way</u>,
        300 B.R. 31 (E.D. Cal. 2003)..............................12

23

<u>Kroll v. United States</u>,
24      433 F.2d 1282 (5th Cir. 1970).............................10

25

<u>Tucker Ellis LLP v. Superior Court</u>,
        12 Cal. App. 5th 1233 (2017)..............................14

26

<u>United States v. Boyer</u>,
27      275 F. App'x 655 (9th Cir. 2008)..........................10

28

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

United States v. Dynavac,
    6 F.3d 1407 (9th Cir. 1993)...................................16

United States v. Howell,
    231 F.3d 615 (9th Cir. 2000)..................................2

United States v. Madison,
    226 F. App'x 535 (6th Cir. 2007).............................11

United States v. Masterson,
    383 F.2d 610 (2d Cir. 1967)..................................10

United States v. Odgen,
    485 F.2d 536 (9th Cir. 1973).................................12

United States v. Prokop,
    No. 2:09-CR-00022-MMD, 2014 WL 1268678,
    at *2 (D. Nev. Mar. 27, 2014).................................4

United States v. Ruiz,
    428 F.3d 877 (9th Cir. 2005).................................13

United States v. Salyer,
    271 F.R.D. 148 (E.D. Cal. 2010)...............................5

United States v. SDI Future Health, Inc.,
    464 F. Supp. 2d 1027 (D. Nev. 2006)..........................15

United States v. Setser,
    568 F.3d 482 (5th Cir. 2009).................................11

United States v. Walther,
    652 F.2d 788 (9th Cir. 1981).................................12

United States v. Ziegler,
    474 F.3d 1184 (9th Cir. 2007)................................12

United States v. Zinnel,
    No. 2:11-CR-00234-MCE, 2011 WL 6825684,
    at *2 (E.D. Cal. Dec. 28, 2011)...............................5

**STATUTES**

11 U.S.C. § 303...............................................1

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3      On the brink of trial, defendant Thomas Vincent Girardi

4  ("defendant") has filed a motion to suppress (the "Motion") all

5  evidence that the government obtained from the court appointed

6  bankruptcy trustee overseeing the liquidation of Girardi Keese.  The

7  Motion is based on a fundamental misapplication of Fourth Amendment

8  law and a mischaracterization of the facts underlying the Girardi

9  Keese partnership.  It is well settled Ninth Circuit law that

10  regardless of whether Girardi Keese was a general partnership (as it

11  claimed to be in tax filings, loan agreements, and bank records) or a

12  sole proprietorship, when Girardi Keese entered bankruptcy control

13  over all books and records of the law firm vested in the trustee at

14  the time of the filing of the bankruptcy petition.  Bisno v. United

15  States, 299 F.2d 711, 717 (9th Cir. 1961).  Therefore, defendant

16  lacks standing to raise a Fourth Amendment challenge to the trustee's

17  voluntary production of Girardi Keese documents and other materials

18  to the prosecution team.

19      In any event, Girardi Keese was not a sole proprietorship but

20  rather a partnership that operated under defendant's management and

21  control until it was forced into involuntary bankruptcy when the

22  massive fraud scheme orchestrated by defendant, aided and abetted by

23  co-defendant Christopher Kamon, became public.  At that time a

24  bankruptcy trustee was appointed pursuant to 11 U.S.C. § 303(g), and

25  the trustee took control of all assets of Girardi Keese.  Pursuant to

26  her statutory authority, the trustee, a private party, engaged in

27  informal cooperation with the government to assist its investigation

28  into the fraud scheme during which, again pursuant to the authority

that vested in her by the bankruptcy code, the trustee waived any privilege that attached to any property of the Girardi Keese estate and voluntarily provided documents to the government.  In requesting such information, the government did not seek personal property belonging to defendant, nor did the trustee produce any such property to the government.  Cooperation between the trustee and the government is neither unlawful nor does it expand the scope of the prosecution team such that the trustee becomes a part of it.  Moreover, no privilege belonging to defendant was violated.  And finally, the government did not violate the secrecy provisions of Rule 6(e) of the Federal Rules of Criminal Procedure.  In sum, defendant's motion should be seen as what it is -- a last ditch effort to avoid responsibility for the massive fraud he perpetrated on Girardi Keese clients from whom he, and co-defendant Kamon, stole millions of dollars in settlement funds.  Defendant's motion should be denied without an evidentiary hearing.

