CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CHARLES J. SNYDER (Bar No. 287246)
Email: Charles_Snyder@fd.org
SAMUEL CROSS (Bar No. 304718)
Email: Sam_Cross@fd.org
J. ALEJANDRO BARRIENTOS (Bar No. 346676)
Email: Alejandro_Barrientos@fd.org
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
THOMAS VINCENT GIRARDI

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:23-cr-00047-JLS-1 |
| Plaintiff, | |
| v. | **THOMAS GIRARDI'S OPPOSITION TO GOV.'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF DEFENDANT GIRARDI'S POST-SCHEME MENTAL CONDITION; EXHIBITS A-G; DECLARATION OF DEFENSE COUNSEL** |
| THOMAS VINCENT GIRARDI, | |
| Defendant. | Hearing Date: July 26, 2024 |
| | Courtroom: 8A |

//

//

//

Thomas V. Girardi, by undersigned counsel, submits this opposition to the government's motion *in limine* to preclude evidence of Girardi's post-scheme mental condition, ECF No. 225. This opposition is based upon the attached memorandum of points and authorities, the exhibits to that memorandum, declaration of defense counsel, the files and records in this case, and such further evidence and argument as the Court may permit.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: July 5, 2024          By:  */s/ J. Alejandro Barrientos*
                                  CHARLES J. SNYDER
                                  SAMUEL CROSS
                                  J. ALEJANDRO BARRIENTOS
                                  Deputy Federal Public Defenders
                                  Attorneys for Thomas V. Girardi

ii

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.    AS ALREADY HELD BY THE COURT, DR. HELENA CHUI'S TESTIMONY IS NOT EXCLUDABLE UNDER F.R.E. 401 OR 403. .............. 2

II.   LAY WITNESS TESTIMONY ABOUT EVENTS DEMONSTRATING MR. GIRARDI'S COGNITIVE IMPAIRMENT IS RELEVANT AND NOT UNFAIRLY PREJUDICIAL. .................................................................................. 4

     A.    Lay witness testimony about events demonstrating Mr. Girardi's cognitive impairment is relevant, whether it concerns events during or shortly after the alleged scheme period. ....................................................... 4

     B.    Lay witness testimony about events demonstrating Mr. Girardi's cognitive impairment is not unfairly prejudicial, whether it concerns events during or shortly after the alleged scheme period. .......................... 7

          1.    Lay testimony will not mislead the jury or confuse any issues. ........ 7

          2.    The government's reliance on the competency proceedings is misplaced. .................................................................................................. 9

CONCLUSION ........................................................................................................... 13

1

## <u>TABLE OF AUTHORITIES</u>

2  **Federal Cases**

3  *Burke v. City of Santa Monica*, ,

4     No. CV0902259MMMPLAX, 2011 WL 13213593 (C.D. Cal. Jan. 10, 2011) ........ 5

5  *Crane v. Kentucky*,

6     476 U.S. 683 (1986) ................................................................................................ 5

7  *Crawford v. City of Bakersfield*,

8     944 F.3d 1070 (9th Cir. 2019) ......................................................................... 2, 5, 9

9  *Duncan v. Louisiana*,

10     391 U.S. 145 (1968) ............................................................................................. 10

11  *Maxwell v. Roe*,

12     606 F.3d 561 (9th Cir. 2010) ............................................................................... 13

13  *NeSmith v. Cnty. of San Diego*,

14     No. 15-CV-629 JLS (AGS), 2022 WL 272011 (S.D. Cal. Jan. 28, 2022) ................. 5

15  *Pennsylvania v. Ritchie*,

16     480 U.S. 39 (1987) ................................................................................................ 5

17  *Rodriguez v. United States*,

18     No. 2:22-CV-02845-JLS-AFM, 2022 WL 19237182 (C.D. Cal. Dec. 22, 2022) ..... 7

19  *States v. McRae*,

20     593 F.2d 700 (5th Cir. 1979) ......................................................................... 9, 11, 12

21  *United States v. Alexander*,

22     106 F.3d 874 (9th Cir. 1997) ........................................................................... 1, 3-4

23  *United States v. Dowdell*,

24     70 F.4th 134 (3d Cir. 2023) .................................................................................. 8

25  *United States v. Estrada-Lucas*,

26     651 F.2d 1261 (9th Cir. 1980) ............................................................................. 4

