E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
ALI MOGHADDAS (Cal. Bar No. 305654)
Assistant United States Attorney
Corporate and Securities Fraud Strikeforce
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6527/1786
    Facsimile: (213) 894-6269
    E-mail: scott.paetty/ali.moghaddas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 23-47-JLS |
|---|---|
| Plaintiff, | GOVERNMENT'S REPLY IN SUPPORT OF MOTION *IN LIMINE* TO ADMIT EVIDENCE OF DEFENDANT GIRARDI'S MISAPPROPRIATION OF SETTLEMENT FUNDS |
| v. | |
| THOMAS VINCENT GIRARDI and CHRISTOPHER KAZUO KAMON, | |
| Defendants. | Hearing Date: July 26, 2024<br>Location: Courtroom of the Hon. Josephine L. Staton |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Scott Paetty and Ali Moghaddas, hereby files its reply in support of its motion in limine to admit evidence of defendant Girardi's misappropriation of client settlement funds (Dkt. 214).

This reply is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 12, 2024

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

      /s/
SCOTT PAETTY
ALI MOGHADDAS
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Defendant Thomas Vincent Girardi ("defendant Girardi" or "Girardi") has made it clear that he intends to blame his co-defendant Christopher Kamon for the millions of dollars that he misappropriated at Girardi Keese.  Specifically, defendant Girardi intends to suggest that Kamon's theft of money in the side fraud case, in part, caused defendant Girardi's inability to pay his clients.  However, allowing this theory, without full context of defendant Girardi's own misappropriation, would leave the jury with a wholly distorted version of the truth.  Defendant must accept that the natural consequence of his position is for the government to counter it with all available admissible evidence, including evidence that defendant used tens of millions of dollars from Girardi Keese accounts to pay for his personal expenses, including the expenses of his former wife's entertainment company.  The Court has already ruled that evidence of defendant Kamon's fraudulent use of funds for his personal benefit is admissible because it is intrinsic to the charged conduct here.  (Dkt. 235.)  The government now seeks to introduce the mirror image of, and likely template for, Kamon's supplemental "side" fraud scheme.  Namely, Girardi's contemporaneous misappropriation of tens of millions of dollars from the same accounts that Kamon pilfered for similar impermissible purposes.  This evidence is direct evidence of the scheme to defraud and proof that he acted with the intent to deceive and cheat his clients.  It is also necessary for the government to rebut defendant's theory at trial, namely, that defendant Kamon stole everything.

The government has consistently maintained that it will present a streamlined case at trial centered on four client cases that exemplify the scheme to defraud that Girardi orchestrated and carried out with Kamon's assistance.  In doing so, however, the government never represented that it would limit its proof of defendants' misappropriation as part of the scheme to defraud.  Indeed, the indictment explicitly states:  that defendants Girardi and Kamon would "embezzle and misappropriate settlement funds from the [Girardi Keese trust accounts] belonging to Girardi Keese clients for improper purposes."  (Dkt. 1 ¶ 3(d).)  Moreover, nowhere in the government's filings or representations to the Court and counsel did the government agree not to respond to defense counsel's arguments or purported defenses.  The government bears the burden to prove beyond a reasonable doubt each element of wire fraud.  That requires, among other things, presenting proof of defendant Girardi's knowing involvement in a scheme to defraud with the intent to deceive and cheat.  Evidence of Girardi's misappropriation of Girardi Keese funds (which were sourced directly from the trust accounts) for the benefit of EJ Global and other impermissible expenses (the "Girardi Misappropriation Evidence") is directly relevant and admissible to prove the existence of the charged scheme to defraud and Girardi's knowing participation in (and, indeed, his orchestration of) that scheme with the intent to defraud his clients.  The government's motion to admit this evidence should be granted.

## II.   ARGUMENT

Defendant Girardi raises three arguments in opposition to the introduction of the Girardi Misappropriation Evidence, none of which are persuasive.  First, he claims that the government's presentation

of a "streamlined" case precludes it from introducing this evidence. This is incorrect. Merely because the government stated that it will present a streamlined case does not mean that it is prevented, via "judicial estoppel" or otherwise, from introducing sufficient evidence, which defendant Girardi has long possessed, of the scheme to defraud and his intentional participation in it to meet its burden of proof. Second, defendant Girardi argues that the Girardi Misappropriation Evidence does not respond to Girardi's newly proffered "blame Kamon" defense. Again, he is wrong. Evidence of Girardi's misappropriation of Girardi Keese funds to pay expenses of EJ Global and other impermissible expenses is intrinsic to the scheme and directly rebuts his claim that defendant Kamon was solely responsible for client losses. It would be wholly improper for defendant to present such theories to the jury without allowing the government to present the full context. Finally, because such evidence is intrinsic to the charged conduct, Rule 403 is not a bar to admission; however, even under Rule 403, the evidence is not unfairly prejudicial.

