E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
ALI MOGHADDAS (Cal. Bar No. 305654)
Assistant United States Attorney
Corporate and Securities Fraud Strikeforce
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6527/1786
     Facsimile: (213) 894-6269
     E-mail:    scott.paetty/ali.moghaddas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 23-47-JLS |
| Plaintiff, | GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO ADMIT EVIDENCE OF DEFENDANT CHRISTOPHER KAMON'S FLIGHT FROM PROSECUTION |
| v. | |
| THOMAS VINCENT GIRARDI and CHRISTOPHER KAZUO KAMON, | Hearing Date: July 26, 2024 |
| Defendants. | Location:    Courtroom of the Hon. Josephine L. Staton |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Scott Paetty and Ali Moghaddas, hereby files its Reply in Support of its Motion in limine to Admit at Trial Evidence of Defendant Christopher Kamon's Flight from Prosecution (Dkt. 218).

//

This reply is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 12, 2024          Respectfully submitted,

                              E. MARTIN ESTRADA
                              United States Attorney

                              MACK E. JENKINS
                              Assistant United States Attorney
                              Chief, Criminal Division


                                    /s/
                              SCOTT PAETTY
                              ALI MOGHADDAS
                              Assistant United States Attorneys

                              Attorneys for Plaintiff
                              UNITED STATES OF AMERICA

//

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

In late 2020, as news of the fraud scheme at Girardi Keese became public, defendant Kamon told a female companion that he wanted to leave the United States and change his name.  To that end, defendant wired over $2.4 million to the Bahamas and purchased a house there because he understood that the Bahamas would grant permanent residency with the purchase of a residential property of sufficient value.  In September 2022, after defendant was already implicated in civil lawsuits and facing increased scrutiny for his conduct while the CFO of Girardi Keese, he booked a roundtrip ticket from Los Angeles to the Bahamas but then did not board the return flight.  Thereafter, defendant Kamon remained in the Bahamas until he was arrested two months later at the Baltimore airport.

Defendant does not dispute the overwhelming authority in favor of admission of evidence of flight.  Rather, he makes certain factual arguments to minimize his actions, e.g., he never changed his name and he eventually flew back to Baltimore.  These arguments go to the weight of the evidence, not its admission.  Indeed, defendant is free to argue these and his other points at trial, but the Court should not exclude this relevant and admissible evidence because of defendant's spin.  That defendant did not ultimately change his name, or that he came back months later to visit his sister, does not change the statements he made before fleeing, or his actions, including that he wired millions of dollars to the Bahamas and other countries.  Therefore, as explained in the government's underlying motion, and in further detail below, evidence of defendant's flight is relevant and should be admitted at trial.

## II. ARGUMENT

The Ninth Circuit has routinely held evidence of flight admissible. For example, in United States v. Dixon, 201 F.3d 1223, 1232 (9th Cir. 2000), the Ninth Circuit affirmed the lower court's admission of evidence of defendant's flight as it evidenced his consciousness of guilt. As the Ninth Circuit has suggested, in cases like this one, such evidence is best submitted to the jury. See United States v. Harris, 792 F.2d 866, 869 (9th Cir. 1986) ("[T]he probative value of flight evidence is a jury question." (citation omitted)). Against the backdrop of overwhelming Ninth Circuit approval of flight evidence, defendant cites a Seventh Circuit case that suggests a "cautionary approach" to flight evidence. However, defendant cannot dispute the Ninth Circuit's "universally conceded" acknowledgement of the relevance of flight evidence to consciousness of guilt. See, e.g., Harris, 792 F.2d at 869 ("It is universally conceded that the fact of an accused's flight . . . [is] admissible as evidence of consciousness of guilt, and thus of guilt itself." (citing United States v. Myers, 550 F.2d 1036 (5th Cir. 1977)); United States v. Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir. 1979) ("Flight immediately after the commission of a crime . . . supports an inference of consciousness of guilt.").

Defendant's opposition relies almost exclusively on case law that is largely inapplicable to the facts. For example, defendant cites United States v. Silverman, 861 F.2d, 571 (9th Cir. 1988), however, the facts of Silverman are readily distinguishable. In Silverman, the defendant's "flight" was failing to identify himself to DEA agents who called the defendant at his home. The court took issue with this being a strong enough relationship between action and

2

legal finding of flight and reversed partially on this point.  Those facts cannot be further from the statements and actions undertaken by defendant Kamon before he was eventually apprehended.  (See Mot. at 2-3.)  Defendant's reliance on Hernandez-Miranda, is similarly misplaced.  The court in that case clearly stated that the immediacy requirement is not relevant where the defendant has knowledge about the charges and accusations made against him.  601 F.2d at 1106-07 (The "immediacy requirement generally only becomes important in those cases where the defendant does not know, or his knowledge is doubtful, about the charges and accusations made against him"); see also United States v. Jackson, 572 F.2d 636, 641 (7th Cir. 1978) ("[T]he importance of the immediacy factor would be greatly diminished, if not rendered irrelevant, when there is evidence that the defendant knows that he is accused of and sought for the commission of the crime charged.")  Given defendant's statements to his female companion, defendant was certainly aware of the possibility of criminal and civil liability due to his proximity to the financial affairs of Girardi Keese.

    Defendant's additional argument that the government has not identified which specific crime defendant Kamon was fleeing is illogical.  There is no requirement the government specifically prove which crime defendant was fleeing from.  See, e.g., Shorter v. United States, 412 F.2d 428, 430 (9th Cir. 1969) (holding that the government need not show that defendant "knew he was sought for the particular offense charged.")  Indeed, imposing such a requirement would be a windfall to criminals like Kamon who are facing multiple charges for various criminal conduct.

    Defendant's argument that he never actually changed his name,

3

and therefore all of this evidence should be excluded likewise fails. (Opp at 7.)  Again, these arguments go to the weight the jury should give this evidence, not whether it is admissible.  Defendant intentionally ignores the gravity of his statements and actions in this case.  Beyond cursory claims that his female companion must be lying, defendant cannot dispute that he actually relocated to the Bahamas in the midst of increasing public scrutiny into the Girardi Keese law firm.  This includes civil cases where defendant Kamon was either named as a defendant or deemed a witness.  Moreover, Kamon does not dispute that he liquidated his domestic accounts and wired millions abroad, including at least $2.4 million to the Bahamas and another $700,000 to Hungary.  (See Dkt. 17 at 8 in case number 23-cr-24-JLS.)  Thus, contrary to his instant arguments, it does not matter whether he actually changed his name or not.  What matters is that he explicitly told his female acquaintance that he planned to relocate and change his name and that he acted upon it, at least in part, by relocating abroad and wiring millions out of the United States.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court grant its motion in limine and admit the evidence of defendant Kamon's flight from prosecution.