CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CHARLES J. SNYDER (Bar No. 287246)
Email: Charles_Snyder@fd.org
SAMUEL CROSS (Bar No. 304718)
Email: Sam_Cross@fd.org
J. ALEJANDRO BARRIENTOS (Bar. No. 346676)
Email: Alejandro_Barrientos@fd.org
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
THOMAS VINCENT GIRARDI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS VINCENT GIRARDI,<br><br>Defendant. | Case No. 2:23-cr-00047-JLS-1<br><br>**THOMAS GIRARDI'S REPLY IN SUPPORT OF MOTION FOR SEVERANCE; DECLARATION OF J. ALEJANDRO BARRIENTOS; EXHIBIT J**<br><br>Hearing Date: July 26, 2024<br>Courtroom: 8A<br>Time estimate: 30 minutes |

//
//
//

Thomas V. Girardi, by undersigned counsel, submits this reply in support of his motion for severance.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: July 12, 2024          By:  /s/ J. Alejandro Barrientos
CHARLES J. SNYDER
SAMUEL CROSS
J. ALEJANDRO BARRIENTOS
Deputy Federal Public Defenders
Attorneys for Thomas V. Girardi

ii

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 1

I.   The government fails to show that Girardi and Kamon do not have mutually exclusive defenses, or to meaningfully dispute that severance would be a wise exercise of the Court's discretion. ......................................................................... 1

   A.   The government's claim that the defenses in this case are not mutually exclusive relies on the incorrect assertion that "Kamon's role was limited to accounting." ............................................................................. 1

   B.   The government does not meaningfully dispute that the antagonism between Girardi and Kamon would destroy the benefits of a joint trial. ..... 4

II.  To safeguard against *Bruton* issues, the Court should at least limit the government to offering statements from Kamon's June 21, 2023 proffer, rather than rely on vague government representations about what it might offer. ........... 6

III. Neither the government, nor counsel for Kamon, have done anything to alleviate the concerns that counsel for Kamon is a fact witness with a personal interest in Girardi's conviction, as well as a conflict with Kamon. ....................... 7

CONCLUSION ............................................................................................................... 8

# REPLY IN SUPPORT OF MOTION FOR SEVERANCE

## INTRODUCTION

In opposing severance, the government relies on incorrect assertions about the evidence against Christopher Kamon, vague assertions about its intended use of evidence that could violate Thomas Girardi's right to confront witnesses, and other meritless arguments. It simultaneously handwaves the difficulties that would accompany a joint trial, including the need for the Court to quickly adjudicate competing objections from the three parties in this matter, and the status of Kamon's counsel as a fact witness with personal and professional interests in Girardi's conviction, as well as a potential conflict with Kamon. For these reasons and those explained in Girardi's opening memorandum, the Court should sever Kamon and Girardi's trials.

## ARGUMENT[1]

**I. The government fails to show that Girardi and Kamon do not have mutually exclusive defenses, or to meaningfully dispute that severance would be a wise exercise of the Court's discretion.**

    **A. The government's claim that the defenses in this case are not mutually exclusive relies on the incorrect assertion that "Kamon's role was limited to accounting."**

In another strategic shifting of a litigation position, the government denies that Girardi and Kamon have mutually antagonistic defenses for the sole reasons that "[Girardi] has not -- and cannot -- point to a scintilla of evidence that shows Kamon was responsible for the lies that Girardi told his clients" and "Kamon's role was limited to accounting." Gov. Opp., ECF No. 257, at 12, 14; *see also id.*, at 15 ("[T]he government disputes that anyone other than Girardi was responsible for his lies . . . ."), 17 ("[B]ecause Girardi cannot blame his lies on Kamon, the jury could accept Girardi's alternative

---

[1] All citations to documents previously filed via CM/ECF refer to page numbers generated by the CM/ECF system.

1

theory, *i.e.*, blaming his conduct on his mental infirmity and manipulation by other attorneys, and still acquit Kamon.")

Yet the government sang a different tune while drafting the indictment and presenting it to the grand jury, where it specifically alleged that both Girardi and Kamon "would send and cause to be sent lulling communications to the clients":

> (e)   As part of their scheme and to conceal the embezzlements and misappropriations from the victim clients, ***Girardi and Kamon would send and cause to be sent lulling communications to the clients that***, among other things, falsely denied that the settlement proceeds had been paid and falsely claimed that Girardi Keese could not pay the settlement proceeds to clients until certain purported requirements had been met, such as addressing supposed tax obligations, obtaining supposedly necessary authorizations from judges, and satisfying medical liens and other debts.
>
> (f)   As further part of their scheme and to conceal the embezzlements and misappropriations from the victim clients, defendants ***Girardi and Kamon would also send and cause to be sent lulling payments to the clients***, falsely representing and maintain the false pretense that such payments were "advances" on the purportedly yet-to-be received settlement proceeds, or "interest payments" on the settlement proceeds that purportedly could not be paid to the clients until the fabricated requirements were satisfied.

Indictment, ECF No. 1, ¶3(e)-(f) (emphasis added). Courts generally look skeptically on such strategic changes in position in order to protect the "dignity of judicial proceedings" and "against a litigant playing fast and loose with the courts." *Hamilton v. State Farm*

2

*Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (cleaned up) (discussing judicial estoppel).

That aside, the government is incorrect in claiming there is no evidence that Kamon is responsible for false statements to Girardi Keese clients. As pointed out by Girardi and Kamon in prior briefing, Kamon endorsed the indictment in this case as an accurate account of his actions during a proffer session, which necessarily includes the allegations that he would send and cause to be sent lulling communications to Girardi Keese clients. *See, e.g.*, Girardi Mot. for Severance, at 10; *See also id.*, Ex. E, at 1 ("AUSA Moghaddas then reviewed the attached indictment with Kamon. Kamon again acknowledged that the document was an accurate account of his actions . . . ."); Kamon Opp. to Gov. Mot. re: Proffers, ECF No. 253, at 5 ("He was purportedly also read the Indictment in this case and 'acknowledged that it was an accurate account of his actions.'").[2]

Obviously, Kamon's admission that he would send and cause to be sent false lulling statements—alleged by the government in the indictment and then confirmed by the government during a proffer session—is more than a scintilla of evidence that Kamon was responsible for the such statements. Beyond that, other evidence shows that Kamon knew and had access to case-specific information that went beyond accounting. *See, e.g.*, Mot. for Severance, Ex. A (proffer in which Kamon describes use of special masters in mass tort cases); Ex. J (July 2019 email confirming that Kamon kept client 1's settlement file in his office).

---

[2] Kamon did not state that the indictment was an accurate description of Girardi's actions.

3

### B. The government does not meaningfully dispute that the antagonism between Girardi and Kamon would destroy the benefits of a joint trial.

While the government argues that severance is not strictly required by law, it does not meaningfully dispute that severance would be a wise exercise of the Court's discretion because trial would otherwise be unmanageable. *Compare* Mot. for Severance, Section I.B *with* Gov. Opp., ECF No. 357, at 17 ("[W]hile some antagonism between GIRARDI's and KAMON's defenses may exist, that alone is insufficient to require severance."), 18 ("GIRARDI's and KAMON's defenses . . . do not rise to the level of precluding acquittal such that a severance would be required."). The defense maintains its position that, like the court in *United States v. Shkreli*, this Court should exercise its discretion to grant severance because a joint trial will be unwieldy and at least substantially risk the constitutional rights of Kamon and Girardi to present their defenses. 260 F. Supp. 3d 247, 249 (E.D.N.Y. 2017). The defense additionally notes that recent filings and events only highlight the difficulties that will come with a joint trial given the conflicting positions of the parties—perhaps best captured by Mr. Michael Severo's comment at the most recent pre-trial hearing that "Mr. [Charles] Snyder tells a nice story, it's just fiction." Tr. of 6.20.24, ECF No. 288, at 35:23-25. The Court should expect similarly sharp rhetoric in opening statements, throughout witness examinations, and in closing argument, as Girardi seeks to undermine Kamon's defense and *vice versa*.

In its motion to admit Kamon's proffer statements, for example, the government claimed that "[a]ny proffer statements that the government would seek to admit pursuant to this motion that reference Girardi are . . . unlikely to be challenged by Girardi." Gov. Mot. re: Proffers, at 15. But, as indicated in Girardi's severance motion and the government's opposition, Girardi is likely to challenge the government's use of certain of Kamon's statements that the government does not view as inculpatory of Girardi. *See, e.g.*, Gov. Opp., ECF No. 247, at 7 n.1 ("Indeed, the four examples [Girardi] cites in his

4

motion . . . are not inculpatory . . . ."). For his part, Kamon will certainly object to any use of his various proffers. His counsel was quick to object to the mere mention of any proffer during the most recent pre-trial hearing, which prompted a quick response from Girardi's counsel and then the Court. *See* Tr. of 6.20.24, ECF No. 288, at 37:25-38:10.[3]

The government also argues that evidence of the September 2020 exchange between Kamon's attorney and Girardi about a forgotten settlement agreement and payment should be excluded as irrelevant and unfairly prejudicial under F.R.E. 403. As with many of the government's unfair-prejudice arguments, the government does not specify what unfair prejudice it might face from the admission of such evidence. In any case, however, Kamon will likely have different unfair-prejudice or other arguments that the Court should exclude evidence involving his own counsel that is exculpatory for Girardi. Girardi's position is that such evidence is admissible and exclusion would violate his constitutional right to present a defense.

With these competing positions, there also is substantial danger that one defendant may be unfairly prejudiced by the spillover effect of evidence admissible against only one defendant. *See* Mot. for Severance, at 7-8 (explaining why evidence may be admissible against one defendant, but not the other); *see also United States v. Williams*, 878 F.2d 388 (9th Cir. 1989) ("To determine whether severance is required due to the prejudicial effect of spillover evidence, we focus on whether the jury can reasonably be

---

[3] The exchange proceeded as follows:
>   MR. SNYDER: Okay. I understand. The other thing is, just in terms of the amount of time, as I said in the papers, Kamon proffered with the government in June of 2023. They walked him through --
>   MR. SEVERO: I'm going to object to this. The proffer should not be part of this discussion. It should not be introduced.
>   MR. SNYDER: It's inconsistent with what is being said.
>   THE COURT: Wait. Wait. I don't think it's going to be necessary to my decision.

expected to compartmentalize the evidence as it relates to separate defendants in the light of its volume and limited admissibility.").

## II. To safeguard against *Bruton* issues, the Court should at least limit the government to offering statements from Kamon's June 21, 2023 proffer, rather than rely on vague government representations about what it might offer.

In its motion to admit Kamon's proffer statements, the government specifically addressed its intent to offer statements made by Kamon during a proffer on June 21, 2023. Gov. Mot. re: Kamon Proffers, ECF No. , at 6 n.2. ("Kamon's statements made during these other meetings are not the subject of this motion."). Outside of that motion, however, the government's representations about which of Kamon's various statements it might use have been vague. For instance, it indicated that its desire to use Kamon's proffer statements "***primarily*** relates to Kamon's admissions in the side fraud scheme where Girardi is not a defendant." Opp. at 18-19 (emphasis added). It additionally represented that it "will seek to ensure that inadmissible evidence is not improperly admitted at trial"—a meaningless statement given the parties' likely conflicting positions on what evidence is inadmissible. Opp. at 18.

Such indefinite and caveat-laden language leaves the government room to later argue that virtually any portion of Kamon's various proffers implicating Girardi are consistent with its pre-trial representations. Indeed, the government has offered other *post hoc* explanations of its representations in an attempt to shoehorn evidence. *Compare* Tr. 2.23.24, ECF No. 181, at 4:20-21 ("[W]e have endeavored to keep this trial within the four corners of the Indictment.") *with* Gov. Reply ISO Mot. re: Girardi Use of Settlement Funds, ECF No. 267, at 6 ("The government's representation was to limit its evidence of other executions, i.e., the dozens of other client matters where defendant and Kamon may have misappropriated funds – not to limit its evidence of defendant's misappropriation of client funds.").

So, even if the Court denies severance, it should limit the government to offering statements made by Kamon during the June 21, 2023 proffer so that potential *Bruton* issues are easier to identify and address before trial, or at least outside the presence of the jury. Otherwise, the government may seek to use any number of Kamon's hearsay statements at trial and create the need for hurried decision-making implicating Girardi's constitutional right to confront witnesses.

**III. Neither the government, nor counsel for Kamon, have done anything to alleviate the concerns that counsel for Kamon is a fact witness with a personal interest in Girardi's conviction, as well as a conflict with Kamon.**

In an attempt to gloss over the concerns stemming from counsel for Kamon's prior interactions and litigation with Girardi, the government attacks a strawman, suggesting that Girardi is arguing Kamon's counsel owes him a duty of loyalty. To the contrary, however, Girardi argues that Kamon's counsel is a fact witness and has personal and professional interests in Girardi's conviction, as well as an apparent conflict with Kamon. As a practical matter, it is not clear that these matters will be resolved by the current August 6th trial date, especially if Kamon's counsel has an incurable conflict with his own client. Indeed, neither the government, nor Kamon's counsel, have meaningfully addressed whether the circumstances impact counsel's duty of candor to the court or duty of loyalty to Kamon.

To avoid such issues, the government briefly argues that evidence of the September 2020 exchange between Kamon's counsel and Girardi regarding the forgotten settlement agreement and payment is irrelevant and unfairly prejudicial under F.RE. 403. The government first suggests that the exchange is irrelevant because it supposedly post-dates the alleged scheme period. But this claim is belied by the government's own words and actions. The government alleges in the indictment that Girardi engaged in a scheme continuing through at least in or around December 2020. *See also* Gov. Reply ISO ,

ECF No. 267, at 6 (government relying on allegation in indictment that scheme ran until December 2020). Even more telling, the government's own exhibit list includes a variety of documents from September, October, November, and December of 2020. The government also cites F.R.E. 403, but (for a third time) fails to meaningfully explain what unfair prejudice it might face. The Court should reject such arguments for the same reasons that it should reject the government's other arguments about lay testimony regarding Girardi's functioning during the alleged scheme. *See* Girardi Opp. to Gov. Mot. re: Post-Scheme Evidence, ECF No. 256, Section II.B.

## CONCLUSION

For the stated reasons, the Court should grant Girardi's motion for severance.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: July 12, 2024            By:  /s/J. Alejandro Barrientos
                                CHARLES J. SNYDER
                                SAMUEL CROSS
                                J. ALEJANDRO BARRIENTOS
                                Deputy Federal Public Defenders
                                Attorneys for Thomas V. Girardi

# DECLARATION OF J. ALEJANDRO BARRIENTOS

I, J. Alejandro Barrientos, declare as follows:

1. I am a Deputy Federal Public Defender representing Mr. Thomas V. Girardi in the above-captioned case.

2. **Exhibit J** to the above reply in support of Mr. Girardi's motion for severance is a true and correct copy of an email thread between Girardi Keese personnel, including Christopher Kamon. Identifying information (e.g., telephone numbers) have been redacted, as well as the name of the person identified as client 1 in the indictment.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: July 12, 2024            */s/J. Alejandro Barrientos*
                                 J. Alejandro Barrientos

9

# CERTFICATE OF COMPLIANCE

Undersigned counsel of record for Thomas V. Girardi certifies that this brief contains 2,312 words, which complies with the word limit of L.R. 11-6.1, incorporated by reference into the local rules for criminal cases by L.Cr.R. 57-1, as well as this Court's standing order regarding criminal cases. In making this certification, I have relied on the computer program used to prepare this brief (Microsoft Word)

DATED: July 12, 2024            By:  /s/J. Alejandro Barrientos
                                      J. ALEJANDRO BARRIENTOS