E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
ALI MOGHADDAS (Cal. Bar No. 305654)
Assistant United States Attorney
Corporate and Securities Fraud Strikeforce
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6527/1786
    Facsimile: (213) 894-6269
    E-mail:    scott.paetty/ali.moghaddas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 23-47-JLS |
|---|---|
| Plaintiff, | GOVERNMENT'S REPLY IN SUPPORT OF MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF DEFENDANT GIRARDI'S POST-SCHEME MENTAL CONDITION (DKT. 225) |
| v. | |
| THOMAS VINCENT GIRARDI and CHRISTOPHER KAZUO KAMON, | |
| Defendants. | Hearing Date: July 26, 2024<br>Location:    Courtroom of the Hon. Josephine L. Staton |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Scott Paetty and Ali Moghaddas, hereby files its reply in support of its motion in limine to preclude evidence of defendant Girardi's post-scheme mental condition (Dkt. 225).

//

This reply is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 12, 2024                    Respectfully submitted,

                                      E. MARTIN ESTRADA
                                      United States Attorney

                                      MACK E. JENKINS
                                      Assistant United States Attorney
                                      Chief, Criminal Division

                                               /s/
                                      SCOTT PAETTY
                                      ALI MOGHADDAS
                                      Assistant United States Attorneys

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

The Court's order allowing limited testimony by Dr. Chui clearly stated the importance of putting "guardrails" on her testimony "to ensure that it is relevant to the issues in this case." (Dkt. 235 at 16.) Specifically, the Court noted that evidence of defendant's mental status after December 2020 was admissible, but "only to the extent that it reflects upon what his mental status was during the relevant time period." (Id. at 16.) Nonetheless, defendant's opposition practically concedes that they intend to use Dr. Chui as a mouthpiece to admit otherwise inadmissible and prejudicial evidence of defendant Girardi's current mental status, including collateral witness interviews regarding his current functioning. (Opp. at 3.)

Despite the Court's clear directive, and the government's repeated requests seeking clarity regarding what post-2020 evidence defendant plans to introduce regarding defendant's mental state, defendant continues to refuse to provide this information. Thus, the Court should either exclude all post-2020 evidence, or require defendant Girardi to articulate specifically what post-2020 evidence he intends to introduce so that the Court and the parties can assess whether such evidence truly reflects defendant's mental status during the relevant timeframe and, thus eliminate the need for unwarranted delay due to repeated objections and potential side bars at trial.

Moreover, without well-defined limits on evidence related to defendant's post-2020 mental condition, there is a significant risk that either through Dr. Chui or a succession of collateral interviews the trial will devolve into topics such as defendant Girardi's personal hygiene, which bears minimal relevance, if any, to defendant

Girardi's mental state at the time of the charged offenses. Defendant's attempt to infect the jurors with this irrelevant and prejudicial information should be rejected. While the Court's order allows Dr. Chui to testify "regarding her diagnosis" of defendant (in order to then describe his potential symptoms years prior), there is no need for her to delve into the specifics of the collateral interviews, including through the introduction of testimony that seeks to arouse sympathy or other impermissible ends, with little or no bearing on facts at issue at trial.

Additionally, the Court should likewise limit lay witness testimony that is not relevant to defendant Girardi's mental state at the time of the offense. As articulated in the government's motion, evidence of defendant's memory issues related to the charged client cases (Mot. at 3) is certainly relevant, as are his memory issues in general during the relevant time period, but ancillary, anecdotal testimony such as defendant's Styrofoam cup collection or penchant for dirty socks is irrelevant and simply an improper attempt to mislead and confuse the jury.

For the reasons in the government's motion, and those below, the Court should exclude this testimony pursuant to Rules 401, 402, and 403.

**II. ARGUMENT**

    **A.  The Court Should Limit Dr. Chui's Testimony Regarding Collateral Interviews**

The Court has already ruled that Dr. Chui may testify regarding her current diagnosis of defendant Girardi. (Dkt. 235.) In reaching its decision, the Court expressly acknowledged that "one of the elements of the charged offenses is the specific intend to defraud,

2

making Defendant Girardi's mental state (<u>at the time of the charged offenses</u>) relevant.  (<u>Id.</u> at 7 (emphasis added).)  The government understands that the Court will allow Dr. Chui to testify regarding her current diagnosis of defendant so that she may then describe what defendant's symptoms may have been years prior during the relevant time period, <u>i.e.</u>, 2010-2020.  Thus, Dr. Chui's current diagnosis, "and how she arrived at that diagnosis," is relevant insofar as it sets the stage for her testimony regarding defendant's mental status in 2010-2020.  Because the government does not intend to dwell on Dr. Chui's current diagnosis of defendant, there is no need for her to elicit provoking and prejudicial testimony of marginal relevance from collateral interviews.

As the Court will recall, the parties' competency experts each reviewed collateral interviews from various individuals in connection with their reports on defendant's competency to stand trial.  Some of these collateral interviews were conducted by the Federal Public Defender's Office, including several of Margarita Munoz, the resident coordinator at defendant's senior living facility who stated, among other things, that she "has noticed a drastic decline in Mr. Girardi's selfcare compared to when he first moved in [in June 2022]" and that "lately he insists on wearing the same clothes he wore the day before" and that he "recently began using a towel to clean himself after bowel movements, which creates a mess."  (Dkt. 110, Ex. 38; <u>see also</u> <u>id.</u>, Ex. 39 ("In the last month or so, Mr. Girardi has required greater care.  Mr. Girardi now needs someone to stand outside the shower and provide him with prompts, like reminders to use soap.").)  Defendant should be precluded from eliciting this type of inflammatory testimony through Dr. Chui.  Testimony regarding

defendant's personal hygiene (or lack of) in 2024 is wholly irrelevant from facts at issue in this case, to wit, whether he defrauded clients in 2010-2020.  It is further highly prejudicial and minimally probative.  Indeed, the Court recognized this prejudice at the parties' June 20 hearing.  (See Dkt. 228 at 41 ("[B]ecause I tend to agree with you as to that.  I think there is also a 403 issue there, in terms of the jury and sympathies and not being able to set that aside[.]"); see also id. at 53 ("Let me be clear, when we were talking about whether she can testify about his current state, that is different from whether she can rely on tests she did after the events to extrapolate backwards as to how his state of mind, or his condition might have been earlier based on her knowledge of the progression of the disease.  [B]ut that is [] not the same as saying she can sit on the stand and talk about what his current condition is, or something that would be irrelevant to the time of the charges.").)

    Given that the government does not seek to make this trial a referendum on Dr. Chui's current dementia diagnosis, and instead will focus its cross-examination on defendant's understanding and capabilities during the relevant time period, the Court should prevent the defense from using Dr. Chui as a mouthpiece for otherwise inadmissible testimony.  See, e.g., Asetek Danmark A/S v. CoolIT Sys. Inc., No. 19-CV-00410-EMC, 2022 WL 21306657, at *20 (N.D. Cal. Oct. 4, 2022) ("Rule 703 was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion.").

Defendant claims that "[e]xcluding testimony about these informants would also prevent Dr. Chui from explaining the 'facts and data' supporting her opinions," (Dkt. 256 at 8), but the government submits that adherence to the Court's ruling requires limits to such information, especially information sourced from collateral interviews post-2020.  Moreover, Dr. Chui's opinions are based on more than secondhand interviews of collateral informants.  Indeed, Dr. Chui was defendant's pysician and personally saw him on three occasions, including a comprehensive review of his medical records and neuroimaging scans.  (Dkt. 206 at 1.)  Dr. Chui also conducted numerous mental status examinations and reviewed tests and examinations conducted by other experts retained by defendant Girardi.  (Id. at 1-6.)

Accordingly, the Court should preclude, or at the very least significantly curtail, Dr. Chui's testimony regarding the collateral interviews.

**B.   The Court Should Limit Lay Witness Testimony That is Not Relevant to Defendant Girardi's Mental State at the Time of the Offense**

As noted above, the Court has already ruled that defendant Girardi's "mental status is relevant only during the time period of the scheme charged in the Indictment, 2010 to December 2020[.]" (Dkt. 235 at 16.)  While the Court did note that certain post-2020 evidence could be introduced, it expressly limited such evidence "only to the extent that it reflects upon what his mental status was during the relevant time period." (Id.)  Defendant Girardi has notified the government that he seeks to introduce such post-2020 evidence (Dkt. 256-1, Ex. A), but he has refused to identify exactly what post-2020 evidence he plans to introduce, let alone how it

5

reflects on defendant's mental status during the relevant time period.  (Exhibit A attached hereto.)  Given the potential for this evidence to stray into areas that implicate Rule 403, the government's request for identification of these materials pretrial is reasonable and will avoid having such potentially inadmissible evidence elicited before the jury.  Accordingly, the Court should either exclude all post-2020 evidence, or require defendant Girardi to articulate specifically what post-2020 evidence he intends to introduce so that the Court and the parties can assess whether such evidence is truly "reflect[ive] upon what [defendant's] mental status was during the relevant time period."

The Court should also limit defendant's attempt to present certain lay witness testimony during the charged scheme.  Defendant's opposition states "the Court should permit lay testimony showing that Girardi's impairment impacted [his ability] to process information and manage a large organization."  (Mot. at 4, n. 1.)  However, defendant fails to show how isolated anecdotes of defendant's unusual behavior, e.g., collecting cups, supports that conclusion.  Defendant Girardi has already proffered other evidence, e.g., contemporaneous emails of defendant's confusion and witness accounts of defendant's failing memory as it related to the charged client cases.  (Dkt. 256 at 12-13.)[1]  Accordingly, additional lay witness testimony on

---

[1] Defendant claims the Court's determination of defendant's malingering was "based on incomplete information because the government did not produce various pieces of exculpatory evidence[.]" (Dkt. 256 at 11.)  Not so.  The "exculpatory" evidence defendant refers to are select emails where defendant's former colleagues mention that he "sounded confused" or that he had asked for a document "like 20 times."  (Id. at 12.)  These emails, which are contained on the law firm's email server that defendant has had access to since at least February, are hardly exculpatory.  Asking
*(footnote cont'd on next page)*

1 defendant's unusual activities would be minimally probative and
2 cumulative of other direct evidence.  Moreover, the issue at trial is
3 not whether defendant has mild cognitive impairment or some form of
4 dementia.  Therefore, to the extent such evidence is proffered to
5 further corroborate Dr. Chui's medical diagnosis, the risk of
6 confusing the issues and misleading the jury is severe.  Instead, the
7 Court should place reasonable limits on defendant's presentation of
8 mental condition evidence, including exclusion of attenuated and
9 inflammatory testimony.

**III. CONCLUSION**

For the foregoing reasons, and those articulated in the government's underlying motion, the Court should grant the government's motion.

---

for a document 20 times does not exculpate defendant's repeated, and explicit lies to numerous clients over a decades' long scheme. Sounding confused on a call does not exculpate defendant from stealing tens of millions of dollars to fund an extravagant lifestyle complete with two private jets, exotic sports cars, and a palatial estate. And, in any event, defendant's "confusion" was well documented in other evidence the defense presented during the extensive competency proceedings. (See Dkt. 150 (outlining multiple expert reports, pre- and post-hearing briefing, extensive exhibits, etc.).)  In agreeing to additional time for counsel to prepare for trial, the defense explicitly represented that "they are seeking a continuance for the purpose of preparing for trial, not as additional time to re-initiate competency proceedings." (Dkt. 184 at 5.)  This Court should not entertain any veiled attempt at a re-do of the competency proceedings, which took nearly a year to complete.

7