CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CHARLES J. SNYDER (Bar No. 287246)
Email: Charles_Snyder@fd.org
SAMUEL CROSS (Bar No. 304718)
Email: Sam_Cross@fd.org
J. ALEJANDRO BARRIENTOS (Bar. No. 346676)
Email: Alejandro_Barrientos@fd.org
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
THOMAS VINCENT GIRARDI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS VINCENT GIRARDI,<br><br>Defendant. | Case No. 2:23-cr-47-JLS-1<br><br>**FURTHER SUPPLEMENT TO <u>EX PARTE</u> APPLICATION TO CONTINUE TRIAL DATE FROM AUGUST 6, 2024 TO OCTOBER 8 OR 15, 20204** |

# DECLARATION OF CHARLES J. SNYDER

I, Charles J. Snyder, declare as follows:

1. I am a California-licensed DFPD appointed to represent Tom Girardi in this matter. Unless otherwise stated, I make this declaration based on personal knowledge and, if called as a witness, would attest to its contents under oath.

2. At approximately noon on July 13, Girardi filed an ex parte application to continue the trial date in this matter from August 6, 2024 to October 8 or 15, 2024. Among many other things, in seeking a continuance of the trial date, he wrote: "despite discussing evidentiary stipulations in mid-June, and despite my proposal of certain evidentiary stipulations on July 1, as of July 12, and despite the government's statements about circulating stipulations 'soon,' we have not received any stipulations from the government." Docket No. 274 at 10:10-13.

3. On the evening of July 14, nearly a month after stipulations were first discussed, the government sent draft stipulations. The draft stipulations were less than two full pages. The government offered no explanation for why the two-page document could not have been sent earlier given that the stipulations were first discussed in June and raised again by Girardi on July 1, among other times. It appears that, as with the late-disclosed witness materials, see Docket No. 275, the filing of the ex parte application caused the government to belatedly attempt to appear diligent even though, contrary to its promises in January ("we are willing to help the defense in whatever way possible"), it has not been. Indeed, while enthusiastically seeking to rush the defense at every turn, the government has taken a lax approach to its own obligations, repeatedly taking late and precatory actions for appearance's sake only after being called out.

4. The draft stipulations sent by the government were explicitly tied to exhibit lists, asking the defense to agree that all of the items on the government's exhibit list (see below for more) were admissible in exchange for the government's agreement to admissibility of the defense exhibit list. Not only does Girardi not have

1

an exhibit list for the many reasons discussed in his initial application, even if he did, he would have no obligation to disclose it to the government. Standing Order ¶ 10. Thus, the stipulations were not only late, but appear to have been drafted as a device for obtaining early access to a defense exhibit list to which the government is not entitled (and, again, does not exist). Further, as discussed below, but undisclosed to Girardi at the time that the stipulations were circulated and discussed, Girardi did not even have the current version of the government exhibit list to which it was asking him to stipulate.

5.  At present, the three parties are trading drafts and the stipulations remain unresolved. Girardi proposed edits to the stipulation on July 15, which the government accepted. Kamon then proposed further edits – the effect of which dilutes the value of the stipulations by reintroducing available objections – which remain unresolved. This process not only underscores the fundamental indeterminacy of the case at this point – which is why stipulations should have been circulated sooner – but the problems that will continually arise if this case proceeds as a joint trial, with Kamon and Girardi battling not only the government, but each other on an exhibit-by-exhibit basis. It is difficult to stress how different a trial looks if a litigant has to authenticate and establish hearsay exceptions for each document rather than if they are coming in by stipulation, which is why Girardi sought the substantial time saving, now lost, of resolving these issues earlier.

6.  Separately, on Monday, July 15, after receiving draft stipulations tied to exhibit lists, Girardi asked whether the exhibit list it had previously received from the government was final. Despite sending and receiving other emails, the government did not respond. Girardi then sent another email on July 16 asking if the government had produced its exhibit list. The government eventually sent back a new exhibit list. <u>The new exhibit list contains 84 new exhibits, which represent approximately 25% of the government's 372-exhibit list.</u>

7. I have not reviewed the new exhibits in detail since they were produced approximately an hour and a half ago. But it appears that many of the exhibits are large spreadsheets containing deposits and checks from six bank accounts for several years. Several non-spreadsheet exhibits span hundreds of pages. Others span thousands of pages, including at least one that appears to be roughly 5,000 pages. The new exhibits appear to have little, if anything, to do with the four client matters on which the government said that it would focus its case in January. See Docket No. 161 at 5:19-6:20. When asked whether this exhibit list was final, the government stated: "[w]e reserve the right to make further changes between now and trial."

8. I have attached my correspondence related to the stipulations and exhibit list as Exhibits 5 and 6.[1] I have attached my July 1 email about the stipulations as Exhibit 7. That email followed a conversation in mid-June during which, while discussing upcoming motions, the parties discussed a series of potential evidentiary deals to be struck.

9. Separately – and, again, only after the ex parte application was filed (see also Docket No. 275) – the government sent an email stating that it intended to produce witness interview notes on a rolling basis, as though it were doing the defense a favor. It then produced another witness interview from May, as well notes from seven additional interviews in July. Since the filing of the ex parte application on Saturday, the government has produced 20 notes/memoranda from trial-witness interviews dating from 2021 and July 2024, as well as numerous documents used in those interviews. According to the Indices, its latest productions span approximately 2,000 pages which,

---

[1] It is obvious that the government wanted to avoid mentioning that it had a substantially-revised exhibit list in advance of the Status Conference. Indeed, why else would it have sent stipulations tied to an old exhibit list and engaged in a back and forth with Girardi based on his review of the prior list – without ever mentioning that it had a substantially revised exhibit list – if not in an effort to conceal the changes until after the Court ruled on the continuance request? The continued overt and covert deception of the defense teams is improper and continues to waste their time.

3

in itself, is not a large amount, but is significant when it is comprised largely of materials related to trial witnesses, some of which have been in the government's possession for months or years.

      I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.  Executed July 16, 2024 at Los Angeles, California.

                                                  */s/ Charles J. Snyder*
                                                    Charles J. Snyder