CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CHARLES J. SNYDER (Bar No. 287246)
Email: Charles_Snyder@fd.org
SAMUEL CROSS (Bar No. 304718)
Email: Sam_Cross@fd.org
J. ALEJANDRO BARRIENTOS (Bar. No. 346676)
Email: Alejandro_Barrientos@fd.org
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
THOMAS VINCENT GIRARDI

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:23-cr-00047-JLS-1 |
| Plaintiff, | **EX PARTE APPLICATION FOR ORDER ISSUING SUBPOENAS DUCES TECUM** |
| v. | |
| THOMAS VINCENT GIRARDI, | |
| Defendant. | |

Thomas Girardi, through counsel, hereby applies for an order that the subpoenas submitted with this application be issued with early return, and that the costs of process and witness fees be paid in the same manner as are similar costs and fees for subpoenas served on behalf of the government. Girardi makes this application under Federal Rule of Criminal Procedure 17 and Local Criminal Rule 17-1, and bases it on the attached memorandum, the files and records in this case, and any other argument or information that the Court may consider.

Counsel conferred with counsel for the government prior to filing this

Application. The government indicates that it partially opposes one of Girardi's requests for subpoena issuance, as specified herein.

                                                Respectfully submitted,

                                                CUAUHTEMOC ORTEGA
                                                Federal Public Defender

DATED: July 17, 2024          By  */s/ Samuel Cross*
                                                SAMUEL O. CROSS
                                                Attorney for Thomas Girardi

## MEMORANDUM OF POINTS AND AUTHORITIES

Rule 17 provides generally that indigent defendants may apply to the court for subpoenas necessary to an adequate defense. See Fed. R. Crim. P. 17. Rule 17 also provides that the costs of service and witness fees be paid in the same manner as similar costs and fees are paid for witnesses subpoenaed on behalf of the government. See Fed. R. Crim. P. 17(b). Rule 17 further provides that a subpoena issued pursuant to Rule 17(b) can command not only the appearance of a witness but also the production of documents and objects. See Fed. R. Crim. P. 17(c). And Rule 17(c) provides that the Court may direct that such items be produced prior to trial and be subject to inspection by counsel. Id. The defense requests early production in response to the proposed subpoenas so that it may timely develop its defense, reciprocally produce any items it intends to seek to admit, and more efficiently present the subpoenaed information at hearings and trial. The attached Declaration of Samuel Cross provides further detailed justification for the requested subpoenas.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: July 17, 2024         By  */s/ Samuel Cross*

SAMUEL O. CROSS
Attorney for Thomas Girardi

## DECLARATION OF SAMUEL CROSS

I, Samuel Cross, declare as follows:

1. I am a California-licensed DFPD appointed to represent Tom Girardi in this matter. Unless otherwise stated, I make this declaration based on personal knowledge and, if called as a witness, would attest to its contents under oath.

2. The government has indicated that it will call as witnesses at trial Josie Hernandez, Kathleen Ruigomez, and Kimberly Archie.

3. Archie, in addition to being an important government witness in the Ruigomez matter, was also involved in the government's preparation of its case at multiple points. She sat in on multiple interviews with other witnesses (including Josie Hernandez's interview and interviews with the Ruigomezes)—a highly unusual circumstance. She also authored a rambling 116-page document, entitled BIG FAT FRAUD, which indicates it was "presented to" the Department of Justice and purporting to be a guide to various "frauds" perpetrated by Girardi and others.

4. Archie has recorded a three-part true-crime podcast, produced by Hurrdat Media, entitled Predator In Plain Sight: Exposing Tom Girardi. Archie discussed several aspects of her involvement in the case on the podcast. Archie will testify about these matters at trial. The podcast also includes material recorded by Hernandez and Ruigomez, both of whom discuss matters about which they will testify at trial. In addition, the podcast includes a lengthy interview with Alan Forsley, an attorney representing Kathleen Ruigomez and Joseph Ruigomez (another noticed government witness).

5. Podcasts and interview programs generally record far more material than they use. A single "raw" interview recording, or series of such recordings, is edited down and produced into the finished podcast, which is then made available to consumers. It is this finished podcast to which the parties currently have access.

6. Production companies generally retain the raw audio recordings used to create edited final podcasts. I believe it is likely Hurrdat Media maintains possession

1  of raw audio recordings used in the creation of the podcast, which I believe are likely to
2  contain further statements by Hernandez, Archie, Ruigomez, and Forsley, which I
3  believe will likely implicate the parties' trial presentation, and specifically Girardi's
4  presentation of evidence relating to the testimony of these witnesses.

5      7. Notably, United States v. Nixon, 418 U.S. 683 (1974), also dealt with a
6  request, in that matter by the Special Prosecutor, for similar material needed for similar
7  purposes. Nixon was named as an unindicted coconspirator in an indictment returned
8  against other individuals. Nixon, 418 U.S. at 687. The district court issued a trial
9  subpoena the prosecutor had requested for "tapes, memoranda, papers, transcripts or
10 other writings" memorializing meetings between the president and others. Id. at 688.
11 The White House had already released edited transcripts of some of the conversations,
12 so the subpoena request was in effect an attempt to obtain the original tape recordings
13 that formed the basis of the transcripts already released. Id. The Supreme Court held,
14 inter alia, that the government made a sufficient preliminary showing that its request for
15 the tapes met Rule 17(c)'s tripartite requirements of relevancy, admissibility, and
16 specificity. Id. at 700.

17     8. The raw recordings are highly likely to contain statements by trial
18 witnesses regarding issues relevant to the determination of this case. In order to gather
19 recorded material and statements for presentation at trial relating to these witnesses
20 (Archie, Ruigomez, and Hernandez), I am seeking issuance of the attached proposed
21 subpoena for the raw audio of the above-described podcast.

22     9. Separately, Joseph and Kathleen Ruigomez sued ACTS, the law firm that
23 previously represented them when they sued Girardi over alleged unpaid settlement
24 money. ACTS negotiated a monetary settlement with Girardi on behalf of the
25 Ruigomezes, based on monies Girardi had allegedly owed to the Ruigomezes and not
26 disgorged. The Ruigomezes then accused ACTS of not paying them what was owed
27 based on the Girardi settlement, and of various conflicts of interest, and filed suit
28 against ACTS with new counsel. This litigation, Ruigomez v. ACTS, Los Angeles

1  Superior Court Case Number 23STCV01084, had proceeded to discovery until the
2  government successfully sought a stay of all proceedings in that matter on March 6,
3  2024.  That stay was granted on March 12, 2024.
4      10.  Nevertheless, it appears likely that depositions may already have been
5  conducted and discovery reciprocally produced in this matter.  The litigation has to do
6  both with ACTS's representation of the Ruigomezes against Girardi, and derivatively
7  but comprehensively with the underlying dispute between the Ruigomezes and Girardi,
8  which will be the key subject of the Ruigomezes' testimony at trial.
9      11.  In support of my belief that some depositions may already have occurred,
10 and that document discovery had likely begun, I attach hereto as Exhibit A the
11 unopposed (and ultimately successful) ex parte application of the government in
12 Ruigomez v. ACTS to stay that litigation.  Counsel for the government represented in
13 that filing: "The government understands that discovery in this civil matter is
14 underway and that deposition notices have been issued." Ex. A at 1.  Exhibit A to that
15 filing also represents, in an email from government counsel to the parties' counsel, that
16 "all scheduled depositions, including Joseph and Kathleen Ruigomez's depositions,
17 will be suspended."  It is unclear whether any depositions occurred, although it is not
18 clear that none had yet occurred.  Given the posture described by government counsel,
19 it is highly likely that at least some and potentially significant amounts of document
20 discovery had already occurred.
21     12.  In order to gather material for presentation at trial, including statements or
22 representations made by the Ruigomezes or their authorized representatives, and any
23 and all documentary materials relating to the underlying matter between the
24 Ruigomezes and Girardi, which will be directly at issue at trial, I am seeking issuance
25 of the attached proposed subpoena to counsel for the parties to Ruigomez v. ACTS,
26 requesting discovery produced to date and any and all deposition transcripts in
27 possession of the parties.
28     13.  As discussed in Paragraph 15, infra, the government opposes this request

3

as overbroad insofar as it seeks not just depositions that have occurred, but also document and other discovery that has been produced. However, as explained in Paragraph 9, supra, the subject of the ACTS litigation is what ACTS allegedly owes the Ruigomezes based on what ACTS recovered from Girardi on the Ruigomezes' behalf. Count II of the indictment in the instant matter describes one of the wires that was sent to ACTS in partial payment of money allegedly owed the Ruigomezes. The ACTS litigation and the Girardi matter are thus extensively overlapping, and a subpoena for discovery material produced in that matter is not overbroad, but satisfies the requirements of Rule 17(c).

14. As to both sets of requests, because the subpoenaed materials are likely to be voluminous, I am asking that they be produced with early return so that all parties – the defense and the government – can timely review and prepare them for use at trial. Also, as a matter of expedience and practicality, I included language in the [Proposed] Order authorizing the recipient of a subpoena to produce documents and materials directly and electronically to the parties, rather than having the records produced first to the Court and then to the parties.

15. On July 17, 2024, I contacted counsel for the government by email to see whether the government opposed issuance of the subpoenas described herein, in the manner described herein. The government stated that it a) does not oppose Girardi's requested subpoena seeking raw audio materials from Hurrdat Media; b) does not oppose Girardi's request for deposition materials from the ACTS litigation; but c) does oppose Girardi's request for "any and all discovery produced by and/or to you, in any form" as overbroad. Proposed ACTS Subpoena.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed July 17, 2024 at Los Angeles, California.

                                              */s/ Samuel Cross*
                                              Samuel O. Cross