UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>THOMAS VINCENT GIRARDI, and<br>CHRISTOPHER KAZUO KAMON,<br><br>    Defendants. | Case No. 2:23-CR00047-JLS<br><br>**ORDER RULING ON PRETRIAL EVIDENTIARY MOTIONS** |

    Presently before the Court are four pretrial motions relating to evidentiary issues. The Court finds these motions appropriate for resolution without a hearing.

**I.    RELEVANCE AND RULE 403 BALANCING**

    Federal Rule of Evidence 104 provides that preliminary questions about admissibility may be made on the basis of evidence that is itself inadmissible. It also provides that admissibility may be premised on the Court's factual findings on disputed issues, and that the Court may conduct (and in some instances must conduct) a hearing regarding admissibility outside the presence of the jury. Fed. R. Evid. 104(a)-(c). Admissibility is determined by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

    "Irrelevant evidence is not admissible." Fed. R. Evid. 402. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the

evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b).

Rule 403 sets up a qualitative balancing test to provide the exclusion of evidence where its probative value is substantially outweighed by certain other factors. It provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403. Rule 403's balancing test favors admission by requiring that the probative value of the evidence be "substantially outweighed" by one or more Rule 403 counterbalancing considerations: "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

## II. DEFENDANT GIRARDI'S MOTION IN LIMINE TO EXCLUDE INJURY EVIDENCE[1]

Pursuant to Federal Rules of Evidence 401, 402, and 403, Defendant Girardi seeks to exclude evidence of (1) the nature of the injuries to the clients named in the Indictment, and (2) financial consequences faced by those clients as a result of not receiving settlement funds[2] on the grounds that the evidence is either irrelevant, or if relevant, then substantially more prejudicial than probative.

The existence and general nature of the injuries are relevant to Defendant Girardi's representation of the clients, which is integral to the charged scheme. The injuries are the beginning of the narrative of the alleged scheme: The clients suffered loss of life and/or personal injuries to themselves and/or their family members; the clients thereafter obtained

---

[1] (Doc. 215 (Mot.); Doc. 250 (Opp.); Doc. 264 (sealed Ex. 4); Doc. 273 (Reply).)

[2] This second issue was not placed squarely before the Court until Defendant Girardi's Reply brief.

legal representation; Defendant Girardi provided that legal representation on a contingency basis and settled their cases for substantial sums of money; the settlements were funded by defendants and/or insurers; and both Defendants allegedly withheld funds that should have been paid to the clients.

The specifics of the injuries are not of great importance to this narrative. It is enough to describe them generally as "personal injury," "bodily injury," "loss of life," and the like, as may be applicable. Detailed elaboration on or graphic descriptions of injuries are not relevant. Generally, to the extent evidence regarding injuries appears in the Government's exhibits, that evidence will be admitted without redaction. Testimony beyond the basic nature of the injuries giving rise to the claims is not relevant and will be excluded.

To the extent evidence of financial consequences were communicated to Defendants, or acknowledged by Defendants, those communications are relevant to the element of intent. (*See* Opp. at 6.) Exhibits reflecting such financial consequences may be admitted without redaction. The amount of loss to each client referenced in the Indictment is relevant to intent and is admissible.

As for the Rule 403 balancing test, on one side of the scale, evidence regarding the nature of the injuries (and thus, the nature of the legal representation) and the financial consequences of allegedly diverted settlement funds, including evidence of the amount of loss suffered by each of the clients identified in the Indictment, is of moderate probative value as to the element of the intent to deceive and cheat. And limited as described above, the evidence is not inflammatory.

The Court likewise discerns no danger of confusion to the jury. The Court will consider a limiting instruction regarding the evidence in light of defense counsel's contention that this evidence invites jurors to exceed their role as impartial triers of fact. (*See* Mot. at 9 (suggesting the evidence will invite jurors to become "champions of vengeance seeking to restore the claimants and punish" Defendant).)

Subject to the limitations identified herein, Defendant's Motion to Exclude Injury

Evidence is DENIED.

### III. GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OF DEFENDANT GIRARDI'S POST-SCHEME MENTAL CONDITION[3]

The Government seeks to exclude evidence of Defendant's mental condition after the end of the charged scheme, that is, after December 2020.  (*See* Indictment at 4.)  The Court has considered this evidence in the context of expert testimony, holding that defense expert Dr. Chui could analyze "*post hoc* evidence" of Defendant Girardi's mental state "as an indicator of what [his] mental state was during the relevant time period."  (Doc. 235 at 15-16.)  The Court expressly noted, though, that evidence of "Defendant Girardi's mental status after December 2020 is relevant only to the extent that it reflects upon what his mental status was during the relevant time period."  (*Id.* at 16.)

Against this background, to the extent Dr. Chui relied on certain lay witness observations that occurred during "the first few months of 2021" (*see* Opp. at 6) to arrive at her conclusion regarding Defendant Girardi's mental state during the time period of the charged scheme, she may testify as to that.  Lay witnesses with personal knowledge of the events upon which Dr. Chui relies may also testify, subject to limitations on cumulative testimony.  Such evidence would not be confusing to an average juror, and the Court will give the jury a limiting instruction that evidence regarding post-December 2020 time periods must be considered only to the extent such evidence reflects on Defendant Girardi's condition during the relevant time period.  In addition, to the extent Dr. Chui relates hearsay information upon which she relied in forming her opinion, the Court will give a limiting instruction as to the manner in which the jury may consider it.

Subject to the limitations identified herein, the Court DENIES the Government's Motion in Limine to Preclude Evidence of Defendant Girardi's Post-Scheme Mental Condition.

---

[3] (Doc. 225 (Mot.); Doc. 256 (Opp.); Doc. 270 (Reply).)

## IV. GOVERNMENT'S MOTION IN LIMINE TO ADMIT EVIDENCE OF DEFENDANT GIRARDI'S MISAPPROPRIATION OF SETTLEMENT FUNDS[4]

The Government seeks an order that evidence of the payment of funds to Defendant Girardi's wife's entertainment company, EJ Global, is admissible. (*See* Mot. at 1-2.) It does so in order to counter an anticipated defense that Defendant Girardi transferred personal funds into Girardi Keese trust and operating accounts in order to cover disbursements to clients and firm expenses, or that Defendant Kamon's theft of money in the "side fraud" caused Defendant Girardi's inability to pay his clients.. The evidence identified by the Government, that there were payments made from Girardi Keese to EJ Global totaling over $25 million, is relevant evidence of the alleged scheme to defraud and to the government's burden of proving that Defendant Girardi acted with the intent to deceive and cheat his clients. Alternatively, such evidence is "inextricably intertwined" with evidence of the charged offenses. *See United States v. King*, 200 F.3d 1207, 1215 (9th Cir. 1999); *United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1327 (9th Cir. 1992).

The Court rejects Defendant Girardi's contention that such evidence exceeds the scope of the evidence to which the Government represented it would limit itself. (*See* Opp. at 9-13.) The Court rejected this argument in its Order Denying Defendant Girardi's Ex Parte Application to Continue Trial. (*See* Doc. 283 at 2.) On the same grounds it rejects it here.

In considering Rule 403 balancing, payment of over $25 million from Girardi Keese accounts to EJ Global appears to lack any purpose related to the operations of Girardi Keese and to be unconnected from any disbursement to clients of the firm. In this manner, the evidence is probative as to the identity of the entity to which a significant amount of funds were transferred from Girardi Keese that were unrelated to client disbursements or

---

[4] (Doc. 214 (Mot.); Doc. 258 (Opp.); Doc. 267 (Reply).)

payment of operating expenses. Defendant Girardi argues that there is a prejudicial element to this evidence that will "focus jurors' attention not on the details of the scheme to defraud, but on Erika Girardi's music and entertainment career." (Opp. at 15.) The Court agrees that this evidence will identify the large amount paid out and the identity of the payee. But there is no indication that this evidence, apparently in the form of mere financial records, would lead to unfair prejudice. But in any event, the evidence is highly probative: Evidence that over $25 million was paid from Girardi Keese accounts to an entity affiliated with Defendant Girardi's wife is highly probative as to the existence of the scheme alleged in the Indictment, namely, that Defendants unlawfully diverted settlement funds due to clients for their own purposes. Therefore, any danger of unfair prejudice that would derive from the specific type of entity involved would have to be weighty in order to counsel against admission of the evidence. The danger of unfair prejudice as a result of the proffered evidence does not in this instance substantially outweigh the probative value of that evidence.

And although not necessary to the Court's ruling on the Rule 403 issue, this conclusion is especially true to the extent the EJ Global evidence is offered in rebuttal to the anticipated defense that Defendant Girardi contributed his own funds to the coffers of Girardi Keese.

The Court GRANTS the Government's Motion to Admit the EJ Global Evidence.

**V.     GOVERNMENT'S MOTION IN LIMINE TO ADMIT AT TRIAL EVIDENCE OF DEFENDANT KAMON'S FLIGHT FROM PROSECUTION[5]**

The Government seeks admission of evidence regarding Defendant Kamon's flight from prosecution as consciousness of guilt. According to the Government, as early as December 2020, Defendant Kamon made statements to his girlfriend that he feared being

---

[5] (Doc. 218 (Mot.); Doc. 255 (Def. Girardi Joinder in Motion); Doc. 252 (Opp.); Doc. 268 (Reply).)

implicated in a case involving the handling of Girardi Keese settlement funds. He stated that he wanted to change his name and hide from authorities. Later, in 2022, a few months after visiting the Bahamas with his girlfriend, Defendant Kamon purchased a residence there for $2.4 million, which he believed would qualify him for permanent residency. Defendant Kamon flew from Los Angeles to the Bahamas in September 2022, but did not return on his previously booked flight. Instead, he flew to his sister's home in November 2022, where he was arrested. He has remained in custody since that time.

Generally, although far from conclusive, evidence of flight is admissible to show consciousness of guilt. Ultimately, the "degree of confidence with which four inferences can be drawn" determines the probative value of evidence of flight:

> (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

*United States v. Felix-Gutierrez*, 940 F.2d 1200, 1207 (9th Cir. 1991). These inferences are all sufficiently strong in this case to support admission of the proffered evidence as evidence of flight.

First, Defendant Kamon's alleged actions in buying a residence with the understanding that it would qualify him for permanent residency in the Bahamas is behavior consistent with flight. Second, his statements link the desire to leave the United States to consciousness of guilt; according to the Government, Defendant Kamon made statements to his girlfriend that he feared he would be implicated in criminal activity and that for that reason, he wanted to flee. The timing suggests preparation to abscond when faced with allegations of the events underlying charges relating to the handling of Girardi Keese settlement funds, which would include the charges in this case, the related case in this district, and a similar case in the Northern District of Illinois. Third, although he argues otherwise, the timing of Defendant Kamon's actions dovetail with the events

relevant to the present case. He discussed the fear of prosecution and the desire to flee at the time *Lion Air* co-counsel initiated civil proceedings in the Northern District of Illinois in December 2020. His actions in traveling and in acquiring a residence in the Bahamas in late 2022 occurred during the few months preceding the cases filed in this district and in the Northern District of Illinois, all of which were filed in the first few months of 2023. And finally, Defendant Kamon's statements regarding his fear of prosecution, his desire to flee and evade justice, and his actions in implementing a plan to do so are indicative of actual guilt.

Contrary evidence pointed out by the defense is insufficient to detract from the admissibility of the evidence. The jury may weigh the evidence and determine that, based on other evidence pointed out by his defense counsel, there was nothing suspicious about Defendant Kamon's failure to board his return flight. After all, he had done that before. Likewise, the jury could view favorably the evidence that Defendant Kamon did not change his name. The Court finds only that the proffered evidence of Defendant's flight is admissible because it meets the specific standard for admissibility.

The Court GRANTS the Government's Motion to Admit Evidence of Defendant Kamon's flight.[6]

**IT IS SO ORDERED.**

DATED: July 19, 2024

_____
HON. JOSEPHINE L. STATON
United States District Judge

---

[6] The Court recognizes the Government may not wish to admit the evidence in a separate trial against Defendant Girardi. But Defendant Girardi joined in the Government's Motion, and therefore the Court provides a ruling. While the Court does not agree that Kamon's alleged flight in and of itself "tends to show . . . Girardi's lack of guilt" (Joinder at 2), it is evidence that generally supports Defendant Girardi's defense that Kamon is solely responsible for the alleged fraudulent scheme. Hence, whether proffered by the Government or by Defendant Girardi, the evidence is admissible.