CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CHARLES J. SNYDER (Bar No. 287246)
Email: Charles_Snyder@fd.org
SAMUEL CROSS (Bar No. 304718)
Email: Sam_Cross@fd.org
J. ALEJANDRO BARRIENTOS (Bar. No. 346676)
Email: Alejandro_Barrientos@fd.org
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
THOMAS VINCENT GIRARDI

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS VINCENT GIRARDI,<br><br>Defendant. | Case No. 2:23-cr-47-JLS-1<br><br>**THOMAS GIRARDI'S OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION EXCLUDING OR LIMITING THE KAMON EVIDENCE** |

# TABLE OF CONTENTS

OPPOSITION ............................................................................................................. 1

    1. Not only is the challenged evidence relevant, Girardi has a Constitutional right to present it. ............................................................................................. 5

    2. The government will suffer no unfair prejudice from having its case tested through truthful evidence in the Constitutionally-established adversarial process. ................................................................................... 10

    3. There is no basis to limiting Girardi's presentation of compelling exculpatory evidence. ............................................................................... 12

CONCLUSION ....................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

Aycock v. R.J. Reynolds Tobacco Co.,
  769 F.3d 1063 (11th Cir. 2014) ................................................................. 11

Crane v. Kentucky,
  476 U.S. 683 (1986) ............................................................................... 2, 10

Dortch v. Fowler,
  588 F.3d 396 (6th Cir. 2009) ....................................................................... 9

Duncan v. State of La.,
  391 U.S. 145 (1968) ..................................................................................... 9

Lunbery v. Hornbeak,
  605 F.3d 754 (9th Cir. 2010) ....................................................................... 2

Old Chief v. United States,
  519 U.S. 172 (1997) ................................................................................... 13

Pennsylvania v. Ritchie,
  480 U.S. 39 (1987) ................................................................................. 2, 10

United States v. Crenshaw,
  698 F.2d 1060 (9th Cir. 1983) ................................................................... 12

United States v. Crosby,
  75 F.3d 1343 (9th Cir. 1996) ....................................................................... 2

United States v. Cruz-Garcia,
  344 F.3d 951 (9th Cir. 2003) ..................................................................... 11

United States v. Haischer,
  780 F.3d 1277 (9th Cir. 2015) ............................................................. 11, 12

United States v. Kamon,
  CR-23-24-JLS ............................................................................................. 1

United States v. Kamon,
  CR-21-24-JLS ............................................................................................. 1

United States v. Leonard-Allen,
  739 F.3d 948 (7th Cir. 2013) ....................................................................... 9

United States v. Vallejo,
    237 F.3d 1008 (9th Cir.) .................................................................................2

United States v. Whitman,
    771 F.2d 1348 (9th Cir. 1985) ......................................................................12

United States v. Whittington,
    455 F.3d 736 (6th Cir. 2006) .........................................................................9

Whitehead v. Bond,
    680 F.3d 919 (7th Cir. 2012) .......................................................................11

**Federal Rules**

Fed. R. Evid. 403 .................................................................................... 11, 12

Fed. R. Evid. 404(b) ........................................................................................7

*In other words, you both agree that to tell the whole story, you need to bring in this evidence. What that story will show, you differ on.*

6/20/2024 Tr., Docket No. 228, at 33:4-6.

## OPPOSITION

During the 10-year scheme period charged in this case, Chris Kamon, Girardi Keese ("GK")'s CFO, embezzled tens of millions of dollars from the firm through multiple frauds, some sophisticated and some brazenly simple. Kamon concealed those thefts from Tom Girardi by cooking the books, destroying and manipulating evidence, lying and enlisting others to lie, and consolidating control over the firm's financial operations to the point where, as the government rightly put it, he "enjoyed unfettered access to GK accounts with virtually no oversight." See United States v. Kamon; CR-23-24-JLS, Docket No. 17 at 5:17-20. Whether taken directly from the trust account or from operating accounts funded by the trust account, see id. at 5:11-14; United States v. Kamon; CR-21-24-JLS, Docket No. 1 ("Kamon Complaint") ¶¶ 11-12, all of this money ultimately came from client recoveries.

Evidence of Kamon's secret thefts, carried out as Girardi's cognitive decline left him unaware of the most basic happenings at the firm, is essential to Girardi's defense that he did not commit the crimes charged in this case. Indeed, as Girardi explained on June 20, which was a partial summary offered for the Court's general edification,[1] this evidence will be offered to prove Girardi's own lack of knowledge and intent (elements of the crime), to rebut claims that he directed the charged conduct and engaged in joint criminal activity with Kamon (the government's theory), and to establish Kamon's opportunity, motive, and plan for improperly diverting the charged client funds without

---

[1] Girardi incorporates by reference the detailed arguments from his Opposition to Kamon's 404(b) motion (Docket No. 201), as well as his arguments from the June 20 hearing (Docket No. 228 at 17:9-35:19), as well as the severance order (Docket No. 284), as well as the order on motions in limine, Docket No. 289), the latter two of which tacitly acknowledge that Girardi has a right to present the challenged evidence as argued in the former two.

1

Girardi's knowing involvement. Not only is this evidence inarguably truthful and admissible, stripped of the ability to present it, Girardi would be effectively disabled from answering the question that any jury will need answered: if Girardi is innocent, who is responsible for the missing money?

The Ninth Circuit has repeatedly reversed convictions where courts have excluded similar evidence, explaining that: "[i]f the evidence that someone else committed the crime is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic but should afford the accused every opportunity to create that doubt. United States v. Crosby, 75 F.3d 1343, 1349 (9th Cir. 1996) (cleaned up, emph. added, reversing conviction); United States v. Vallejo, 237 F.3d 1008, 1023-24 (9th Cir.), opinion amended on denial of reh'g, 246 F.3d 1150 (9th Cir. 2001) (same). Preventing Girardi from presenting evidence of Kamon's secret frauds would not just be evidentiary error, but an error of Constitutional dimension. Crane v. Kentucky, 476 U.S. 683, 690 (1986) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense"); Pennsylvania v. Ritchie, 480 U.S. 39, 56 (1987) ("[C]riminal defendants have the right to . . . put before a jury evidence that might influence the determination of guilt"); Lunbery v. Hornbeak, 605 F.3d 754, 760 (9th Cir. 2010) ("[The] constitutional right [to present a defense] is violated by the exclusion of probative admissible evidence that another person may have committed the crime").

Nonetheless, by ex parte application filed less than three weeks before trial,[2] the

---

[2] The government contends that its application is timely because its position on the relevance, interrelatedness, and prejudice of this evidence depended on whether it wanted to use the evidence or whether Girardi wanted to use the evidence, and, since losing the severance motion, its position recently changed. Girardi disputes that the government's change of plans is a proper excuse for failing to adhere to deadlines or requiring him to re-brief the complete exclusion of his defense on an ex parte basis two weeks before trial. The government could have sought a limiting instruction when the

government seeks to preclude this evidence, and with it Girardi's entire defense, even though its admissibility was an implicit basis for severance, see Docket No. 284 at 3 (granting severance because "[d]efendant Girardi has indicated a defense that will tend to show he was himself fooled by his co-defendant's deceptions" and "[Girardi] claims

---

issue was initial briefed in May, at which time, rather than sitting it out, Girardi sought to have the matter settled.  Docket No. 228 at 17:15-20 ("The short answer to your question is I don't think that that is a necessary determination at this point.  But I will say that I think it would be useful, because we absolutely intend to rely on this evidence at trial.").  Indeed, Girardi argued at the time that the admissibility of the Kamon evidence should be consolidated with severance, and that litigating the issues separately would "lead to a wasteful duplication of resources."  Docket No. 190 at 2.  The government successfully opposed, arguing:

> The government also understood that defendant Girardi would seek to separately introduce such evidence at trial as well, although the government would oppose the admissibility of such evidence in any trial against defendant Girardi only, if the case is severed over the government's objection.  Given the current schedule, and that the Court is already set to hear argument on the pending motions related to the juror questionnaire (Dkt. 186) and Dr. Chui (Dkt. 188) on June 20, the government believes that the briefing schedule and argument should remain joined with the pending motions.  The current schedule is more efficient and provides sufficient time for the parties to incorporate the Court's ruling, which will impact the government's case-in-chief and defendants' respective trial strategies.  Conversely, holding a third hearing, as proposed by defendant Girardi, (see Dkt. 190 at 2 (requesting a third, separate hearing on July 5 or 12, in addition to the presently scheduled hearing on June 20 and the existing hearing on pretrial motions on July 26)), only serves to unnecessarily expend resources and delay these proceedings.

Docket No. 193 at 2:1-18 (footnotes omitted).  The government also could have moved in the alternative in June, on the motions deadline, knowing that its position may change based on the severance order.  Instead, it elected not to raise the issue earlier, banked on winning the severance motion, and now seeks to shift the burden of its late-breaking change of plans onto Girardi and the Court.  The motion should be denied simply on the basis that the government failed to adhere to the deadlines it has insistently imposed on Girardi, which he has consistently complied with.  The government's own last-minute (but foreseeable) change of heart is not a valid reason to excuse compliance with the rules.

1  exploitation by [Kamon] in a manner that is relevant to a mens rea element of jointly
2  charged offenses"), and even though the Court has tacitly acknowledged in recent
3  orders that Girardi has a right to present it, Docket No. 289 at 5 (admitting EJ Global
4  evidence, in part, to "counter an anticipated defense . . . that Defendant Kamon's theft
5  of money in the 'side fraud' caused Defendant Girardi's inability to pay his clients");
6  id. at 8 & n.6 ("While the Court does not agree that Kamon's alleged flight in and of
7  itself 'tends to show . . . Girardi's lack of guilt' (Joinder at 2), it is evidence that
8  generally supports Defendant Girardi's defense that Kamon is solely responsible for the
9  alleged fraudulent scheme").
10        In so doing, the government does not dispute that the challenged evidence is
11  truthful. Nor could it, because it charged a federal case based on the same evidence,
12  and intended to present the same evidence to Girardi's jury until last week. Instead, it
13  argues that the evidence supporting Girardi's defense is irrelevant – meaning that it has
14  no tendency, even incrementally – to make a fact of consequence like mens rea more or
15  less likely. But see Docket No. 284 at 3 (granting severance, in part, because "[Girardi]
16  claims exploitation by [Kamon] in a manner that is relevant to a mens rea element of
17  jointly charged offenses"). And even if the evidence is relevant, the government argues
18  the Court should preclude Girardi's defense because admitting it would unfairly
19  prejudice the government (which, again, sought to present the same evidence to
20  Girardi's jury until last week). In the alternative, the government argues that the Court
21  should limit the evidence, effectively imposing a "mercy rule" on defense evidence of
22  innocence, and stripping Girardi of his equal right to tell a story with evidentiary
23  richness as opposed to a sterile recitation of the facts.
24        The Court should reject these dangerous invitations to reversible error, which are
25  not only wrong, but if not flatly inconsistent with the government's prior positions, are
26  consistent in such a fine way that it evades Girardi's facile understanding. Compare
27  Docket No. 200 at 8:28 ("Defendant Kamon's involvement in the Side Fraud Scheme is
28

directly related to his involvement in the Main Fraud Scheme") with Docket No. 288 at 3:27-4:2 ("Although there may have been common elements between the schemes, such as the same bank accounts being used, the two schemes involved completely different mechanics"). The Kamon evidence is relevant and admissible for the many reasons that have already been explained in detail, see Docket No. 201; Docket No. 228 at 17:9-35:19, which the Court has at least tacitly acknowledged in multiple orders, Docket Nos. 284, 289, and as briefly explained again below.

***1. Not only is the challenged evidence relevant, Girardi has a Constitutional right to present it.*** The government's case turns in significant part on Girardi receiving accurate information about the firm's finances from Kamon, accurately understanding that information, and working with Kamon to carry out the alleged fraud. It also turns on – and many government witnesses will testify – the premise that Girardi was aware of and called the shots on all of the firm's significant decisions, especially anything related to finances. Girardi's defense, in turn, depends on showing that he was not a knowing and intentional participant in the alleged scheme to defraud, that he was not receiving and/or understanding accurate information from Kamon, and that Kamon was the true culpable perpetrator.

The exact nature and extent of Kamon's deception of Girardi regarding the firm's financial affairs is critical to this defense. The details of Kamon's theft, like the details related to EJ Global, make clear that Kamon was directing the payments and that they would not have been authorized by Girardi. See Docket No. 200 at 6:24-7:2 (making the point that the specifics of the transactions are relevant to show the identity of the perpetrator); Docket No. 214 at 4:26-5:7 ("For example, by authorizing and directing that law firm funds be used to pay for his ex-wife's entertainment career, defendant was engaging in exactly the sort of fraudulent diversion of client settlement funds that defendant Kamon undertook in the Side Fraud Scheme. Such activity clearly constitutes a part of the conduct that serves as the basis for the criminal charge and

1 shows, at a minimum, that by directing Girardi Keese accounting personnel to make
2 these payments for the benefit of EJ Global defendant Girardi knowingly and
3 intentionally funneled payments sourced from client funds for the improper personal
4 enrichment of his family members."). Comparing the way that the money was spent to
5 the way that Kamon falsely booked the payments – as the firm's ledger keeper on
6 whom Girardi relied – is likewise critical to showing how he manipulated the firm's
7 financial records for the purpose of deceiving Girardi. The degree to which Kamon
8 was able to move money around the firm without Girardi's knowledge or involvement,
9 the way that he was concealing that movement, and the number of different ways that
10 he was doing it, is also critical to the notion that Girardi was not aware of Kamon's
11 activities and that Kamon was able to act autonomously.

12   Not only is this evidence core to Girardi's defense theory, it will respond directly
13 to the anticipated testimony of several government trial witnesses who will say that
14 Girardi knew and approved of every significant financial transaction related to the firm.
15 It will also respond to the government's basic theory: that Girardi was receiving
16 accurate information from Kamon about the firm's finances, which is a necessary
17 predicate of the knowledge and intent elements. And it will respond to the case that the
18 government itself charged in the Indictment, which alleges joint criminal conduct by
19 Girardi and Kamon, with the requisite intent, throughout the alleged decade-long
20 scheme.

21   Like the details, the magnitude of the fraud is also essential because, logically,
22 the larger the fraud the more likely it is that the money was coming from the trust
23 accounts. Indeed, while the firm had legitimate annual revenues of tens of millions of
24 dollars, it also had significant expenses, including two offices, 80-100 employees, case
25 costs, vendors, and so on. While, understandably, there still would have been a
26 substantial remainder for Girardi, the sole equity partner of one of the most successful
27 plaintiffs' firms in the country, there was no budget for a $350K-a-year accountant to

walk out with tens of millions of dollars over a short period of time. There was no way that could have happened unless the money was coming from the trust account. Of course, to the extent that Kamon was stealing from the trust account, he was necessarily providing false information to Girardi, the signer, in order to cause him to move trust money on false pretenses. Either that, or signatures were being forged. And after stealing trust money, he was further falsely booking the transactions, leading to unreliable records and compounding distortions in the commingled trusts.

Rather than a collateral issue, the government itself acknowledged (until last week) that this evidence is completely intertwined with the charges. See Docket No. 200. It involves the same conduct, perpetrated in the same way, in the same location, with the same people, involving the same accounts, during the same time period as the 10-year scheme charged in the Indictment. Though Girardi need not satisfy the 404(b) standard, if he did, this evidence also ticks nearly every item on the list, including motive, (lack of) knowledge, opportunity, plan, intent, and so on, as described in his detailed briefing on the subject, and as confirmed by multiple controlling and persuasive authorities cited in that briefing. See Docket No. 201.[3] The evidence is being offered in direct response to the Indictment, and Girardi intends to us this and other evidence to show that, as he was losing his mental faculties, his secretive and deceptive CFO, operating with "virtually no oversight," was stealing tens of millions of dollars from the firm, and ultimately the firm's trust accounts (Kamon Complaint ¶¶ 11-12), while shuffling money within and outside the firm without Girardi's knowing and intentional participation. Not only is this evidence inarguably relevant, without it, Girardi will have no defense.

Nonetheless, echoing arguments made by Kamon, the government suggests that

---

[3] Girardi does not believe that he needs to satisfy the Rule 404(b) standard in order to rely on the challenged evidence. But the extent that he does, he respectfully incorporates his detailed briefing on the topic from May rather than recopying it for the Court to read again. See Docket No. 201.

evidence of Kamon's frauds is <u>irrelevant</u> because it does not, by itself, exculpate Girardi or explain away other evidence, like his alleged lies. <u>Compare</u> Docket No. 288 at 3:24-27, 5:8-11 <u>with</u> Docket No. 212 at 7:21-26. In so doing, the government repeatedly suggests a misunderstanding of the wire-fraud statute as requiring only deception, rather than proof of the 10-year scheme operating in the manner charged, knowing participation in the scheme, the intent to steal money (not just deceive), and so on. <u>See</u> Docket No. 288 at 18:13-20 (counsel for Girardi explaining that his detailed discussion of the law was intended, in part, "to clarify some things," including the notion that evidence of lying is conclusive of wire fraud, "because even in the argument today, there are some suggestions that suggest a misunderstanding, or a different understanding of what is actually charged in this case, and what the government has to prove"); <u>see also</u> 9th Cir. Model Jury Instr. 15.35 ("[T]he defendant knowingly [participated in] [devised] [intended to devise] a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses . . . the defendant acted with the intent to defraud, that is, the intent to deceive and cheat"). The government's arguments also suggest a belief that, once the government asserts that Girardi has lied, all evidence to the contrary, as well as evidence attacking elements other than deception (which is one subpart of the intent element) becomes <u>inadmissible</u> such that the jury cannot even consider it at trial.

      These are possibly jury arguments – though objectionable ones because they misstate the law – but they are not remotely evidentiary arguments. Evidence does not have to win the case in one shot to be relevant. It need only advance the ball. <u>See</u> Docket No. 201 at 15:3-23. And the existence of inculpatory evidence on a point – like <u>mens rea</u> – does not render exculpatory evidence on the same point inadmissible. If anything, the existence of dueling evidence on a material point underscores the need to admit all of the evidence so that the jury – the factfinder in a criminal trial – can make an informed decision with truthful facts. <u>See</u> Docket No. 228 at 27:22-28:23

8

1  (explaining why the government's argument is wrong from an evidentiary perspective);
2  id. at 41:11-13 ("[COURT]: As Mr. Snyder said, he doesn't have to have one piece of
3  evidence that covers everything; it just has to be relevant"). The government barely
4  discusses the legal standard at all because the law runs so heavily against it. See, e.g.,
5  United States v. Whittington, 455 F.3d 736, 738-39 (6th Cir. 2006) (emph. in orig.)
6  ("[E]ven if a district court believes the evidence is insufficient to prove the ultimate
7  point for which it is offered, it may not exclude the evidence if it has the slightest
8  probative worth"); United States v. Leonard-Allen, 739 F.3d 948, 956 (7th Cir. 2013)
9  ("The word 'any' signals that evidence is relevant even if it only slightly or marginally
10 alters the likelihood of a consequential fact"); Dortch v. Fowler, 588 F.3d 396, 401 (6th
11 Cir. 2009) ("[A] piece of evidence does not need to carry a party's evidentiary burden
12 in order to be relevant; it simply has to advance the ball").

13       Bottom line: it is nearly impossible to imagine any more relevant evidence that
14 might exist in this case. In seeking to exclude it anyway, the government is effectively
15 asking the Court to substitute its own judgment for the factfinder's, to conclude that the
16 government's inferences from the facts are right, and then to exclude the indisputably-
17 truthful evidence as irrelevant because the jury might agree with Girardi's inferences as
18 opposed to the government's. Indeed, the Court previously acknowledged exactly this
19 point when it said: "In other words, you both agree that to tell the whole story, you
20 need to bring in this evidence. What that story will show, you differ on." See Docket
21 No. 228 at 33:4-6. That is the definition of relevance, and that resolving that
22 "differ[ence]" in the stories is the purpose of a jury trial.

23       Excluding the evidence as irrelevant under these circumstances would turn the
24 rules of evidence, and especially the rule of relevance, on its head. It would render the
25 Court's prior orders illogical. It would undermine the basic purpose of a jury trial by
26 substituting the government and Court's judgment for that of the jury's. See Duncan v.
27 State of La., 391 U.S. 145, 155-56 (1968) ("[T]he jury trial provisions in the Federal
28

and State Constitutions reflect a fundamental decision about the exercise of official power – a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges. Fear of unchecked power, so typical of our State and Federal Governments in other respects, found expression in the criminal law in this insistence upon community participation in the determination of guilt or innocence."). And it would violate Girardi's Constitutional right to "to present a complete defense." Crane, 476 U.S. at 690, including "to put before a jury evidence that might influence the determination of guilt," Ritchie, 480 U.S. at 56. Not only is this evidence extraordinarily relevant – indeed, as relevant as evidence can possibly get – Girardi has a Constitutional right to put it on.[4]

**2. The government will suffer no unfair prejudice from having its case tested through truthful evidence in the Constitutionally-established adversarial process.** Not only is the evidence that the government seeks to exclude extraordinarily relevant – and directly responsive to the elements and core theory of the government's case – it is essential to a complete defense. Crane, 476 U.S. at 690 ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense . . . . That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence") (everything omitted.). To that end, the level of legally-unfair prejudice that the government would need to

---

[4] It appears that the government's <u>real</u> argument is not that the evidence it seeks to exclude is irrelevant as an evidentiary matter, but simply that it doesn't like the evidence, disagrees with the inferences to be drawn from it, disputes the conclusion that Girardi did not knowingly participate in the alleged scheme to defraud, and just doesn't want the jury to have a chance to consider an alternative explanation or, at a minimum, wants to deprive the explanation of any compelling evidentiary support. But those are not evidentiary arguments, let alone winning ones. Those are jury arguments. The government will have every chance to make them to the jury, just as Girardi should have every chance to offer evidence and arguments in opposition, including the critically-relevant evidence that the government seeks to exclude.

demonstrate to obtain exclusion would, if even possible, have to be truly extraordinary. Whitehead v. Bond, 680 F.3d 919, 930 (7th Cir. 2012) ("We employ a sliding scale approach [to Rule 403]: as the probative value increases, so does our tolerance of the risk of prejudice"); Aycock v. R.J. Reynolds Tobacco Co., 769 F.3d 1063, 1069 (11th Cir. 2014) ("Because it allows a trial court to exclude evidence that is probative, Rule 403 is an extraordinary remedy which should be used sparingly . . . . In applying Rule 403, courts must look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact.") (everything omitted, emph. in orig.); United States v. Haischer, 780 F.3d 1277, 1281 (9th Cir. 2015) ("[T]he exclusion of evidence offered by the defendant in a criminal prosecution under Rule 403 is an extraordinary remedy to be used sparingly") (everything omitted).

Yet, here, the government will suffer no "unfair" prejudice at all. Indeed, whatever "prejudice" the government may suffer from having its case tested through probative and truthful evidence within the adversarial process is not "unfair" in any Rule 403 sense, let alone so unfair as to warrant excluding or restricting Girardi's defense. "Parties always introduce evidence that will do damage to the other side's case; that's the very point of a trial. That evidence may decimate an opponent's case is no ground for its exclusion under 403. The rule excludes only evidence where the prejudice is 'unfair[.]'" United States v. Cruz-Garcia, 344 F.3d 951, 956 (9th Cir. 2003); see also Haischer, 780 F.3d at 1281 ("Probative evidence that incidentally happens to make a criminal defendant more sympathetic is not properly subject to exclusion under Rule 403"). The basic purpose of jury trials is to put relevant and truthful evidence before the jury and let the jury decide. This is true even where the government or a court disagrees with a defense. Having to confront counter evidence on the case that it charged is not "unfair" in any evidentiary sense, and certainly not to the federal government in a criminal trial.

Maybe even more to the point, when the government seeks to convict a person of a federal crime based on a particular theory, he or she must have the <u>broadest possible latitude</u> to contest that theory with truthful evidence. <u>Haischer</u>, 780 F.3d at 1284 (reversing conviction on Constitutional and evidentiary grounds where wire-fraud defendant sought to challenge knowledge and intent by showing evidence of boyfriend's abuse and district court excluded the evidence as irrelevant and prejudicial and told the jury not to consider it); <u>United States v. Whitman</u>, 771 F.2d 1348, 1351 (9th Cir. 1985) (reversing conviction on Constitutional and evidentiary grounds where trial court precluded defendant from rebutting prosecution theory of motive); <u>United States v. Crenshaw</u>, 698 F.2d 1060, 1066 (9th Cir. 1983) (reversing conviction where government successfully precluded defense evidence offered to rebut government theory and evidence). If the government's case it true, it should welcome the opportunity to disprove the defense through the process established by the Constitution, not seek to shield the truth from the eyes of the jury. The challenged evidence does not result in <u>any</u> Rule 403 unfairness, let alone the "extraordinary" unfairness that would be required to exclude Girardi's defense. <u>Haischer</u>, 780 F.3d at 1281.

***3. There is no basis to limiting Girardi's presentation of compelling exculpatory evidence.*** The government's fallback suggestion that the Court should neuter or sanitize Girardi's ability to offer exculpatory evidence – while it presents all of its own, including the EJ Global evidence, in undiluted form – runs equally hard against controlling authority. While the Court, of course, has discretion to manage the trial evidence, the Ninth Circuit has repeatedly emphasized that "the exclusion of evidence offered by the defendant in a criminal prosecution under Rule 403 is an extraordinary remedy to be used sparingly." <u>Haischer</u>, 780 F.3d at 1281 (everything omitted); <u>id.</u> at 1282 ("Application of Rule 403 must be cautious and sparing because the Rule's major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect"). Indeed,

even when the government seeks to put on evidence, with no Constitutional rights at all, the Supreme Court has emphasized that narrative integrity and persuasive force depend on evidentiary richness:

> The 'fair and legitimate weight' of conventional evidence showing individual thoughts and acts amounting to a crime reflects the fact that making a case with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness. Unlike an abstract premise, whose force depends on going precisely to a particular step in a course of reasoning, a piece of evidence may address any number of separate elements, striking hard just because it shows so much at once . . . . Evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. This persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them.

Old Chief v. United States, 519 U.S. 172, 187-88 (1997). The right to put on truthful and persuasive evidence is certainly no less for a criminal defendant. Indeed, to Girardi's knowledge, there is no "mercy rule" to proving innocence. Nor is there a rule that defense evidence is admissible only in scant and tepid doses. But even if there were (there is not), Girardi does not intend to trigger these concerns. Rather, he intends to rely on the same types of evidence that the government intended to admit until last week.

To that end, it is somewhat remarkable that the government now argues that the challenged evidence is so inflammatory and prejudicial <u>to the government</u> that Girardi, a criminal defendant, should be precluded from admitting it when the government overcame that same argument by Kamon, a different criminal defendant, and intended to present the evidence in a joint trial less than a week ago. The role of a prosecutor is not just to win, but to win fairly and within the rules while providing a defendant with a fair trial. That duty is inconsistent with simply grabbing whatever argument is available in the moment, no matter how inconsistent with an earlier position on which the government prevailed, and deploying it to a defendant's detriment. Evidence cannot possibly be proper when the government seeks to use it, but so inflammatory

13

and prejudicial as to warrant exclusion when used by a defendant.

Given the critical nature of the evidence, given that its veracity is undisputed, given that it responds directly to the case that the government charged, and given that the government intended to present very same type of evidence until last week, Girardi should be given significant leeway to put it on.

***Conclusion.***  The government is seeking to put Girardi in prison for the rest of his life based on an allegation that he knowingly participated in a fraud scheme with Kamon while intending to deceive and cheat.  Evidence of Kamon's concealed frauds during the same time period while in the same role responds directly, persuasively, and truthfully to the charges in the Indictment.  Girardi's has every right to defend himself with this evidence, and must be afforded the broadest possible latitude to do so at trial.  His lawyers know the rules, and if issues arise as the trial goes on, the Court can deal with them as with all other trial issues, through objections and, if appropriate, limiting instructions.   The motion should be denied for the reasons above, as well as those stated in Girardi's Opposition to Kamon's 404(b) motion (Docket No. 201) and the June 20 hearing (Docket No. 228 at 17:9-35:19).  And, if possible, it should be denied in advance of the hearing so that Girardi has certainty about what evidence he will be allowed to put on.  See Docket No. 193 at 2:1-18 (arguing in May that the Court should resolve the admissibility of the Kamon evidence then, rather than later as requested by Girardi, who was still attempting to review the key evidence for the first time, because doing so was necessary to "provide[] sufficient time for the parties to incorporate the Court's ruling, which will impact the government's case-in-chief and defendants' respective trial strategies").

|  |  |
|---|---|
|  | Respectfully submitted,<br>CUAUHTEMOC ORTEGA<br>Federal Public Defender |
| DATED: July 23, 2024 | By  */s/ Charles J. Snyder* |
|  | CHARLES J. SNYDER<br>Attorney for Thomas Girardi |

14

## CERTIFICATE OF COMPLIANCE

I, the undersigned, counsel of record for Defendant Thomas Girardi, certify that this brief contains approximately 4,317 words, which complies with the word limit of Civil L.R. 11-6.1, incorporated by reference into the local rules for criminal cases by L.Cr.R. 57-1, as well as this Standing Order. In making this certification, I have relied on the computer program used to prepare this brief (Microsoft Word).

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: July 23, 2024            By  */s/ Charles J. Snyder*

CHARLES J. SNYDER
Attorney for Thomas Girardi