CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CHARLES J. SNYDER (Bar No. 287246)
Email: Charles_Snyder@fd.org
SAMUEL CROSS (Bar No. 304718)
Email: Samuel_Cross@fd.org
J. ALEJANDRO BARRIENTOS (Bar No. 346676)
Email: Alejandro_Barrientos@fd.org
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012
Tel: 213-894-2854
Fax: 213-894-0081

Attorneys for Defendant
Thomas Vincent Girardi

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-23-47-JLS-1 |
| Plaintiff, | **THOMAS GIRARDI'S *EX PARTE* APPLICATION TO (1) PRECLUDE THE GOVERNMENT'S NEW FRAUD-BY-OMISSION THEORIES, (2) REQUIRE DISCLOSURE OF THE GRAND-JURY TRANSCRIPT, (3) REQUIRE PROOF OF ANY RELEVANT FACTS AT TRIAL, AND (4) CONTINUE THE TRIAL** |
| v. | |
| THOMAS VINCENT GIRARDI, | |
| Defendant. | |

Thomas Girardi, through counsel, moves *ex parte* for an order precluding the government from relying on undisclosed fraud-by-omission theories, requiring the production of grand-jury transcripts, and barring the government from introducing the issue of Girardi's compliance with a detailed set of state ethics laws through jury instruction, as recently proposed. For the reasons discussed in the motion, Girardi also respectfully renews his request for a continuance. The government opposes this application and states its position as follows:

1    This issue you raise below can and should be addressed in your objections

2    to the proposed jury instructions.  We do not believe this is an appropriate

3    ground for a separate ex parte application.  Should you choose to proceed

4    with an ex parte anyway, please note our objection in your papers and our

5    request to have until next Tuesday, 7/30, to oppose.  We will also raise this

6    with the Court at our upcoming pretrial conference.

7

8        This application is based on the attached memorandum and Exhibits, the files and

9    records in this case, and any other argument or evidence that the Court may consider.

10

11                                        Respectfully submitted,

12                                        CUAUHTEMOC ORTEGA
                                          Federal Public Defender

13    DATED:  July 24, 2024        By  /s/ Charles J. Snyder

14                                        CHARLES J. SNYDER
                                          Attorney for Thomas Girardi

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................... 1

II. STATEMENT OF FACTS ...................................................................................... 1

III. ARGUMENT ......................................................................................................... 3

    1.    The Court should preclude the government from presenting the jury with new fraud-by-omission theories, which would be a constructive amendment of, or at least a fatal variance from, the indictment.................. 5

        A.    Constructive Amendment. ................................................................ 6

        B.    Fatal Variance. .................................................................................. 9

    2.    The Court should at least order disclosure of the grand-jury transcript so it can determine what particular fraud-by-omission theories, if any, were presented to the grand jury. ................................................................ 11

    3.    If at all, the Court must require the government to prove any relevant facts at trial within the limits of the rules of evidence and the rules pertaining to discovery. ............................................................................ 12

    4.    Girardi renews his request for a continuance............................................ 15

IV. CONCLUSION ..................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Jeffers v. United States*
   392 F.2d 749 (9th Cir. 1968) ...................................................................... 7

*Kentucky v. Stincer,*
   482 U.S. 730 (1987) ................................................................................... 15

*Lilly v. Virginia,*
   527 U.S. 116 (1999) ................................................................................... 15

*Russell v. United States*,
   369 U.S. 749 (1962) ..................................................................................... 6

*Stirone v. United States,*
   361 U.S. 212 (1960) ................................................................................ 6, 12

*United States v. Adamson,*
   291 F.3d 606 (9th Cir. 2002) .................................................................... 10

*United States v. Carlson,*
   616 F.2d 446 (9th Cir. 1980) ...................................................................... 8

*United States v. Davis,*
   854 F.3d 601 (9th Cir. 2017) .............................................................7, 9, 10

*United States v. Dipentino,*
   242 F.3d 1090 (9th Cir. 2001) .................................................................... 8

*United States v. Galecki,*
   89 F.4th 713 (9th Cir. 2023) ................................................................ 10, 11

*United States v. Jingles,*
   702 F.3d 494 (9th Cir. 2012) ............................................................*passim*

*United States v. Perez,*
   67 F.3d 1371 (9th Cir. 1995) .................................................................... 12

*United States v. Sawyer,*
   85 F.3d 713 (1st Cir. 1996) ...................................................................... 16

*United States v. Shields,*
   844 F.3d 819 (9th Cir. 2016) ............................................................3, 4, 13

ii

# <u>TABLE OF AUTHORITIES</u>

Page(s)

*United States v. Shipsey*,
 190 F.3d 1081 (9th Cir. 1999) ................................................................. 7, 8, 9

*United States v. Ward*,
 747 F.3d 1184 (9th Cir. 2014) ............................................................ 6, 7, 8, 9

**State Cases**

*Barreiro v. State Bar*,
 2 Cal. 3d 912 (1970) ..................................................................................... 14

*Bird, Marella, Boxer & Wolpert v. Superior Court*,
 106 Cal. App. 4th 419 (2003) ...................................................................... 13

*Flatt v. Superior Court*,
 9 Cal. 4th 275 (1994) .................................................................................... 13

*Magee v. State Bar*,
 58 Cal.2d 423 (1962) .................................................................................... 13

*Matter of Yagman*,
 No. 91-O-03890, 1997 WL 817721 (Cal. Bar Ct. Dec. 31, 1997) ............ 14

*Stanley v. State Bar*,
 50 Cal. 3d 555 (1990) ................................................................................... 13

**Federal Statutes**

18 U.S.C. § 1343 ................................................................................................. 1, 3

**Federal Rules**

Fed. R. Crim. P. 16 ................................................................................................ 15

Fed. R. Crim. P. 6 ................................................................................................. 12

Fed. R. Evid. 404 .................................................................................................. 11

**Federal Constitution**

U.S. Const., Amend. V ...................................................................................... 6, 12

U.S. Const., Amend. VI .......................................................................................... 6

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Other Authorities**

*Manual of Model Criminal Jury Instructions for the District Courts of the
Ninth Circuit,* No. 15.35 (2022 ed. through Mar. 2024 update)
..................................................................................................4, 14, 15, 16

**INTRODUCTION**

Although the government has repeatedly characterized this case as involving a simple wire-fraud scheme based on Thomas Girardi's alleged affirmative lies, it recently proffered a lengthy jury instruction purportedly summarizing complex state law concerning attorney ethics and client trust accounts. To the extent it has done so to establish that Girardi had a duty to disclose a broad range of information to his clients such that violation of that duty would permit wire-fraud convictions based on omissions of material facts, presentation of those new fraud-by-omission theories to the jury would be a constructive amendment of, or at least a fatal variance from, the indictment. The Court should therefore preclude such theories. It should at least order disclosure of the grand-jury transcript so it can determine what particular fraud-by-omission theories, if any, were presented to the grand jury because only they may be presented to the petit jury. And the Court should reject the government's attempt to present facts to the jury via a jury instruction and instead require the government to prove those facts, if it can, at trial within the limits of the rules of evidence and the rules pertaining to discovery. Finally, Girardi renews his request for a continuance. In the last week, he has been required to brief on an ex parte basis a late-disclosed expert, the complete exclusion of his defense, and, now, a significant alteration to what he understood to be a "simple" case involving stealing money and lying, all of which have sapped his attention and introduced extraordinary uncertainty into his already-rushed trial preparation. He simply cannot be ready for trial under these circumstances.

**STATEMENT OF FACTS**

The indictment charged five counts of wire fraud in violation of 18 U.S.C. § 1343. In particular, it alleged that Girardi and his codefendant, Christopher Kamon, "knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victim clients to whom defendant Girardi and Girardi Keese had agreed to provide legal services including, but not limited to, Client 1, Client 2, Client 3, Client 4,

and Client 5, as to material matters, and to obtain money and property from such victim clients by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts, including material facts that defendant Girardi had a duty to disclose." ECF 1 at 4. It further alleged that each of the five clients had a "formal attorney-client relationship with" Girardi's firm and that, as a member of the State Bar of California, Girardi "was obligated to comply with the California Rules of Professional Conduct" and knew that those rules "required him to, among other things, promptly notify a client of the receipt of any funds the client was entitled to receive, and promptly pay or deliver to the client or such payees as designated by the client any such funds that defendant Girardi and Girardi Keese held in trust for the client upon the client's request." ECF 1 at 2-4. The indictment also alleged that two specific transfers of money were "in violation of the California Rules of Professional Conduct governing the management of attorney client trust accounts[.]" ECF 1 at 9, 13. But the indictment did not identify any particular Rules of Professional Conduct that Girardi supposedly violated. ECF 1.

For months, in an effort to push this case to trial quickly despite Girardi's protestations that he needs more time to prepare his defense, the government has repeatedly promised that this case presents "a straightforward fraud scheme" based on so-called "lulling" letters and voicemails to his clients. ECF 155 at 3-4 (government status report filed on January 8, 2024). Therefore, it has claimed, this "is not a complicated case." ECF 161 at 6 (government pointing to same "lulling" letters and voicemails at status conference on January 10, 2024). It promised in January, "we want to focus our case only on what's been alleged in the Indictment. We won't stray beyond that[.]" *Id*. Indeed, just last week, the government filed a motion to exclude or limit evidence of Kamon's wrongdoing, claiming it's irrelevant because "the charged scheme here is predicated on the numerous lies that defendant told his clients[.]" ECF 288 at 6. That motion repeatedly refers to Girardi's purported "lies" and "lying," but

2

never once mentions any duty to disclose omitted material facts. *Id*. at 3, 5-6. That's because this case has always been about purported lies, not any duty to disclose omitted information.

Contrary to its prior representations, and instead of treating the allegations in the indictment as matters that it has the burden to prove at trial with evidence, the government—just two weeks before trial—has proffered a lengthy proposed jury instruction listing supposed "Lawyers' Ethical Duties Under California Law" and other rules purportedly governing "Attorney-Client Trust Accounts." *See* Exhibit A. As explained below, that presents multiple problems requiring the Court's immediate intervention.

## ARGUMENT

Section 1343 prohibits using the wires to execute "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises[.]" Although the statute's text does not mention fraud by omissions, the Ninth Circuit has interpreted it to allow a conviction based on nondisclosure, but "only when there exists an independent duty that has been breached by the person so charged." *United States v. Shields*, 844 F.3d 819, 822 (9th Cir. 2016) (cleaned up). "Specifically, the relationship creating a duty to disclose may be a formal fiduciary relationship, or an informal, trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise." *Id*. at 823 (cleaned up). "*This is a factual determination to be made by a properly-instructed jury*." *Id*. (emphasis added).

In accordance with that precedent, the Ninth Circuit's model instruction for wire fraud includes this language: "To convict the defendant of wire fraud based on omissions of material facts, you must find that the defendant had a duty to disclose the omitted facts arising out of a relationship of trust. That duty can arise either out of a formal fiduciary relationship, or an informal, trusting relationship in which one party

3

acts for the benefit of another and induces the trusting party to relax the care and
vigilance that it would ordinarily exercise." *Manual of Model Criminal Jury
Instructions for the District Courts of the Ninth Circuit,* No. 15.35 (2022 ed. through
Mar. 2024 update) (hereinafter "*Model Instructions*").  The comment for that
instruction includes this reference: "For a definition of 'fiduciary' duty, *see* Instruction
15.34[.]"  *Id.*, comment.  Here's that instruction's language on the matter:

> A "fiduciary" duty exists whenever one person places special trust and
> confidence in another person—the fiduciary—in reliance that the fiduciary
> will exercise his discretion and expertise with the utmost honesty and
> forthrightness in the interests of the person, such that the person relaxes
> the care and vigilance that he would ordinarily exercise, and the fiduciary
> knowingly accepts that special trust and confidence and thereafter
> undertakes to act on behalf of the other person based on such reliance.

> The mere fact that a business relationship arises between two persons
> does not mean that either owes a fiduciary duty to the other.  If one person
> engages or employs another and thereafter directs, supervises, or approves
> the other's actions, the person so employed is not necessarily a fiduciary.
> Rather, as previously stated, it is only when one party places, and the other
> accepts, a special trust and confidence—usually involving the exercise of
> professional expertise and discretion—that a fiduciary relationship exists.

*Id.*, No. 15.34 (with appropriate bracketed language).  This instruction is consistent
with the Ninth Circuit precedent making whether there was a relationship creating a
duty to disclose a factual determination to be made the jury based on evidence
presented at trial.  *Shields*, 844 F.3d at 823.

But instead of including Model Instruction No. 15.34 in its proposed jury
instructions, the government proffered a lengthy instruction listing supposed "Lawyers'
Ethical Duties Under California Law" and other rules purportedly governing "Attorney-

4

Client Trust Accounts."  *See* Exhibit A.  To the extent that this instruction reflects the government's intent to argue that, as a matter of law, Girardi had a broad legal duty to disclose all sorts of information to the alleged victims, that would be a constructive amendment of, or at least a fatal variance from, the indictment, so the Court should preclude any new omission-by-fraud theories.  It should at least order the government to disclose the grand-jury transcript so Girardi and the Court can determine what particular fraud-by-omission theories, if any, were presented to the grand jury before it returned the indictment.  Furthermore, the Court should not allow the government to present facts to the jury via a jury instruction; instead, it should require the government to prove such facts at trial and to do so within the limits of the rules of evidence and the rules pertaining to discovery.  Finally, because the government has raised such a substantial issue at the last minute, Girardi renews his request for a continuance.

**1. The Court should preclude the government from presenting the jury with new fraud-by-omission theories, which would be a constructive amendment of, or at least a fatal variance from, the indictment.**

Although the indictment alleged "the concealment of material facts, including material facts that defendant Girardi had a duty to disclose," the only particular alleged disclosure duty was to "promptly notify a client of the receipt of any funds the client was entitled to receive[.]"  ECF 1 at 2, 4 (cleaned up).  But the government's proffered "Ethical Duties" instruction includes this broad, and somewhat vague, pronouncement: "A lawyer owed a duty of honesty and fair dealing to his clients.  A lawyer had a duty to keep clients informed of significant developments in the matter in which the lawyer was representing the clients.  To ensure that a client could make an informed decision, a lawyer was required to provide his clients with true and accurate information.  A lawyer could not withhold material information from or mislead his clients."  Exhibit A at 3.  It also asserts generally that a lawyer "owed a fiduciary duty to his clients" and "owed a duty of loyalty to his clients."  *Id*.  Other problems with these paragraphs, and

5

the rest of the proffered instruction, are discussed below.  *Infra* Part 3.  But the primary problem is that allowing the government to present to the jury any fraud-by-omission theories other than the narrow disclosure-of-receipt-of-funds theory alleged in the indictment would be unconstitutional.[1]

The Constitution precludes trial on felony charges absent indictment by a grand jury.  U.S. Const., Amend. V; *Stirone v. United States*, 361 U.S. 212, 215 (1960).  It also guarantees a defendant's right to be informed of the nature and cause of the accusations made in criminal prosecutions.  U.S. Const., Amend. VI.  These indictment requirements protect a defendant in three ways: first, they require the government to prove to a group of unbiased and independent citizens that there is probable cause for the charges; second, they provide notice to the defendant of the precise conduct alleged so that he may prepare a defense; finally, they protect the defendant against another prosecution for the same offense.  *Russell v. United States*, 369 U.S. 749, 760-64, 771 (1962); *United States v. Jingles*, 702 F.3d 494, 500-01 (9th Cir. 2012).  Once the grand jury returns an indictment, only the grand jury may broaden it through amendment. *Stirone*, 361 U.S. at 215-16.  Because the grand jury has the exclusive prerogative to finally determine the charges, neither a prosecutor nor a judge can alter those charges to conform to what he or she thinks the grand jury should or might have done.  *United States v. Ward*, 747 F.3d 1184, 1189 (9th Cir. 2014).  Deviations from an indictment at trial fall into two categories—constructive amendment and variance.  *Id*.

**A. Constructive Amendment.**

A constructive amendment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or court.  *Ward*, 747 F.3d at 1190.

---

[1] To be clear, Girardi does not concede that the disclosure theory alleged in the indictment is valid or (if valid) can be proved, but for purposes of this motion what matters is that the government cannot present to the jury any fraud-by-omission theories that were not alleged in the indictment.

1    "There are two types of constructive amendment: first, where there is a complex of

2    facts presented at trial distinctly different from those set forth in the charging

3    instrument, and, second, where the crime charged in the indictment was substantially

4    altered at trial, so that it was impossible to know whether the grand jury would have

5    indicted for the crime actually proved." *United States v. Davis*, 854 F.3d 601, 603 (9th

6    Cir. 2017) (cleaned up).  That deprives the defendant of his right to be tried only on

7    charges that have passed the scrutiny of the grand jury.  *Jingles*, 702 F.3d at 501.  If the

8    jury instructions allowed for the possibility that the defendant was convicted based on

9    uncharged conduct, there was a constructive amendment of the indictment.  *Ward*, 747

10   F.3d at 1191.

11       Vigilance against constructive amendments is particularly necessary in fraud

12   prosecutions.  Consider *Jeffers v. United States*, where the defendants were charged

13   with multiple counts of mail fraud based on an alleged scheme to solicit contributions

14   to a religious sect by misrepresenting that the money would be used to promote

15   religious purposes whereas much of the money was used to place bets on dog and horse

16   races.  392 F.2d 749, 749-50 (9th Cir. 1968).  The defendants argued at trial that the

17   government failed to prove that the bets did not serve a religious purpose.  *Id*. at 750-

18   51.  On appeal, the government conceded that point but argued that the defendants

19   misrepresented that contributions would be made for specific purposes like office

20   supplies but not betting.  *Id*. at 751.  The Ninth Circuit held that that may very well

21   have been the case, but that was not the crime charged by the grand jury.  *Id*. at 752-53.

22   Although the Ninth Circuit referred to the problem as a fatal variance, *id*. at 752, later

23   caselaw (cited above) makes clear that this was actually a constructive amendment.

24       The Ninth Circuit dealt with another scheme case in *United States v. Shipsey*, 190

25   F.3d 1081 (9th Cir. 1999).  The indictment charged Shipsey with pension-plan theft

26   based on an alleged scheme to divert funds from a construction project by submitting

27   false claims of amounts owed to subcontractors.  *Id*. at 1082-84.  At trial, the jury was

28                                                    7

instructed that to steal for purposes of the theft element meant to acquire or take property as a result of some wrongful or dishonest act, but it was not told that it could only convict on the fraud theory alleged in the indictment. *Id*. at 1084-86. And the government argued to the jury that the defendant committed theft even if he made no false representations. *Id*. at 1086. Under these circumstances, there was therefore a constructive amendment. *Id*. at 1086-87.

Another similar case is *United States v. Carlson*, where the grand jury charged the defendant, a bank officer, with misapplying bank funds by converting bank-disbursed money to his personal use. 616 F.2d 446, 447 (9th Cir. 1980). But the district court instructed the jury that the charging statue could be violated by such conduct or by causing a loan to be made knowing that it was insufficiently secured and concealing that fact from the bank. *Id*. And the government's arguments invited the jury to convict on the alternate theory. *Id*. The instructions constructively amended the indictment by permitting jury to convict the defendant of a crime not charged by the grand jury. *Id*. at 447-48.

In *United States v. Ward*, the Ninth Circuit found a constructive amendment where the defendant was charged with aggravated identity theft as to two specifically-identified victims, but the trial evidence included proof that the defendant also victimized three other people, the prosecutor's arguments referenced all five victims, and the instructions required only that the jury find that the defendant stole the identity of a real person without further specificity. 747 F.3d at 1190-92. Under these circumstances, the Ninth Circuit found that a constructive amendment occurred. *Id*. at 1192.

Constructive-amendment cases involving other kinds of crimes are also apropos. In *United States v. Dipentino*, for example, the defendants were charged with improperly removing asbestos-containing materials in violation of a certain work-practice standard promulgated by the EPA. 242 F.3d 1090, 1093 (9th Cir. 2001). But then the district

8

court gave a jury instruction including other work-practice standards. *Id*. at 1094-95. The Ninth Circuit held that "the district court constructively amended the indictment because the jury instruction permitted the jury to convict the defendants of violating a work practice standard they were not charged in the indictment with violating[.]" *Id*. at 1095.

Finally, in *United States v. Davis*, the defendant was charged with attempted sex trafficking of a minor on the theory that he knew or recklessly disregarded the fact that the victim was under 18 years old. 854 F.3d at 604. But at trial, the district court instructed the jury that it could also convict on the theory that the defendant had a reasonable opportunity to observe the minor. *Id*. The government also argued that alternative theory in closing arguments. *Id*. As a result, the Ninth Circuit held "that a constructive amendment occurred because the crime charged in the indictment was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved." *Id*. at 605.

As in all of these cases, allowing the government to present the jury with *any* new fraud-by-omission theories would constructively amend the indictment because it would both involve a complex of facts distinctly different from those alleged and would so substantially alter the charged crimes that it would be impossible to know whether the grand jury would have indicted for the new crimes.

**B. Fatal Variance.**

At a minimum, allowing the government to present new fraud-by-omission theories to the jury would be a fatal variance from the indictment. A variance occurs when the charging terms of the indictment are unaltered but the trial evidence proves facts materially different from those alleged in the indictment. *Ward*, 747 F.3d at 1189-90. That deprives a defendant of both the required notice of the details of the charges and the protection against a subsequent prosecution. *Jingles*, 702 F.3d at 501.

1    The Ninth Circuit found a fatal variance in a similar case, *United States v.*
2   *Adamson*, where the indictment charged wire fraud and alleged that the defendant made
3   a particular misrepresentation to the victim (Hewlett-Packard)—namely, that certain
4   computer servers had not been upgraded—to obtain software licenses.  291 F.3d at 609-
5   10.  At trial, however, the evidence proved that the servers had been upgraded but the
6   defendant misrepresented how they had been upgraded.  *Id*. at 610-11.  The Ninth
7   Circuit found that a fatal variance because, "[h]aving specified a different particular
8   misrepresentation, . . . the indictment not only failed to inform the defendant of the
9   actual misrepresentation that would be shown at trial, but it also affirmatively misled
10   the defendant and obstructed his defense at trial."  *Id*. at 616.  "Further, the
11   government's representation at the pretrial hearing, asserting that the misrepresentation
12   in the indictment was the only misrepresentation at issue, served to provide the
13   defendant with an additional reason to detrimentally rely on the indictment."  *Id*.  "The
14   indictment and the government's representation induced the defendant to prepare a
15   defense that would be insufficient to ward off the government's proof at trial."  *Id*.
16   "The district court implicitly condoned these wrongs by instructing the jury in such a
17   way as to allow the defendant to be convicted on the basis of conduct other than that
18   with which he was charged."  *Id*.  That was reversible error.
19    The Ninth Circuit recently applied *Adamson* in *United States v. Galecki*, 89 F.4th
20   713 (9th Cir. 2023).  It found insufficient evidence of mail and wire fraud where the
21   defendants sold "potpourri" to those who knew it was a code for synthetic
22   cannabinoids.  *Id*. at 737-39.  On appeal, the government tried to save the conviction by
23   arguing the alternative theory that the defendants falsely stated or implied to retailers
24   that their products were legal, thereby inducing the customers to purchase products they
25   would otherwise have refrained from purchasing.  *Id*. at 739 n.12.  The Ninth Circuit
26   rejected that argument because "the jury cannot properly convict a defendant of mail

10

1  fraud based on different misrepresentations from those that were charged in the

2  indictment." *Id.* (citing *Adamson*).

3      Like in *Adamson* and *Galecki*, allowing the government to present the jury with

4  new fraud-by-omission theories would be a fatal variance, if not a constructive

5  amendment.  As discussed above in the statement of facts, the government has told

6  Girardi and the Court for months that it would present a straightforward and

7  uncomplicated case based on purported outright lies, without mentioning any duty to

8  disclose other information.  But the government now wants to not only present fraud-

9  by-omission theories to the jury, but to do so based on vague assertions of purported

10  duties "of loyalty," "of honesty and fair dealing," "to keep clients informed of

11  significant developments," to provide "true and accurate information," and to not

12  "withhold material information."  Exhibit A at 3 (cleaned up).  Even now, this

13  proffered assertion does not enable Girardi "to prepare a defense by" receiving "notice

14  of the precise conduct alleged," not to mention "protect[] against another prosecution

15  for the same offense."  *Jingles*, 702 F.3d at 501.  More important, failing to include

16  such allegations in the indictment deprived Girardi of such notice sufficiently before

17  trial to provide a fair opportunity to meaningfully rebut them after investigation and

18  other preparation.[2]  Therefore, allowing the trial to go forward now based on any new

19  fraud-by-omission theories would violate his substantial rights.

---

25      [2] For example, giving the proffered instruction—thereby telling the jury that

26  attorneys violate state law by doing or not doing certain things—could turn evidence of

    otherwise admissible conduct into evidence of other crimes, wrongs, or bad acts for

27  purposes of Fed. R. Evid. 404(b), which generally prohibits such evidence and requires

28  the government to give "reasonable notice" if it intends to present such evidence.

11

**2. The Court should at least order disclosure of the grand-jury transcript so it can determine what particular fraud-by-omission theories, if any, were presented to the grand jury.**

Again, the Fifth Amendment precludes trial on felonies unless the government first proves to a group of unbiased and independent grand jurors that there is probable cause for the charges. *Stirone*, 361 U.S. at 215; *Jingles*, 702 F.3d at 500-01. If the Court somehow concludes that allowing the government to present new fraud-by-omission theories to the jury would be neither a constructive amendment of nor a fatal variance from the plain text of the indictment, it should at least recognize that disclosure of the grand-jury transcript is necessary to guarantee that Girardi will be tried only for the offenses for which he has actually been indicted.

"The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter: (i) preliminarily to or in connection with a judicial proceeding; [or] (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury[.]" Fed. R. Crim. P. 6(e)(3)(E)(i) & (ii). "A party seeking disclosure of the grand jury transcripts must demonstrate a 'particularized need' for the disclosure." *United States v. Perez*, 67 F.3d 1371, 1381 (9th Cir. 1995), *on rehearing en banc*, 116 F.3d 840, 843 n.2 (9th Cir. 1997) (leaving this part of three-judge panel decision in place). "The standards the trial court should apply in granting disclosure of the grand jury transcripts are (1) that the desired material will avoid a possible injustice, (2) that the need for disclosure is greater than the need for continued secrecy, and (3) that only the relevant parts of the transcripts should be disclosed." *Id*. (cleaned up).

Here, there's a particularized need for the grand-jury transcript. The government's fluctuating fraud-by-omission positions and the broad language of its proffered "Ethical Duties" instruction, in stark contrast to the narrowly-worded indictment, suggest that it did not present the grand jury with evidence and instructions permitting the conclusion

12

that the jurors endorsed the new theories.  Disclosure of a transcript is therefore necessary to avoid a possible injustice, namely, Girardi facing a trial (and perhaps convictions) for crimes not actually charged by the grand jury.  Because of the important constitutional rights at issue, the need for disclosure is greater than the need for continued secrecy.  A protective order keeping the transcript under seal will maintain secrecy as to others not involved in this case.  The Court should therefore order the government to produce the grand-jury transcript.

**3.  If at all, the Court must require the government to prove any relevant facts at trial within the limits of the rules of evidence and the rules pertaining to discovery.**

Aside from the constructive-amendment / fatal-variance problem noted above, the government's proffered "Ethical Duties" instruction essentially asks the Court to find as a matter of law what precedent establishes "is a fact-based determination that must ultimately be *determined by a jury*"—namely, whether there was a duty to disclose particular omitted information.  *Shields*, 844 F.3d at 823 (cleaned up) (emphasis in original).  In fact, the entirety of the proffered instruction, which also covers other aspects of an attorney-client relationship, including attorney-client trust accounts, suffers from the same broader problem.  Instead of *proving* the allegations in the indictment beyond a reasonable doubt with *evidence* presented at trial, the government wants to sidestep that burden by having this Court *instruct* on *its version of the facts*.

The government offers this authority in support of its proffered instructions: "Cal. R. Prof. Conduct 3-310, 4-100, 4-200 (1992 ed.); Cal. Bus. & Prof. Code §§ 6068, 6147, 6148, 6091.1 (West 2004); *Magee v. State Bar*, 58 Cal.2d 423, 430 (1962) (discussing lawyer's fiduciary duty to clients); *Bird, Marella, Boxer & Wolpert v. Superior Court*, 106 Cal. App. 4th 419, 431 (2003), as modified on denial of reh'g (Mar. 17, 2003) (discussing attorney's fiduciary duty to clients); *Flatt v. Superior Court*, 9 Cal. 4th 275 (1994) (discussing lawyer's duty of loyalty); *Stanley v. State Bar*, 50 Cal. 3d 555, 567

13

1   (1990) (discussing attorney's duty of honesty and fair dealing); *Barreiro v. State Bar*, 2
2   Cal. 3d 912 (1970) (discussing lawyer's duty of honesty); *Matter of Yagman*, No. 91-O-
3   03890, 1997 WL 817721, at *5 (Cal. Bar Ct. Dec. 31, 1997) (discussing lawyer's duty
4   of reasonable communication)[.]"  Exhibit A at 6-7.  This string-cite, on its face,
5   demonstrates why substituting a jury instruction for evidence on these matters would be
6   manifestly improper.

7       First, the government cites the "1992 ed." of the California Rules of Professional
8   Conduct even though the alleged scheme began "at least as early as in or around 2010"
9   and continued "through at least in or around December 2020," with some of the
10  attorney-client relationships not even starting until 2019, and other alleged events
11  (including all five charged wire transfers) not happening until late 2018, 2019, or 2020.
12  ECF 1 at 3-4, 8-16.  But those rules were amended in October 2018.[3]  Likewise, the
13  government cites the "West 2004" version of California's Business and Professions
14  Code without addressing whether the cited statutes may have changed before or during
15  the 2010-2020 period alleged in the indictment.  Moreover, each of the cited rules and
16  statutes is quite long, and they have undoubtedly been subject to years of judicial
17  scrutiny into their nuances.  Yet the government cites just six cases as "discussing"
18  certain duties, as if they comprehensively describe an attorney's legal duties.  But even
19  those cases preceded the indictment's time period—some by decades—with no
20  acknowledgment by the government that whatever they may have said about lawyers'
21  duties then may not have been the standards in place at the time of the charged crimes.

22      Another problem with the government's proffered instruction is that it ignores that it
23  must prove that Girardi *knowingly* engaged in fraud.  *See Model Instructions*, No.
24  15.35; *contrast* ECF 1 at 2 (indictment alleging that Girardi "knew that the California
25  Rules of Professional Conduct required him to" do certain things).  Thus, the

26  _____

27      [3] *See* https://www.calbar.ca.gov/Attorneys/Conduct-Discipline/Rules/Rules-of-
    Professional-Conduct/Previous-Rules.
28                                        14

government must not only prove that Girardi had a duty to disclose supposedly omitted facts but also that he knew he had such a duty.  The indictment alleges that Girardi became a member of the California State Bar in 1965—almost 60 years ago.  ECF 1 at 2.  Even if the government's proffered instruction were a compete and accurate statement of an attorney's duties at the times relevant to the indictment, it would be irrelevant and misleading without the context of how Girardi was trained before taking the bar exam in 1965 and any additional training he may have received since then.  But the government has not provided notice of any such evidence.

To the extent the state rules and caselaw about an attorney's duties is relevant at all (and, to be very clear, Girardi does not believe that it is), the proper way to put this evidence before the jury would be through a qualified expert witness who could offer his or her interpretation of that law and opine about whether, and to what extent, Girardi should have known about it, *subject to cross-examination by the defense*.  *See Lilly v. Virginia*, 527 U.S. 116, 124 (1999) (describing cross-examination as "the greatest legal engine ever invented for the discovery of truth.") (cleaned up); *Kentucky v. Stincer*, 482 U.S. 730, 736 (1987) ("The opportunity for cross-examination, protected by the Confrontation Clause, is critical for ensuring the integrity of the fact-finding process.  Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.") (cleaned up).  But that option is out the window because the government has not noticed such an expert, and the time for doing so has passed.  *See* Fed. R. Crim. P. 16(a)(1)(G).

Allowing the government to introduce its simplistic view of state attorney-duty law through a jury instruction will also mislead the jury by distracting it from the elements of the charged crimes.  The government's proffered instruction is four-pages and nearly 1,000-words long.  Exhibit A at 3-6.  In contrast, the instruction for the wire-fraud elements is about a third that size.  *See Model Instructions*, No. 15.35.  In fact, if given, the government's proffered instruction will be the longest provided to the jury by far.

15

Under the circumstances, no conceivable limiting instruction could eliminate the significant risk that the overemphasis of state law will lead the jury to wrongly believe that any violation of such law amounts to a federal crime. *See*, *e.g.*, *United States v. Sawyer*, 85 F.3d 713, 731 (1st Cir. 1996) ("[C]oncerning the theft of honest services jury instruction, an overemphasis on what state law forbids may lead the jury to believe that state rather than federal law defines the crime, or more specifically, that any violation of a state law or regulation concerning lobbying or related matters amounts to honest services fraud. Wire and mail fraud are *federal* offenses; and while state violations may play a role, the jury should not be allowed to slip into the misunderstanding that any violation of proliferating state laws and regulations controlling this area automatically amounts to a federal crime.") (emphasis in original); *see also Model Instructions*, No. 15.35, comment (referring to honest-services instruction to define "fiduciary" duty).

**4. Girardi renews his request for a continuance.**

Girardi will not repeat here all the reasons he needs a continuance. *See* ECF 274, 282. But the government's eleventh-hour proffer of new and significantly-different fraud theories, on top of its equally-late-breaking effort to exclude his entire defense, on top of its late-disclosed expert, all of which have required him to drop everything to respond to recent changes to the simple, fixed trial that he was promised in January, provides further grounds for a continuance. Girardi was not told until two weeks before trial that it would be a de facto ethics proceeding. Due to the government's tactics on this matter, the defense team's attention has been diverted from other trial preparation to this motion. And unless the Court grants this motion in full, the defense team will need additional time to delve into the weeds of state attorney-ethics law and trust-account rules, which will probably require retaining an expert on such matters. Girardi simply cannot be prepared for trial on August 6, despite exercising extraordinary diligence, under these circumstances.

16

**CONCLUSION**

For the foregoing reasons, the Court should preclude the government's new fraud-by-omission theories, require disclosure of the grand-jury transcript, require proof of any facts at trial, and continue the trial.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  July 24, 2024          By  */s/ Charles J. Snyder*

CHARLES J. SNYDER
Attorney for Thomas Girardi

17

### CERTIFICATE OF COMPLIANCE

I, the undersigned, counsel of record for Defendant Thomas Girardi, certify that this brief contains approximately 5,344 words, which complies with the word limit of Civil L.R. 11-6.1, incorporated by reference into the local rules for criminal cases by L.Cr.R. 57-1, as well as this Standing Order. In making this certification, I have relied on the computer program used to prepare this brief (Microsoft Word).

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  July 24, 2024          By  */s/ Charles J. Snyder*

CHARLES J. SNYDER
Attorney for Thomas Girardi

1