UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　Plaintiff,<br>　　　　v.<br>THOMAS VINCENT GIRARDI, and<br>CHRISTOPHER KAZUO KAMON,<br>　　Defendants. | Case No. 2:23-CR00047-JLS<br><br>**ORDER DENYING MOTION TO SUPPRESS (Doc. 222)** |

　　Presently before the Court is Defendant Girardi's Motion to Suppress, which is fully briefed.[1]  The Court finds this Motion appropriate for resolution without a hearing.  For the reasons set forth herein, the Court DENIES Defendant's Motion to Suppress.

I.　　BACKGROUND

　　As recounted more fully elsewhere in the record, the now-defunct law firm Girardi Keese ("GK") was forced into Chapter 7 Bankruptcy by its creditors on December 18, 2020.  A trustee was appointed, and the trustee has been providing Girardi Keese records to the Government.  (*See generally* Mot.)  Defendant Girardi moves to exclude what appears to be a very broad category of evidence which he calls "GK evidence" and describes as

---

[1] (Doc. 222 (Mot. & Def. Exs. 1-4, 6-9, 12-14 ); Docs. 230-232 (Def. sealed Exs. 5, 10-11); Doc. 233 (Def. in camera Ex. 15); Doc. 247 (Opp.); Doc. 263 (Gov. sealed Exs. 1-3); Doc. 271 (Reply & Def. Ex. 16).)

"material taken from GK's offices, computers, and databases." (Mot. at 1.) According to the defense, no search warrants were sought or obtained in procuring these materials. (Mot. at 1.) The Government does not contest this fact. (*See* Opp. at 2 ("There is no dispute . . . that the Girardi Keese bankruptcy trustee consented to the government's request for access to Girardi Keese books and records without a search warrant.").)

Defendant Girardi challenges this record-sharing as unconstitutional. He also points to a privileged document that made its way into the Government's discovery production to the defense in a related case brought by prosecutors in the Northern District of Illinois ("Illinois prosecution"). Finally, he raises concerns regarding two billing entries that suggest to the defense that the grand jury secrecy required by Federal Rule of Criminal Procedure 6(e) has been violated. The Court addresses each issue below.

## II.     GRAND JURY SECRECY

Federal Rule of Criminal Procedure 6(e)(2) prohibits "disclos[ure]" of "a matter occurring before the grand jury" by several types of individuals, including the grand jurors themselves and attorneys for the government. "[K]nowing violations[s]" of this Rule "may be punished by contempt of court." Fed. R. Crim. Pro. 6(e)(7).

Defendant Girardi points to two entries in the bankruptcy trustee's billing records in support of his argument that the grand jury secrecy requirement was violated. The first billing entry, from April 29, 2021, under the category of "Asset Analysis and Recovery," notes that the trustee "[r]eviewed and analyzed correspondence and documents produced by Virage [a litigation lender] to the U.S. Attorney's Office and FBI under Grand Jury subpoena." (*See* Mot. at 24 (verb tense altered).) As to this first entry, the Government correctly contends that pre-existing business records obtained by a grand jury subpoena are not subject to Rule 6(e). (*See* Opp. at 17 (citing *United States v. Dynavac*, Inc. 6 F.3d 1407 (9th Cir. 1993).) But Defendant Girardi suggests that, based on the date of the trustee's billing entry—which was before Defendants were indicted here or in the Northern District of Illinois—and the reference in the billing entry to a grand jury subpoena, an attorney for

2

the Government must have disclosed the identity of a subpoena recipient and the nature of records that were under consideration by the grand jury at that time. Notably, this violation, if one occurred, did not involve the present prosecution team. (*See* Opp. at 17 (noting that the billing entry related to "litigation lender Virage" referenced "documents produced to the Chicago prosecutors"); Doc. 247-1 at 2, Paetty Decl. ¶ 10 (same).)

The second billing entry also relates to the Illinois prosecution. Dated one day after the Indictment was filed in this case, and the same day the Indictment was filed in the Illinois prosecution, February 1, 2023, it falls under the category of "Case Administration." (Mot. at 24.) The billing entry notes that the trustee had a "[t]elephone call with Corey Rubenstein (AUSA) re criminal investigation developments and indictment coming down today." (*Id.*) Attorney Rubenstein is not and has not been counsel of record in the case pending before the Court; rather, he was involved in the Illinois prosecution.

This potential Rule 6(e) issue and any contempt proceeding, therefore, are better suited for presentation to the court in the Northern District of Illinois. But even assuming the prosecution team here were involved, there is a lack of authority to suggest suppression of evidence in a criminal case is a proper remedy for disclosures of grand jury matters. *Cf.* Fed. R. Crim. Pro. 6(e)(7) (authorizing contempt sanctions for knowing violations of Rule 6)). Notably, the Ninth Circuit permitted the exclusion of evidence in a civil proceeding where attorneys of the Civil Division of the Office of the United States Attorneys were improperly granted access to grand jury evidence. *See In re Grand Jury Investigation No. 78-184*, 642 F.2d 1184, 1188 (9th Cir. 1981), *aff'd sub nom. Sells Eng'g, Inc.*, 463 U.S. 418 (1983). However, the rationale underlying the exclusion in that case does not apply here.

Here, Defendant Girardi challenges disclosure of grand jury evidence to the bankruptcy trustee, where it is presumably relevant to the bankruptcy proceeding. In this manner, the present criminal case is similar to *United States v. Pacific Gas & Electric Company*, wherein the court denied a defense request to suppress evidence. The *Pacific Gas & Electric* court distinguished *In re Grand Jury Investigation*, noting:

> Suppression in [the] context [of *In re Grand Jury Investigation*] makes sense: If secret grand jury evidence is improperly *obtained*, then it should be suppressed. Here, [the accused] does not contend that the Government improperly *obtained* secret grand jury evidence; the violation is that the Government improperly *disclosed it*. [Here, the accused] has not demonstrated why suppression in this context would be an appropriate remedy, and the Court agrees with the Government that it would be so unrelated to the violation of disclosure as to be improper.

2016 WL 3255069 at *4 (N.D. Cal. June 14, 2016) (cleaned up). Here, as was the case in *Pacific Gas & Electric*, the criminal prosecution arises out of the grand jury investigation at issue, and the Government attorneys allegedly disclosed grand jury materials; they did not receive them. Therefore, the Court rejects this argument as a basis for suppression of evidence.

Additionally, given the Court's conclusion that suppression would not be an appropriate remedy, and given that Defendant Girardi has expressly limited the remedy he seeks to exclusion of evidence, the Court sees no need to conduct a hearing in this case at this time. (*See* Mot. at 27 n.14 (limiting the remedy sought to "suppress[ing] evidence flowing from the improper coordination between the government and trustee" set forth in the Motion to Suppress).)

## III.   PRIVILEGED DOCUMENT

Defendant Girardi has submitted *in camera*, and the Court has reviewed, a document that is clearly privileged, and it appears that, as to this particular document, Defendant Girardi (rather than Girardi Keese) is holder of the privilege. (Ex. 15 (*in camera*).) This document was produced to the defense by Illinois prosecutors; no party contends that prosecutors in the present case have possession of or have seen the document. (*See* Paetty Decl. ¶ 9.) Therefore, although the Court recognizes the privileged nature of this document, it does not appear necessary to suppress it, since it is not in the possession of the prosecutors in this case, and the Court has been given no reason to believe it will be used in this trial.

4

## IV. FOURTH AMENDMENT

Turning to the heart of the matter, the Court considers whether the trustee's cooperation with the prosecutor in turning over Girardi Keese's business records without a warrant violates Defendant Girardi's constitutional right to be free of unreasonable search and seizure pursuant to the Fourth Amendment. For the reasons set forth herein, the Court concludes it does not.

### A. Burden of Proof

The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure of evidence. *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978); *United States v. Ziegler*, 474 F.3d 1184, 1189 (9th Cir. 2007); *United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005). A movant meets this burden where he shows that he had a legitimate expectation of privacy in the place searched or the item seized. *Smith v. Maryland*, 442 U.S. 735, 740 (1979). This consists of an actual, subjective expectation of privacy and an objective expectation of privacy, the latter of which consists of an expectation that society is prepared to recognize as 'reasonable.'" *See Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring) ("[T]here is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'"); *United States v. Lopez-Cruz*, 730 F.3d 803, 807 (9th Cir. 2013).

### B. Entity Status of Girardi Keese

The parties dispute whether Girardi Keese was a sole proprietorship or a partnership. According to Defendant Girardi, if Girardi Keese was operated as a sole proprietorship, it was not itself a separate entity; instead, it was an extension of Thomas Girardi, the individual. As the Court understands the argument, the defense contends that because Girardi Keese was Defendant Girardi's sole proprietorship, and because Fourth Amendment rights are personal rights, he is in a better position to assert those rights than

5

he would be if Girardi Keese were a partnership.[2]   In contrast, according to the Government, Girardi Keese was a partnership, a separate entity in and of itself, but that the end result of the Fourth Amendment analysis is the same regardless of whether the law firm was a partnership or a sole proprietorship.

The Government's proffered evidence of the firm's operation as a partnership comes to the Court in the form of Girardi Keese's tax returns, which were indeed filed using partnership forms.  (*See, e.g.*, Doc. 263 at 514, Gov. Ex 1 (sealed).)  But these forms indicate that the Defendant Girardi was the 100% owner of the partnership, while the only other partner owned a 0% stake in the firm.  (*See e.g., id.* at 518.)  This ownership structure does not reflect the operation of a partnership.  Therefore, for purposes of the present analysis, the Court assumes that Girardi Keese operated as a sole proprietorship.[3]

### C. Duties of Debtor and Trustee in Bankruptcy

Defendant Girardi correctly contends that statutory bankruptcy law cannot contravene Fourth Amendment constitutional law, but a discussion of the creation of a

---

[2] Generally, and certainly under California law, a sole proprietorship is not a legal entity in and of itself, separate from its individual owner.  *See Twenty-Nine Palms Enterprises Corp. v. Bardos*, 210 Cal.App.4th 1435, 1449 (2012), *cert. dismissed*, 570 U.S. 928 (2013); *Ball v. Steadfast-BLK*, 196 Cal.App.4th 694, 701 (2011); *Providence Washington Ins. Co. v. Valley Forge Ins. Co.*, 42 Cal.App.4th 1194, 1202 (1996).

[3] Resolution of this question goes clearly beyond the scope of the present record before the Court.  At the time that the bankruptcy petition was filed, there was enough uncertainty about Girardi Keese's entity status that the creditors who filed the involuntary petition filed a non-individual petition and, in a separate case, an individual petition.  Both are involuntary Chapter 7 liquidation cases filed on December 18, 2020 by the same group of creditors.  *See In re Girardi Keese*, 2:20-BK-21022-BR (C.D. Cal. Bankr.) (Doc. 1 (Involuntary Petition Against a Non-Individual, identifying "Girardi Keese" as the debtor and "Thomas Girardi, dba Girardi Keese" as "other names . . . used in the last 8 years")); *In re Thomas Vincent Girardi*, 2:20-BK-21020-BR (C.D. Cal. Bankr.) (Doc. 1 (Involuntary Petition Against an Individual, identifying "Thomas Vincent Girardi" as the debtor and "Tom Girardi," "Tom Girardi, dba Girardi Keese," and "Thomas Girardi, dba Girardi Keese" as "other names . . . used in the last 8 years")).  Over three-and-a-half years later, the cases continue to be maintained as two separate cases, with separate trustees, and both cases remain active, with multiple adversary actions. The non-individual case has over 2,000 docket entries and activity this month; the individual case has almost 500 docket entries and also has activity this month.

bankruptcy estate upon the filing of a bankruptcy petition and the rights and duties of both the trustee and the debtor provide background necessary for the Fourth Amendment analysis.

Under § 541 of the Bankruptcy Code (Title 11 of the United States Code), when a petition is filed, a bankruptcy estate is created that, subject to specified exceptions not at issue here, includes "all legal and equitable interests of the debtor in property as of the commencement of the case." Records related to the operation of a debtor's business are included within this property; thus, they become part of the bankruptcy estate upon filing. *See Compton v. C & G Boats, Inc.* (*In re Dunhill Resources, Inc.*), Adv. No. 05-3260, 2006 WL 2578862 at *5 (Bankr. S.D. Tex. Sept. 5, 2006) ("Among the property of the Debtor are financial records related to the operation of the Debtor's business. These records are necessarily among the property of the Debtor that becomes part of the estate upon filing.").

Even in the case of an involuntary bankruptcy petition initiated by creditors, the Bankruptcy Court may, "if necessary to preserve the property of the estate or to prevent loss to the estate," order that a trustee "take possession of the property of the estate and to operate any business of the debtor." 11 U.S.C. § 303(g); *see also* § 701(a)(1) (authorizing appointment of an interim trustee). An order appointing the current trustee pursuant to these two provisions was entered in the *In re Girardi Keese* bankruptcy case on January 6, 2021. *In re Girardi Keese* (Doc. 50 (appointing Elisa D. Miller to serve as the Chapter 7 trustee).) Having been appointed, the Chapter 7 trustee's duties include, among other things, the duty to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest" and to "investigate the financial affairs of the debtor." 11 U.S.C. § 704(a)(1), (4).

By order dated January 5, 2021, the Bankruptcy Court authorized the trustee to "immediately enter onto the premises of the debtor and take possession of the books and records, accounts, and all aspects of the debtor." *In re Girardi Keese* (Doc. 45 at 2).

Additionally, the Bankruptcy Code imposes an affirmative duty on the debtor to provide business records "relating to property of the estate" to the trustee.  Specifically, a debtor must "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate." 11 U.S.C. § 521(a)(4).

The Bankruptcy Code imposes a duty on bankruptcy trustees to make criminal referrals when they have "reasonable grounds" to do so.  *See* 18 U.S.C. § 3057(a).  Specifically,

> Any . . . trustee having reasonable grounds for believing that any violation under chapter 9 of this title or other laws of the United States relating to insolvent debtors . . . has been committed, or that an investigation should be had in connection therewith, shall report to the appropriate United States attorney all the facts and circumstances of the case, the names of the witnesses and the offense or offenses believed to have been committed.

*Id.*  Based on this duty, and based on a supervisory role allocated to the Department of Justice United States Trustee Program, which is responsible for seeking appointment of an interim trustee until the time creditors elect a trustee,[4] Defendant Girardi contends that the interim trustee has acted as a member of the prosecution team.  (Mot. at 8-12.)

In rejecting this point, the Court is guided by the district court that decided *United States v. Prokop*, 2014 WL 1268678, at *2 (D. Nev. Mar. 27, 2014).  Therein, the court rejected the criminal defendant's argument that the bankruptcy trustee was subject to the Rule 16 discovery obligations because he was effectively a member of the prosecution team.  *Id.* The court recounted the independent nature of the role of a bankruptcy trustee, including that the trustee is the "legal representative" of the estate and a "fiduciary" of the

---

[4] Here, it appears no such election has occurred, and the "interim" trustee has continued to serve for over three-and-a-half years after the filing of the petition in December 2020.  *See* 11 U.S.C. § 701(b) (authorizing an interim trustee to serve until a trustee is "elected or designated under section 702").

8

estate. *Id.* As such, the trustee has a fiduciary duty to both conserve the assets of the estate and maximize distribution to creditors. *Id.* According to *Prokop*, these characteristics of bankruptcy trustees are incompatible with the notion that the trustee is part of the United States Trustees or part of the prosecution team. *Id.* The Court agrees.

### D. Fourth Amendment Analysis

Against this background, the Court considers Defendant Girardi's argument that his Fourth Amendment rights were violated by the trustee's provision of Girardi Keese records to prosecutors in this case without requiring that the prosecutors seek and obtain search warrants.

#### 1. *Bisno v. United States* is Dispositive

At the outset, the Court notes that the Ninth Circuit case of *Bisno v. United States*, 299 F.2d 711 (9th Cir. 1961), appears to be dispositive. In *Bisno*, the defendant was convicted of concealing assets from a bankruptcy trustee tasked with administration of his bankruptcy estate. *Id.* at 713. On appeal, the defendant challenged the admission of certain exhibits from the debtor's business records as having been obtained by the prosecution in violation of the Fourth Amendment. *Id.* at 717. The Ninth Circuit rejected this challenge, noting the following:

> It is clear that no rights of Bisno under the Fourth . . . Amendment were violated. The records involved were not recovered from Bisno by a search or seizure of any kind but vested in the trustee in bankruptcy by operation of law as of the date of the filing of the petition in bankruptcy. Hence rights under the Fourth Amendment are not involved.

*Id.* The defense argues that *Bisno* cited no authority for its holding, but this is incorrect. (*See* Reply at 7, *see also id.* at 11-14.) The Ninth Circuit's rationale is clearly premised upon the principle that the records at issue were "vested in the trustee in bankruptcy by operation of law." *Bisno*, 299 F.2d at 717. The *Bisno* court relied on the version of the Bankruptcy Code that was operative at that time:

9

> The trustee of the estate of a bankrupt . . . upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located (1) documents relating to his property . . . .

11 U.S.C. § 110(a) (1952 ed.).

Defendant Girardi is correct that the Bankruptcy Code was "'dramatically overhauled in 1978.'" (Reply at 11.) An electronic search of Title 11 reveals that the key phrase, "vested by operation of law" quoted in *Bisno* is no longer found in the Bankruptcy Code. But as discussed in the preceding section, records of the debtor are included in the definition of the "property of the bankruptcy estate," and the trustee may be ordered —as was the case here—to "take possession of the books and records, accounts, and all aspects of the debtor." These current provisions of the Bankruptcy Code give the same foundational underpinning to the *Bisno* court's rejection of the defendant's Fourth Amendment claim as did the 1952 version of § 110(a) that "vested [in the trustee] by operation of law . . . the title of . . . documents relating to [the bankrupt's] property." Therefore, applying *Bisno*, the Court rejects Defendant Girardi's Fourth Amendment challenge to the GK Evidence.

### 2. At the Time of the Filing of the Bankruptcy Petitions, Defendant Girardi Ceased to Have a Reasonable Expectation of Privacy in the Girardi Keese Evidence

But even if *Bisno* were not dispositive, the Court would conclude that Defendant Girardi has not established he has a reasonable expectation of privacy in the evidence he seeks to suppress. Defendant Girardi has the burden of establishing both a subjective expectation of privacy and an objectively reasonable expectation that the law will recognize. *See Katz*, 389 U.S. at 361 (1967) (Harlan, J., concurring); *Lopez-Cruz*, 730 F.3d at 807. As discussed herein, by operation of law, the materials sought to be suppressed became the property of the bankruptcy estate and, also by operation of law and by order of

the bankruptcy court, were transferred into the possession of the trustee. It is against this background that Defendant Girardi's burden must be analyzed.

In his filings, Defendant Girardi does not expressly differentiate between the subjective and objective expectations of privacy. To the extent that Defendant Girardi contends that the Bankruptcy Code provisions he cites, relating to the trustee's duties, create a reasonable expectation of privacy that "recorded information" will not be used for purposes other than the administration of the estate, he does not account for the specific duty of the trustee to make criminal referrals pursuant to 18 U.S.C. § 3507(a). Therefore, this argument is unpersuasive.

Moreover, appearing to address the second part of the reasonable expectation inquiry (or perhaps addressing both parts simultaneously), Defendant Girardi acknowledges that "some information, like lists of his creditors, assets, and liabilities" are subject to public filing in the bankruptcy case. (Reply at 9 (referring to the debtor's duty pursuant to 11 U.S.C. § 521(a)(1) to file certain categories of documents including lists and schedules of "creditors, assets, and liabilities").) In this manner, he apparently concedes the lack of privacy interest in this small subset of documents, and perhaps in the other materials a debtor is expressly required to "file" under § 521(a)(1). But Defendant Girardi differentiates the § 521(a)(1) documents from "the content of nonfinancial private information in his papers and records [that] remain[] shielded from public view." (*Id.*) He gives the example of a hypothetical "salacious diary" that, because of its irrelevance to any of the trustee's duties, could not be "shared with a friend." (*Id.*) The defense has not identified any materials that actually fall into such a category. And beyond the hypothetical "salacious diary," Defendant Girardi does not in any manner attempt to divide the broad, self-described category of "GK evidence" he seeks to suppress into any subcategories he believes should be shielded. Therefore, Defendant Girardi has not met the burden of establishing an expectation of privacy in the GK evidence. In the absence of an expectation of privacy, there is no Fourth Amendment violation.

## V. CONCLUSION

As set forth herein, the Court DENIES Defendant's Motion to Suppress.

**IT IS SO ORDERED.**

DATED:  July 25, 2024

_____
HON. JOSEPHINE L. STATON
United States District Judge