E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
ALI MOGHADDAS (Cal. Bar No. 305654)
Assistant United States Attorney
Corporate & Securities Fraud Strikeforce
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6527/1786
     Facsimile: (213) 894-6269
     E-mail:    scott.paetty/ali.moghaddas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 23-00047-JLS-1 |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT THOMAS V. GIRARDI'S MOTION FOR A NEW TRIAL |
| v. | |
| THOMAS VINCENT GIRARDI, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Scott Paetty and Ali Moghaddas, hereby files its opposition to defendant Thomas Vincent Girardi's motion for a new trial under Rule 33 of the Federal Rules of Evidence (Dkt. 401).

//

//

This opposition is based upon the attached memorandum of points and authorities, the testimony and exhibits introduced during the competency proceedings and the thirteen-day trial, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 5, 2024Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

/s/
SCOTT PAETTY
ALI MOGHADDAS
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**Table of Contents**

I.   INTRODUCTION.................................................1

II.  LEGAL STANDARDS..............................................1

     A.   Rule 33.................................................1

III. ARGUMENT.....................................................3

     A.   Defendant Cites No New Evidence Regarding Competency......4

     B.   The Motion Does Not Raise a Genuine Doubt Regarding
          Defendant's Competency...................................8

IV.  CONCLUSION..................................................12

**Table of Authorities**

**CASES**

Drope v. Missouri,
	420 U.S. 162 (1975)..........................................4

McGregor v. Gibson,
	248 F.3d 946 (10th Cir. 2001)................................8

Miles v. Stainer,
	108 F.3d 1109 (9th Cir. 1997)................................8

United States v. A. Lanoy Alston, D.M.D., P.C.,
	974 F.2d 1206 (9th Cir. 1992)................................2

United States v. Bradley,
	No. 405CR059, 2009
	WL 1064470, at *3 (S.D. Ga. Apr. 20, 2009)...................8

United States v. Cantizano, No. 19-10373, 2023
	WL 3300515, at *3 (9th Cir. May 8, 2023).....................2

United States v. Chang,
	No. 16-CR-00047-EJD-1, 2020
	WL 5702131, at *9 (N.D. Cal. Sept. 24, 2020).................2

United States v. Dreyer,
	705 F.3d 951 (9th Cir. 2013)..............................3, 6

United States v. LaVictor,
	848 F.3d 428 (6th Cir. 2017).................................3

United States v. Martinez,
	763 F.2d 1297 (11th Cir. 1985)...............................3

United States v. McCarthy,
	54 F.3d 51 (2d Cir. 1995)....................................7

United States v. Oliver,
	626 F.2d 254 (2d Cir. 1980).................................10

United States v. Pantchev,
	No. 22-50246, 2024
	WL 2044048, at *1 (9th Cir. May 8, 2024)....................11

United States v. Pimentel,
	654 F.2d 538 (9th Cir. 1981).................................2

United States v. Reed,
	875 F.2d 107 (7th Cir. 1989).................................3

United States v. Rush,
	749 F.2d 1369 (9th Cir. 1984)................................2

United States v. Siddiqui,
      699 F.3d 690 (2d Cir. 2012)....................................11

United States v. Tellechea,
      478 F. App'x 605 (11th Cir. 2012)..............................8

United States v. Vamos,
      797 F.2d 1146 (2d Cir. 1986)..................................10

United States v. Wheeler,
      753 F.3d 200 (D.C. Cir. 2014)..................................3

United States v. White,
      670 F.3d 1077 (9th Cir. 2012).............................3, 7

**STATUTES**

18 U.S.C. § 4241................................................4

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Despite repeated assertions that he would not seek to reopen competency proceedings, defendant's motion for a new trial (the "Motion", Dkt. 401) is a clear attempt to do just that.  In support of the Motion, defense counsel attaches his previously rejected declaration regarding defendant's decision to testify at trial and another declaration from defendant's driver and caretaker.  These submissions contain various anecdotal references to defendant's failing memory and problems with personal hygiene.  Both issues represent well-worn territory in the Court's assessment of defendant's mental abilities and contain no bona fide, legitimate reason to revisit the Court's previous determination that defendant was able to understand the nature of the proceedings and assist in his own defense, should he choose to do so.  In sum, the Court should see the Motion for what it is, defendant's latest attempt to avoid responsibility for his criminal conduct that resulted in four felony guilty verdicts at trial.  The Motion should be denied.

**II.   LEGAL STANDARDS**

**A.   Rule 33**

In assessing a Rule 33 motion,

> The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses.  If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

United States v. A. Lanoy Alston, D.M.D., P.C., 974 F.2d 1206, 1211-12 (9th Cir. 1992) (cleaned up).  The operative phrase above is to prevent "a serious miscarriage of justice".  Hence, the Ninth Circuit has repeatedly interpreted those strong words to caution that such motions are disfavored absent the "exceptional case[ ] in which the evidence preponderates heavily against the verdict." See, e.g., United States v. Cantizano, No. 19-10373, 2023 WL 3300515, at *3 (9th Cir. May 8, 2023), quoting United States v. Rush, 749 F.2d 1369, 1371 (9th Cir. 1984) (alteration in original).

The evidence does not "preponderate[] heavily against the verdict" where the evidence plainly shows that defendant intended to defraud. See, e.g., United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981) ("Far from finding that the evidence preponderated heavily against the verdict, the district judge commented that, viewing the evidence in the light most favorable to the government after the verdict, the case on the issue of criminal intent as to both defendants was 'devastating.'").

Similarly, a Rule 33 motion should be denied where defendant simply asks the reviewing court to reinterpret or reweigh the parties' competing trial theories. See, e.g., United States v. Chang, No. 16-CR-00047-EJD-1, 2020 WL 5702131, at *9 (N.D. Cal. Sept. 24, 2020) ("Moreover, though Defendant Chang maintains that the facts put forth by the Government are equally consistent with innocent purposes, he did not offer evidence contesting those facts or undermining the credibility of the Government's witnesses. Accordingly, the Court does not believe that 'the evidence preponderates sufficiently heavily against the verdict' such that 'a serious miscarriage of justice may have occurred.'").

2

Courts consistently follow these principles in granting Rule 33 motions "sparingly and with caution, doing so only in those really exceptional cases." United States v. Martinez, 763 F.2d 1297, 1313-14 (11th Cir. 1985) (cleaned up). See also, e.g., United States v. LaVictor, 848 F.3d 428, 455-56 (6th Cir. 2017) (Rule 33 motions are "granted only in the extraordinary circumstances where the evidence preponderates heavily against the verdict") (cleaned up); United States v. Wheeler, 753 F.3d 200, 208 (D.C. Cir. 2014) ("[G]ranting a new trial motion is warranted only in those limited circumstances where a serious miscarriage of justice may have occurred") (cleaned up); United States v. Reed, 875 F.2d 107, 114 (7th Cir. 1989) (reversing grant of Rule 33 motion where case was "not one of those exceptional cases where the evidence preponderates so heavily against the defendant that it would be a manifest injustice to let the guilty verdict stand") (cleaned up).

Relatedly, where a district court has previously made a finding of competency after a fulsome competency evaluation and evidentiary hearing the decision to hold a subsequent competency hearing is reviewed for an abuse of discretion. United States v. White, 670 F.3d 1077, 1082 (9th Cir. 2012) ("We, therefore, review the district court's failure to order a second competency hearing sua sponte for abuse of discretion"); accord United States v. Dreyer, 705 F.3d 951, 963 n.3 (9th Cir. 2013) ("White holds that the standard of review is more deferential and error can be found only if the failure to order a second hearing sua sponte constitutes an abuse of discretion").

**III. ARGUMENT**

As the Court stated in its order finding defendant competent to stand trial, the standard for evaluating a defendant's competence is

3

whether defendant presently suffers from a mental disease or defect that renders him "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." (Dkt. 150 at 4, citing 18 U.S.C. § 4241(d) and Drope v. Missouri, 420 U.S. 162, 171 (1975).)

Defendant's current effort to have the Court revisit its prior order should be rejected. The Motion merely recycles the same essential arguments defendant made during the competency proceedings, namely that his memory issues and personal hygiene problems render him unable to understand the proceedings or meaningfully assist in his defense. The exhibits to the Motion recite insistences of defendant's purported inability to recall events or individuals, all of which are similar in kind to those described at length during the competency proceedings. This is not new evidence, nor does it now raise a bona fide doubt as to competency. To the contrary, the record reflects that defendant was aware of the proceedings against him at trial (as evidenced by his audible, public interactions with his counsel, by his demeanor in court, and by his own testimony on his behalf). In sum, defendant raises no genuine issue regarding competency that the Court has not already considered and his motion for a new trial should be denied.

**A.   Defendant Cites No New Evidence Regarding Competency**

The Motion relies on declarations from counsel (Dkt. 402) and defendant's caretaker (Dkt. 403), which list various interactions with defendant that purport to show defendant's failing memory during trial and two isolated instances related to personal hygiene. However, these declarations do not raise any new issues regarding defendant's ability to understand the nature of the proceedings

4

against him or to assist in his defense.  In fact, the Motion and its exhibits include anecdotal instances of memory issues and personal hygiene problems that are similar in kind and frequency as those raised and addressed at length during the previous competency hearing.[1]  When defendant raised these issues <u>in camera</u>, the Court rejected the filing as a request for "an incomplete abbreviated <u>ex parte</u> second competency hearing."  (Dkt. 373 at 40:22-25; <u>see also</u> Dkt. 353.)  Justifiably so.

Indeed, the Court had already considered numerous similar claims regarding defendant's cognitive decline and personal hygiene during the competency proceedings and found that, "Weighing all the evidence before the Court, and considering the many arguments offered by counsel, the Court concludes that although Defendant suffers from a mild-to-moderate cognitive impairment, he is competent to stand trial under the relevant legal standard."  (Dkt. 150 at 37.)  The Court further cited its review of evidence related to defendant's brain scans, neurocognitive test results, anecdotal accounts of his abilities, presentation during evaluations, and timeline of his purported mental decline, and found that defendant was "exaggerating his symptoms and partially malingering."  (<u>Id.</u>)

During trial, the Court reiterated that it "had a fulsome picture [of defendant's mental state] at the competency proceeding,"

---

[1] The Motion also references evidence at trial regarding the Hollywood Land Development company ("HLD").  Although evidence related to HLD was not part of the competency proceedings, defendant alleges that defendant's interactions with HLD principals were relevant to competency because they represented attempts to defraud defendant and Girardi Keese.  (Dkt. 401, Mot. at 6 [pagination refers to page numbering in the CM/ECF header].)  However, there was no conclusive evidence presented at trial that HLD was a fraud scheme or that defendant was actually defrauded.

5

1  and "acknowledge[d] [its] responsibility to continue to evaluate his
2  competency throughout." (Dkt. 373 at 41:2-4.)  To that end,
3  throughout trial defendant exhibited behavior that supported his
4  understanding of the proceedings and willingness to assist in his
5  defense.  For example, in a voice that could be overheard at
6  government's counsel table, defendant on multiple occasions during
7  trial asked his counsel when it was his turn to testify and also told
8  his counsel that it was his "ass on the line". (Dkt. 373 at 39:25-
9  40:7.)  These comments show that defendant was acutely aware of the
10 proceedings against him and eagerly awaited his opportunity to assist
11 in his defense by testifying.  The fact that the jury did not
12 ultimately credit defendant's testimony does not negate the fact that
13 he understood that he was a criminal defendant and was able to answer
14 questions related to the charges against him and provide testimony
15 consistent with his primary defense that co-defendant Christopher
16 Kamon was solely responsible for the fraud scheme.

17     Defendant relies heavily on United States v. Dreyer, 705 F.3d
18 951 (9th Cir. 2013).  However, that case does not help him.  First,
19 unlike in Dreyer where all three experts diagnosed Dreyer with
20 frontotemporal dementia (id. at 957-58), here no such consensus
21 existed regarding defendant's diagnosis among the experts who
22 evaluated him.  Second, contrary to defendant's presentation during
23 his evaluations, Dreyer did not exhibit evidence of malingering.
24 "Despite Dreyer's apparent proclivity for falsehood, the experts [who
25 evaluated him for competency] observed that these statements were not
26 made in a deliberate attempt to misrepresent the truth." Id. at 962.
27 Finally, unlike in Dreyer, defense counsel's observations of
28 defendant cited in the Motion were "were fully consistent with the

6

district court's prior understanding of [defendant]'s impaired verbal, behavioral, and impulse control, and should not have created any further doubt as to [defendant]'s competency." See id. at 955 (9th Cir. 2013) (Tallman, J., dissenting from the denial of rehearing en banc). Thus, there was no new "substantial evidence" before the Court that would call into question this defendant's competency. See id. at 962; see also United States v. McCarthy, 54 F.3d 51, 55 (2d Cir. 1995) (stating that any new evidence regarding competency must be material and noncumulative).

Defendant's capacity to malinger and present exaggerated and/or feigned symptoms of impairment also supports a denial of the Motion. See United States v. White, 670 F.3d 1077, 1085 (9th Cir. 2012) (finding "no abuse of discretion when the district court did not hold another competency hearing. A reasonable judge could have, in his sound discretion, found that White had the ability to assist in his defense if he chose to do so, but was choosing not to cooperate with his attorneys. Even without an express finding of fact that White was choosing not to cooperate with his lawyers, the evidence before the district court would not necessarily provide a reasonable judge with a bona fide doubt as to whether White lacked the ability to do so.").

At least one other court has rejected a similar effort to revisit competency under Rule 33, where the record reflects that the district court applied the correct legal standard and carefully considered the relevant issues specific to defendant's competency to stand trial. In United States v. Bradley, the defendant proffered a set of notes from a neurologist that were "very suggestive" of dementia in a motion for new trial. No. 405CR059, 2009 WL 1064470,

7

at *3 (S.D. Ga. Apr. 20, 2009), aff'd sub nom. United States v. Tellechea, 478 F. App'x 605 (11th Cir. 2012).  The Bradley court held that the notes "were merely a piece of a larger evaluation that was conducted by a team of professionals and which culminated in a comprehensive report" that the court had already considered. Id. at *4.  The court found that the notes did not undermine its prior conclusion that the defendant was competent to stand trial. Id. Moreover, the court noted the presence of "evidence that that defendant may have intentionally exaggerated his memory deficits" in declining to revisit its previous conclusion regarding defendant's competency. Id.  The same facts are present here and the same reasoning should apply.

In sum, nothing in the Motion raises any new issue related to competency that the Court has not already considered.

    **B.    The Motion Does Not Raise a Genuine Doubt Regarding Defendant's Competency**

The evidence introduced at trial and cited in the Motion does not raise a genuine doubt regarding competency.  The Motion's reliance on defense counsel's and defendant's caretaker's observations of defendant's mental state is incomplete at best.  "The concerns of counsel alone are insufficient to establish doubt of a defendant's competency." McGregor v. Gibson, 248 F.3d 946, 959-60 (10th Cir. 2001).  "Whether a defendant is capable of understanding the proceedings and assisting counsel is dependent upon evidence of the defendant's irrational behavior, his demeanor in court, and any prior medical opinions on his competence." See Miles v. Stainer, 108 F.3d 1109, 1112 (9th Cir. 1997).

Here, the Court had reports from Drs. Goldstein and Darby finding that defendant was competent to stand trial, and concluding that he was at least partially feigning and exaggerating his mental condition. Moreover, the Court noted that defendant's potential malingering called into question any reliance on defendant's statements or actions in counsel's (or counsel's agents') presence as a basis for reopening competency. (Dkt. 373 at 41:21-42:3).[2]

Unlike in Dreyer, where all three experts agreed that defendant had frontotemporal dementia, see 705 F.3d at 957-958, here there was no such consensus of expert opinions regarding defendant's mental condition. (See Dkt. 144 at 14 n.9.) Notably, however, the experts did reach consensus on the expected progression of defendant's condition. Specifically, all experts agreed that, in the absence of Alzheimer's disease (which was ruled out by defendant's brain scans), defendant's mental decline would be slowly progressive.[3] Cf. Dreyer, 705 F.3d at 958 (where "[a]ll three reports were consistent in their diagnoses and descriptions of Dreyer's symptoms."). Defendant's slowly progressive trajectory of mental decline further militates against revisiting the Court's prior competency order.

Furthermore, as discussed above, the Court carefully monitored defendant's demeanor throughout trial and even referenced defendant's "extensive" note-taking throughout trial as an important data point in assessing defendant's competency. (Dkt. 373 at 41:10-15.) Indeed, defendant's demeanor and comportment throughout trial evinced

---

[2] Defense counsel also insisted that their purpose in raising these matters was "not to get a second bite at the competency issue." (Dkt. 373 at 42:24-25.)

[3] This is also true if defendant has LATE, as diagnosed by treating neurologist Dr. Helena Chui. (See Dkt. 150 at 20, 42, 47.)

an understanding and respect for the proceedings that undercuts his claim of incompetence.  See, e.g., United States v. Vamos, 797 F.2d 1146, 1150 (2d Cir. 1986) ("[D]eference is owed to the district court's determinations based on observation of the defendant during the proceedings."); see also United States v. Oliver, 626 F.2d 254, 259 (2d Cir. 1980) (stating that district court "justifiably relied on [its] extended observations" of defendant in assessing his competency to stand trial).

And, despite counsel's claims to the contrary, defendant's trial testimony also undercuts the notion that he was unaware of the proceedings and unable to assist in his defense.  On direct examination defendant testified consistently with the main defense argument that co-defendant Christopher Kamon was responsible for the fraud scheme at Girardi Keese due to his oversight of the firm's accounting department.  (See Dkt. 373 at 48:23-49:20.)  Defendant also testified that had he known about Kamon's theft from the firm's accounts he would have "go[ne] crazy" and would "get him indicted." (Id. at 58:4-11.)  When pressed on cross-examination, defendant denied stealing client money and attempted to explain the non-payment of client settlement funds by citing various reasons including clients' drug problems, liens, and other holdbacks.  (Id. at 65:3-9; 62:9-24.)  Also consistent with the defense theory, defendant insisted that he never "intentionally t[old] anybody the wrong thing", reiterated his false narrative that Justice Panelli continued to watch over the Ruigomez matter after the settlement, and defended his use of client funds for personal expenses.  (Id. at 61:3-4, 63:7-64:4, 68:13-16.)  As stated above, the jury's rejection of

defendant's version of events does not mean that his testimony did not constitute meaningful assistance to his defense.

On this last point, United States v. Siddiqui, 699 F.3d 690 (2d Cir. 2012), is instructive. After a pre-trial competency hearing, the district court found the defendant competent to stand trial; however, defense counsel disagreed with the defendant's subsequent decision to testify at trial and urged the court "to craft an exception to the general rule, arguing that in some cases a defendant may be competent to stand trial yet incompetent to exercise her right to testify without the approval of defense counsel." Id. at 697, 705. The Second Circuit disagreed and found that there was "no reason to upset the district court's implicit determination that [the defendant] did in fact have the requisite capacity to make the [decision to testify]." Id. at 706. The fact that defendant's decision to testify "was a poor one, does not alter our analysis." Id. This conclusion is consistent with the principle that the district court is "uniquely situated" to assess a defendant's "capacity to understand the proceedings and to assist counsel." United States v. Pantchev, No. 22-50246, 2024 WL 2044048, at *1 (9th Cir. May 8, 2024). Here, as in Panchev (and Siddiqui), the Court considered the full range of defendant's behavior and mental ability when assessing competency. Moreover, any express findings based on the Court's "own observations of the defendant's demeanor and behavior", and conclusions that defendant "displayed a factual and rational understanding of the proceedings and charges" and even referenced "on several occasions what his defenses will be", support a conclusion that defendant was competent at trial and are factual

11

findings that are given "great[] deference" and reviewed for clear error.  Pantchev, 2024 WL 2044048, at *1 (cleaned up).

Finally, Exhibit A to the Motion further undermines the claim that defendant was unaware of the proceedings against him by conceding that defendant was aware of and understood the nature of the ongoing proceedings because he "persistently" and "consistent[ly]" insisted upon his right to testify in his defense. (Dkt. 402 at 5.)  In sum, defendant's motion adds nothing to the fulsome record from the prior competency proceedings and the Court's previous order finding defendant competent to stand trial. Therefore, there is no lingering bona fide doubt as to defendant's competency.  A new trial is not warranted.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion for a new trial.