CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CHARLES J. SNYDER (Bar No. 287246)
Email: Charles_Snyder@fd.org
SAMUEL CROSS (Bar No. 304718)
Email: Samuel_Cross@fd.org
J. ALEJANDRO BARRIENTOS (Bar No. 346676)
Email: Alejandro_Barrientos@fd.org
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012
Tel: 213-894-2854
Fax: 213-894-0081

Attorneys for Defendant
Thomas Vincent Girardi

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>THOMAS VINCENT GIRARDI,<br><br>　　　　　　Defendant. | Case No. CR-23-47-JLS-1<br><br>**THOMAS GIRARDI'S REPLY ISO RENEWAL OF TRIAL MOTIONS FOR JUDGMENT OF ACQUITTAL [FED. R. CRIM. P. 29(a)] AND POST-VERDICT MOTION FOR JUDGMENT OF ACQUITTAL [FED. R. CRIM. P. 29(c)]** |

# REPLY

Without waiving any other arguments, Tom Girardi offers four brief points in response to the Opposition:[1]

**1.** Beyond the arguments previously made in Docket No. 352, the Opposition offers nothing meaningfully new in response to Parr v. United States, 363 U.S. 370 (1960). For the reasons explained in Docket No. 354, the government is wrong, Parr controls, and, under Parr, the Court must acquit Girardi as a matter of law on Counts 1, 3, and 4.

**2.** The premise of Count 2 was that Girardi stole $2.5 million from Erika Saldana and Alberto Martinez's settlement in order to pay Joseph Ruigomez on July 1, 2019. See Indictment, Docket No. 1 at 15:15-19. But the trial evidence was undisputed that, as of July 1, more than $2.5 million in undrawn fees and costs remained for the legal work done on the Saldana matter. See, e.g., Exhibit 5995 (consents to settle); 2024-8-19 Tr., Docket No. 370 at 1752:14-19. By law and contract, the lawyers on that case were entitled (and required) to take their fees and costs before the client recovered anything. Docket No. 393 at 24:14-18; Cal. R. Prof'l Conduct 1.15(c)(2) (2019); GX 403 ¶ 7 ("You agree to reimburse GK [for costs advanced] out of the amount of recovery that remains after GK's legal fees are subtracted from the Total Recovery") (emph. in orig.). Girardi therefore previously argued that the government failed to prove that the July 1 transfer was Saldana and Martinez's money, rather than the lawyers'. 2024-8-19 Tr., Docket No. 370 at 1856:1-1857:22. The Opposition offers no response to this argument – because there is no response to be offered – and the jury's implicit finding to the contrary was not rationally based on the evidence.

---

[1] For the sake of the Court's time and brevity, and without waiving any other arguments, including those already preserved in the pretrial litigation, trial objections, and the oral and written motions for acquittal, this Reply focuses only on a few issues raised in the government's oppositions that warrant a response. By not explicitly responding to any and every argument raised in the Opposition, Girardi is not conceding any position or any of his prior arguments.

1 **3.** Girardi argued multiple times, in multiple ways, that the government failed to prove with evidence both the existence of his purported ethical duties and his knowledge of those duties. Docket No. 296 at 13:11-16:13; 2024-8-19 Tr., Docket No. 370 at 1853:7-1855:20. The Opposition contends that Girardi's duty arguments attack the instructions, and are thus properly the subject of a new-trial motion, rather than one for acquittal. Opp'n at 4 & n.1.

Procedurally, the government is wrong because the Rule 29 question is whether a "properly instructed" jury could have rationally found the elements beyond a reasonable doubt based on the trial evidence. Jackson v. Virginia, 443 U.S. 307, 318 (1979). "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must [therefore] be <u>not simply to determine whether the jury was properly instructed</u>, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt [given proper instructions]." Id. at 318 (emph. added). Substantively, Girardi's point was not merely that the ethical instructions were improper, but that they were a wholesale substitute for necessary evidence.

In <u>United States v. Solakyan</u>, 119 F.4th 575 (9th Cir. 2024), the Ninth Circuit recently addressed a defendant's argument that a doctor-patient relationship was categorically insufficient to establish the duty element required for honest-services fraud. While the Circuit rejected that contention as a general matter, it nonetheless held that "[w]hether a particular doctor-patient relationship gives rise to a fiduciary duty is a 'fact-based determination' to be made by a properly instructed jury." Id. at 586. That holding was consistent with a principle recognized throughout the law: that where a duty or professional standard is part of a claim or defense, the existence, scope, and adherence to that duty requires evidentiary proof. Indeed, in <u>United States v. Avenatti</u>; CR-19-61-JVS, the government successfully argued that it <u>had to</u> introduce detailed expert testimony about the defendant's fiduciary duties and breaches of duty in order to prove its case. See <u>United States v. Avenatti</u>; CR-19-61-JVS, Docket Nos. 299, 381,

430.  What was true in Avenatti is equally true here, and the government's failure to present duty-related evidence was not cured with a legal instruction.

      **4.**  Finally, Girardi argued that the government failed to establish wire fraud because deception was not the <u>means by which</u> Girardi obtained the charged clients' money.  Instead, the government's theory for each of the charged client matters, as set out in the Indictment, was that Girardi performed legitimate legal work, legitimately obtained money from settling defendants, stole some or all of the settlement money <u>without the clients' knowledge</u>, and <u>then</u> started lying to and lulling the clients to prevent them from learning what happened.  See 2024-8-19 Tr., Docket No. 370 at 1850:21-1853:6, 1859:23-1860:4.

      The wire-fraud statute prohibits using the wires in furtherance of a "scheme or artifice to defraud, or for <u>obtaining</u> money or property <u>by means of</u> false or fraudulent pretenses, representations, or promises[.]"  18 U.S.C. § 1343 (emph. added).  The Supreme Court has construed this "disjunctive language as a unitary whole," Kelly v. United States, 590 U.S. 391, 398 (2020) (citing McNally v. United States, 483 U.S. 350, 358 (1987)), limiting the statute's reach to fraudulent schemes designed to obtain money or property by means of victim deception, United States v. Miller, 953 F.3d 1095, 1098-99 (9th Cir. 2020) ("[T]o be guilty of wire fraud, a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property <u>by means of those deceptions</u>") (emph. added); United States v. Lew, 875 F.2d 219, 221 (9th Cir. 1989) ("[T]he intent must be to obtain money or property from the one who is deceived"); see also United States v. Guertin, 581 F.Supp.3d 90, 92 (D.D.C. 2022), aff'd, 67 F.4th 445 (D.C. Cir. 2023) ("[A] scheme to 'maintain' something is not synonymous with a scheme to 'obtain' the same thing . . . . [T]o state an offense under the plain meaning of § 1343, the Government must allege a defendant's scheme sought to gain possession of something not previously in his possession [by deception].").  Recent controlling authority has further clarified that depriving a person of "valuable economic information needed to

1  make discretionary economic decisions" is insufficient to establish wire fraud.
2  Ciminelli v. United States, 598 U.S. 306, 316 (2023).
3        The Opposition contends that the evidence was sufficient to show that Girardi's
4  "lies and material omissions were [not] made only after the settlement funds had
5  already been received by Girardi Keese," Opp'n at 11:18-21, but this is simply untrue.
6  The only example identified by the government is Girardi's supposed lie to the
7  Ruigomezes about the amount of their settlement; the government does not and cannot
8  contend that Girardi <u>obtained</u> – rather than retained – any other client's money <u>by</u>
9  <u>means of</u> material deception.
10       Even for the sole example that the Opposition identifies, it offers no explanation
11 for how the supposed false statement deprived the Ruigomezes of anything other than
12 accurate information necessary to make a discretionary economic decision. By law and
13 contract, PG&E was obligated to pay the money into GK's trust account; it did so
14 without deception; and <u>that</u> was the means by which GK obtained the Ruigomezes'
15 money. Further, the trial evidence established that, even <u>after</u> supposedly learning for
16 the first time about the true amount of the settlement, the Ruigomezes did not ask for
17 their money back for nearly five years. 2024-8-7 Tr., Docket No. 364 at 310:4-313:4.
18 Without deception directed at the victim with the intent to <u>obtain</u> the victim's money <u>by</u>
19 <u>means of that deception</u>, dishonesty may be dishonorable, but it is not federal wire
20 fraud. <u>Miller</u>, 953 F.3d at 1098-99.
21       For these and the other reasons raised in the oral and written Rule 29 motions,
22 the jury's verdict should be set aside and the Court should enter a judgment of acquittal.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: November 19, 2024    By /s/ Charles J. Snyder

CHARLES J. SNYDER
Attorney for Thomas Girardi

4

# CERTIFICATE OF COMPLIANCE

I, the undersigned, counsel of record for Defendant Thomas Girardi, certify that this brief contains approximately 1,343 words, which complies with the word limit of Civil L.R. 11-6.1, incorporated by reference into the local rules for criminal cases by L.Cr.R. 57-1, as well as this Standing Order. In making this certification, I have relied on the computer program used to prepare this brief (Microsoft Word).

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: November 19, 2024    By  */s/ Charles J. Snyder*

CHARLES J. SNYDER
Attorney for Thomas Girardi