E. MARTIN ESTRADA
United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section
SCOTT PAETTY (Cal. Bar No. 274719)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
TARA B. VAVERE (Cal. Bar. No. 279470)
Assistant United States Attorney
Asset Forfeiture & Recovery Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-5901
    Facsimile: (213) 894-6269
    E-mail:   Tara.Vavere@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:23-cr-00047-JLS-1 |
|---|---|
| Plaintiff, | APPLICATION FOR ENTRY OF MONEY JUDGMENT OF FORFEITURE AGAINST DEFENDANT THOMAS VINCENT GIRARDI; DECLARATION OF TARA B. VAVERE; EXHIBITS |
| v. | |
| THOMAS VINCENT GIRARDI, | |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, and Assistant United States Attorneys Scott Paetty and Tara B. Vavere respectfully submit this Application for Entry of a Money Judgment against defendant Thomas Vincent Girardi in the amount of $3,786,985.34.

1    This Application is based upon the attached memorandum of points
2 and authorities, the accompanying Declaration of Tara B. Vavere and
3 exhibits thereto, the files and records in this case, and such
4 further evidence and argument as the Court may permit.

Dated: December 9, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division

JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section

SCOTT PAETTY
Assistant United States Attorney
Deputy Chief, Major Frauds Section

          /s/
TARA B. VAVERE
Assistant United States Attorney
Asset Forfeiture & Recovery Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES....................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES....................................1

I.   INTRODUCTION.......................................................1

II.  FACTUAL SUMMARY....................................................1

    A.   Relevant Allegations in the Indictment.......................1

    B.   Defendant Received at least $3,786,985.34 in Proceeds from the Fraud Scheme..........................................2

        1.   Background of the Scheme...............................3

        2.   Victim Client 1........................................3

        3.   Victim Client 2........................................4

        4.   Victim Client 3........................................5

        5.   Victim Clients 4 and 5.................................6

        6.   Victim Client V.A......................................7

        7.   The total amount of actual loss to the victim-clients is $3,786,985.34.............................7

III. LEGAL STANDARD.....................................................8

    A.   Forfeiture is a Mandatory Punishment Ordered in Addition to Restitution.....................................8

    B.   Defendant is Liable for full Amount Derived from the Scheme.......................................................9

    C.   Fraud Proceeds Need Not be in Defendant's Possession.....10

    D.   The Forfeiture Order Must be Entered Timely..............11

IV.  ARGUMENT..........................................................11

    A.   The Entry of a Money Judgment of Forfeiture is Appropriate in this Case Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(C)........................11

    B.   The Court Should Enter a Money Judgment of Forfeiture in the Amount of $3,786,985.34...........................12

    C.   An Evidentiary Hearing is Unnecessary....................13

V.   CONCLUSION........................................................14

**TABLE OF AUTHORITIES**

**CASES**

Honeycutt v. United States,
  137 S. Ct. 1626 (2017) ........................................... 8

Libretti v. United States,
  516 U.S. 29 (1995) ........................................... 9, 11

United States v. Baras,
  624 F. App'x 560 (9th Cir. 2015) ................................. 9

United States v. Boesen,
  473 F. Supp. 2d 932 (S.D. Iowa 2007) ............................ 10

United States v. Carter,
  742 F.3d 440 (9th Cir. 2014) ..................................... 9

United States v. Casey,
  444 F.3d 1071 (9th Cir. 2006) ............................ 8, 11, 12

United States v. Christensen,
  828 F.3d 763 (9th Cir. 2015) .................................... 12

United States v. Davis,
  706 F.3d 1081 ................................................... 8

United States v. Hailey,
  887 F. Supp. 2d 649 (D. Md. 2012) ............................... 10

United States v. Harris
  842 F. App'x 28 (9th Cir. 2020)............................... 13, 14

United States v. Lo,
  839 F.3d 777 (9th Cir. 2016) .................................... 10

United States v. McGinty,
  610 F.3d 1242 (10th Cir. 2010) ................................... 9

United States v. Misla-Aldarondo,
  478 F.3d 52 (1st Cir. 2007) ..................................... 11

United States v. Monsanto,
  491 U.S. 600 (1989) .............................................. 8

United States v. Newman,
  659 F.3d 1235 (9th Cir.2011) .................................. 8, 9

United States v. Phillips,
  704 F.3d 754 (9th Cir. 2012) ................................ 10, 11

United States v. Venturella,
  585 F.3d 1013 (7th Cir. 2009) ................................... 10

**STATUTES**

18 U.S.C. § 981..............................................11, 12

18 U.S.C. § 981(a)(1)(C).......................................passim

18 U.S.C. § 1343..............................................passim

18 U.S.C. § 1956(c)(7)............................................12

28 U.S.C. § 2461(C)...........................................passim

U.S.C. § 981(a)(1)(C).............................................2

**RULES**

Fed. R. Crim. P. 32.2.........................................9, 12

Fed. R. Crim. P. 32.2(b)(1)(A)..................................8, 9

Fed. R. Crim. P. 32.2(b)(1)(B)................................12, 13

Fed. R. Crim P. 32.2(b)(2).......................................11

Fed. R. Crim P. 32.2(b)(4).......................................11

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

On August 27, 2024, after a thirteen-day trial, the jury returned its verdict finding defendant Thomas Vincent Girardi ("defendant") guilty of four counts of wire fraud, in violation of 18 U.S.C. § 1343. ECF. No. 387. Defendant's sentencing is scheduled for December 20, 2024. Id.

Pursuant to the forfeiture allegations in the Indictment, the government respectfully submits that as part of the financial component of defendant's sentence in this case, the Court should enter a money judgment of forfeiture in the amount of $3,786,985.34. This amount reflects the actual losses to the victims and the financial benefits received by defendant in return for the criminal conduct for which he was convicted. This money judgment is necessary and appropriate in order to forfeit illegal proceeds of the defendant's fraud scheme.

**II.  FACTUAL SUMMARY**

**A.  Relevant Allegations in the Indictment**

The Indictment charged defendant with four counts of wire fraud in violation of 18 U.S.C. § 1343.[1] Specifically, defendant defrauded former clients of the Girardi-Keese law firm, of which defendant was the sole owner and managing partner, through the misappropriation of settlement funds in a fraud scheme dating back to at least 2010.[2] (ECF No. 1 at 3.)

---

[1] Count Five of the Indictment was dismissed prior to trial on July 30, 2024.  ECF No. 314.

[2] Co-defendant Christopher Kamon was severed for trial and has subsequently entered a plea of guilty in this case and in related case number 23-24-JLS and is scheduled to be sentenced on January 31, 2025.

1

The Indictment also contained a forfeiture allegation pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c). Id. at pp. 17-18. In relevant part, the government provided notice that in the event of defendant's conviction, the government would seek forfeiture as part of any sentence. The government gave notice of its intent to forfeit any and all property, real or personal, constituting, or derived from, any proceeds traceable to the underlying violation, as well as any and all property, real or personal, involved in the underlying violation. Id. The government also gave notice that it may seek a judgment for a sum of money equal to the total amount of money involved any offense of which defendant was convicted. Id.

**B.   Defendant Received at least $3,786,985.34 in Proceeds from the Fraud Scheme**

At trial, the government presented testimony and evidence related to five victim-clients of Girardi-Keese and proved beyond a reasonable doubt that defendant committed wire fraud in violation of 18 U.S.C. § 1343 by participating in a scheme to defraud the victim-clients for the purpose of obtaining money through false or fraudulent representations, promises or omitted facts. The government further proved that the statements made or facts omitted by the defendant were material and made with the intent to defraud and, the defendant used, or caused to be used, an interstate wire communication.

The government introduced evidence that defendant's scheme resulted in intended losses to the victim-clients of Girardi-Keese of approximately $16,375,000 and actual losses of approximately $2,525,000. In its sentencing memorandum, the government presented evidence that defendant was unjustly enriched by misappropriating

2

funds belonging to Client Victim "V.A." in the amount of $1,261,985.34. Together with the evidence presented at trial, the actual loss amount to the victim-clients is $3,786,985.34. (ECF No. 419 at 17.)

1. Background of the Scheme

Between at least 2010 and 2021, Girardi, assisted by co-defendant Christopher Kamon, who was the head of accounting at Girardi-Keese, engaged in a scheme to defraud at least five clients of Girardi-Keese out of their portions of settlements that had been deposited into Girardi-Keese trust accounts. (ECF No. 1 at 4-14.) Defendant would negotiate a settlement on behalf of a client and would misrepresent, conceal, and falsely describe to the client the true terms of the settlement or falsely explain the required disposition of the settlement proceeds, all while misappropriating client funds. Id.

2. Victim Client 1

At trial, Victim Client 1 testified that he retained Girardi-Keese to represent him in connection with a lawsuit against a public utility related to significant injuries Victim Client 1 sustained as a result of a gas explosion that caused severe burns all over his body and destroyed his family's home. (Trial Exhibit 1; ECF No. 364 at 17-19.) In or about January 2013, defendant negotiated a settlement agreement in favor of Victim Client 1 and his family. (Trial Exhibit 3; ECF No. 364 at 23.) Defendant then lied to Victim Client 1 about the true value of their $53 million settlement. (ECF No. 364 at 23-25 (Q: . . . [W]ho told you that you would receive $5 million? A: Tom."); Trial Exhibit 3.) Victim Client 1 testified that he never received a copy of his settlement agreement from Girardi-

Keese. (ECF No. 364 at 30). Victim Client 1 further testified that for years he did not know the true amount of the settlement. (ECF No. 364 at 56-57 ("Q: Did you ever have a chance to look at the preceding pages of the settlement agreement during . . . 2013 through 2019? A: No.") On January 24, 2013, Girardi-Keese received payment of $28,000,000 in trust for Victim Client 1 and his family. (Trial Exhibit 5.) Pursuant to the retainer agreement with Victim Client 1, Girardi-Keese was entitled to 25 percent of any recovery plus all costs and litigation expenses incurred, so according to Girardi-Keesse's own accounting, Victim Client 1 and his family were owed approximately $12,250,000. (Trial Exhibit 90.) Once Victim Client 1 and his family began demanding payments from Girardi, Girardi began making lulling payments. (ECF No. 364 at 43-53.) Between April 2013 and July 2019, such payments amounted to approximately $11 million, resulting in an actual loss to Victim Client 1 of approximately $1,250,000. (ECF No 364 at 55; Trial Exhibit 90.)  Attached to the Declaration of Tara B. Vavere (the "Vavere Declaration") as Exhibit "A" are true and correct copies of Trial Exhibits 1, 3, 5, and 90.

        3.   <u>Victim Client 2</u>

At trial, Victim Client 2 testified that she retained Girardi-Keese to represent her in connection with litigation in relation to a boating accident in which Victim Client 2's husband was killed. (Trial Exhibit 201; ECF No. 364 at 217-220.) Defendant obtained a settlement agreement in favor of Victim Client 2. (Trial Exhibit 203; ECF No. 364 at 220-222.) On June 25, 2020, Girardi-Keese received payment of $504,400 in trust for Victim Client 2. (Trial Exhibit 246). According to their retainer agreement, Girardi-Keese was

entitled to 33 percent of any recovery plus all costs and litigation expenses incurred (Trial Exhibit 201) and so Victim Client 2 was owed approximately $334,000 (Trial Exhibit 232.) In response to Victim Client 2's repeated efforts to obtain the settlement funds, Girardi falsely told Victim Client 2 that he was working on the "last signature from a judge" (ECF No. 364 at p. 229) and that Girardi would send Victim Client 2 a "personal check" for $50,000 as an "advance" on Victim Client 2's settlement, when, as Girardi then knew, there was no need for any "signature from a judge" before Victim Client 2's settlement proceeds could be disbursed, and there was no need for an "advance" because Girardi-Keese had already received Victim Client 2's settlement payment. (ECF No. 364 at 231). Overall, defendant made approximately $150,000 in payments to Victim Client 2 and the actual loss to Victim Client 2 is therefore $184,000. (Trial Exhibit 232). Attached to the Vavere Declaration as Exhibit "B" are true and correct copies of Trial Exhibits 201, 203, 232, and 246.

        4.   <u>Victim Client 3</u>

At trial, Victim Client 3 testified that she retained Girardi-Keese to represent her in connection with a product liability case related to a defective medical device. (Trial Exhibit 340; ECF No. 365 at 228-229.) Defendant negotiated a settlement of Victim Client 3's lawsuit. (Trial Exhibit 336; ECF No. 365 at 231-233). Pursuant to Victim Client 3's retainer agreement, Girardi-Keese's attorneys' fees in the amount of 20 percent of the settlement, plus costs and expenses were to be deducted from the settlement proceeds and paid to Girardi-Keese. (Trial Exhibits 340 and 301.) Any payment of settlement funds to Victim Client 3 required approval by the

bankruptcy trustee, which approval was obtained in March of 2020. (Trial Exhibit 303.) Girardi-Keese received payment of $128,250 in trust for Victim Client 3 on May 22, 2020. (Trial Exhibits 304 and 306). According to Girardi-Keese's own accounting records, Victim Client 3 was owed $56,000 and the bankruptcy trustee was owed $35,000. (Trial Exhibit 301.) Defendant misappropriated Victim Client 3's settlement money and never paid the amounts owed to either Victim Client 3 or to the bankruptcy trustee. (ECF No. 366 at 59-60). Girardi falsely told Victim Client 3 that he needed "clearance" from the bankruptcy trustee and would write Victim Client 3 a "personal check" but Victim Client 3 never received any payment from defendant. (ECF No. 366 at 59-60). Because neither the $56,000 payment nor the $35,000 payments were ever made by defendant, the actual loss to Victim Client 3 is $91,000. (ECF No. 366 at 63). Attached to the Vavere Declaration as Exhibit "C" are true and correct copies of Trial Exhibits 301, 303, 304, 306, 336, and 340.

        5.   <u>Victim Clients 4 and 5</u>

At trial, Victim Client 4 testified that she retained Girardi-Keese to represent her and her then husband (Victim Client 5) in connection with a lawsuit related to injuries they and their minor son sustained in a car accident. (Trial Exhibit 403; ECF No. at 53). In July of 2019, defendant negotiated a settlement of Victim Clients 4 and 5's lawsuit. (Trial Exhibit 425.) Pursuant to Victim Clients 4 and 5's retainer agreement, 40 percent of any recovery plus costs and expenses were to be paid to Girardi-Keese. Based on Girardi-Keese's own accounting records, Victim Clients 4 and 5 were owed approximately $3,700,000. (Trial Exhibit 462.) Once Victim Client 4 began demanding payments from defendant, and usually only in response

to Victim Client 4's demands, Girardi began making lulling payments to Victim Client 4, (ECF No. 369 at 71-73 ("Q: was it common . . . for you to continuously e-mail Ms. Salas and others at the Girardi-Keese law firm inquiring about your money? A: Yes.") Through 2020, the lulling payments amounted to approximately $2.7 million. (Trial Exhibit 462). Accordingly, the intended loss is approximately $3.7 million and the actual loss is approximately $1 million (Trial Exhibit 462.) Attached to the Vavere Declaration as Exhibit "D" are true and correct copies of trial exhibits 403, 425 and 462.

6. Victim Client V.A.

In its sentencing memorandum, the government presented evidence that Victim Client V.A. retained Girardi-Keese to represent her in connection with a lawsuit related to injuries she sustained in a head on collision. (ECF No. 419 at 11.) Defendant negotiated a settlement of Victim Client V.A.'s lawsuit in which she is still owed $1,261,985.34 (Exhibit 2 to Government's Trial Memorandum, ECF No. 419-2.)

7. The total amount of actual loss to the victim-clients is $3,786,985.34

Based on the testimony and evidence presented at trial and in the government's sentencing memorandum, defendant's scheme resulted in an actual loss to the victim-clients of approximately $3,786,985.34, all of which came to rest with the defendant and represents the proceeds of the fraud scheme for which he was convicted.

## III. LEGAL STANDARD

### A. Forfeiture is a Mandatory Punishment Ordered in Addition to Restitution.

If applicable, forfeiture is mandatory and imposed as punishment for a crime. See United States v. Monsanto, 491 U.S. 600, 606-07 (1989) (holding that, by using the phrase "shall order" in a criminal forfeiture statute, "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied"); United States v. Davis, 706 F.3d 1081, 1083 (9th Cir. 2013) (recognizing that "[f]orfeiture is imposed as punishment for a crime"); see 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c) ("If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to the Federal Rules of Criminal Procedure and section 3554 of title 18, United States Code."). "When the government has met the requirements for criminal forfeiture, the district court must impose criminal forfeiture, subject only to statutory and constitutional limits." United States v. Newman, 659 F.3d 1235, 1240 (9th Cir.2011) (citing United States v. Casey, 444 F.3d 1071, 1076 (9th Cir. 2006)), abrogated on other grounds by Honeycutt v. United States, 137 S. Ct. 1626 (2017).

"Federal Rule of Criminal Procedure 32.2 makes clear that, at least where the proceeds of the criminal activity are money, the government may seek a money judgment as a form of criminal forfeiture." Newman, 659 F.3d. at 1241 (citing Fed. R. Crim. P. 32.2(b)(1)(A)). The government may seek criminal forfeiture in the form of: (1) an in personam money judgment against the defendant; (2)

8

forfeiture of specific assets; and (3) forfeiture of substitute assets. Newman, 659 F.3d at 1242-43 (*citing* Fed. R. Crim. P. 32.2). Courts have unanimously agreed that *in* personam money judgments representing unlawful proceeds are proper even where forfeiture statutes do not refer to money judgments. Id. at 1242 (citing United States v. McGinty, 610 F.3d 1242, 1246 (10th Cir. 2010) (collecting cases)).

"Congress conceived of forfeiture as punishment for the commission of various [crimes]." Libretti v. United States, 516 U.S. 29, 39 (1995). Notably, "[c]riminal forfeiture is separate from restitution, which serves an entirely different purpose [and] defendants may be required to pay restitution and forfeit the same amounts." United States v. Baras, 624 F. App'x 560, 562 (9th Cir. 2015)) (citing United States v. Newman, 659 F.3d 1235, 1241 (9th Cir. 2011) (quotation omitted). "This is especially true in cases in which a defendant is convicted of a crime that provides for forfeiture as part of the penalty." Id. (citing United States v. Carter, 742 F.3d 440, 446 (9th Cir. 2014)) (quotations omitted). Because criminal forfeiture serves "an entirely different purpose" from restitution, payment of both restitution and criminal forfeiture in not impermissible "double recovery." Newman, 659 F.3d at 1241.

**B.   Defendant is Liable for full Amount Derived from the Scheme.**

If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b)(1)(A). Here, the indictment charges a scheme to defraud, and defendant's wire fraud conviction is under 18 U.S.C. § 1343, which is a statute that by its terms criminalizes a

9

scheme to defraud. (ECF No. 1 and 18 U.S.C. § 1343.) Accordingly, the overall scheme to defraud is part of defendant's conviction[3] and the money judgment should be for the amount of proceeds derived from the scheme in its entirety rather than for those proceeds derived from the specific overt acts which are included in the wire fraud counts (i.e., counts one through four) for which defendant was convicted. See, e.g., United States v. Lo, 839 F.3d 777, 792 (9th Cir. 2016) (the proceeds of the crime of conviction consist of "the funds involved in that fraudulent scheme, including additional executions of the scheme that were not specifically charged or on which the defendant was acquitted"); United States v. Venturella, 585 F.3d 1013, 1015 (7th Cir. 2009) (because forfeiture in a mail fraud case "is not limited to the amount of the particular mailing but extends to the entire scheme"); United States v. Hailey, 887 F. Supp. 2d 649, 653 (D. Md. 2012) (although only $2.9 million was obtained from the eight counts of wire fraud for which defendant was convicted, defendant was required to forfeit the $9.1 million obtained from the entire wire fraud scheme).

**C.    Fraud Proceeds Need Not be in Defendant's Possession.**

The Ninth Circuit has held that Rule 32.2 "does not permit the district court to do anything other than 'determine the amount of money that the defendant will be ordered to pay." United States v.

---

[3] See United States v. Boesen, 473 F. Supp. 2d 932, 953 (S.D. Iowa 2007)("The statute criminalizes executions of the scheme; the overall scheme is thus inherently part of the offenses of which Defendant has been convicted"); ECF No. 393 (Jury Instruction No. 21, "In order for the defendant to be found guilty of (wire fraud under counts one through four of the indictment, the government must prove . . . the defendant knowingly participated in or devised a scheme or plan to defraud for the purpose of obtaining money").

10

Phillips, 704 F.3d 754, 771 (9th Cir. 2012). "Those proceeds need not be in defendant's possession at the time of sentencing; in fact, imposition of forfeiture is still necessary even if defendant has no assets to forfeit." Id.; see also United States v. Casey, 444 F.3d 1071, 1074 (9th Cir. 2006) (forcing a defendant to disgorge his ill-gotten gains, "even those already spent," ensures that defendants do not benefit from their crimes); United States v. Misla-Aldarondo, 478 F.3d 52, 73-74 (1st Cir. 2007) ("If the government has proven that there was at one point an amount of cash that was directly traceable to the offenses, and that thus would be forfeitable. . ., that is sufficient for the court to issue a money judgment, for which the defendant will be fully liable whether or not he still has the original corpus of tainted funds – indeed, whether or not he has any funds at all.").

### D. The Forfeiture Order Must be Entered Timely.

A forfeiture order must be entered at or before sentencing. Fed. R. Crim P. 32.2(b)(2).  The order becomes final as to the defendant at sentencing and must be included in the oral pronouncement of sentence and noted in the judgment and commitment order. Id., at 32.2(b)(4).

## IV. ARGUMENT

### A. The Entry of a Money Judgment of Forfeiture is Appropriate in this Case Pursuant to 18 U.S.C. § 981 (a)(1)(C) and 28 U.S.C. § 2461(C).

The proposed money judgment of forfeiture accompanying this application is warranted based on defendant's conviction of the fraud scheme alleged in the Indictment. Defendant's convictions for violations of 18 U.S.C. § 1343, give rise to forfeiture pursuant to

18 U.S.C. § 981(a)(1)(c),[4] which provides for forfeiture of "Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of. . . any offense constituting 'specified unlawful activity' [as defined in 18 U.S.C. § 1956(c)(7)]." See 18 U.S.C. § 981(a)(1)(C).[5]

The entry of a money judgment of forfeiture is therefore appropriate here. Defendant was the direct recipient of illegal proceeds of the offenses for which he was convicted, namely at least $3,786,985.34 in funds that belonged to the victim clients. See United States v. Casey, 444 F.3d 1071, 1074 (9th Cir. 2006) (forcing a defendant to disgorge his ill-gotten gains, "even those already spent," ensures that defendants do not benefit from their crimes).

**B. The Court Should Enter a Money Judgment of Forfeiture in the Amount of $3,786,985.34.**

In determining the amount of the money judgment, the Court may rely upon evidence admitted at trial and already in the record. See Fed. R. Crim. P. 32.2(b)(1)(B). The government has the burden of establishing the amount of the money judgment by a preponderance of the evidence. See United States v. Christensen, 828 F.3d 763, 822 (9th Cir. 2015) (district court or jury need only find facts warranting forfeiture by a preponderance of the evidence); see also Fed. R. Crim. P. 32.2, Committee Notes (2000) (explaining that "the

---

[4] While 18 U.S.C. § 981 references civil forfeiture, pursuant to 28 U.S.C. § 2461(c), where a defendant is charged in a criminal case with a violation for which the civil forfeiture of property is authorized, "the Government may include notice of the forfeiture in the indictment [and] [i]f the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to the Federal Rules of Criminal Procedure."

[5] 18 U.S.C. § 1343 (wire fraud) is a specified unlawful activity as defined by 18 U.S.C. § 1956(c)(7).

12

government must establish the forfeitability of the property by a preponderance of the evidence").

The evidence admitted at trial and presented in the government's sentencing memorandum meets the preponderance standard and establishes that defendant financially benefited through the misappropriation of client funds, keeping at least $3,786,985.34 in settlement funds that belonged to the victim clients, which is directly traceable to the fraud scheme for which he was convicted. As described above and detailed further in the government's Opposition to defendant's Motion for Acquittal, the evidence demonstrated that defendant repeatedly and knowingly lied to the victim clients about the safety and availability of their funds. See generally, ECF No. 410.

As such, the proceeds of defendant's fraud scheme are no less than $3,786,985.34. This is the amount that the defendant should be ordered to forfeit as part of his sentence in this case.

### C. An Evidentiary Hearing is Unnecessary.

Pursuant to Fed. R. Crim. P. 32.2(b)(1)(B), a court's determination on forfeiture "may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable" and "[i]f the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty."

A defendant's right to a hearing, however, is not license to relitigate evidence already admitted into the record. In United States v. Harris, the Ninth Circuit held that a defendant may not use a hearing on potential money judgment of forfeiture as an opportunity

13

for a second chance at challenging evidence already admitted at trial.  See 842 F. App'x 28, 32 (9th Cir. 2020) ("The district court held that expert testimony was unnecessary because the government's forfeiture calculations rested on the trial evidence, not extrapolation or sampling, and that Harris sought to challenge the trial evidence improperly. . . . Thus, the district court did not abuse its discretion by refusing to hold an evidentiary hearing on forfeiture.").  Here, the government relies on evidence already entered into the record, and thus, like in Harris, an evidentiary hearing is neither necessary nor appropriate.

**V.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court grant the government's Application and requests that the Court enter the Proposed Money Judgment lodged contemporaneously with the application.

Dated: December 9, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division

JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section

SCOTT PAETTY
Deputy Chief, Major Frauds Section

         /s/
_____
TARA B. VAVERE
Assistant United States Attorney
Asset Forfeiture & Recovery Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

14

**DECLARATION OF TARA B. VAVERE**

I, Tara B. Vavere, declare as follows:

1. I am an Assistant United States Attorney assigned to prosecute the forfeiture portion of this case on behalf of the government. I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness.

2. Attached hereto as Exhibit A are true and correct copies of Trial Exhibits 1, 3, 5, and 90 pertaining to Victim Client 1, which were admitted into evidence at trial in this matter.

3. Attached hereto as Exhibit B are true and correct copies of Trial Exhibits 201, 203, 232, and 246 pertaining to Victim Client 2 which were admitted into evidence at trial in this matter.

4. Attached hereto as Exhibit C are true and correct copies of Trial Exhibits 301, 303, 304, 306, 336, and 340 pertaining to Victim Client 3 which were admitted into evidence at trial in this matter.

5. Attached hereto as Exhibit D are true and correct copies of Trial Exhibits 403, 425, 462 pertaining to Victim Clients 4 and 5 which were admitted into evidence at trial in this matter.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on December 9, 2024.

                                                /s/
                                      TARA B. VAVERE

1