AE. MARTIN ESTRADA
United States Attorney
LINDSAY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6527
     Facsimile: (213) 894-6269
     E-mail:    scott.paetty@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 23-00047-JLS-1 |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING POSITION; DECLARATION OF RYAN IWAMOTO; EXHIBIT |
| v. | |
| THOMAS VINCENT GIRARDI, | Hearing Date: December 20, 2024<br>Hearing Time: 1:30 p.m.<br>Location:    Courtroom of the<br>             Hon. Josephine L.<br>             Staton |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Scott Paetty, hereby files its response to defendant Thomas Vincent Girardi's Sentencing Memorandum and Objections to the PSR (Dkt. 421).

This position is based upon the attached memorandum of points

//

1  and authorities, the files and records in this case, and such further
2  evidence and argument as the Court may permit.
3  Dated: December 13, 2024        Respectfully submitted,
4                                  E. MARTIN ESTRADA
                                   United States Attorney
5
                                   LINDSAY GREER DOTSON
6                                  Assistant United States Attorney
                                   Chief, Criminal Division
7
8                                        /s/
                                   SCOTT PAETTY
9                                  Assistant United States Attorney
10                                 Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   THE COURT IS NOT RESTRICTED TO CONSIDERING ACTUAL LOSS IN CALCULATING THE SENTENCING GUIDELINES**

Defendant's argument that his guidelines loss calculations should not include intended loss (Dkt. 421 at 18-21)[1] fails under the facts and as a matter of law. Probation found that the intended loss to the wire fraud victims in the four counts of conviction is approximately $16.4 million. (PSR ¶ 134.) This is supported by the trial exhibits that establish the settlement amounts for the victim cases, the amounts that were owed to those victims, and the amounts that were paid to them by Girardi Keese. (See e.g., Trial Exs. 64 (J.R. consent to settle) and 94 (J.R. case card register); Trial Exs. 252 (J.S. consent to settle) and 245 (J.S. case card register); Trial Exs. 301 (J.H. consent to settle) and 335 (J.H. case card register); Trial Exs. 425 (E.S. consent to settle) and 458 (E.S. case card register).)[2]

The cases defendant relies on Banks, Kisor, Kirilyuk, and Castillo should not be interpreted to bar this Court from considering intended loss in determining defendant's guidelines range. In United States v. Banks, the Third Circuit held that courts could not consider the commentary to a Guideline contained in an application note unless the Guideline was ambiguous. 55 F.4th 246, 256 (3rd Cir. 2022). After canvassing various dictionary definitions of loss, Banks found no ambiguity in the meaning of "loss," which it viewed as

---

[1] Pagination refers to the CM/ECF header.

[2] Exhibit 2 to the Government's Sentencing Position (Dkt. 428) shows that victim V.A. was owed (after fees and costs) a net recovery of $3,036,985.34, which would be applicable to the intended loss calculation. However, inclusion of this amount would not change the loss level, which would remain +20 under § 2B1.1(b)(1)(K).

restricted to only actual losses.  Id. at 258.  Accordingly, Banks held that the district court erred in considering that "loss is the greater of actual loss or intended loss," as set forth in application note 3(A) to U.S.S.G. § 2B1.1.  Banks is not binding on this Court and, moreover, was wrongly decided.  The Supreme Court earlier reversed a decision that was similar to, but less sweeping than, the one in Banks.  In Stinson v. United States, 508 U.S. 36, 37–38 (1993), the Court reversed "a decision of the Court of Appeals for the Eleventh Circuit holding that the commentary to the Sentencing Guidelines is not binding on the federal courts," and held instead that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."  Stinson v. United States, 508 U.S. 36, 37–38 (1993).

    Although Banks never squarely addressed how its holding was inconsistent with the Supreme Court's Stinson opinion, its decision was explicitly premised on another case relied on by defendant, Kisor v. Wilkie, 588 U.S. 558 (2019).  But Kisor did not overrule Stinson.  Indeed, it did not even overrule the cases that are consistent with Stinson:

> The only question presented here is whether we should overrule those decisions [Auer v. Robbins, 519 U.S. 452 (1997); Bowles v. Seminole Rock & Sand Co., 325 U.S. 410 (1945)], discarding the deference they give to agencies. We answer that question no.

Kisor, 588 U.S. at 563.  As Kisor stated, Stinson was one of many cases that employed Seminole- or Auer-deference, id. at 568 n.3, and so Stinson's holding was, if anything, reinforced, by Kisor's refusal to reverse those cases.

2

Banks erred in a more basic way, too. Banks asserted that "the Guideline" contained nothing that was even ambiguously related to any kind of losses other than actual ones, justifying its dismissal of the application note that explicitly states "loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1, comment.(n.3(A)). But Banks failed to consider the fundamental Guideline: U.S.S.G. § 1B1.3, the Relevant Conduct provision for all of the Guidelines. Under that provision, all specific offense characteristics, which include loss enhancements, are to be determined based on "all harm that resulted from the acts and omissions . . . , and all harm that was the object of such acts and omissions." U.S.S.G. § 1B1.3(a)(3). Even if the first clause, "all harm that resulted from the acts" is read as "all actual harm," the second clause of the Guideline, "and all harm that was the object of such acts," must mean "intended harm" or it would make no sense. Thus, the Guidelines themselves, not merely their commentary, require courts to consider intended harm. But even if this result were doubtful or ambiguous, it would not alter the outcome. According to Banks, when the Guidelines are ambiguous, courts should turn to the commentary, which in this case includes the application note discussing intended harm. U.S.S.G. § 2B1.1, comment.(n.3(A)).

Perhaps most importantly, the Ninth Circuit continues to follow Stinson, as noted in another case defendant cites, Kirilyuk. An "[a]pplication Note 'that interprets or explains a guideline is authoritative unless it . . . is inconsistent with, or a plainly erroneous reading of, that guideline." United States v. Kirilyuk, 29 F.4th 1128, 1136 (9th Cir. 2022) (ellipsis in original) (quoting United States v. Prien-Pinto, 917 F.3d 1155, 1157 (9th Cir. 2019)).

3

Furthermore, just last year in Castillo the Ninth Circuit instructed that Kisor provides the framework for determining whether to defer to Guidelines commentary. United States v. Castillo, 69 F.4th 648, 655 (9th Cir. 2023). Under Kisor and Castillo, "deference is not permitted without first finding the [Guideline provision] ambiguous." Castillo, 69 F.4th at 655-56. Here, whether the Court evaluates the plain meaning of the term "loss" as it appears in the guideline provision itself, or considers "loss" to be ambiguous and looks to the application notes' definition, the term clearly includes intended loss.

## II. RESTITUTION SHOULD REFLECT A CREDIT FOR PAYMENTS TO VICTIMS

Defendant correctly notes that any funds returned to the victims should be credited against restitution. (Dkt. 421 at 21-22, citing 18 U.S.C. §§ 3663(b)(1)(B)(ii), 3663A(b)(1)(B)(ii).) The Court may base its sentencing decision on factual findings that are supported by the record taken as a whole. "[I]f the district court's findings are plausible in light of the record viewed in its entirety, [we] cannot reverse evenif [we are] convinced [we] would have found differently." United States v. Torlai, 728 F.3d 932, 937 (9th Cir. 2013) (citation omitted).

Upon further investigation, the government has learned that victims J.R. and J.H. have been paid the equivalent of their settlement balance. Accordingly, the government revises its recommendation for restitution as reflected in the chart attached as Exhibit A to the concurrently filed Declaration of Ryan Iwamoto.

In sum, the total restitution in this case amounts to $2,310,247.26 broken down as follows.

- Victim J.R. = 0

4

- Victim J.S. = $34,294.55
- Victim J.H. = 0
- Victim D.G. (J.H.'s bankruptcy trustee) = $35,000
- Victims E.S. and A.M. = $978,967.37
- Victim V.A. = $1,261,985.34

Victims E.S. and A.M. have submitted a claim to the California State Bar for payment of funds that defendant still owes E.S. (Iwamoto Decl. ¶ 5.)  That claim is still pending.  (Id.)  If these victims recover any funds from the State Bar, their restitution award should be reduced by the amount of such payment.  The government agrees with defendant that any restitution order should reflect joint and several liability with co-defendant Christopher Kamon.

DECLARATION OF RYAN IWAMOTO

I, Ryan Iwamoto, declare as follows:

1. I am a Special Agent ("SA") with the IRS Criminal Investigation (IRS-CI). I am one of the case agents assigned to United States v. Thomas Vincent Girardi, et al., 23-CR-47-JLS. I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness. Because I am making this declaration for the limited purpose of addressing issues related to defendant's sentencing, I have not included every fact known to me concerning this investigation.

2. I have been employed as a SA with IRS-CI since July 19, 2021. I am currently assigned to Group 16 located in the San Diego Post of Duty, which is responsible for investigating complex financial crimes.

3. Since becoming IRS-CI SA, I have received 26 weeks of formal training at the Federal Law Enforcement Training Center in Glynco, Georgia. During the time I have been employed by IRS-CI, I have participated in numerous investigations relating to tax fraud, wire fraud, money laundering, and other various types of complex financial crimes. I have participated in many aspects of criminal investigations, including reviewing evidence, analyzing financial documents, conducting physical and electronic surveillance, and executing search and arrest warrants.

4. Attached hereto as Exhibit A is a document showing the actual loss sustained by victims J.R., J.S., J.H., D.G. (J.H.'s bankruptcy trustee), E.S., and V.A. that resulted from defendant Thomas Girardi's ("defendant") fraud offenses. The column titled

"Loss" depicts the amount of actual loss sustained by the victim and reflects credits for any funds received by the victims as repayment on the amounts due to them by defendant.  The column titled "Supporting Evidence" identifies the evidence I reviewed in determining the amount of loss.

5.   Based on information provided by counsel for victim E.S., I understand that victims E.S. and A.M. have submitted a claim to the California State Bar for payment of funds that defendant still owes E.S.  That claim is still pending.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on December 13, 2024.

*Ryan Iwamoto*
Ryan Iwamoto

**EXHIBIT A**

<u>United States v. Thomas Girardi</u>, 23-CR-47-JLS

**Actual Loss re Restitution**

| Victim | Loss | Supporting Evidence |
|---|---|---|
| J.R. | $0 | Trial Exhibits 64, 94; Dkt. 364 at 423-427 |
| J.S. | $34,294.55 | Trial Exhibits 232, 245, 252; USAO_GK_00786617 |
| J.H. | $0 | Trial Exhibits 301, 335; USAO_GK_00004174-USAO_GK_00004175 |
| D.G. (J.H.'s bankruptcy trustee) | $35,000 | Trial Exhibits 301, 335; USAO_GK_00786618; USAO_GK_00786619 |
| E.S. and A.M. | $978,967.37 | Trial Exhibits 425, 458; |
| V.A. | $1,261,985.34 | Dkt. 428 (Ex. 2) |
|  |  |  |