CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CHARLES J. SNYDER (Bar No. 287246)
Email: Charles_Snyder@fd.org
SAMUEL CROSS (Bar No. 304718)
Email: Sam_Cross@fd.org
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
THOMAS VINCENT GIRARDI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:23-cr-47-JLS-1 |
| Plaintiff, | **DECLARATION OF CHARLES J. SNYDER IN RESPONSE TO DOCKET NO. 446** |
| v. | |
| THOMAS VINCENT GIRARDI, | |
| Defendant. | |

**DECLARATION OF CHARLES J. SNYDER**

I, Charles J. Snyder, declare as follows:

1. I am a California-licensed DFPD appointed to represent Tom Girardi in this matter. Unless otherwise stated, I make this declaration based on personal knowledge and, if called as a witness, would attest to its contents under oath.

2. Yesterday, the Court issued the following text order:

> The Court is in receipt of a letter from FMC Butner requesting a 15-day extension of the evaluation period for Defendant Girardi. The Court requires additional information to determine whether a full 15-day period is warranted. To that end, the Court sets a Status Conference for Thursday, February 6, 2025, at 10 a.m. PT, which the FMC Butner neuropsychologist assigned to this matter may attend telephonically. The Court intends to inquire, among other things, as to what voluminous records were received on January 29, from whom, and why they could not have been requested and received earlier.

To make the February 6 hearing more productive, I submit this declaration and the attached exhibits to give the Court a written timeline of events.

3. On December 20, the Court issued an order temporarily committing Girardi to FMC Butner for evaluation under 18 U.S.C. § 4244. Docket No. 439.

4. On December 31, a medical assistant at Butner directed the parties to send any relevant records to her email address (s1burroughs@bop.gov). See **Exhibit 1.**[1]

5. On January 7, Girardi was transported to Butner via one-stop commercial flight. But see Docket No. 439 ¶ 4.

6. Also on January 7, major fires broke out across L.A., causing significant upheaval and impacting FPDO staff and operations.

7. On January 17, a member of Girardi's defense team, Aaron Bateman, sent an email with a link containing a large batch of records to s1burroughs@bop.gov. The email was titled "Thomas V. Girardi" and included the following message: "This link points to a folder containing Mr. Girardi's recent medical records and a list of his providers. Please note that these are not all of his records – just the ones to which we

---

[1] I was on leave between December 31, 2024 and January 2, 2025.

1

have access – and some may be dated." See **Exhibit 2**.

8. On January 21, Bateman sent a second link containing a smaller batch of records to s1burroughs@bop.gov. The email was similarly titled "Thomas V. Girardi" and included the following message: "This link points to supplemental information regarding Mr. Girardi." See Exhibit 3.

9. On January 24, Brianna Grover at BOP emailed me and stated that BOP had not received records from the defense. Shortly after, I responded to Grover and told her that the defense had previously sent two productions to s1burroughs@bop.gov. After checking, Grover confirmed that BOP had received fileshare links at that address, but stated that "the email came from a no reply email address and she was unsure who Aaron Bateman was to follow up." See **Exhibit 4** (1/24/25 emails). As mentioned above, both emails were titled "Thomas V. Girardi," included messages referring to Girardi's medical records, and were sent to s1burroughs@bop.gov.

10. In her email to me, Grover also stated that BOP is "unable to open documents via [Box.com]." In response, I wrote: "[the defense productions] are too large to send via email. How did you obtain documents from the government? It was my understanding that the government sent them via fileshare. If for some reason you can't take Box.com links, which is how we share information with the USAO, maybe we can upload them to whatever platform the government used and you can access them that way." Id. (1/24/25 emails). Grover did not respond to that message. Id. Based on later communications, it is my understanding that BOP received records from the government via USAFx, which is a platform operated by Box.com.

11. On January 24, Grover separately sent the Court an email stating: "The evaluation itself will be completed by the 5th but may not be fully written. Are you ok with the 14-businnes days, stated on the arrival letter?" See **Exhibit 5**.

12. On January 28, having received no response from Grover, Girardi's defense team followed up again and asked how it could get its records to BOP. See

2

**Exhibit 4** (1/28/25 email).

13. On January 29, Grover wrote: "We have JEFS access for the USAO to share files with us. That is the only fileshare platform we have access too." See **Exhibit 4** (1/29/25 email). Shortly after, I emailed AUSA Scott Paetty for help getting documents to BOP. Paetty agreed, but indicated that the USAO had shared its documents with BOP via USAFx (a Box.com platform). Later that day, after Girardi's defense team uploaded documents to USAFx, Paetty confirmed that the files had been shared with BOP. See **Exhibit 6** (1/29/25 emails).[2]

14. On February 4, the day before its evaluation of Girardi was due, BOP requested a 15-day extension, primarily citing the January 29 receipt of voluminous documents from the defense. The letter requesting the extension includes a couple of statements that I believe bear brief mention:

   a. First, the letter states that, "**[o]n January 29, 2025**, voluminous records were received **that required thorough review prior to neuropsychological testing being conducted** in order to ensure appropriate testing was administered." Setting aside that the records were first sent to s1burroughs@bop.gov on January 17 and January 21, by January 29, Girardi had been at Butner for 22 days, and only five business days remained before his evaluation was set to be complete. The letter does not explain why no neuropsychological testing had been done over the preceding three weeks.

   b. Second, the letter requests "a 15-day extension in order to complete neuropsychological testing and evaluation," indicating that 15 days from when the records were received was sufficient to complete the evaluation. Had BOP opened (or followed up on) the January 17 email, it would have had the vast majority of Girardi's

---

[2] Girardi's defense team encountered technical issues when attempting to upload certain documents to USAFx. As a result, on January 29, Girardi's defense team also sent a hard drive of documents to BOP, which was delivered to Butner on January 30 and signed for by A. Hayden at 9.38 a.m.

3

records 19 days before February 5; had it opened Girardi's January 21 email, it would have had all of the records 15 days before February 5.

      c. The letter is also noteworthy for what it does not say. Among other things, it is silent about what work BOP has done thus far, what further "testing and evaluation" is necessary, and why any outstanding "testing and evaluation" could not have been done absent records from Girardi.

15. The Court may recall that, at the December 20 hearing, the government indicated that BOP's medical staff had no higher priority nationwide than completing Girardi's evaluation. Still – and despite knowing that it was being closely watched by a federal judge – BOP was unable to check emails, follow up on items pertinent to its evaluation, and complete its work on time. This is something that the Court should meaningfully consider in assessing the thoroughness of any final report, and, more importantly, whether the agency can responsibly accommodate an exceptionally frail, 85-year-old dementia patient for whom negligence or inattention may have serious consequences. BOP medical personnel undoubtedly do their best given limited resources, but, in Girardi's case, the margin for error is thin.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed February 5, 2025 at Los Angeles, California.

                                                  */s/ Charles J. Snyder*
                                                  Charles J. Snyder