BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-6527
Facsimile: (213) 894-6269
E-mail:    scott.paetty@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>              v.<br><br>THOMAS VINCENT GIRARDI,<br><br>              Defendant. | No. CR 23-47-JLS-1<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT GIRARDI'S MOTION FOR BAIL PENDING APPEAL<br><br>Hearing Date: September 11, 2025<br>Hearing Time: 1:30 p.m.<br>Location:     Courtroom of the<br>              Hon. Josephine L.<br>              Staton |

    Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorney Scott Paetty, hereby

files its opposition to defendant Thomas Vincent Girardi's motion for

bail pending appeal (Dkt. 554).

//

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 18, 2025                    Respectfully submitted,

                                        BILAL A. ESSAYLI
                                        United States Attorney

                                        CHRISTINA T. SHAY
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                        _____/s/_____
                                        SCOTT PAETTY
                                        Assistant United States Attorney

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

DESCRIPTION                                                                     PAGE

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.   INTRODUCTION...................................................1

II.  LEGAL STANDARD.................................................2

III. ARGUMENT.......................................................5

      A.   There Is No Novel Issue or Substantial Question
           Regarding the Denial of Defendant's Suppression Motion
           Because, as the Court Correctly Held, Under Ninth
           Circuit Law Defendant Has No Standing to Raise a
           Fourth Amendment Challenge...............................5

      B.   The Jury Instruction of an Attorney's Ethical Duties
           Does Not Raise a Substantial Issue Likely to Result in
           Reversal................................................10

      C.   Defendant's Argument Based on Parr Has Been Squarely
           Rejected by the Ninth Circuit...........................14

      D.   Defendant Fails to Establish a Substantial Question
           that the Court's Competency Findings Were an Abuse of
           Discretion or Based on Clearly Erroneous Facts..........16

IV.  CONCLUSION....................................................21

### TABLE OF AUTHORITIES

DESCRIPTION                                                           PAGE

**Federal Cases**

Bisno v. United States,
  299 F.2d 711 (9th Cir. 1961) .................................. 5, 6, 7

D'Aquino v. United States,
  180 F.2d 271 (11th Cir. 1950) ...................................... 4

Drope v. Missouri,
  420 U.S. 162 (1975) ............................................... 17

In re AFI Holding, Inc.,
  530 F.3d 832 (9th Cir. 2008) ....................................... 9

In re Castillo,
  297 F.3d 940 (9th Cir. 2002) ....................................... 9

In re Joseph,
  208 B.R. 55 (B.A.P. 9th Cir. 1997) ................................. 9

In re Rigden,
  795 F.2d 727 (9th Cir. 1989) ....................................... 9

Leonard v. Vrooman,
  383 F.2d 556 (9th Cir. 1967) ....................................... 9

Morison v. United States,
  486 U.S. 1306 (1988) ......................................... 2, 4, 16

Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,
  523 F.3d 1051 (9th Cir. 2008) ..................................... 12

Parr v. United States,
  363 U.S. 370 (1960) ......................................... 14, 15, 16

Schmuck v. United States,
  489 U.S. 705 (1989) ............................................... 14

United States v. Affleck,
  765 F.2d 944 (10th Cir. 1985) ...................................... 5

United States v. Bernhardt,
  840 F.2d 1441 (9th Cir. 1988) .................................. 14, 15

United States v. Bilanzich,
  771 F.2d 292 (7th Cir. 1985) ....................................... 5

United States v. Cano,
  934 F.3d 1002 (9th Cir. 2019) ...................................... 7

United States v. Dreyer,
  705 F.3d 951 (9th Cir. 2013) ...................................... 19

United States v. Garcia,
  340 F.3d 1013 (9th Cir. 2003) ...................................... 5

United States v. Giancola,
  754 F.2d 898 (11th Cir. 1985) ...................................... 3

United States v. Goland,
  959 F.2d 1449 (9th Cir. 1992) ..................................... 11

United States v. Handy,
  761 F.2d 1279 (9th Cir. 1985) ............................... passim

United States v. Hoskie,
  950 F.2d 1388 (9th Cir. 1991) ..................................... 17

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                                <u>PAGE</u>

United States v. Kaluna,
   192 F.3d 1188 (9th Cir. 1999) ..................................... 8
United States v. Layfield,
   96 F.4th 1095 (9th Cir.) ......................................... 15
United States v. Layfield,
   2024 WL 982437 (9th Cir. Mar. 7, 2024) .......................... 15
United States v. Maull,
   773 F.2d 1479 (8th Cir. 1985) ..................................... 5
United States v. Miller,
   753 F.2d 19 (3d Cir. 1985) .................................. passim
United States v. Mitchell,
   744 F.2d 701 (9th Cir. 1984) ................................. 14, 15
United States v. Montoya,
   908 F.2d 450 (9th Cir. 1990) ..................................... 4
United States v. Nguyen,
   2024 WL 4164626 (9th Cir. Sept. 12, 2024) ....................... 13
United States v. Pantchev,
   2024 WL 2044048 (9th Cir. May 8, 2024) .......................... 17
United States v. Powell,
   761 F.2d 1227 (8th Cir. 1985) ..................................... 5
United States v. Prokop,
   2014 WL 1268678 (D. Nev. Mar. 27, 2014) .......................... 9
United States v. Randell,
   761 F.2d 122 (2d Cir. 1985) ...................................... 5
United States v. Ransom,
   642 F.3d 1285 (10th Cir. 2011) .................................. 11
United States v. Setser,
   568 F.3d 482 (5th Cir. 2009) ..................................... 8
United States v. Townsend,
   897 F.2d 989 (9th Cir. 1990) ..................................... 5
United States v. Valera-Elizondo,
   761 F.2d 1020 (5th Cir. 1985) .................................... 5
United States v. Warren,
   25 F.3d 890 (9th Cir. 1994) ..................................... 13
United States v. Weitzenhoff,
   35 F.3d 1275 (9th Cir. 1993) ................................... 13
United States v. Wheeler,
   795 F.2d 839 (9th Cir. 1986) ..................................... 4
United States v. White,
   670 F.3d 1077 (9th Cir. 2012) ............................... 18, 19

<u>**TABLE OF AUTHORITIES (CONTINUED)**</u>

<u>DESCRIPTION</u>                                                                 <u>PAGE</u>

**Federal Statutes**

11 U.S.C. §§ 303(g) ............................................... 6, 8
11 U.S.C. §§ 521(a)(4) ............................................... 6
11 U.S.C. §§ 541 ............................................... 6
11 U.S.C. §§ 701(a) ............................................... 8
11 U.S.C. §§ 704(a) ............................................... 6
18 U.S.C. § 641 ............................................... 4
18 U.S.C. § 3057(a) ............................................... 6, 8
18 U.S.C. § 3143(b) ............................................... 1, 2, 3
18 U.S.C. § 4244 ............................................... 16, 20
28 U.S.C. § 586(a)(1) ............................................... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    **INTRODUCTION**

Following lengthy pre-trial proceedings, including an evidentiary hearing and multiple rounds of briefing, the Court found defendant Thomas Vincent Girardi ("defendant") competent to stand trial.  Defendant was then convicted by a jury on four counts of wire fraud stemming from defendant's long-running scheme to defraud victim-clients of his defunct plaintiff's law firm, Girardi Keese.

Defendant now applies for bail pending appeal pursuant to 18 U.S.C. § 3143(b) (Dkt. 554 ("Motion" or "Mot.")).  He raises four issues in the Motion but only two are legal issues that could result in reversal of all counts of conviction.  Of those two issues, defendant's suppression challenge is contrary to well-established bankruptcy law and his other challenge is based on factual findings regarding competency that are subject to clear error review.[1]  The Court is familiar with these arguments, having considered them all (some at considerable length) and rejected them.  Nor do they support bail pending appeal here, particularly given that they are governed by Ninth Circuit precedent and do not pose "new and novel" or "fairly debatable" issues, make claims not likely to result in reversal, and/or do not impact all of the counts of conviction on which imprisonment will be imposed.[2]  <u>United States v. Handy</u>, 761 F.2d 1279, 1281, 1283 (9th Cir. 1985); <u>see also</u> <u>United States v. Miller</u>,

---

[1] Defendant's remaining arguments: one concerning a jury instruction on the duties of an attorney, one alleging the government pursued an invalid theory of wire fraud are foreclosed by well settled Ninth Circuit law.

[2] The government concedes that defendant is not likely to flee or pose a danger to the safety of any other person in the community if released, and that the appeal is not for purpose of delay.

753 F.2d 19, 23-24 (3d Cir. 1985); <u>Morison v. United States</u>, 486 U.S. 1306 (1988).

At every step in these proceedings, defendant has attempted to delay justice.  This is merely the latest attempt.  The Court should deny defendant's Motion.

## II.   LEGAL STANDARD

In enacting the Bail Reform Act of 1984 (which includes the provision now codified at 18 U.S.C. § 3143(b)), Congress intended "to reverse the presumption in favor of bail," <u>Miller</u>, 753 F.2d at 22, and to "toughen the law with respect to bail pending appeal," <u>Handy</u>, 761 F.2d at 1283.  Congress recognized that,

> once a person has been convicted and sentenced to jail,
> there is absolutely no reason for the law to favor release
> pending appeal or even permit it in the absence of
> exceptional circumstances.

H. Rep. No. 907, 91st Cong., 2d Sess. 186-87 (1970) (regarding D.C. Code model for bail pending appeal provision in Bail Reform Act of 1984), <u>quoted in</u> <u>Miller</u>, 753 F.2d at 22.  Indeed, there are compelling reasons to deny release pending appeal in most cases:

> First and most important, the conviction, in which the
> defendant's guilt of a crime has been established beyond a
> reasonable doubt, is presumably correct in law, a
> presumption factually supported by the low rate of reversal
> of criminal convictions in the Federal system.  Second, the
> decision to send a convicted person to jail and thereby
> reject all other sentencing alternatives, by its very
> nature includes a determination by the sentencing judge
> that the defendant is dangerous to the person or property
> of others, and dangerous when sentenced, not a year later
> after the appeal is decided.  Third, release of a criminal
> defendant into the community, even after conviction,
> destroys whatever deterrent effect remains in criminal law.

<u>Id.</u>

Under 18 U.S.C. § 3143(b), a defendant who has been found guilty and sentenced to a term of imprisonment must be detained pending an appeal unless the Court makes all of the following findings:

(1) that the defendant is not likely to flee or pose a danger to the safety of any other person in the community if released;

(2) that the appeal is not for purpose of delay;

(3) that the appeal raises a substantial question of law or fact; and

(4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

Handy, 761 F.2d at 1283.

"The word 'substantial' . . . defines the level of merit required in the question raised on appeal." Id. at 1281. In Handy, the Ninth Circuit defined "substantial question" in Section 3143(b) as a question that is "fairly debatable" or "fairly doubtful," thereby raising an issue "of more substance than would be necessary to a finding that it was not frivolous." 761 F.2d at 1283; see also Miller, 753 F.2d at 23; United States v. Giancola, 754 F.2d 898, 901 (11th Cir. 1985). In further defining how "substantial" the question must be, the Handy Court adopted the Third Circuit's interpretation that the "substantial question" should be one that is "novel" or one that "has not been decided by controlling precedent." Miller, 753 F.2d at 23; see Handy, 761 F.2d at 1282 n.2; see also id. at 1281 ("'The question may be new and novel. It may present unique facts not plainly covered by the controlling precedents. It may involve important questions concerning the scope and meaning of decisions of

3

the Supreme Court.'" (quoting D'Aquino v. United States, 180 F.2d 271, 272 (11th Cir. 1950))).

The phrase "'likely to result in reversal' defines the type of question that must be presented." Id. at 1281. The question presented should be "so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." Miller, 753 F.2d at 23. It cannot be one that would be considered harmless, would have no prejudicial effect, or was insufficiently preserved. Id.

Defendant bears the burden of proving that his appeal raises a substantial question of law or fact under the above standards. See Handy, 761 F.2d at 1283; United States v. Wheeler, 795 F.2d 839, 840 (9th Cir. 1986); United States v. Montoya, 908 F.2d 450, 451 (9th Cir. 1990). Significantly, here, with respect to the "substantial question" requirement, defendant must establish by clear and convincing evidence that his appeal is likely to result in reversal as to all counts for which imprisonment was imposed. See Morison, 486 U.S. at 1306 ("[R]egardless of whether Morison has raised a 'substantial question' with respect to the propriety of his conviction under the Espionage Act, he has not done so with respect to his conviction for theft of Government property under § 641. Because Morison has not shown that his appeal is 'likely to result in reversal' with respect to all the counts for which imprisonment was imposed . . . his application is denied."); Miller, 735 F.2d at 24 ("Obviously, if the question deemed substantial is not related to all of those counts [of conviction], then the statutory criteria for bail pending appeal would not be met as to the unaffected counts, and bail

4

1   may be denied."); see also, e.g., United States v. Randell, 761 F.2d
2   122 (2d Cir. 1985); United States v. Valera-Elizondo, 761 F.2d 1020
3   (5th Cir. 1985); United States v. Bilanzich, 771 F.2d 292 (7th Cir.
4   1985); United States v. Powell, 761 F.2d 1227 (8th Cir. 1985); United
5   States v. Affleck, 765 F.2d 944 (10th Cir. 1985).

6        The district court's legal determinations are reviewed de novo.
7   United States v. Garcia, 340 F.3d 1013, 1015 (9th Cir. 2003), but its
8   factual findings underlying the denial of bail are reviewed for clear
9   error, United States v. Townsend, 897 F.2d 989, 994 (9th Cir. 1990),
10  and the decision to deny bail is entitled to "great deference,"
11  United States v. Maull, 773 F.2d 1479, 1486-87 (8th Cir. 1985) (en
12  banc).

13  **III. ARGUMENT**

14        **A.    There Is No Novel Issue or Substantial Question Regarding
15               the Denial of Defendant's Suppression Motion Because, as
               the Court Correctly Held, Under Ninth Circuit Law Defendant
16               Has No Standing to Raise a Fourth Amendment Challenge**

17        Defendant challenges the Court's denial of his suppression
18  motion on several grounds (Mot. at 10-15),[3] all but one of which rest
19  on a claim of error in the Court's main holding – that defendant does
20  not have standing to raise a Fourth Amendment claim.  Specifically,
21  defendant argues that the Court erred in ruling that defendant had no
22  standing to raise a Fourth Amendment challenge to the Girardi Keese
23  bankruptcy trustee's voluntary production of the firm's books and
24  records to the government.  However, as the Court correctly held
25  "Bisno v. United States is dispositive."  (Dkt. 299 at 9 (citing 299
26  F.2d 711 (9th Cir. 1961)).)

27

28        ─────────────────
         [3] Pagination refers to CM/ECF header.

In <u>Bisno</u>, the Ninth Circuit squarely rejected a Fourth Amendment challenge to evidence obtained by the government from a bankruptcy trustee (<u>Id.</u> at 717) – exactly what happened here.  Defendant's arguments that <u>Bisno</u> was decided over 50 years ago, related to a different crime, and involved a prior version of the Bankruptcy Code are unavailing in light of the Court's discussion of the "Duties of a Debtor and Trustee" in Bankruptcy.  (Dkt. 299 at 6-9.)  Specifically, the Court outlined the statutory authority in the current Bankruptcy Code by which all interests in the records of a bankruptcy estate are transferred to the trustee.  (<u>Id.</u> at 7 (citing 11 U.S.C. §§ 303(g), 521(a)(4), 541, and 704(a)(1), (4)).)  Moreover, the Bankruptcy Code also requires the trustee to share information with the government when, as here, there are "reasonable grounds" to believe that crimes have been committed.  18 U.S.C. § 3057(a).  This statutory requirement of cooperation makes no distinction whether the debtor is an individual, a corporation, or a sole proprietorship.[4]  <u>See</u> <u>id.</u>  Although the Bankruptcy Code has been revised since <u>Bisno</u>, as the Court stated, the "current provisions of the Bankruptcy Code give the same foundational underpinning to the <u>Bisno</u> court's rejection of the defendant's Fourth Amendment claim as did the 1952 version of § 110(a) that "vested [in the trustee] by operation of law . . . the title of . . . documents relating to [the bankrupt's] property."  (Dkt. 299 at 10.)  Thus, <u>Bisno</u> squarely forecloses defendant's Fourth

---

[4] The Court assumed for purposes of analysis in its denial of suppression that Girardi Keese was a sole proprietorship.  (Dkt. 299 at 6.)  The government maintains the position that, despite defendant's sole ownership of Girardi Keese, the firm functioned as a partnership and was treated as such by defendant when it suited him to do so.  (Dkt. 247 at 11-14.)  The government incorporates those arguments here and reserves the right to argue those points on appeal.

1  Amendment challenge and there is no substantial question regarding

2  its application to the current facts.

3      But even if Bisno were overruled, such a decision would not be

4  likely to result in reversal or an order for a new trial here because

5  the government's underlying action (and the Court's suppression

6  ruling) were in good faith reliance on "binding appellate precedent"

7  that "specifically authorize[d]" the search.  United States v. Cano,

8  934 F.3d 1002, 1021 (9th Cir. 2019) (cleaned up).  Put simply, the

9  government was justified in relying on the clearly established rule

10 from Bisno that a debtor in bankruptcy does not have standing to

11 raise a Fourth Amendment challenge.  As for defendant's additional

12 claim that the bankruptcy proceedings here were somehow suspect

13 because they were involuntary, (see Mot. at 11 n.3), that is

14 dispensed with by the Court's competency rulings, which were based on

15 factual findings that were not clearly erroneous, do not raise a

16 substantial question of law or fact, and are not likely to result in

17 a reversal or a new trial (as discussed infra III.D).[5]

18     Defendant next attempts, at length, to obfuscate the Court's

19 straightforward Bisno analysis by invoking privacy and property-based

20 standing arguments.  (Mot. at 12-15.)  Just as there was no error in

21 applying Bisno, the Court's alternative holding that defendant did

22 not have standing because he did not have a reasonable expectation of

23 privacy in the books and records of his law firm is similarly sound.

24

25 _____

26 [5] In addition to the substantial evidence in the record undercutting defendant's claims of incompetency, it is worth noting that the involuntary bankruptcy proceedings that were initiated at the end of 2020, as the Girardi Keese firm collapsed, were not adversarial.  In other words, defendant's alleged cognitive impairment was not put to the test until the competency proceedings in this case were initiated.

27

28

1    (See Dkt. 299 at 10-11.)[6]   As the Court noted, the Bankruptcy Code

2    establishes the plenary authority of a Chapter 7 trustee to "take

3    possession of the property of the estate", act "with the best

4    interests of parties in interest," including "investigat[ing] the

5    financial affairs of the debtor" and, notably as referenced above,

6    refer cases to law enforcement when there is cause to do so.   See 11

7    U.S.C. §§ 303(g), 701(a)(1)-(4); 18 U.S.C. § 3057(a); accord United

8    States v. Setser, 568 F.3d 482, 488, 491 (5th Cir. 2009) (analogizing

9    trustees to receivers and holding that "after a receiver validly

10   takes possession of records and other property, becoming their lawful

11   custodian, the original owner has lost any reasonable expectation

12   that those records would remain private.") (cleaned up).

13          In any event, defendant has not identified any exhibit or other

14   evidence related to his convictions that was provided to the

15   government by the trustee and used against defendant during the trial

16   in this matter that would constitute personal papers or effects over

17   which he had a reasonable expectation of privacy.   (Dkt. 299 at 11.)

18   Therefore, his Fourth Amendment challenge, even if successful, would

19   not cure any prejudice and is not "so integral to the merits of the

20   conviction on which defendant is to be imprisoned that a contrary

21   appellate holding is likely to require reversal of the conviction or

22   a new trial."   Miller, 753 F.2d at 23.

23          Finally, defendant's assertion that the trustee was a government

24   agent fares no better.   In fact, Congress prescribed that trustees

25

26          [6] The fact that the government did not assert this argument in
     its opposition (Mot. at 13-14) does not prevent the Court from
27   addressing it.   Nor does it preclude the Ninth Circuit from affirming
     on any basis supported by the record.   See United States v. Kaluna,
28   192 F.3d 1188, 1197 n. 2 (9th Cir. 1999) ("We may affirm on any basis
     the record supports [.]") (internal quotation marks omitted).

are private parties, and not government officials.  28 U.S.C. § 586(a)(1) ("Each United States Trustee . . . shall establish, maintain, and supervise a panel of private trustees that are eligible and available to serve as trustees in cases under chapter 7 of title 11.") (emphasis added); U.S. Trustee Program, U.S. Department of Justice, Private Trustee Information (2024), available at https://www.justice.gov/ust/private-trustee-information (last visited Jul. 18, 2025) ("Private trustees are not government employees.").  Furthermore, the Court's concurrence with the Prokop[7] court that the "the Bankruptcy Trustee is no more a member of the prosecution team than [the bankrupt company] is a member of the prosecution team" is grounded in well-settled Ninth Circuit law. Namely, that a Chapter 7 trustee is the legal representative and fiduciary of the estate (In re Joseph, 208 B.R. 55, 60 (B.A.P. 9th Cir. 1997))[8], with a duty to conserve assets of the estate and maximize recovery for the creditors (In re Rigden, 795 F.2d 727, 731 (9th Cir. 1989)).  Moreover, the bankruptcy trustee is an officer of the court.  See In re Castillo, 297 F.3d 940, 945-46 (9th Cir. 2002) (citing Leonard v. Vrooman, 383 F.2d 556, 560 (9th Cir. 1967)). These core characteristics differentiate a trustee from members of the prosecution team.  (Dkt. 299 at 9.)

In sum, defendant's suppression challenge does not implicate a novel issue of law nor does it raise a fairly debatable, substantial question on appeal.

---

[7] United States v. Prokop, 2014 WL 1268678, at *2 (D. Nev. Mar. 27, 2014)

[8] See also In re AFI Holding, Inc., 530 F.3d 832, 845 (9th Cir. 2008) ("It follows that a bankruptcy trustee may have no interest adverse to the estate . . .").

**B.    The Jury Instruction of an Attorney's Ethical Duties Does
Not Raise a Substantial Issue Likely to Result in Reversal**

Defendant alleges the Court's jury instruction on defendant's
duties as an attorney, including the duties related to client-trust
accounts, raised a substantial question likely to result in reversal
or a new trial.  Defendant is wrong.

First, the Court soundly rejected his argument (see Mot. 15-18)
that the instruction resulted in a fatal variance or constructive
amendment for good reason.  Namely, the Court stated "As a licensed
attorney, Defendant Girardi had duties imposed by California law to
disclose certain information to his clients, and he had specific
duties with regard to handling their funds.  The Indictment charges
that part of the scheme involved material omissions that, consistent
with these duties, should have been disclosed."  (Dkt. 334 at 5.)
The challenged instruction thus mirrored the allegations in the
indictment.  For example, the indictment expressly referenced the
California Rules of Professional Conduct and defendant's violations
of those rules in carrying out his fraud against Client 1 and Client
2.  (See, e.g., Dkt. 1 ("Defendant GIRARDI knew that the California
Rules of Professional Conduct required him to, among other things,
promptly notify a client of the receipt of any funds the client was
entitled to receive, and promptly pay or deliver to the client or
such payees as designated by the client any such funds that defendant
GIRARDI and Girardi Keese held in trust for the client upon the
client's request.")  (Id. at 2); ("Defendant GIRARDI falsely
represented to Client 1 that the total settlement amount was
approximately $7,250,000, and concealed from Client 1 that the true
amount of the settlement was $53,000,000.") (Id. at 6); ("Prior to

[the deposit of Client 2's funds], and in violation of the California Rules of Professional Conduct governing the management of attorney-client trust accounts, defendants GIRARDI and KAMON transferred and caused the transfer of approximately $183,605.45 from the Torrey Pines IOLTA account to a Girardi Keese operating account, as 'fees' owed . . . .") (Id. at 9.)). That is what the government alleged, and that is what the government proved at trial.

Moreover, these rules were integral to the charged scheme and were essential background relevant to the jury's evaluation of whether the government proved the existence of the fraudulent scheme, materiality, and intent to defraud. See, e.g., United States v. Goland, 959 F.2d 1449, 1454 (9th Cir. 1992) (affirming instruction that violations of civil statutes or regulations are not necessarily violations of criminal law but may be considered in determining whether the defendant had the required specific intent); United States v. Ransom, 642 F.3d 1285, 1291-93 (10th Cir. 2011) (in wire fraud prosecution for falsifying time sheets, trial court properly instructed jury as to regulations governing how federal employees were to log their work hours or approved leave, but "the defendant's intent as defined in these instructions is for you to decide").

The proposed instruction and the rules governing California attorneys and client trust accounts formed the backdrop against which the jury assessed defendant's conduct. The instruction provided necessary context to explain how client funds should have been handled, why clients believed defendant held client settlement proceeds in the firm's trust account, and a lawyer's fiduciary responsibility to safeguard those funds, among other things. The Court's jury instruction, which was an accurate statement of the law,

1  enabled the jury to understand the nature of defendant's obligations

2  with respect to handling client money and the fiduciary duty

3  defendant owed to his clients.  These points are critical to the

4  elements of wire fraud, including the existence of a scheme,

5  defendant's intent to defraud, the materiality of defendant's

6  statements and omissions, including defendant's duty to "promptly

7  notify a client of the receipt of any funds the client was entitled

8  to receive," which defendant concedes was expressly identified in the

9  indictment.  (Dkt. 296 at 11.)[9]  Thus, the "attorney's duties"

10 instruction was neither a constructive amendment nor a variance.

11      Nor did the instruction improperly invade the province of the

12 jury.  (Mot. at 18-19.)  The jury heard evidence that defendant was a

13 licensed attorney and a member in good standing of the California

14 State Bar during the time frame alleged in the indictment.  (Dkt. 368

15 at 223:11-16.)  The Court's instruction was an accurate statement of

16 the law, "Because the defendant was a licensed member of the state

17 bar of California at all times relevant to the charges in this case,

18 the ethical duties that the defendant owed to his legal clients are

19 determined by California law."  (Dkt. 373 at 132:18-22.)  Defendant's

20 claim that an expert witness was required to present this information

21 to the jury is not supported by the law.  The Court, not an expert

22 witness, was the proper source for stating the applicable law

23 regarding an attorney's duties.  Nationwide Transp. Fin. v. Cass

24 _____

25     [9] Defendant's introduction of evidence showing defendant's
   commingling of his personal money into the firm's trust accounts
26 further supported the instruction.  (See, e.g., Dkt. 228 at 23:8-10,
   "Girardi had a significant amount of his own personal money also
27 swimming around in these [trust] accounts.").  The instruction
   provided necessary context for the jury to evaluate whether
28 defendant's improper commingling further evinced an intent to
   defraud.

Info. Sys., Inc., 523 F.3d 1051, 1058 (9th Cir. 2008) ("Instructing the jury as to the applicable law is the distinct and exclusive province of the court."). Furthermore, resolving doubtful questions of law is the distinct and exclusive province of the trial judge." United States v. Weitzenhoff, 35 F.3d 1275, 1287 (9th Cir. 1993) (cleaned up).

Finally, the Court's inclusion of limiting language further insulated the instruction from reversible error. (See Dkt. 373 at 132:23-133:14.) Indeed, the Ninth Circuit approved inclusion of a similar instruction in United States v. Nguyen. Nguyen was a pharmacist charged with healthcare fraud in this district. See CR 19-195-3-ODW, Dkt. 1 at 2 (C.D. Cal.). The district court instructed the jury on California's rules outlining a pharmacist's duties and, like here, the court cautioned the jurors that "proof that the defendant violated one or more of her duties as a pharmacist under California law does not necessarily mean that the defendant is guilty of the charged offenses." (Nguyen Dkt. 282 at 33-35.) On appeal, the Ninth Circuit held that the instruction in Nguyen was properly given because it "did not permit the jurors to equate a violation of the professional standards with guilt [of the charged offense]." United States v. Nguyen, No. 23-582, 2024 WL 4164626, at *2 (9th Cir. Sept. 12, 2024). There, as here, the jury instruction on professional duties made it clear that "proof that the defendant violated one or more of [defendant's] duties . . . does not necessarily mean that the defendant is guilty." Id. (emphasis in original) (citing United States v. Warren, 25 F.3d 890, 897 (9th Cir. 1994); see also Dkt. 334 at 2-5 (Court's ruling on the disputed instruction re attorney's ethical duties).

13

Thus, inclusion of an instruction that defines a standard of conduct to which defendant had a duty to conform and includes a limiting instruction that appropriately cabins the jury's consideration of the applicable standard does not raise a novel issue of law or fact, nor is the propriety of such an instruction fairly debatable.

### C.   Defendant's Argument Based on Parr Has Been Squarely Rejected by the Ninth Circuit

In denying defendant's Rule 29 motion for acquittal, the Court rejected defendant's argument that Parr v. United States, 363 U.S. 370 (1960), precludes wire fraud prosecutions where a charged wire occurs as a result of a duty imposed by state law. (Dkt. 416 at 4-5). The Court correctly cited governing Ninth Circuit law. Specifically, the Court correctly held that wires made pursuant to a private contract and incident to an essential part of a fraudulent scheme are valid executions of a wire fraud scheme. (Id. (citing Schmuck v. United States, 489 U.S. 705, 712 (1989) and United States v. Bernhardt, 840 F.2d 1441, 1446 (9th Cir. 1988)). Defendant's attempt to call into question well-established Ninth Circuit law should fail. Defendant claims that the "obligation to wire" not the "obligation to pay" is what matters for purposes of the wire fraud statute. (Mot. at 20.) That statement is not supported by Parr. Moreover, it directly contradicts controlling Ninth Circuit law in Bernhardt, as the Court noted, and also in United States v. Mitchell, 744 F.2d 701 (9th Cir. 1984), a case cited by Bernhardt.

In fact, the Ninth Circuit recently addressed this exact issue in a similar case involving a lawyer who stole client funds. Philip Layfield "was a crooked plaintiff's lawyer . . . [who] routinely (and

14

1    illegally) used client settlements to cover his personal expenses as

2    well as his firm's operating expenses to the tune of millions of

3    dollars commingled and stolen." United States v. Layfield, 96 F.4th

4    1095, 1096 (9th Cir.), cert. denied, 145 S. Ct. 302 (2024).[10]   Among

5    other things, Layfield challenged his convictions on the same grounds

6    defendant raises here that "because the wires at issue deposited

7    client settlement money into the firm's trust account in accordance

8    with California law, such legally compelled wirings cannot support a

9    conviction for wire fraud." United States v. Layfield, No. 22-50047,

10   2024 WL 982437, at *1 (9th Cir. Mar. 7, 2024).   The Ninth Circuit

11   soundly rejected that argument in a memorandum disposition based on

12   well-settled precedent.   Relying on Bernhardt and Mitchell, the court

13   distinguished Parr as follows:

> The wires into the trust account were the result of the
> services that Layfield had falsely represented he would
> perform in accordance with his fiduciary duty to protect
> and hold their funds in trust. In other words, Layfield's
> fraudulent representations led to the firm's services to
> clients which in turn led to the receipt of settlement
> funds that were then deposited into the trust account.
> Therefore, because Layfield's "fraudulent scheme ...
> triggered the applicability of the local law that required
> the [wires]," Parr cannot immunize Layfield.

Id. at *2.   Defendant's argument here fails for the same reason.   As

discussed in the previous section, the government alleged in the

indictment and proved at trial that defendant defrauded his victim-

clients by lying to them about their settlements and stealing their

settlement money in violation of his fiduciary duty as an attorney.

Defendant's fraudulent scheme, a mirror image of Layfield's scheme,

---

27      [10] The Layfield facts are taken from the Ninth Circuit's
published opinion on a different legal issue.   As discussed below,
28   Layfield's argument based on Parr was rejected in an unpublished
memorandum disposition.

15

triggered the applicability of the State Bar rules that required the charged wires.  Therefore, the Court correctly held here that <u>Parr</u> is distinguishable and defendant's challenge on that basis does not raise a substantial question likely to result in reversal.

Furthermore, as defendant concedes, even if the Ninth Circuit reverses on this issue, such a reversal affects only three of the four counts of conviction.  (Mot. at 21.)  This alone forecloses his challenge on this issue.  <u>Morison</u>, 486 U.S. at 1306.

### D. Defendant Fails to Establish a Substantial Question that the Court's Competency Findings Were an Abuse of Discretion or Based on Clearly Erroneous Facts

Defendant's mental state and alleged cognitive deficits were a centerpiece of these criminal proceedings.  Defendant has repeatedly claimed that defendant was not competent to proceed; the Court has repeatedly rejected those arguments.  Defendant now contends that it is "fairly debatable" that the Court erred in finding defendant competent throughout these proceedings.  Defendant is wrong.  The Court has held that defendant was competent and made factual findings consistent with that conclusion several times during these proceedings – both before trial (Dkt. 150) and after trial (Dkt. 416).[11]

---

[11] Prior to sentencing, the Court <u>sua sponte</u> ordered that defendant be evaluated pursuant to 18 U.S.C. § 4244.  (<u>See</u> Dkt. Nos. 437–39.)  Although this evaluation was not a successive competency proceeding, the report from that evaluation noted numerous instances of defendant's understanding of his surroundings and ability to participate meaningfully in activities of daily living in a custodial setting.  (<u>See, e.g.</u>, Dkt. 500 at 9-11, 13-15, 25.)  In holding that defendant was not in need of inpatient care in lieu of incarceration, the Court noted the "thorough evaluation procedure" conducted by the Bureau of Prisons ("BOP"), including by two doctors who examined defendant over the course of approximately six weeks.  (Dkt. 531 at 6.)

First, the Court held a multi-day pretrial competency hearing and also received reports and testimony from numerous experts and collateral witnesses, in addition to voluminous briefing by the parties on defendant's ability to understand the nature of the proceedings and assist in his defense.  (See Dkt. 150 at 1, n.1-4.) At the conclusion of that inquiry, the Court issued a 52-page ruling in which it provided a detailed account of the factual predicates for its ultimate finding that defendant was competent, including a finding that defendant was at least "partially malingering" by exaggerating the symptoms of his cognitive decline.  (See generally id. at 37, 49-52.)  Then, in denying defendant's motion for a new trial, the Court again held "now, as it did in [Dkt. 150], that Defendant is exaggerating symptoms of a mild cognitive impairment in order to support his counsel's claim that he is incompetent to stand trial" and "remained mentally competent to stand trial throughout the duration of his trial."  (Dkt. 416 at 11.)  None of these holdings was an abuse of discretion or based on clearly erroneous facts.

The finding that a defendant is competent to stand trial is a question of fact.  United States v. Hoskie, 950 F.2d 1388, 1392 (9th Cir. 1991).  Indeed, the district court is "uniquely situated" to assess a defendant's "capacity to understand the proceedings and to assist counsel."  United States v. Pantchev, No. 22-50246, 2024 WL 2044048, at *1 (9th Cir. May 8, 2024).  The court should consider representations of defense counsel regarding his client's competence, Drope v. Missouri, 420 U.S. 162, 177 n.13 (1975), but the court is free to weigh all the evidence and accord greater credibility to certain evidence, including expert reports and testimony, see Hoskie, 950 F.2d at 1394.

As stated above, the Court's competency findings were based on a fulsome pretrial hearing during which, among other evidence, the Court heard testimony and received reports from five experts, three from the defense and two from the government. (Dkt. 150 at 1.) In finding defendant competent, the Court carefully explained its methodology and conclusions, "Weighing all the evidence before the Court, and considering the many arguments offered by counsel, the Court concludes that although Defendant suffers from a mild-to-moderate cognitive impairment, he is competent to stand trial under the relevant legal standard." (Dkt. 150 at 37.) The Court cited its review of evidence related to defendant's brain scans, neurocognitive test results, anecdotal accounts of his abilities, presentation during evaluations, and timeline of his purported mental decline, and found that defendant was "exaggerating his symptoms and partially malingering." (Id.) In so holding, the Court expressly referenced the "persuasive[ness]" of the government's experts' opinions regarding defendant's clinical presentation. (Id.) Defendant's capacity to malinger and present exaggerated and/or feigned symptoms of impairment also supports a denial of the Motion. See United States v. White, 670 F.3d 1077, 1085 (9th Cir. 2012) (finding "no abuse of discretion when the district court did not hold another competency hearing. A reasonable judge could have, in his sound discretion, found that White had the ability to assist in his defense if he chose to do so, but was choosing not to cooperate with his attorneys. Even without an express finding of fact that White was choosing not to cooperate with his lawyers, the evidence before the district court would not necessarily provide a reasonable judge with a bona fide doubt as to whether White lacked the ability to do so.").

The Court again found defendant competent in its denial of defendant's motion for a new trial. (Dkt. 416 at 6-11.)  In doing so, the Court reiterated its finding that defendant had the capacity and, did in fact, choose to exaggerate his mental condition to support his claim of incompetence. (Id.)  Notably, the Court stated that it "d[id] not reach this conclusion lightly", and referenced numerous facts underpinning that conclusion. (Id. at 8-10 (citing the suspicious timing of defendant's precipitous mental decline in late 2020, defendant's anomalous memory deficits, the slowly progressive nature of his cognitive decline, and his own trial testimony).)  The Court further described its detailed observations during trial, including during defendant's trial testimony. (See Dkt. 416 at 9-11.)

A district court's determination that a second or successive competency hearing is not warranted is reviewed for abuse of discretion. United States v. White, 670 F.3d 1077, 1082 (9th Cir. 2012); accord United States v. Dreyer, 705 F.3d 951, 963, n.3 (9th Cir. 2013) ("Where, as in White, a competency hearing has already been conducted and in that hearing the defendant has been found competent, White holds that the standard of review is more deferential and error can be found only if the failure to order a second hearing sua sponte constitutes an abuse of discretion.").  Based on those legal standards and the factual findings described above, it is neither an abuse of discretion nor is it fairly debatable that the Court erred in determining that defendant was competent to stand trial and proceed to sentencing, that a second

competency hearing was not necessary, or in rejecting the idea that in camera daily, abbreviated "competency check ins" were warranted.[12]

Furthermore, defendant's interactions with BOP staff during the 4244 evaluation show that defendant was aware of his surroundings, tracked conversations with BOP staff and inmates, and was otherwise able to meaningfully assist with activities of daily living and participate adequately in a custodial setting.  (See Dkt. 531 at 11 ("The evidence shows that, although at times demonstrating confusion, Defendant currently possesses a baseline ability to function on a day-to-day basis and that he currently retains independence as to his ADLs.  The Court has had many opportunities over the past two years to observe Defendant, and notes that its observations are consistent with the determination of the BOP experts; Defendant generally behaves in a socially acceptable manner, is generally receptive to being redirected by his counsel and caregivers, and generally responds appropriately to his surroundings. For example, Defendant's testimony at the June 2, 2025 hearing reflected both the memory loss he has experienced as well as this baseline ability to function.  And although Defendant's cognition is expected to continue to decline, that decline is expected to be only slowly progressive.").)  The opinion of the BOP doctors who evaluated defendant during the § 4244 proceedings that defendant was not malingering does not call into question the Court's earlier conclusions regarding defendant's competency or his capacity to malinger because the 4244 evaluation

_____

[12] The Court reviewed defendant's request for holding daily in camera competency proceedings and, while acknowledging its obligation to ensure defendant's competency during all critical stages of the proceedings, determined that no supporting authority existed for defendant's request.  (Dkt. 363 at 11:11-12:21.)

differed in purpose and scope from the earlier competency
evaluations.

In sum, the Court's competency findings in this case are not
"fairly debatable", nor do they pose a substantial question likely to
result in reversal on appeal.  The Court held a fulsome pre-trial
hearing and based its factual findings regarding competency on a
robust record.  Moreover, the Court presided over trial and made
additional factual findings regarding defendant's competency in its
denial of defendant's motion for a new trial.  The Court did not
abuse its discretion determining that an additional competency
hearing was not warranted, nor were the Court's factual findings on
this issue clearly erroneous.

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests
that this Court deny defendant's motion for bail pending appeal.

Dated: July 18, 2025                  Respectfully submitted,

                                      BILAL A. ESSAYLI
                                      United States Attorney

                                      CHRISTINA T. SHAY
                                      Assistant United States Attorney
                                      Chief, Criminal Division


                                          /s/
                                      _____
                                      SCOTT PAETTY
                                      Assistant United States Attorney

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

The undersigned, counsel of record for the government, certifies that this brief contains 6,957 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 18, 2025                    Respectfully submitted,

                                        BILAL A. ESSAYLI
                                        United States Attorney

                                        CHRISTINA T. SHAY
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                        _____/s/_____
                                        SCOTT PAETTY
                                        Assistant United States Attorney

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA