# EXHIBIT 2



Portfolio Media. Inc. | 230 Park Avenue, 7th Floor | New York, NY 10169 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

## What To Watch Out For During Girardi's Trial

By **Jack Karp**

Law360 (August 5, 2024, 3:06 PM EDT) -- With evidence of allegedly stolen millions and attempted escapes to the Bahamas taking center stage, disgraced attorney Tom Girardi's criminal trial is set to begin Tuesday at the murky intersection of client theft and TV celebrity, where attorneys will grapple with novel legal issues like the use of evidence from a bankruptcy trustee.



Tom Girardi, pictured here during a trial in 2014, will face a trial of his own beginning Aug. 6, 2024, over charges alleging he misused his clients' funds. (AP Photo/Irfan Khan/Los Angeles Times)

Evidence about what control Girardi had over the now-defunct Girardi Keese firm's client trust account, efforts by the firm's former chief financial officer to flee the country, millions of dollars Girardi transferred to his wife's business and her fame as a reality television star could all shape what may be a fascinating trial, attorneys say.

"This case is so compelling not only because it is a high-profile trial, but also because it raises so many interesting legal issues," said Crowell & Moring LLP partner Agustin D. Orozco, a former federal prosecutor who now handles complex white collar cases.

Orozco was one of several experts who spoke with Law360 Pulse about what they expect to see during the trial and what surprises they're watching out for when Girardi and his alleged victims finally have their day in court.

**Girardi as "Criminal Mastermind"**

Case 2:23-cr-00047-JLS    Document 568-2    Filed 08/25/25    Page 3 of 5    Page ID #:12051

Much of the trial will rest on what prosecutors can prove about Girardi's knowledge of the alleged theft of millions of dollars from clients' settlements, attorneys say.

## Girardi on Trial

The criminal trial of disbarred attorney Tom Girardi is scheduled to start Tuesday. Read more below.

- Girardi's Defense May Stand On His Deteriorating Mind
- Meet The Attorneys In Tom Girardi's Criminal Fraud Trial
- The 'No Nonsense' Calif. Judge Overseeing Girardi's Trial

That means evidence about what visibility and access Girardi had into his firm's client trust account will "definitely" be important, according to Jenner & Block LLP special counsel Carolyn Small.

Small, a former assistant U.S. attorney who prosecuted attorney Philip James Layfield, convicted of **taking millions in settlement money** from clients, said she's especially looking forward to hearing from Girardi's alleged victims about what they were being told was happening with their settlement money.

"I always think that that's really interesting in these kinds of cases, to compare what's happening in real life versus what are people being told," Small said.

Orozco pointed out it also remains to be seen how aggressive prosecutors will be in "painting Girardi as a criminal mastermind," given that Girardi, who is claimed to have dementia but was found competent to stand trial, will likely look disoriented and lost.

But possibly the "most interesting part" of the trial will be how the defense tackles what appears to be "fairly strong evidence," according to Julia M. Jayne, a former deputy district attorney who is now a white collar criminal defense lawyer.

Whenever there is such a clear paper trail, it makes a white collar case all that more challenging, Jayne said.

**Will Girardi Blame His CFO?**

While prosecutors try to paint Girardi as a criminal mastermind, Girardi will almost certainly try to blame the fraud on his former CFO, Christopher Kamon, according to experts.

Girardi's attorneys are likely to claim that it was Kamon's job to manage the firm's trust account on a day-to-day basis and that Girardi had little to do with those financial details, these lawyers predict.

"They are going to say that Girardi was an attorney, not a numbers guy," Orozco said.

Defense attorneys could even argue that Kamon intentionally targeted Girardi and his firm because he knew Girardi's mental state was declining, making Girardi, like his former clients, a victim, Orozco pointed out.

Kamon's alleged **attempt to flee the country** for the Bahamas before his arrest could aid Girardi's defense team with this strategy, attorneys say.

U.S. District Judge Josephine L. Staton has already decided that jurors can see evidence of an attempted escape, which includes statements Kamon made about changing his name and hiding from authorities, and his purchase of a residence in the Bahamas.

Girardi's attorneys originally tried to keep the evidence out of court, but it could end up helping Girardi, according to experts.

6/11/25, 6:00 PM    Case 2:23-cr-00047-JLS    Document 568-2    Filed 08/25/25    Page 4 of 5    Page ID
                                       What to Watch During Girardi's #:12052
 Trial - Law360 Bankruptcy Authority

"To the extent the defense will be able to bring in evidence that the CFO tried to flee, it can help the defense in painting the CFO as the culpable person behind the fraud scheme," Orozco explained.

"There's probably a way he could spin it," Small said, adding that Girardi may point to the fact that he didn't try to flee while his CFO did as proof that he didn't know about the fraud.

That tactic of blaming his former CFO could work, since the two men's trials have been separated, according to Jayne.

"The tactic of blaming the guy who isn't there is probably a good one," she said.

The defense will be limited, though, by another of the judge's rulings, that Girardi **can't introduce** details about Kamon's alleged "side fraud" scheme that siphoned millions from Girardi Keese without Girardi's knowledge, according to Orozco.

And the defense faces a big obstacle to making that argument since Girardi is an attorney, according to Bienert Katzman Littrell Williams LLP partner Steven J. Katzman, a former federal prosecutor who specializes in complex insolvency cases.

"Jurors will be predisposed to assume a greater level of knowledge and sophistication because of that, regardless of the realities," Katzman said.

Whatever evidence the jury sees regarding Kamon, Girardi's strategy of blaming his ex-CFO isn't likely to be successful unless the government can't demonstrate that Girardi had access to the firm's trust account, Small insisted.

"If prosecutors have evidence like that, then I don't think it'll be very effective," she said.

### The $25M Girardi Gave His Wife's Business

Girardi's efforts to blame the fraud on his former CFO could also be undercut by evidence that Girardi transferred over $25 million from Girardi Keese to his wife's business, according to Orozco.

Girardi's defense attorneys **lost a battle** to keep that evidence out of court, with prosecutors saying the payments are relevant to the government's burden of proving that Girardi acted with the intent to cheat his clients.

"The prosecution will argue that the CFO would not squander funds just to give them to Girardi's wife," Orozco said. "The payments to Girardi's wife could only come from funds Girardi squandered from his clients."

But Small pointed out that in the Layfield attorney fraud case that she prosecuted, the judge made it clear that prosecutors must tie similar evidence back to the charged fraud.

"Where it was more lifestyle evidence — that they're living this lavish lifestyle, but you couldn't necessarily trace it back to client money — the judge was a lot more hesitant to say that that was something that was admissible," Small explained.

She imagined Judge Staton would apply similar guardrails in Girardi's case.

"I expect it will be the same here. I think if the government can trace it back to client money, it's got to be fair game," Small said. "But if they can't, it's probably less likely to come in."

### Could Evidence From the Bankruptcy Trustee Lead to an Appeal?

Judge Staton also ruled that Girardi **can't exclude emails** and other Girardi Keese records prosecutors obtained from the firm's bankruptcy trustee without a search warrant.

Girardi had **attempted to block those records**, citing a violation of his Fourth Amendment rights, but the judge ruled that Girardi's constitutional rights weren't violated since the evidence was the bankruptcy estate's property and in the trustee's possession.

That ruling "could change the shape of trial" since it applies to such a large amount of evidence, Small

Case 2:23-cr-00047-JLS    Document 568-2    Filed 08/25/25    Page 5 of 5    Page ID #:12053

said.

But experts are split on whether the judge made the right call.

"It is hard to make the argument that there was a Fourth Amendment violation — and thus an expectation of privacy — when the evidence is obtained through a third party," Orozco said, adding that Judge Staton relied on good precedent, Bisno v. U.S. 🔴 , in her ruling.

In Bisno, the Ninth Circuit said no Fourth Amendment rights were violated when a defendant was convicted of hiding assets from a bankruptcy trustee after contesting the admission of certain business records that he claimed had been unlawfully obtained.

But the Bisno precedent Judge Staton relied on dates to 1961, and the Bankruptcy Act has since gone through major overhauls. That case also didn't take into account the role of the United States Trustee, a program that did not exist back then, according to Katzman, who is a former U.S. trustee.

So Judge Staton's reliance on Bisno was incorrect and led to a "deficient analysis," Katzman said.

"Allowing wholesale admission of evidence that could be found by an appellate court later to be illegally obtained can be, no doubt, a significant issue, depending on what that evidence is as opposed to other evidence in the record to support any conviction of Girardi," Katzman added.

**Do the Jurors Watch Bravo?**

The notoriety surrounding both Girardi's case and his estranged wife, Erika Jayne, who stars in the Bravo reality series "The Real Housewives of Beverly Hills," could also play a role, particularly when it comes to jury selection, experts say.

Judge Staton granted the defense's **request to issue questionnaires** to prospective jurors about whether they watch the TV show that features Girardi's wife or follow celebrity gossip. Prosecutors had **pushed back on that request**, saying Girardi's fame is not comparable to convicted attorney Michael Avenatti's, whose case did include a juror questionnaire.

But Orozco agreed with the defense that given the case's media exposure, it's worth asking the jurors about their knowledge of Girardi and his wife.

"I don't find the government's argument that Girardi is not as famous as Avenatti compelling. If it turns out the jurors don't know who Girardi is, then fine. But at least both sides will have the information in finding 12 impartial jurors," Orozco said.

Small also thought that it made sense to ask jurors at least some questions touching on what potential jurors know of Girardi and his celebrity partner.

"You want to root out people who are massive fans who really want to be on the jury," she said. "I don't think either side would want that."

It's unlikely the case's notoriety or the celebrity of Girardi's estranged wife will lead to the jury being sequestered, however, according to experts.

That "pretty drastic" remedy is unlikely given that the trial will probably be lengthy by federal standards, according to Small.

And while Girardi's case is high profile, other celebrity trials haven't warranted sequestering the jury, Jayne pointed out.

"This doesn't strike me as the type of case to require sequestration," Jayne said.

--Additional reporting by Brandon Lowrey and Gina Kim. Editing by Robert Rudinger.

---

All Content © 2003-2025, Portfolio Media, Inc.