## II.   RELEVANT FACTS AND LEGAL STANDARDS

There is no dispute about the facts underlying the Motion, including its central factual predicate.[1]  Namely, that the Girardi Keese bankruptcy trustee consented to the government's request for access to Girardi Keese books and records without a search warrant.  Similarly, there is no dispute that the trustee cooperated with the government's investigation into fraud at Girardi Keese.  However, as a threshold matter and as discussed below, the government disputes two characterizations of facts made by Girardi that touch on the

---

[1] The lack of dispute on material facts implicated by the Motion supports that there is no need for an evidentiary hearing.  See United States v. Howell, 231 F.3d 615, 620 (9th Cir. 2000).

2

legal issues raised in the Motion.  Namely, that the bankruptcy trustee is a member of the prosecution team and that Girardi Keese was a sole proprietorship.

**A.   The Girardi Keese Bankruptcy Trustee Is Not a Member of the Prosecution Team**

In December 2020, after a series of civil lawsuits publicly alleged that Girardi Keese had misappropriated client funds, various creditors of Girardi Keese commenced an involuntary petition for relief under Chapter 7 of Title 11 of the United States Code against Giardi Keese.  (In re Girardi Keese, 2:20-bk-21022-BR, Dkt. 1.)  On January 5, 2021, the bankruptcy court subsequently appointed an attorney in private practice to act as the bankruptcy trustee (the "Trustee") and oversee the bankruptcy estate of Girardi Keese.  (Id., Dkt. 45).  That order made clear that the Trustee "shall be authorized to immediately enter onto the premises of the debtor and take possession of the books and records, accounts, and all aspects of the debtor."  (Id. at 2.)  The purpose of the order was "to protect and preserve the assets of the bankruptcy estate pending the entry of an order for relief."  (Id.)  The order noted that, "No opposition to the requested appointment of an interim trustee has been filed, timely or at all." (Id. at 1.)  The order further authorized the Trustee "to take any additional actions that may be necessary to preserve and protect the bankruptcy estate."  (Id.)

In addition to leading ongoing efforts to preserve assets of the estate and maximize recovery for Girardi Keese creditors (the bankruptcy docket currently includes over 2,000 entries and the case is still active), at the government's request, the Trustee agreed to provide the government access to the books and records of Girardi

Keese, including providing access to an email server that was
maintained on a third-party hosting platform.  (Declaration of Scott
Paetty ("Paetty Decl." ¶ 2.)   The Motion engages in extensive
discussion about the Trustee's cooperation with the government's
investigation.  (Mot. 8-12.)   However, as defendant acknowledges, it
is not improper, or indeed unusual for the trustee to cooperate with
criminal investigations because trustees "have statutory and
regulatory duties to report suspected crimes to the U.S. Attorney and
to cooperate in criminal investigations." (Mot. 8-9.)   Indeed, such
cooperation is not surprising because the trustee has a fiduciary
obligation to preserve the estate's assets to ensure maximum recovery
for the creditors.  In re Rigden, 795 F.2d 727, 730 (9th Cir. 1986).

Defendant claims that the assistance provided by the trustee
during the government's investigation makes the trustee a member of
the prosecution team.  (Mot. 8-12, 19-20.)   Not so.   District courts
within the Ninth Circuit have roundly rejected such a
characterization.  In United States v. Prokop, No. 2:09-CR-00022-MMD,
2014 WL 1268678, at *2 (D. Nev. Mar. 27, 2014), the court addressed
the same argument that defendant raises here.  Namely, that a
bankruptcy trustee is part of the prosecution team because the
trustee is under the supervision of the United States Trustee and the
United States Trustee Program, which is an agency of the Department
of Justice that is responsible for maintaining and supervising
private individuals who are appointed trustees for chapter 7
bankruptcy cases.  Id.  The court called this a "flawed
characterization of the role of a bankruptcy trustee" and explained
that the bankruptcy trustee is the "legal representative" and
"fiduciary" of the bankruptcy estate and also an "officer of the

4

court". Id. (cleaned up). The Prokop court further held that a trustee "is not a part of the Executive Office for the United States Trustees, let alone the prosecution team in this criminal case. Indeed, the Bankruptcy Trustee is no more a member of the prosecution team than [the bankrupt company] is a member of the prosecution team." Id. (cleaned up); see also United States v. Zinnel, No. 2:11-CR-00234-MCE, 2011 WL 6825684, at *2 (E.D. Cal. Dec. 28, 2011) ("Significantly, private trustees have been deemed to be neither employees or agents of the United States Trustee or the federal government . . . a private trustee is simply not a governmental agent, or member of the prosecution team, so as to create any further duty in that regard."). The same reasoning holds here.

Furthermore, in United States v. Salyer, 271 F.R.D. 148, 156-57, 179 (E.D. Cal. 2010), opinion adhered to as modified on reconsideration, No. CR. S-10-0061 LKK, 2010 WL 3036444 (E.D. Cal. Aug. 2, 2010), the district court confronted a similar argument regarding contacts between a bankruptcy trustee and the government as reflected in the trustee's billing records. Salyer argued, as defendant does here, that the bankruptcy trustee's billing statements highlight contacts with the government that make the trustee part of the prosecution team. Id. at 179. The Salyer court found, however, that the various contacts between the government and the trustee did not create a circumstance where the trustee "would be considered the government in the criminal matter." Id. at 156-57 (cleaned up).

1    The above cases discuss the contours of the "prosecution team"

2    in the context of discovery disputes,[2] but the analysis holds in the

3    search and seizure context as well.  And notably, neither of the

4    cases cited by defendant in support of his argument that the Girardi

5    Keese Trustee was a member of the prosecution team address the scope

6    of the prosecution team in terms of Fourth Amendment challenges or

7    the suppression of evidence in bankruptcy cases.  In fact, as

8    defendant acknowledges (Motion at 8-9), the governing bankruptcy

9    statutes and regulations, as well as the cases defendant cites, see

10   In re Stockbridge Funding Corp., 153 B.R. 654, 656 (Bankr. S.D.N.Y.

11   1993) and In re Sheehan, 187 B.R. 669, 671-72 (Bankr. D. Ariz. 1995),

12   effectively require cooperation between the bankruptcy trustee and

13   prosecutors in criminal investigations.

14   **B.   Girardi Keese Was Not a Sole Proprietorship**

15       The Motion primarily rests on the false premise that Girardi

16   Keese was a sole proprietorship.  (Mot. 3-8).  This statement is

17   belied by defendant's declarations to banks, litigation lenders, and

18

19   _____

20       [2] Relatedly, defendant requested, and the government provided in
     discovery, all information that the trustee provided to the
21   government.  Moreover, defendant obtained additional discovery from
     the Trustee through meet and confer sessions via telephone and email
22   and subpoenas issued under Rule 17 of the Federal Rules of Criminal
     Procedure.  In fact, defendant has had even more access to Girardi
23   Keese files and communications than has the government because, as
     discussed infra section III.B, the government limited its review of
24   Girardi Keese communications and client files to the clients from
     whom the government obtained privilege waivers.  Not incidentally,
25   the Trustee provided defendant with the same login credentials for
     the hosting platform for the Girardi Keese email server that the
26   Trustee had previously provided to the government.  (Paetty Decl.
     ¶ 3.)  This prevented the government from further accessing the
27   platform with those credentials.  (Id.)  Furthermore, despite no
     obligation to do so, the government produced all communications
28   between the government and the trustee.  Defendant included many, if
     not all, of these communications in his filing.  (See Ex. 13 to the
     Motion.)

his representations to the government in tax filings that Girardi
Keese was a general partnership.  As discussed further below (infra
section III.A), such a distinction does not impact the well-settled
law that defendant has no standing to raise a Fourth Amendment
challenge to the introduction of Girardi Keese records obtained from
the Trustee because the Trustee controls the Girardi Keese estate and
was well within her authority to provide the Girardi Keese materials
to the government without a warrant.  Nevertheless, the government
makes the point to ensure that the record is clear regarding the
status of Girardi Keese as a collective entity.

Girardi Keese's tax filings for the years 2011 – 2020 all
include IRS Forms 1065 and California Forms 565, which are forms that
must be included for all partnership tax filers.  (See Ex. 1 to
Paetty Decl.)  On the Forms 565, Girardi Keese is defined as a
"General Partnership", defendant signs the forms as the general
partner of Girardi Keese, and the forms all contain the federal
employer tax identification number of Girardi Keese, not the personal
tax identifier of defendant.  (See, e.g., id. at 1-2.)  Furthermore,
in opening a bank account for Girardi Keese at Nano Banc (one of the
banks with which the firm maintained trust and operating accounts),
defendant signed and caused to be submitted an IRS Form W-9 "Request
for Taxpayer Identification Number and Certification" that included
Girardi Keese's employer identification number and checked the box
marked "Partnership" on the form.  (See Ex. 2 to Paetty Decl. at 1.)
Notably, defendant did not check the first box marked
"Individual/sole proprietor or single-member LLC."  (Id.)  In that
same bank application, defendant signed and submitted a "Statement of
Partnership Authority" listing himself and R.M. Keese as authorized

7

1  partners, along with a signed letter indicating the same partnership

2  arrangement.  (Id. at 2-3.)

3      Girardi Keese's status as a partnership is further supported by

4  loan agreements and supporting documents that defendant executed with

5  litigation lenders.  For example, in support of a 2018 loan that

6  defendant obtained from Virage SPV 1 ("Virage"), the loan agreement

7  states that the "Borrower" was "Girardi & Keese, a California

8  Partnership organized under the laws of the State of California."

9  (See Ex. 3 to Paetty Decl. at 5.).  Section 5.1 of the agreement

10 further states that the Borrower "is duly organized, validly

11 existing, and in good standing as a limited liability company,

12 limited partnership, or corporation, as applicable."  (Id. at 15.)

13 The agreement was initialed on each page by defendant and signed at

14 the bottom on behalf of "Girardi & Keese" by "Thomas V. Girardi" as

15 "Managing Partner/Owner".  (Id. at 35.)  Defendant signed the

16 promissory note and security agreement in similar fashion.  (Id. at

17 44, 46.)  Moreover, Schedule A of the security agreement lists the

18 type of organization of Girardi Keese as a "Partnership" and,

19 notably, does not list anything for other names (including trade

20 names or fictious business names, such as a dba or sole

21 proprietorship) or changes in name or organization that applied to

22 Girardi Keese within the past five years.  (Id. at 45.)

23     Defendant relies extensively on declarations and court filings

24 by former Girardi Keese attorneys, including his brother and son-in-

25 law, and creditors in civil and bankruptcy litigation in support of

26 his claim that Girardi Keese was a sole proprietorship.  (Mot. at 3-

27 7.)  Reliance on such self-serving statements by interested parties

28 seeking either to avoid liability or to recoup losses tied to the

demise of Girardi Keese is not persuasive and is belied by defendant's own representations of the collective entity/partnership status of Girardi Keese to banks, lenders, and the government.

In sum, defendant cannot use Girardi Keese as a sword when seeking to invoke the privileges of partnership to obtain preferential treatment from banks and lenders and avoid tax liabilities and then as a shield to attempt to invoke purported constitutional protections that inure to the benefit of individuals.

## III. ARGUMENT

Regardless of whether Girardi Keese was a partnership or a sole proprietorship, there is no Fourth Amendment violation here because the bankruptcy trustee had the authority to consent to the search of the firm's books and records. Moreover, in searching the Girardi Keese records obtained from the trustee, the government did not seize or search any defendant's personal property. Thus, there has been no violation of a privilege held by defendant in a personal capacity. Finally, in its dealings with the trustee, the government did not violate the secrecy provisions of Rule 6(e) of the Federal Rules of Criminal Procedure.

### A.   Defendant Has No Standing to Assert a Fourth Amendment Challenge to the Trustee's Production of Girardi Keese Materials to the Government

Decades ago, the Ninth Circuit held that using records obtained by the government through a voluntary production by a bankruptcy trustee does not implicate a defendant's Fourth Amendment rights. The reason is that the defendant has no expectation of privacy in these types of records because -- upon filing of the bankruptcy petition -- ownership of all the company's records vests in the trustee. The governing law on this issue is stated in Bisno v.

1    <u>United States</u>, 299 F.2d 711, 717-18 (9th Cir. 1961).[3]  In <u>Bisno</u>, the

2    defendant challenged the admissibility of evidence obtained by a

3    bankruptcy trustee after an involuntary bankruptcy proceeding was

4    initiated against him by alleging violations of, among other things,

5    his Fourth Amendment rights.  <u>Id.</u> at 713-14, 717.  The court

6    unequivocally rejected that argument.

> It is clear that no rights of Bisno under the Fourth []
> Amendment were violated. The records involved were not
> recovered from Bisno by a search or seizure of any kind but
> vested in the trustee in bankruptcy by operation of law as
> of the date of the filing of the petition in bankruptcy.
> Hence rights under the Fourth Amendment are not involved.

<u>Id.</u> at 717.  The Ninth Circuit reiterated that holding in <u>United States v. Boyer</u>, 275 F. App'x 655, 655-56 (9th Cir. 2008) (unpublished).  In affirming the denial of a motion to suppress evidence obtained by the government from a bankruptcy trustee, the <u>Boyer</u> court found no error in the district court's finding that the trustee "maintained control and custody" over the office of the bankrupt business and all documents, including privileged documents, contained therein.  <u>Id.</u>[4]  Therefore, there was no Fourth Amendment

---

[3] The Motion does not address <u>Bisno</u>, despite the government previously providing that case to defendant as justification for not seeking a warrant in this case. (Paetty Decl. ¶ 7.)  The Motion instead analogizes to the government's decision to seek a search warrant for evidence contained on a law firm server in <u>United States v. Avenatti</u>, CR-19-61-JVS (C.D. Cal.).  (Mot. at 1.)  However, in <u>Avenatti</u> the server was stored at the location of a third-party and not in the possession of the receiver, who was appointed to take possession of the books and records of Avenatti's law firm.  (<u>See</u> <u>Avenatti</u>, CR-19-61-JVS, Dkt. 55 at 5-6.)  Although the Avenatti receiver consented to the government creating a forensic copy of the server, which was still in the possession of the third party, the receiver did not consent to the government conducting a search of the server.  (<u>Id.</u>)  Therefore, the government had to obtain a warrant to conduct its search of the server.  (<u>Id.</u>)

[4] Other circuits have taken the same approach.  <u>See, e.g.</u>, <u>Kroll v. United States</u>, 433 F.2d 1282, 1287-88 (5th Cir. 1970); <u>United States v. Masterson</u>, 383 F.2d 610, 613-14 (2d Cir. 1967).

violation implicated by the trustee's consent to produce evidence of fraud, money laundering, and tax evasion that was in the possession of the trustee.

This principle is akin to the authority of court appointed receivers, who are authorized to access and exert control over assets and records of distressed entities, and to take any action which could have been taken by any defendant with respect to those assets and records, which include allowing or consenting to premises searches and/or copying or seizure of business records. See United States v. Setser, 568 F.3d 482, 491 (5th Cir. 2009) ("After appointment, the receiver was 'vested with complete jurisdiction and control' of the property and had the 'right to take possession' of it.... The receiver was required to 'manage and operate the property ... in the same manner' as its original owner.... The receiver became the possessor, and as such could consent to the search of the seized documents."); United States v. Madison, 226 F. App'x 535, 542 (6th Cir. 2007) (court ordered the receiver to "[t]ake exclusive custody, control and possession of all ... effects, books and records of account and other papers and property or interests owned or held by the [companies] ... with full power to ... receive and take possession of such receivership properties" and, thus, the receiver "exercised the [companies'] own authority, and had the authority to consent to the FBI agent's search of [the premises].").

Applying that straightforward principle here, regardless of whether Girardi Keese was a partnership or a sole proprietorship, all of the firm's property vested in the Trustee once the bankruptcy proceeding was initiated, and there was nothing improper about the Trustee's decision to voluntarily provide the government access to

the books and records of Girardi Keese without a warrant.  See In re FitzSimmons, 725 F.2d 1208, 1210-12 (9th Cir. 1984) (addressing control of trustee over the bankruptcy estate in the context of a law firm that was a sole proprietorship in Chapter 11 bankruptcy and stating that the "scope of the [bankruptcy] estate is broad").

None of the cases cited by defendant (Motion at 16-20) undermine that straightforward analysis.  Several of these cases (e.g., In re Truck-A-Way, 300 B.R. 31 (E.D. Cal. 2003) and In re Skinner, 336 B.R. 316, 319 (Bankr. N.D. Ohio 2005)) address whether a bankruptcy trustee can search a debtor's residence or other property.[5]  That situation is not present here, as the Trustee produced the Girardi Keese records that were already in its possession.  And the other Ninth Circuit cases (e.g., Corngold v. United States, 367 F.2d 1 (9th Cir. 1966); United States v. Walther, 652 F.2d 788 (9th Cir. 1981); United States v. Odgen, 485 F.2d 536 (9th Cir. 1973); and United States v. Ziegler, 474 F.3d 1184, 1190 (9th Cir. 2007)) pertain to situations where a private actor was given temporary possession of or access to property (e.g., an airline with a customer's package or employee access to a coworker's office) — not full property rights.

Here, the government did not seek access or authority to seize personal property of defendant, held either at the business premises of Girardi Keese or elsewhere.  Nor would the trustee have had the authority to grant such access.[6]  Indeed, defendant Girardi points to

---

[5] As referenced above, this was the situation in Avenatti, where the government obtained a search warrant for a law firm server that was held on the premises of a third party and the receiver did not consent to the government's search of the server.

[6] In fact, defendant is named in his individual capacity as a debtor in a separate bankruptcy case (2:20-bk-21020-BR, Bankr. C.D. Cal.), with a different trustee than in the Girardi Keese bankruptcy

*(footnote cont'd on next page)*

no document or communication in discovery produced by the government in this case, or on the government's exhibit list, that would even arguably qualify as personal property of defendant.[7]  The majority of the government's exhibits are business records of Girardi Keese, which were properly produced to the government by the trustee and, in the absence of a stipulation, for which the government will seek to admit under Rule 803(6) of the Federal Rules of Evidence or any other applicable rule.

Even if this Court were to find a violation (it should not), suppression is not appropriate here under the doctrine of apparent authority.  "A third party's consent to the search of another's belongings is valid if the consenting party has either actual or apparent authority to give consent."  United States v. Ruiz, 428 F.3d 877, 880-81 (9th Cir. 2005).  In this case, even if the trustee was not authorized to turn over the firm's property (she was), the government at a minimum had a good-faith, reasonable belief that the trustee possessed the authority to consent to the search of the Girardi Keese books and records that were in her possession.

**B.   The Government Did Not Violate Any Privilege Held by Defendant**

Defendant alleges that the government and the trustee intentionally violated privileges held by defendant.  (Mot. at 22-24.)  Not so.  The government does not dispute that the Trustee cannot waive defendant's personal privilege and, accordingly, the government took steps to ensure that its contact with the bankruptcy

---

(2:20-bk-21020-BR, Bankr. C.D. Cal.).  The government has not sought, nor has it received any documents or other information held by the trustee in defendant's personal bankruptcy case.

[7] Defendant's in camera filing of a single allegedly privileged document is addressed in the following section. ____

trustee and receipt of Girardi Keese materials did not violate any privilege belonging to defendant as an individual.  As stated in the stipulated waiver application, "[t]he Trustee has expressed a willingness and desire to cooperate with the [United States Attorney's Office] and is willing to waive any privilege she holds as it relates to the Debtor only."  (In re Girardi Keese, 2:20-bk-21022-BR, Dkt. 1643 at 2.)  The debtor was defined as "Girardi Keese", not defendant.  (Id. at 1.)  The trustee further stipulated that "[p]ursuant to [her] role as the chapter 7 bankruptcy trustee of the Debtor, I obtained custody and control over numerous documents, files, paper and electronic, and digital devices, including an email server, located on the business premises of the Debtor ('the Data')." (Id., Ex. 1) (emphasis added).)  This Data is what the government sought and obtained from the trustee via the stipulation.  The bankruptcy court issued an order approving the stipulation in its entirety.  (In re Girardi Keese, 2:20-bk-21022-BR, Dkt. 1649.)  And it was well within the Trustee's authority to consent to providing that data to the government.  See Commodities Future Trading Comm'n v. Weintraub, 471 U.S. 343, 358 (1985) (bankruptcy trustee is empowered to waive privileges of collective entity); accord Tucker Ellis LLP v. Superior Court, 12 Cal. App. 5th 1233, 1236 (2017) (holding that a law firm holds the attorney work product privilege in situations where the client's contractual relationship is with the law firm as opposed to the individual attorney).  Furthermore, under California law, it is well-established that a client's legal files belong to the individual legal client, rather than the attorney or law firm that represented the client.  Eddy v. Fields, 121 Cal. App. 4th 1543, 1548 (2004) ("In general, the documents within an

attorney's legal file belong to the client."). Thus, to the extent defendant seeks to challenge the government's receipt of Girardi Keese client files, he lacks standing to do so. In any event, the government obtained privilege waivers from many former Girardi Keese clients, including the four charged victim clients in this case. (Paetty Decl. ¶ 8.)

Without explicitly identifying any examples for the government, defendant has lodged a single document, filed in camera, that allegedly implicates defendant's personal privilege. (Paetty Decl. ¶ 9.) While the government has not seen the document, defense counsel has stated in a meet and confer that the document was produced by the Northern District of Illinois in connection with the Lion Air prosecution. (Id.) Counsel further stated that they "have no specific reason to believe that [the California prosecution team] ha[s] the document." (Id.) Thus, it is not clear whether the government in this matter has access to the document, let alone that it has reviewed it. In any event, even if this document (or any other similar document) in the possession custody and control of the government is deemed privileged, the government would self-suppress and seek to immediately return the document to defendant. The "general remedy for violation of the attorney-client privilege is to suppress introduction of the privileged information at trial." United States v. SDI Future Health, Inc., 464 F. Supp. 2d 1027, 1047 (D. Nev. 2006). On the current facts, any additional relief is unwarranted.

### C. There Was No Rule 6(e) Violation

Last, defendant's allegation that he has "conclusively establish[ed]" 6(e) violations (Motion at 27) similarly falls flat

15

and is not supported by the evidence.  As an initial matter, the government's investigation began with a public criminal referral by the district court in Chicago based on clear evidence of misappropriation of client funds at Girardi Keese.  The Motion references various contacts between the government and the trustee during the course of the criminal investigation, both in this jurisdiction and in the Northern District of Illinois.  (Mot. at 24-25.)  As discussed above, the fact that the trustee assisted the government in its investigation into fraud at Girardi Keese is neither extraordinary nor improper.  Indeed, in addition to the statutes and regulations requiring the trustee to report suspected crimes to the Department of Justice, as custodian of Girardi Keese records and as the person charged with preserving assets and maximizing potential recovery for creditors, the trustee was in the unique position of possessing and reviewing information that could assist the government in its criminal investigations.

That the trustee's billing records evince communications between the government and the trustee is therefore not surprising.  However, the government disputes defendant's allegation that the relationship "was not simply a one-way street".  (Mot. at 11.)  Nothing about the interactions between the trustee and the government reveal "matters occurring before the grand jury".  See United States v. Dynavac, 6 F.3d 1407, 1413 (9th Cir. 1993) (to come within the Rule 6(e) prohibition the material in question must "reveal some secret aspect of the inner workings of the grand jury").  For example, neither defendant's reference to a government query to the trustee regarding "where the money is coming from" to pay for the co-defendant's attorney (see Motion at 11) nor the government's attachment of the

co-defendant's publicly filed brief at the detention hearing (id.) reflects anything related to grand jury proceedings.  Defendant also cites a request from the trustee to the government seeking information about a vendor connected to codefendant Kamon.  (Id.) There is no indication that the government responded to this request, but even if it had, nothing about that request is tethered to grand jury material.  "[I]f a document is sought for its own sake rather than to learn what took place before the grand jury, and if its disclosure will not compromise the integrity of the grand jury process, Rule 6(e) does not prohibit its release."  Dynavac, 6 F.3d at 1411-12.  Other references to sharing news reports about defendant's competency proceedings, custodial status, or acknowledgement of support with the criminal investigation similarly do not implicate grand jury secrecy.

The sole reference to "grand jury" proceedings in the trustee's billing records is a reference to documents produced to the Chicago prosecutors by litigation lender Virage pursuant to a grand jury subpoena.  (Mot. at 24.)  These records were all pre-existing business records from the lender documenting loans extended to Girardi Keese and the various supporting documents for those loans. (Paetty Decl. ¶ 10.)  As Dynavac makes clear, pre-existing records obtained by a grand jury subpoena are not subject to Rule 6(e). "[T]he disclosure of business records independently generated and sought for legitimate purposes, would not 'seriously compromise the secrecy of the grand jury's deliberations.'"  Dynavac, at 1412 (quoting DiLeo v. Comm'r, 959 F.2d 16, 19 (2d Cir. 1992)); see also In re Special Grand Jury, 674 F.2d 778, 781 (9th Cir. 1982) (language of Rule 6(e) "could reasonably be understood to include only

transcripts of grand jury testimony, votes of the jurors on substantive questions, and similar records.  . . .").

In sum, nothing about the nature or the extent of the cooperation between the government and the trustee during this investigation implicates 6(e) violations and the Court need not inquire further.  In any event, defendant cites no cases holding that suppression of evidence in response to a Rule 6(e) violation is an appropriate remedy.  Indeed, even if a violation occurred (it did not), the remedy is circumscribed, "except possibly in an extraordinary case of misconduct [not present here], the trial court must avoid . . . directly interfering with the work of the grand jury."  Barry v. United States, 865 F.2d 1317, 1323 (D.C. Cir. 1989).

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion to suppress evidence obtained from the Girardi Keese bankruptcy trustee.

Dated: July 5, 2024               Respectfully submitted,

                                  E. MARTIN ESTRADA
                                  United States Attorney

                                  MACK E. JENKINS
                                  Assistant United States Attorney
                                  Chief, Criminal Division

                                         /s/
                                  _____
                                  SCOTT PAETTY
                                  ALI MOGHADDAS
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

18

The above referenced, counsel of record for the government, certifies that this brief contains 5,115 words, which complies with the word limit of L.R. 11-6.1.