27  *United States v. Haischer*,

28

iv

780 F.3d 1277 (9th Cir. 2015) ............................................................... 7, 10

*United States v. Magana,*

    No. 2:10-CR-00825-R-2, 2015 WL 12857310 (C.D. Cal. June 25, 2015) ............... 8

*United States v. Sineneng-Smith,*

    590 U.S. 371–76 (2020) ........................................................................ 8

*United States v. Winkle,*

    477 F.3d 407 (6th Cir. 2007) ............................................................. 9, 11

*United States v. Zannino,*

    895 F.2d 1 (1st Cir. 1990) ....................................................................... 7

**Rules**

F.R.E. 401 ........................................................................................... 1, 2, 3

F.R.E. 403 ......................................................................................... 7, 9-11

F.R.E. 702 ................................................................................................. 3

F.R.E. 703 ................................................................................................. 3

Fed. R. Crim. P. 49.1 ......................................................................... 14, 15

## MEMORANDUM OF POINTS & AUTHORITIES

### INTRODUCTION

During competency proceedings, the government and its experts took the position that Mr. Thomas Girardi is exaggerating his cognitive impairment because of his supposed "selective inability" to remember information related to his criminal charges. Gov. Opp. to Competency Mot. ECF No. 109, at 23; *see also* Order re: Competency, ECF No. 150, at 40. In light of that argument, Girardi offered expert and lay testimony showing that his memory loss affected numerous aspects of his life, including his ability to drive, cook, and administer his own medications, among other things. The government now effectively reverses its prior position—Girardi's memory loss is too narrow in scope—and argues the Court should exclude as irrelevant and unfairly prejudicial any "anecdotal testimony" demonstrating that Girardi's memory loss extended beyond the transactions that represent a subset of the 10-year scheme alleged by the government, whether such testimony comes from Dr. Helena Chui or lay witnesses.

While strategically reversing its prior position, the government also parrots arguments that it already made in its recently denied motion to exclude Dr. Chui's testimony. Such failed arguments include: (i) Dr. Chui's testimony is insufficiently tied to the client matters charged in the indictment; (ii) her testimony about events after the alleged scheme are irrelevant; and (iii) her testimony is unfairly prejudicial. The Court should reject the government's second attempt at these arguments for the same reasons that the Court rejected its first attempt. Given the Court's order denying the government's motion to exclude Dr. Chui's testimony, it is also now the law of the case that her testimony is not excludable under F.R.E. 401 or 403. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

The government's attempts to exclude lay testimony also fall flat, whether such testimony concerns events during or shortly after the alleged scheme. It is well-established that lay witnesses may testify about their personal observations of a party

1

that shed light on the party's mental state, including the existence of any mental condition. *See, e.g.*, *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1078 (9th Cir. 2019). The Court has already held that Girardi's mental state at the time of the alleged scheme—including any cognitive impairment—is a fact at issue in this matter. And the government acknowledged during competency proceedings that evidence that Girardi's memory loss extended beyond the issues underlying his various legal matters is relevant to assessing the validity and extent of any cognitive impairment. To exclude such clearly relevant evidence and distract from its strategically convenient change in position, the government falls back to several cursory unfair-prejudice arguments that mimic its already-rejected arguments concerning Dr. Chui. The Court should again reject such arguments when applied to lay witnesses.

For these reasons, the Court should deny the government's motion in its entirety. The defense also notes that it has twice offered to discuss potential limiting instructions with the government regarding post-2020 evidence, but the government has not pursued those discussions and has not made any argument that such instructions would be insufficient to cure any purported unfair prejudice.

# ARGUMENT

## I.   As already held by the Court, Dr. Helena Chui's testimony is not excludable under F.R.E. 401 or 403.

The Court has already considered and rejected the government's arguments under F.R.E. 401 and 403 that Dr. Chui should not be permitted to testify about Girardi's condition during or after the alleged scheme period—including government arguments aimed at "collateral interviews she considered during the competency proceedings." Gov. Mot. Exclude Chui, ECF No. 188, at 5. In particular, the Court ruled that "to provide context supporting the defense theory, Dr. Chui may testify regarding her diagnosis, and how she arrived at that diagnosis." Order Denying Gov. Mot. Exclude Chui, ECF No. 235, at 16. Yet the government's current motion repeats its prior arguments against

Dr. Chui without any meaningful elaboration. *Compare* Gov. Mot., ECF No. 225, at 6 (citing F.R.E. 403 and the supposed risk of misleading the jury and confusing the issues, as well as the Court's malingering opinion) *with* Gov. Mot. Exclude Chui, ECF No. 188, at 7 (citing F.R.E. 403 ant the supposed risk of jury confusion), *and* Reply ISO Gov. Mot. Exclude Chui, ECF No. 208, at 14 (citing F.R.E. 403 and the Court's malingering opinion).

The Court should reject the government's second attempt at such arguments. In seeking to prevent Dr. Chui from testifying about information provided by lay witnesses, the government essentially attempts an end run around the Court's order denying its motion to exclude Dr. Chui, as well as the rules of evidence governing expert testimony. Excluding Dr. Chui's testimony about information provided by collateral informants would, for example, prevent her from explaining "how she arrived at [her] diagnosis." Order Denying Gov. Mot., ECF No. 235, 16. Indeed, her diagnosis is based in part on information provided by collateral informants, who are people who know Girardi and are familiar with the his symptoms and activities of daily living, such as family, friends, and co-workers (*e.g.*, Isabel Mancilla and others who testified at the competency hearing). *See* Tr. 9-12-23, ECF No. 139, at 40:2-8. Excluding testimony about these informants would also prevent Dr. Chui from explaining the "facts or data" supporting her opinions, which she can testify about even if such facts or data are otherwise inadmissible. *See* F.R.E. 702 (requiring that expert testimony be based on "sufficient facts or data"); F.R.E. 703 (permitting experts to testify regarding otherwise inadmissible facts or data that underly their opinions).

Finally, because the Court has already rejected the government's arguments against Dr. Chui under F.R.E. 401 and 403, it is now the law of the case that Dr. Chui's testimony is not excludable under those rules. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("Under the 'law of the case' doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court,

3

or a higher court in the identical case.'"); *United States v. Estrada-Lucas*, 651 F.2d 1261, 1264 (9th Cir. 1980) (reversing conviction because district court improperly reversed its prior decision to permit the defendant to offer evidence that she passed a polygraph test).

## II.   Lay witness testimony about events demonstrating Mr. Girardi's cognitive impairment is relevant and not unfairly prejudicial.

The government additionally seeks to prevent lay witnesses from testifying about Girardi's cognitive function both during and after the alleged scheme period unless their testimony is directly "related to the charged client cases." Gov. Mot., ECF No. 225, at 5.[1] But the government's arguments lack any merit. Lay testimony that sheds light on Girardi's mental condition during the alleged scheme is relevant under Ninth Circuit law and comports with the Court's order regarding Dr. Chui's testimony. Beyond that, the government offers conclusory and meritless arguments that lay testimony will mislead the jury, confuse issues, and is somehow undermined by the Court's order finding Mr. Girardi competent.

### A.   Lay witness testimony about events demonstrating Mr. Girardi's cognitive impairment is relevant, whether it concerns events during or shortly after the alleged scheme period.

In arguing that lay testimony about events *during* the alleged scheme is irrelevant, the government essentially recycles its already-rejected arguments against Dr. Chui. But the relevance of Girardi's cognitive impairment during the alleged scheme does not

---

[1] Several lay witnesses may testify about events touching on the effect of Girardi's cognitive impairment on his ability to process complex information and manage a large organization, like Girardi Keese. During competency proceedings, for example, Richard Marmaro testified that Girardi went to the federal courthouse in downtown Los Angeles, but mistakenly believed he was in superior court. Similarly, Amber Ringler testified that Girardi would carry a set of several printed-out work emails and read them over and over. At the very least, the Court should permit lay testimony showing that Girardi's impairment impacted to process information and manage a large organization, which necessarily includes his practice at Girardi Keese.

4

wane because evidence of that impairment comes from lay witnesses or because it concerns aspects of Girardi's life outside his legal practice. To the contrary, the Ninth Circuit has squarely held the testimony of lay witnesses about their personal observations of a party that are consistent with a mental condition is relevant to determining whether the party had the relevant mental condition. *See, e.g.*, *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1078 (9th Cir. 2019) (holding that district court abused it discretion in excluding lay testimony of a decedent's mother because "[e]vidence that [the decedent] had previously behaved in ways consistent with mental illness and had been taken to mental health providers for treatment, makes it more likely that he continued to suffer from mental illness on the day of the shooting.").[2]

Moreover, the Sixth Amendment guarantees Girardi's right to "present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (cleaned up). That guarantee includes, "the right to put before a jury evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987). Unless the government intends to concede that Girardi is not guilty, it will be required to dispute that Girardi's impairment, combined with other evidence, shows that Girardi lacked the mental state required by the wire fraud statute. As a result, lay testimony about Girardi's functioning will respond to arguments and evidence that the government must present in order to secure a conviction. This is especially true if the government intends to argue (as it did during competency proceedings) that Girardi has selective memory loss indicative of exaggeration.

---

[2] *See also NeSmith v. Cnty. of San Diego*, No. 15-CV-629 JLS (AGS), 2022 WL 272011, at *16 (S.D. Cal. Jan. 28, 2022) ("Ms. Ne Smith and Decedent's father are permitted to testify as to Decedent's symptoms and behavioral changes that they personally observed during this time."); *Burke v. City of Santa Monica*, No. CV0902259MMMPLAX, 2011 WL 13213593, at *20 (C.D. Cal. Jan. 10, 2011) ("Any lay witness who is familiar with another person's general demeanor would be competent to testify regarding changes in that demeanor or commonly recognized signs [of] sadness or agitation.")

5

As for testimony about events after alleged scheme, the Court has already held that "Girardi's mental status after December 2020 is relevant only to the extent that it reflects upon what his mental status was during the relevant time period." Order Denying Gov. Mot. Exclude Chui, ECF No. 235, at 16. Consistent with that ruling, Girardi informed the government that he does not intend to elicit lay testimony about Girardi's memory after 2020, except to the extent it addresses events shortly after 2020, *e.g.*, the first few months of 2021, and bears on Girardi's mental state in 2020 or earlier. Ex. A, Girardi-Gov. Emails re: Lay Witnesses.[3] When combined with Dr. Chui's expert opinion that LATE is slowly progressive, lay testimony about Girardi's failing memory in early 2021 will allow the jury to draw inferences about the degree of Girardi's impairment in 2020 and earlier. Such evidence is especially relevant because the indictment alleges that the three wires underlying counts three through five all occurred in late or mid-2020 (though, of course, the government has voluntarily taken on the burden of proving the full decade-long scheme that it alleges in the indictment). Indictment, ECF No. 1, at 15-16. Lay testimony regarding Girardi's impairment in early 2021 is therefore consistent with the Court's order regarding the relevance of Dr. Chui's testimony, the indictment in this case, and Dr. Chui's proposed testimony about the progression of LATE. For these reasons, the jury will be able to infer that lay testimony about events shortly after the alleged scheme period "reflects upon what [Girardi's] mental status was during the relevant time period." Order Denying Gov. Mot. Exclude Chui, ECF No. 235, at 16.

---

[3] Girardi additionally indicated that he was open to stipulating to a limiting instruction advising the jury that evidence of cognitive impairment after 2020 is only relevant to Girardi's knowledge and intent during the alleged scheme period. Ex. A. The government did not respond to the offer, and makes no argument that such a stipulation would be insufficient to cure any purported unfair prejudice.

**B.      Lay witness testimony about events demonstrating Mr. Girardi's cognitive impairment is not unfairly prejudicial, whether it concerns events during or shortly after the alleged scheme period.**

In the government's earlier motion to exclude Dr. Chui, it offered a conclusory one-sentence prejudice argument under F.R.E. 403, and then later offered a bevy of new prejudice arguments in reply.[4] The government takes a similar approach in its current motion to exclude "anecdotal" lay testimony regarding Girardi's functioning: It argues that such testimony creates a "risk of misleading the jury and confusing the issues" without explaining how the jury could be misled or what issues might be confused. Gov. Mot, ECF No. 225, at 6. It then adds a third argument that Girardi had an incentive to exaggerate symptoms after 2020, and notes the Court's statements about malingering during competency proceedings. *Id*. None of these arguments have any merit, much less justify the "extraordinary remedy" of exclusion under F.R.E. 403—especially given the government's failure to explain why a limiting instruction is insufficient to cure any purported prejudice. *United States v. Haischer*, 780 F.3d 1277, 1281 (9th Cir. 2015).

**1.      Lay testimony will not mislead the jury or confuse any issues.**

The Court should reject the government's underdeveloped arguments about the purported risks of misleading the jury or confusing issues, and discourage the government from making such conclusory arguments in the future. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990); *see also Rodriguez v. United States*, No. 2:22-CV-02845-JLS-AFM, 2022 WL 19237182, at *5 (C.D. Cal. Dec. 22, 2022) (citing *Zannino* with approval). And, of course, the Court cannot fill the holes in the

---

[4] *Compare* Gov. Mot. re: Chui, ECF No. 188, at 7 (arguing only that jury would confuse Girardi's current and previous mental condition) *with* Reply ISO Gov. Mot. re: Chui, ECF No. 208, at 14-15 (citing the Court's competency decision on malingering and the "aura of special reliability" that can accompany expert testimony).

7

government's arguments. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) ("[A]s a general rule, our system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.") (cleaned up).[5] The Court should additionally decline to consider any new prejudice arguments that the government makes in reply because "arguments raised for the first time in a reply brief are waived." *United States v. Magana*, No. 2:10-CR-00825-R-2, 2015 WL 12857310, at *1 (C.D. Cal. June 25, 2015), *quoting Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010).

Beyond all that, it is difficult imagine how the jury might be misled by evidence confirming that Girardi's cognitive impairment extended to all aspects of his life or how such evidence could confuse any issues. Indeed, *excluding* evidence that Girardi's impairment broadly affected him would create the false impression that his impairment is suspicious because it only affected his legal work (the exact position that the government took during competency proceedings). As to the purported risk of confusion, the defense finds it difficult to respond to the government's conclusory, one-sentence argument. To the extent the government is concerned that the jury will confuse Girardi's functioning during and after the alleged scheme, the Court should reject that argument for the same reasons discussed in Girardi's opposition to the government's motion to exclude Dr. Chui. *See* Opp. to Gov. Mot. Exclude Chui ECF No. 198, at 17-18.

To the extent the government is arguing that testimony related to aspects of Girardi's life outside of his legal practice could be confused with testimony related to the charged client matters, the government's argument makes little sense. The Court denied the government's motion to exclude Dr. Chui's testimony because it "provides a basis upon which defense counsel may argue that the jury may infer a lack of intent." rder

---

[5] *See also United States v. Dowdell*, 70 F.4th 134, 146 (3d Cir. 2023) ("Had the District Court intervened here by excusing the Government's forfeiture and applying the Court's own novel legal theory, it would have undermined the judiciary's neutrality and encroached upon the executive branch's prosecutorial prerogative to argue its case.").

Denying Gov. Mot. Exclude Chui, ECF No. 235, at 16. Similarly, lay testimony about specific instances of Girardi's failing memory will provide a basis upon which Girardi may argue that the jury may infer a lack of intent. Such an inference would be rational and not the product of illogical confusion, especially since Dr. Chui will explain how impaired activities of daily living (*e.g.*, dressing, feeding) are indicative of cognitive impairment. *See Crawford*, 944 F.3d at 1078. And evidence is not *unfairly* prejudicial to the government just because it undermines the governments case. *See United States v. Winkle*, 477 F.3d 407, 417 (6th Cir. 2007) ("[U]nfair prejudice does not mean the damage to a[n opponent's] case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest a decision on an improper basis") (cleaned up).*United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979) ("Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403.").

### 2. The government's reliance on the competency proceedings is misplaced.

Finally, the Court should reject the government's arguments about malingering for at least three reasons.

***First.*** The Sixth Amendment entitles Girardi to have a jury determine if the government proved him guilty beyond a reasonable doubt at trial, not merely to have a Court determine malingering by a preponderance of the evidence at a pre-trial hearing. As stated by the Supreme Court, the need to have juries decide criminal cases—not prosecutors or judges—reflects a "profound judgment" about the best process for safeguarding justice and individual liberty:

> The guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which law should be enforced and justice

9

administered. A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government.

. . .

Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge.

. . .

Beyond this, the jury trial provisions in the Federal and State Constitutions reflect a fundamental decision about the exercise of official power – a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges.

*Duncan v. Louisiana*, 391 U.S. 145, 155-56 (1968). Informed by the Sixth Amendment, the Ninth Circuit has emphasized that "the exclusion of evidence offered by the defendant in a criminal prosecution under Rule 403 is an extraordinary remedy to be used sparingly." *Haischer*, 780 F.3d at 1281. (cleaned up). Whatever the Court's view of the malingering issue in pre-trial competency proceedings, the jury may have a different view of any government arguments about Girardi's supposedly exaggerated mental impairment, especially since, as further discussed below, the jury will be able to consider evidence that the Court did not have access to during competency proceedings.

**Second**. Nothing from the competency proceedings undermines the admissibility of lay witness testimony about Girardi at trial. If, for example, the government had noticed its intent to call an expert to testify at trial that Girardi was malingering during the alleged scheme (it did not do so), such expert testimony would not render contrary lay testimony *unfairly* prejudicial to the government, though it would be prejudicial in the sense that it undermines the government expert. The "prejudice" suggested in the government's current motion therefore boils down to the government's feeling that any lay testimony touching on Girardi's failing mental abilities is factually incorrect, not that

10

it is misleading, confusing, or otherwise unfair in a sense contemplated by F.R.E. 403. *See Winkle*, 477 F.3d at 417; *McRae*, 593 F.2d at 707.

**Third.** As discussed above, the findings of the two government experts and the Court regarding malingering in 2023 are entirely irrelevant to the issue of the admissibility of lay testimony at trial because: (i) Girardi is entitled to present a complete defense and have a jury consider relevant evidence (*i.e.*, evidence has any tendency to make a fact of consequence more or less likely), including lay testimony about his impairment during the alleged scheme; (ii) the government has failed to explain how the competency proceedings suggest that lay witness testimony creates a risk of *unfair* prejudice; and (iii) the Court's opinion about malingering addressed a matter not at issue in Girardi's trial, namely whether he was exaggerating his impairment three years after the alleged scheme ended.

But even if the Court put all those issues aside (it cannot), it should not rely on any prior malingering determinations. Those determinations were based on incomplete information because the government did not produce various pieces of exculpatory evidence demonstrating Girardi's cognitive impairment until after the competency proceedings. As the Court will recall, the government's experts opined that Girardi is malingering based, *inter alia*, a supposed lack of contemporaneous reports of any impairment prior to Girardi's legal difficulties, and the supposedly suspicious timing of initial reports of his impairment.[6] The Court similarly devoted much of its competency order to its determination that "post hoc anecdotal evidence is mixed and is of limited evidentiary value," and that "[t]he timing of Defendant's reported symptoms is highly suspect." Order Finding Competency, ECF No. 150, at 44-46 (capitalization omitted).

---

[6] *See* Goldstein Rpt., at 68 ("No one raised concerns about Mr. Girardi's cognitive functioning until after the civil case being heard in the Chicago District Court was referred to the criminal division of the U.S. Attorney's Office . . . . This includes any lawyer at the firm with whom Mr. Girardi worked closely . . . ."); Darby Rpt., at 26 ("there is little evidence regarding any progression of cognitive problems between 2017-2020), 28 ("the rapid onset of memory loss specific to his legal case in 12/2020 is atypical").

11

But the Court additionally found that "[c]ontemporaneous accounts would have been particularly probative." *Id*., at 45.

As the Court wrote those words, contemporaneous accounts of Girardi's mental decline prior to 2021 sat on government computers or other digital devices—unexamined by the defense, the Court, or any of the experts who testified during competency proceedings. Those accounts include the following, which were only produced to Girardi in 2024:

**2019-4-29 email:** Girardi Keese attorney Robert Finnerty reporting to other firm attorneys that client 1 stated Girardi was "less than coherent." Ex. B.

**2020-6-11 email:** In an email thread about clients 4 and 5, Girardi Keese attorney Chris Aumais comments about Girardi's repeated request for information, "Wow…. We have given it to him like 20 times. This is ridiculous." Ex. C.

**2020-9-2 email:** Attorney Michael V. Severo expressing that he was "concerned" because Girardi sent him a letter stating that he would make an offer to settle a lawsuit with Severo's client even though Girardi already settled the lawsuit and made the first settlement payment.  Ex. D.

**2020-10-1 email:** Two junior Girardi Keese attorneys recounting that Girardi confused them and instructed the wrong junior attorney to call client 1 to "find out what the case was about," even though the case had settled in April of 2020. Ex. E.

**2020-10-30 email:** Girardi Keese attorney Amanda McClintock reporting to Girardi's assistant that Girardi "sounded confused" about Girardi Keese's attorney fees. Ex. F.

12

1    **2020-11-16 email:**    Girardi assistant Kim Cory stating "I don't know if he

2                            forgets as soon as we hang up the phone" while

3                            discussing her attempts to instruct Girardi on how to use

4                            his eye medication. Ex. G.

5        Because of the government's belated production of such discovery, nobody has

6    evaluated the potential for malingering with the benefit of a complete record.

7    The government should not now be permitted to benefit from its failure to timely produce

8    exculpatory evidence of Girardi's impairment during the alleged scheme period.[7]

9                                    **CONCLUSION**

10       For the stated reasons, the Court should deny the government's motion *in*

11   *limine* to preclude evidence of Girardi's post-scheme mental condition, ECF No. 225.

12                                       Respectfully submitted,

13                                       CUAUHTEMOC ORTEGA
14                                       Federal Public Defender

15

16   DATED: July 5, 2024          By:   */s/J. Alejandro Barrientos*
                                         CHARLES J. SNYDER
17                                       SAMUEL CROSS
18                                       J. ALEJANDRO BARRIENTOS
                                         Deputy Federal Public Defenders
19                                       Attorneys for Thomas V. Girardi

20

21

22

23

24

25

---

26       [7] While Girardi is not affirmatively seeking to re-open competency proceedings at
     this time, "[w]here the evidence before the trial court raises a bona fide doubt as to a
27   defendant's competence to stand trial, the judge on his own motion must conduct a
     competency hearing." *Maxwell v. Roe*, 606 F.3d 561, 568 (9th Cir. 2010) (cleaned up).
28   That responsibility "continues throughout trial," *Id*.

                                            13

## <u>DECLARATION OF J. ALEJANDRO BARRIENTOS</u>

I, J. Alejandro Barrientos, declare as follows:

1.      I am a deputy federal public defender appointed to represent Mr. Thomas V. Girardi in the above captioned case.

2.      The following are exhibits to Girardi's opposition to the government's motion *in limine* to preclude evidence of Girardi's post-scheme mental condition, ECF No. 225.

3.      Attached as **exhibit A** is a true and correct copy of an email exchange between counsel for the government and Girardi regarding potential lay testimony.

4.      Attached as **exhibit B** is a true and correct copy of an internal Girardi Keese email dated April 29, 2019 regarding client 1. The client's name, except for first and last initials, have been redacted to maintain privacy.

5.      Attached as **exhibit C** is a true and correct copy of an internal Girardi Keese email dated June 11, 2020 regarding clients 4 and 5. The client's name, except for first and last initials, have been redacted to maintain privacy. Though not strictly required by Fed. R. Crim. P. 49.1, email addresses, phone numbers, and other contact information have been redacted to maintain privacy.

6.      Attached as **exhibit D** is a true and correct copy of an internal Girardi Keese email dated September 4, 2020. Though not strictly required by Fed. R. Crim. P. 49.1, email addresses, phone numbers, and other contact information have been redacted to maintain privacy.

7.      Attached as **exhibit E** is a true and correct copy of an internal Girardi Keese email dated October 1, 2020 regarding client 2. The client's name, except for first and last initials, have been redacted to maintain privacy. Though not strictly required by Fed. R. Crim. P. 49.1, email addresses, phone numbers, and other contact information have been redacted to maintain privacy.

8.      Attached as **exhibit F** is a true and correct copy of an internal Girardi Keese

14

email dated October 30, 2020; though not strictly required by Fed. R. Crim. P. 49.1, email addresses, phone numbers, and other contact information have been redacted to maintain privacy.

9.      Attached as **exhibit G** is a true and correct copy of an internal Girardi Keese email dated November 16, 2020.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: July 5, 2024                    _/s/J. Alejandro Barrientos_

J. Alejandro Barrientos

15

**<u>CERTFICATE OF COMPLIANCE</u>**

Undersigned counsel of record for Thomas V. Girardi certifies that this brief contains 4,197 words, which complies with the word limit of L.R. 11-6.1.

DATED: July 5, 2024          By: _/s/J. Alejandro Barrientos_
                                                    J. ALEJANDRO BARRIENTOS

16