**A. The Government's Presentation of a Streamlined Case Does Not Preclude Introduction of the Girardi Misappropriation Evidence**

Defendant Girardi's argument (Opposition at 9-13) that the government's representation that it would present a streamlined case at trial precludes admission of the Girardi Misappropriation Evidence misunderstands the law and the government's representations. It is true that the government has limited its case to the four charged

cases in the indictment;[1] however, that does not mean the government cannot introduce evidence of how defendant spent the funds he misappropriated. Such evidence goes directly to his knowledge and intent and rebuts his anticipated defense at trial. The four charged cases are executions of the alleged scheme "beginning at least as early as in or around 2010 and continuing through at least in or around December 2020". (Dkt. 1 ¶ 2.) The government's representation was to limit its evidence of other executions, i.e., the dozens of other client matters where defendant and Kamon may have misappropriated funds -- not to limit its evidence of defendant's misappropriation of client funds. Indeed, the indictment is clear that defendants Girardi and Kamon are charged with embezzlement and misappropriation of settlement funds from the Girardi Keese trust accounts "belonging to clients for improper purposes." (Dkt. 1 at ¶ 3(d) (emphasis added).) These improper purposes include, "among other things, paying other Girardi Keese clients whose own settlement funds previously had been misappropriated . . . and paying other Girardi Keese[] expenses, including its American Express Card bills encompassing charges for defendant Girardi's and defendant Kamon's personal expenses." (Id.)

---

[1] This decision to streamline the case was made despite the fact that the government would be justified in broadening its proof at trial to encompass more than just the four charged client cases. See, e.g., United States v. Loftis, 843 F.3d 1173, 1177 (9th Cir. 2016) ("[T]he commission of . . . a mail fraud or wire fraud offense necessarily includes a fraudulent scheme as a whole . . . , including additional executions of the scheme that were not specifically charged."); United States v. Serang, 156 F.3d 910, 915 (9th Cir. 1998) (government not precluded from introducing evidence relevant to entire scheme simply because defendants are indicted for less than all of their actions).

4

Girardi's claim that he is somehow prejudiced by the introduction of this evidence due to the trial date in this case is not persuasive. This case has been pending for nearly 18 months and the defense has been on notice of these illicit expenditures since the government's early discovery productions in May 2023. Moreover, after a fulsome vetting of the issues, the Court initially set a May 21, 2024 trial date. (See generally Dkt. 161, and id. at 19:22-20:2.) The government agreed to a continuance to the current trial date to accommodate defense counsel's request for additional time to review discovery.

Girardi's claim that he is further prejudiced due to ambiguity concerning the "unspecified number" of EJ Global transactions that the government will seek to admit (Opposition at 10) is undercut by his own admissions. Specifically, defendant acknowledges his awareness that over 13,000 transactions for the benefit of EJ Global were made out of the Girardi Keese operating accounts totaling over $25 million. (See Opp'n at 2, n.2, 8.) There is no ambiguity about how many of these were impermissible. All of them. None of the payments out of the Girardi Keese accounts for the benefit of EJ Global were related to any Girardi Keese business. Therefore, they were all improper and the government will seek to admit these voluminous expenses through a summary chart.[2]

---

[2] Defendant alleges in passing that any payments to EJ Global were somehow permissible because Girardi Keese was a sole proprietorship. (Opp'n at 9.) But, as addressed in its opposition to Girardi's motion to suppress, (see Dkt. 247 at 6-9), Girardi Keese was not a sole proprietorship. In any event, defendant's argument to the contrary goes to weight, not admissibility, and even if the firm was a sole proprietorship these were illegitimate expenses in that they were unrelated to the operation of Girardi Keese and were funded from the firm's operating accounts, which as defendant acknowledged,
*(footnote cont'd on next page)*

Defendant's claim that the government is "judicially estopped" (Opposition at 9-13) from introducing the Girardi Misappropriation Evidence by relying on Ninth Circuit opinions addressing the pleading stage and plea agreements is misplaced. The government never asserted that it would limit its ability to prove the existence of a scheme or intent to defraud. But even if it had, the fact that Girardi now intends to present a contorted view of the facts necessitates that the government be allowed to provide the jury with the full context of defendant's actions, including his impermissible expenditures with client funds. Precluding such evidence would allow the defense to present a false narrative and rob the jury of its ability to access the full facts in its pursuit of the truth.

### B. Evidence of Girardi's Misappropriation Is Relevant, Intrinsic Evidence of the Scheme and Directly Rebuts Defendant's Claim that He was Not a Knowing Participant in the Fraud

Defendant Girardi is wrong that evidence of his misappropriation, through EJ Global or otherwise, does not rebut the comments of his counsel at the June 20 hearing. (Opp'n at 13-15.) The opposition essentially concedes that point. Defendant Girardi claims that the Girardi Keese trust account contained commingled funds, including client funds, defendant's own funds, and litigation lender funds, and thus it was "difficult to know whose money was being taken." (Opp'n at 14.) That statement proves the relevance of the Girardi Misappropriation Evidence. The fact that there may have been "multiple sources of money swimming around in the same pooled

---

were fed primarily by the client trust accounts. (See Dkt. 228 at 26:12-14 ("Where did the money in the operating accounts come from? And like all other money, it came originally from the client trust account.").)

6

trust accounts, including nonclient money" such that "it would be difficult to know whose money was being taken" is exactly the point. Defendant Girardi continued to pump money into the trust accounts (including from his own personal accounts and from litigation lenders) to pay previously defrauded clients and other expenses because he, and defendant Kamon, had fraudulently taken money from those same accounts to pay for an assortment of expenses unrelated to the client's interests, including the payment of EJ Global expenses. Whether defendant Girardi engaged in commingling or misappropriation of funds in the Girardi Keese trust accounts (he did both), the bottom line is that such misuse of trust account funds violates the rules governing these accounts and, therefore, is highly probative of, among other things, Girardi's knowledge and specific intent.

Furthermore, the Court previously held that co-defendant Kamon's misappropriation in the "side" fraud was intrinsic to the charged scheme here and thus admissible. Specifically, the Court found that defendant Kamon's side fraud "explain[s] certain characteristics and conduct of both Defendants within the alleged main scheme." (Dkt. 235 at 5.) And, notably, Kamon's "alleged actions in diverting funds for his own purposes provides context for his participation in the main scheme." (Id.) The same reasoning holds for the Girardi Misappropriation Evidence.

Moreover, distinctions between the defendants' use of the Girardi Keese trust accounts and the operating accounts were essentially "meaningless" in the sense that both defendants were charged with "widespread fraud and non-compliance with accounting principles on a fundamental level." (Id. at 6.) Indeed, as in Kamon's side fraud scheme, the charged fraud scheme here alleges that

Girardi and Kamon "worked together in key executive positions at [Girardi Keese], they face the same charges, [and] the charged conduct relates to the misuse of funds in the bank accounts of the same law firm." (Id. at 7). That the government seeks to introduce evidence of Girardi's own misappropriation of client funds is warranted because it is at least as integral and intrinsic to the charged scheme here as Kamon's misappropriation in the side fraud scheme, if not more so.

### C. Rule 403 is Not a Bar to Admission

Defendant Girardi's claim that Rule 403 precludes admission of evidence of his misappropriation fails for at least three reasons. First and foremost, defendant cannot distort the facts and he cannot have it both ways. In highlighting evidence of defendant Kamon's side fraud, it is clear that he intends to pin the blame for the missing client funds on Kamon. However, that narrative is far from the truth. While Kamon stole millions, so too did Girardi. The defense cannot present a one-sided view of the evidence. And they certainly cannot cry foul when the government responds with evidence rebutting their self-serving claims.

Second, as discussed above, the Girardi Misappropriation Evidence (like the evidence regarding Kamon's side fraud) is intrinsic to the charged conduct and is a necessary part of the charged scheme. Also, the government must prove that defendant Girardi intended to decieve and cheat. How he spent the misappropriated funds is probative evidence that he possessed the requisite intent. Therefore, Rule 403 is inapplicable. See United States v. DeGeorge, 380 F.3d 1203, 1220 (9th Cir. 2004) (evidence of prior acts that are inextricably intertwined with the facts of a

defendant's current case is admissible without regard to a Rule 404(b) inquiry, which includes analysis under Rule 403).

Third, even if Rule 403 did apply, Girardi cannot show that admission of the Girardi Misappropriation Evidence would inject any prejudice into the proceedings that would substantially outweigh the highly probative nature of such evidence. The fact that the evidence may be damaging to the defense is insufficient to merit preclusion. United States v. Parker, 549 F.2d 1217, 1222 (9th Cir. 1977) (relevant evidence "is not rendered inadmissible because it is of a highly prejudicial nature. . . . The best evidence often is.").

Moreover, the government does not intend to argue that the jury should convict based on defendant's purported "wealth". (See Opp'n at 15.) In any event, these expenditures are of the same general type and no more "inflammatory" than defendant Kamon's use of operating account funds to pay a female companion or to pay millions of dollars to a contractor for renovations to his personal residence, which this Court has already ruled admissible. (See Dkt. 235.)

//

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court grant its motion in limine to admit evidence of defendant Girardi's misappropriation of client funds.

Dated: July 12, 2024                    Respectfully submitted,

                                        E. MARTIN ESTRADA
                                        United States Attorney

                                        MACK E. JENKINS
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                              /s/
                                        SCOTT PAETTY
                                        ALI MOGHADDAS
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

The undersigned, counsel of record for the government, certifies that this brief contains 2,425 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 12, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

              /s/
_____
SCOTT PAETTY
ALI MOGHADDAS
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA